**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | 12-md-02311<br>Honorable Marianne O. Battani |
| In Re: OCCUPANT SAFETY SYSTEMS CASES | |
| THIS RELATES TO:<br>ALL DEALERSHIP ACTIONS | 2:12-cv-00602 |

**ANSWER AND AFFIRMATIVE DEFENSES OF TAKATA
CORPORATION AND TK HOLDINGS INC. TO DEALERSHIP
<u>SECOND CONSOLIDATED CLASS COMPLAINT</u>**

Defendants Takata Corporation and TK Holdings Inc. ("Takata"), through undersigned counsel, hereby submit their Answer to the claims asserted against Takata in Plaintiffs Martens Cars of Washington, Inc. ("Plaintiff Martens"), Landers Auto Group No. 1, Inc., d/b/a Landers Toyota ("Plaintiff Landers"), Hammett Motor Company, Inc. ("Plaintiff Hammett"), Superstore Automotive, Inc. ("Plaintiff Superstore"), Lee Pontiac-Oldsmobile-GMC Truck, Inc. ("Plaintiff Lee"), Westfield Dodge City, Inc. ("Plaintiff Westfield"), V.I.P. Motor Cars Ltd. ("Plaintiff V.I.P."), Desert European Motorcars, Ltd. ("Plaintiff Desert"), Landers McLarty Fayetteville TN, LLC ("Plaintiff Fayetteville"), Dale Martens Nissan Subaru, Inc. ("Plaintiff Dale Martens"), Green Team of Clay Center Inc. ("Plaintiff

Green Team"), McGrath Automotive Group, Inc. ("Plaintiff McGrath"), Table Rock Automotive, Inc., d/b/a Todd Archer Hyundai ("Plaintiff Table Rock"), Archer-Perdue, Inc., d/b/a/ Archer-Perdue Suzuki ("Plaintiff Archer-Perdue"), Landers McLarty Lee's Summit Mo, LLC d/b/a Lee's Summit Chrysler Dodge Jeep Ram and d/b/a Lee's Summit Nissan ("Plaintiff Lee's Summit"), Bonneville and Son, Inc. ("Plaintiff Bonneville"), Holzhauer Auto and Truck Sales, Inc. ("Plaintiff Holzhauer"), Pitre, Inc., d/b/a/ Pitre Buick GMC ("Plaintiff Pitre"), Patsy Lou Chevrolet, Inc. ("Plaintiff Patsy Lou"), John Greene Chrysler Dodge Jeep, LLC ("Plaintiff John Greene"), SLT Group II, Inc., d/b/a Planet Nissan Subaru of Flagstaff ("Plaintiff Planet Nissan"), Herb Hallman Chevrolet, Inc., d/b/a/ Champion Chevrolet ("Plaintiff Champion"), Charles Daher's Commonwealth Motors, Inc., d/b/a Commonwealth Chevrolet, Commonwealth Kia, Commonwealth Honda ("Plaintiff Commonwealth Motors"), Commonwealth Volkswagen, Inc., d/b/a Commonwealth Volkswagen ("Plaintiff Commonwealth Volkswagen"), Commonwealth Nissan, Inc., d/b/a Commonwealth Nissan ("Plaintiff Commonwealth Nissan"), Ramey Motors, Inc. ("Plaintiff Ramey"), Thornhill Superstore, Inc., d/b/a Thornhill GM Superstore ("Plaintiff Thornhill"), Dave Heather Corporation, d/b/a Lakeland Toyota Honda Mazda Subaru ("Plaintiff Lakeland"), Central Salt Lake Valley GMC Enterprises, LLC, d/b/a Salt Lake Valley Buick GMC ("Plaintiff Salt Lake Valley"), Capitol Chevrolet

Cadillac, Inc. ("Plaintiff Capitol Chevrolet"), Capitol Dealerships, Inc., d/b/a
Capitol Toyota ("Plaintiff Capitol Toyota"), Beck Motors, Inc. ("Plaintiff Beck"),
Stranger Investments d/b/a Stephen Wade Toyota ("Plaintiff Wade"), John O'Neil
Johnson Toyota, LLC ("Plaintiff Johnson"), Hartley Buick GMC Truck, Inc.
("Plaintiff Hartley"), Lee Oldsmobile-Cadillac, Inc. d/b/a Lee Honda ("Plaintiff
Lee Honda"), Lee Auto Malls-Topsham, Inc. d/b/a Lee Toyota of Topsham
("Plaintiff Topsham"), Landers of Hazelwood, LLC d/b/a Landers Toyota of
Hazelwood ("Plaintiff Hazelwood"), Cannon Nissan of Jackson, LLC ("Plaintiff
Cannon Nissan"), Hudson Charleston Acquisition, LLC d/b/a Hudson Nissan
("Plaintiff Hudson Nissan"), Shearer Automotive Enterprises III, Inc. ("Plaintiff
Shearer"), Apex Motor Corporation ("Plaintiff Apex"), Rainbow Chevrolet, Inc.,
d/b/a Cutter Chevrolet ("Plaintiff Rainbow"), Stoebner Holdings, Inc. d/b/a Honda
Windward ("Plaintiff Windward"), Hudson Gastonia Acquisition, LLC d/b/a
Gastonia Nissan ("Plaintiff Gastonia"), Hodges Imported Cars, Inc. d/b/a Hodges
Subaru ("Plaintiff  Hodges"), Reno Dodge Sales, Inc. d/b/a Don Weir's Reno
Dodge ("Plaintiff Don Weir"), Panama City Automotive Group, Inc. d/b/a John
Lee Nissan ("Plaintiff John Lee"), Empire Nissan of Santa Rosa, LLC ("Plaintiff
Empire Nissan") (collectively "Plaintiffs") Second Consolidated Class Complaint
dated November 22, 2014 ("complaint"), and assert Affirmative and Other
Defenses.  By using the collective term "Takata," the two above-named defendants

3

do not admit that they constitute a single entity for purposes of the allegations in the complaint. Takata uses the term "Occupant Safety Restraint Systems" as defined in Paragraph 2 of the complaint solely for ease of reference; no agreement or waiver by such use is intended. By using the term "Occupant Safety Systems," Takata does not admit that the diverse and distinct types of products that Plaintiffs refer to in their complaint may accurately be grouped together under the term "Occupant Safety Restraint Systems," and expressly denies the same. Takata expressly denies that it engaged in the conspiracy or other wrongdoing pled in any of the averments contained in the complaint. Takata expressly denies that this action is appropriate for class certification. Takata denies all allegations contained in the complaint (including headings and the "Prayer for Relief") not specifically admitted below and denies that Plaintiffs are entitled to any relief in this action. Takata answers the complaint as follows:

## ANSWER TO DEALERSHIP SECOND CONSOLIDATED CLASS COMPLAINT

1.     Plaintiffs bring this lawsuit as a proposed class action against the Defendants (defined below), manufacturers, and suppliers of Occupant Safety Restraint Systems (defined below) globally and in the United States for engaging in a lengthy conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the

4

prices of these products, which were sold to automobile manufacturers in the United States and elsewhere. The Defendants' conspiracy successfully targeted the United States automotive industry, raising prices for car manufacturers, car and truck dealers, and consumers.

**ANSWER:** Paragraph 1 consists of Plaintiffs' characterization of their purported claims to which no response is required.  To the extent any response is required, Takata admits that it manufacturers various types of seat belts, airbags, steering wheels, and other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems," and denies the allegations in the first sentence of Paragraph 1 to the extent directed at Takata in all other respects. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 1 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 1 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.


2.    "Occupant Safety Restraint Systems" are generally comprised of the parts in an automotive vehicle that protect drivers and passengers from bodily harm. Types of different Occupant Safety Restraint Systems include seat belts, airbags, steering wheels, and steering systems.

**ANSWER:** Takata admits that Plaintiffs purport to define the term "Occupant Safety Restraint Systems" as stated in Paragraph 2 and denies the allegations in Paragraph 2 in all other respects. Solely for ease of reference, in this Answer Takata will use the term "Occupant Safety Restraint Systems" as defined in the complaint; no agreement or waiver by such use is intended.

3.     The "Class Period" refers to January 2003 to the present.

**ANSWER:** Takata admits that Plaintiffs purport to define the term "Class Period" as stated in Paragraph 3 and denies the allegations in Paragraph 3 in all other respects.

4.     The Defendants manufacture, market, and sell Occupant Safety Restraint Systems throughout the United States and in other countries.

**ANSWER:** Takata admits that it manufactures, markets, and sells seat belts, airbags, steering wheels, and other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems," in the United States and other countries. Takata denies the allegations in Paragraph 4 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

5.     Vehicles containing Occupant Safety Restraint Systems, as well as

Occupant Safety Restraint Systems themselves, made by Defendants, are sold in every state of the United States and the District of Columbia.

**ANSWER:**   Takata denies the allegations in Paragraph 5 for lack of knowledge or information sufficient to form a belief as to their truth.

6.    The Defendants and other co-conspirators (as yet unknown) agreed, combined, and conspired to rig bids for, and to fix, stabilize, and maintain the prices of Occupant Safety Restraint Systems. They carried out their conspiracy by agreeing, during meetings and conversations, to allocate the supply of Occupant Safety Restraint Systems on a model-by-model basis. Defendants then sold Occupant Safety Restraint Systems at noncompetitive prices to automobile manufacturers in the United States and elsewhere, for sale in United States.

**ANSWER:**  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 6 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 6 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

7.    Competition authorities in the United States and the European Union have been investigating a conspiracy in the market for Occupant Safety Restraint

Systems. As part of its criminal investigation, the United States Department of Justice ("DOJ") is seeking information about anticompetitive conduct in the market for Occupant Safety Restraint Systems, and the Federal Bureau of Investigation ("FBI") has participated in raids, pursuant to search warrants, carried out in at least some of the Defendants' offices. The European Commission Competition Authority ("EC") has also conducted investigations at the European offices of several of the Defendants.

**ANSWER:**  Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems."  Takata admits that on February 8, 2011, the FBI raided the Auburn Hills, Michigan offices of TK Holdings Inc. Takata denies the allegations of Paragraph 7 directed at other Defendants for lack of knowledge or information sufficient to form a belief as to their truth.

8.     Defendant Autoliv, Inc. has agreed to plead guilty and pay a $14.5 million fine for its unlawful conduct in conspiring with others to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Occupant Safety Restraint Systems sold to certain automobile manufacturers in the United States and elsewhere at various times from at least as early as March 2006 and continuing until at least February 2011. The combination and conspiracy engaged in by Defendant Autoliv,

Inc. and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

**ANSWER:**  Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 8 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 8 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**9.**    Defendant TRW Deutschland Holding Gmbh has agreed to plead guilty and to pay a total of $5.1 million in criminal fines concerning a two-count criminal investigation for fixing the prices of seatbelts, steering wheels and airbags.

**ANSWER:**  Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 9 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**10.**    Defendant Toyoda Gosei Co. Ltd. has agreed to plead guilty and pay a

$26 million fine for its unlawful conduct in conspiring with others to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, rig bids for, and to fix, stabilize and maintain the prices of, among other products, Occupant Safety Restraint Systems sold to certain automobile manufacturers in the United States and elsewhere at various times from at least as early as September 2003 and continuing until at least September 2010. The combination and conspiracy engaged in by Defendant Toyoda Gosei Co. Ltd. and its coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 10 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 10 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**11.** As a direct result of the anti-competitive and unlawful conduct alleged herein, Plaintiffs and the Class paid artificially inflated prices for Occupant Safety Restraint Systems or for vehicles containing Occupant Safety Restraint Systems.

10

Plaintiffs and the members of the Classes have thereby suffered antitrust injury to their business or property.

**ANSWER:**  Takata denies the allegations in Paragraph 11 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 11 regarding purported class members.  Takata denies the allegations in Paragraph 11 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

12.    Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, and consumer protection laws, and seek to obtain restitution, recover damages, and secure other relief against Defendants for violation of those state laws.  Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

**ANSWER:**  Paragraph 12 consists of Plaintiffs' characterizations of their purported claims, to which no response is required, and on that basis Takata denies these allegations.

11

13.    This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337. This Court has subject matter jurisdiction over the state law claims in this action, pursuant to 28 U.S.C. §§ 1332(d) and 1367, because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of different states than some Defendants.

**ANSWER:**  The allegations in Paragraph 13 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations.

14.    Venue is proper in this district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this district, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this district.

**ANSWER:**  The allegations in Paragraph 14 call for a legal conclusion to

which no response is required, and on that basis Takata denies these allegations.

15.     This Court has *in personam* jurisdiction over each of the Defendants because each Defendant, either directly or through the ownership and/or control of its United States subsidiaries, *inter alia:*

(a) transacted business in the United States, including in this district;

(b) directly or indirectly sold or marketed substantial quantities of Occupant Safety Restraint Systems throughout the United States that were specifically designed for vehicles that were intended to be sold in the United States, including in this district;

(c) had substantial aggregate contacts with the United States as a whole, including in this district;

(d) was through its own actions and through the actions of its co-conspirators, engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States;

(e) targeted customers in the United States, including this district, and/or

(f) engaged in actions in furtherance of an illegal conspiracy in this district either itself or through its co-conspirators. Defendants also conduct business

throughout the United States, including in this district, and they have purposefully availed themselves of the laws of the United States and this district.

**ANSWER:**  The allegations in Paragraph 15 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 15 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 15 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

16.     Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial, reasonably foreseeable, and intended anti-competitive effects upon interstate commerce within the United States and upon import trade and commerce into the United States.

**ANSWER:**  The allegations in Paragraph 16 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 16 to the extent they are directed at Takata or intended to reference

actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 16 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

17.     The activities of Defendants and their co-conspirators were within the flow of, were intended to have, and did have, a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

**ANSWER:**  The allegations in Paragraph 17 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 17 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 17 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

18.     Occupant Safety Restraint Systems manufactured abroad by Defendants and sold for use in automobiles either manufactured in the United States or manufactured abroad and sold in the United States are goods brought into

the United States for sale and, therefore, constitute import commerce. To the extent any Occupant Safety Restraint Systems are purchased in the United States, and such Occupant Safety Restraint Systems do not constitute import commerce, Defendants' unlawful activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial, and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United States.

**ANSWER:** The allegations in Paragraph 18 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies the allegations in Paragraph 18 to the extent they are directed at Takata. Takata denies the allegations in Paragraph 18 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**19.** By reason of the unlawful activities hereinafter alleged, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. Defendants, directly and through their agents, engaged in activities affecting all states, to fix or inflate prices of Occupant

Safety Restraint Systems, and that conspiracy unreasonably restrained trade and adversely affected the market for Occupant Safety Restraint Systems.

**ANSWER:** The allegations in Paragraph 19 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems," denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 19 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 19 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

20.   Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased Occupant Safety Restraint Systems, including Plaintiffs and the Classes.

**ANSWER:** The allegations in Paragraph 20 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 20 to the extent they are directed at Takata or intended to reference

actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 20 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

21.     Plaintiff Hammett is a Mississippi corporation with its principal place of business in Durant, Mississippi. Plaintiff Hammett is an authorized Ford dealer who bought Ford-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 21 for lack of knowledge or information sufficient to form a belief as to their truth.

22.     During the Class Period Plaintiff Hammett purchased vehicles containing Occupant Safety Restraint Systems manufactured by Defendants or their co-conspirators.  Plaintiff Hammett also purchased Occupant Safety Restraint Systems, manufactured by Defendants or their co-conspirators, for its repair and service business, during the Class Period.   Plaintiff Hammett purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Mississippi. Plaintiff Hammett has also displayed, sold, serviced, and advertised

its vehicles in Mississippi during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 22 for lack of knowledge or information sufficient to form a belief as to their truth.

23.   Plaintiff Landers is an Arkansas corporation with its principal place of business in Little Rock, Arkansas. Plaintiff Landers is an authorized Toyota dealer who bought Toyota-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 23 for lack of knowledge or information sufficient to form a belief as to their truth.

24.   During the Class Period Plaintiff Landers purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Landers also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Landers purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Arkansas. Plaintiff Landers has also displayed, sold,

serviced, and advertised its vehicles in Arkansas during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 24 for lack of knowledge or information sufficient to form a belief as to their truth.

25.   Plaintiff Superstore is a Minnesota company, with its principal place of business in White Bear Lake, Minnesota. Plaintiff Superstore is an authorized Buick/GMC dealer, doing business under the name White Bear Lake Superstore. Plaintiff Superstore bought Buick-and GMC-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 25 for lack of knowledge or information sufficient to form a belief as to their truth.

26.   During the Class Period Plaintiff Superstore purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.  Plaintiff Superstore also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Superstore purchased and received both the aforementioned vehicles and Occupant

Safety Restraint Systems in Minnesota. Plaintiff Superstore has also displayed, sold, serviced, and advertised its vehicles in Minnesota during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 26 for lack of knowledge or information sufficient to form a belief as to their truth.


**27.**   Plaintiff Lee is a Florida corporation, with its principal place of business in Fort Walton Beach, Florida. Plaintiff Lee is presently an authorized GMC dealer. During the Class Period, Plaintiff Lee was also an authorized Pontiac, Oldsmobile and Jeep dealer. Plaintiff Lee buys GMC-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. During the Class Period, Plaintiff bought GMC- Pontiac-, Oldsmobile-, and Jeep-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators.

**ANSWER:** Takata denies the allegations in Paragraph 27 for lack of knowledge or information sufficient to form a belief as to their truth.

21

28.    During the Class Period Plaintiff Lee purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Lee also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Lee purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Florida. Plaintiff Lee has also displayed, sold, serviced, and advertised its vehicles in Florida during the Class Period.

**ANSWER:**  Takata denies the allegations in Paragraph 28 for lack of knowledge or information sufficient to form a belief as to their truth.


29.    Plaintiff Martens is a Maryland corporation that had its principal place of business in the District of Columbia during the Class Period. During the Class Period Plaintiff Martens was an authorized Volvo and Volkswagen dealer who sold Volvo- and Volkswagen-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators.

**ANSWER:**  Takata denies the allegations in Paragraph 29 for lack of knowledge or information sufficient to form a belief as to their truth.

22

**30.** During the Class Period Plaintiff Martens purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators.  Plaintiff Martens also purchased Occupant Safety Restraint Systems, manufactured by one or more of the Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Martens purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in the District of Columbia. Plaintiff Martens has also displayed, sold, serviced, and advertised its vehicles in the District of Columbia during the Class Period.

**ANSWER:**  Takata denies the allegations in Paragraph 30 for lack of knowledge or information sufficient to form a belief as to their truth.

**31.** Plaintiff Westfield is a New York company with its principal place of business in Westfield, New York. Plaintiff Westfield is an authorized Chrysler dealer, who bought Chrysler-, Dodge-, and Jeep-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators during the Class Period.

23

**ANSWER:**   Takata denies the allegations in Paragraph 31 for lack of knowledge or information sufficient to form a belief as to their truth.

32.   During the Class Period Plaintiff Westfield purchased vehicles containing Occupant Safety Restraint Systems manufactured one or more Defendants or their coconspirators.  Plaintiff Westfield also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Westfield purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in New York. Plaintiff Westfield has also displayed, sold, serviced, and advertised its vehicles in New York during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 32 for lack of knowledge or information sufficient to form a belief as to their truth.

33.   Plaintiff V.I.P. is a California company with its principal place of business in Palm Springs, California. Plaintiff VIP is an authorized Mercedes, BMW, Infiniti, and Hyundai dealer who bought Mercedes-, BMW-, Infiniti-, and Hyundai-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the

Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 33 for lack of knowledge or information sufficient to form a belief as to their truth.

34.   During the Class Period Plaintiff V.I.P. purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators.   Plaintiff V.I.P. also purchased Occupant Safety Restraint Systems, for its repair and service business, during the Class Period. Plaintiff V.I.P. purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in California. Plaintiff V.I.P. has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 34 for lack of knowledge or information sufficient to form a belief as to their truth.

35.   Plaintiff Desert is a California company, with its principal place of business in Rancho Mirage, California. Plaintiff Desert is an authorized Rolls Royce, Bentley, Aston Martin, Maserati, Porsche, Jaguar, Land Rover, Audi, Lotus, and Spyker dealer who bought Rolls Royce-, Bentley-, Aston Martin-, Maserati-, Porsche-, Jaguar-, Land Rover-, Audi-, Lotus-, and Spyker-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or

more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 35 for lack of knowledge or information sufficient to form a belief as to their truth.

36.    During the Class Period, Plaintiff Desert purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Desert also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Desert purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in California. Plaintiff Desert has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 36 for lack of knowledge or information sufficient to form a belief as to their truth.

37.    Plaintiff Fayetteville is an Arkansas corporation, with its principal place of business in Fayetteville, Tennessee. Plaintiff Fayetteville is an authorized Toyota dealer, who bought Toyota-brand cars containing Occupant Safety

Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 37 for lack of knowledge or information sufficient to form a belief as to their truth.

**38.**   During the Class Period Plaintiff Fayetteville purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.  Plaintiff Fayetteville also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Fayetteville purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Tennessee. Plaintiff Fayetteville has also displayed, sold, serviced, and advertised its vehicles in Tennessee during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 38 for lack of knowledge or information sufficient to form a belief as to their truth.

**39.**   Plaintiff Dale Martens was a Kansas corporation, with its principal place of business in Lawrence, Kansas during the Class Period. Plaintiff Dale

Martens was an authorized Nissan and Subaru dealer during the Class Period, who, during the Class Period, bought Nissan-and Subaru-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators.

**ANSWER:**  Takata denies the allegations in Paragraph 39 for lack of knowledge or information sufficient to form a belief as to their truth.

40.     During the Class Period Plaintiff Dale Martens purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.   Plaintiff Dale Martens also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Dale Martens purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Kansas. Plaintiff Dale Martens has also displayed, sold, serviced, and advertised its vehicles in Kansas during the Class Period.

**ANSWER:**  Takata denies the allegations in Paragraph 40 for lack of knowledge or information sufficient to form a belief as to their truth.

41.     Plaintiff Green Team is a Kansas corporation, with its principal place of business in Clay Center, Kansas. Plaintiff Green Team is an authorized Chrysler, Jeep, Dodge, and Ram dealer, who bought Chrysler-, Jeep-, Dodge-, and Ram-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 41 for lack of knowledge or information sufficient to form a belief as to their truth.


42.     During the Class Period Plaintiff Green Team purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.  Plaintiff Green Team also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Green Team purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Kansas. Plaintiff Green Team has also displayed, sold, serviced, and advertised its vehicles in Kansas during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 42 for lack of

knowledge or information sufficient to form a belief as to their truth.

**43.**     Plaintiff McGrath is a Delaware corporation, with its principal place of business in Cedar Rapids, Iowa. Plaintiff McGrath is an authorized Buick, GMC, Chevrolet, Chrysler, Dodge, Jeep, Ram, Kia, and Cadillac dealer, who bought Buick-, GMC-, Chevrolet-, Chrysler-, Dodge-, Jeep-, Ram-, Kia-, and Cadillac-brand cars containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 43 for lack of knowledge or information sufficient to form a belief as to their truth.

**44.**     During the Class Period Plaintiff McGrath purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.  Plaintiff McGrath also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff McGrath purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Iowa. Plaintiff McGrath has also displayed, sold,

serviced, and advertised its vehicles in Iowa during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 44 for lack of knowledge or information sufficient to form a belief as to their truth.

45.   Plaintiff Table Rock is a Nebraska corporation, with its principal place of business in Bellevue, Nebraska. Plaintiff Table Rock is an authorized Hyundai dealer, who bought Hyundai-brand cars containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 45 for lack of knowledge or information sufficient to form a belief as to their truth.

46.   During the Class Period Plaintiff Table Rock purchased vehicles containing Occupant Safety Restraint Systems manufactured one or more Defendants or their coconspirators.  Plaintiff Table Rock also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Table Rock purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Nebraska. Plaintiff Table Rock has also

displayed, sold, serviced, and advertised its vehicles in Nebraska during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 46 for lack of knowledge or information sufficient to form a belief as to their truth.

47.    Plaintiff Archer-Perdue is a Nebraska corporation, with its principal place of business in Omaha, Nebraska. Plaintiff Archer-Perdue is an authorized Suzuki dealer, who, during the Class Period, has bought Suzuki-brand cars containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators.

**ANSWER:**   Takata denies the allegations in Paragraph 47 for lack of knowledge or information sufficient to form a belief as to their truth.

48.    During the Class Period Plaintiff Archer-Perdue purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.   Plaintiff Archer-Perdue also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Archer-Perdue purchased and received both the afore-mentioned vehicles

32

and Occupant Safety Restraint Systems in Nebraska. Plaintiff Archer-Perdue has also displayed, sold, serviced, and advertised its vehicles in Nebraska during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 48 for lack of knowledge or information sufficient to form a belief as to their truth.

49.   Plaintiff Lee's Summit is a Missouri corporation, with its principal place of business in Lee's Summit, Missouri. Plaintiff Lee's Summit is an authorized Chrysler, Dodge, Jeep, Nissan, and Ram dealer, who bought Chrysler-, Dodge-, Jeep-, Nissan-, and Ram-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 49 for lack of knowledge or information sufficient to form a belief as to their truth.

50.   During the Class Period Plaintiff Lee's Summit purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.   Plaintiff Lee's Summit also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or

their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Lee's Summit purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Missouri. Plaintiff Lee's Summit has also displayed, sold, serviced and advertised its vehicles in Missouri during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 50 for lack of knowledge or information sufficient to form a belief as to their truth.

51.   Plaintiff Bonneville is a New Hampshire corporation, with its principal place of business in Manchester, New Hampshire. Plaintiff Bonneville is an authorized Dodge, Chrysler, Jeep, and Ram dealer, who bought Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 51 for lack of knowledge or information sufficient to form a belief as to their truth.

52.   During the Class Period Plaintiff Bonneville purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more

Defendants or their coconspirators.  Plaintiff Bonneville also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Bonneville purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in New Hampshire. Plaintiff Bonneville has also displayed, sold, serviced, and advertised its vehicles in New Hampshire during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 52 for lack of knowledge or information sufficient to form a belief as to their truth.


**53.**   Plaintiff Holzhauer is a Delaware corporation, with its principal place of business in Nashville, Illinois. Plaintiff Holzhauer is an authorized Dodge, Chrysler, and Jeep dealer, who bought Dodge-, Chrysler-, and Jeep-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 53 for lack of knowledge or information sufficient to form a belief as to their truth.

**54.**     During the Class Period Plaintiff Holzhauer purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.  Plaintiff Holzhauer also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Holzhauer purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Illinois. Plaintiff Holzhauer has also displayed, sold, serviced, and advertised its vehicles in Illinois during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 54 for lack of knowledge or information sufficient to form a belief as to their truth.


**55.**     Plaintiff Pitre is a New Mexico corporation, with its principal place of business in Albuquerque, New Mexico. Plaintiff Pitre is an authorized Buick and GMC dealer, who bought Buick- and GMC-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 55 for lack of knowledge or information sufficient to form a belief as to their truth.

56.     During the Class Period Plaintiff Pitre purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators.   Plaintiff Pitre also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Pitre purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in New Mexico. Plaintiff Pitre has also displayed, sold, serviced, and advertised its vehicles in New Mexico during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 56 for lack of knowledge or information sufficient to form a belief as to their truth.


57.     Plaintiff Patsy Lou is a Michigan corporation, with its principal place of business in Flint, Michigan. Plaintiff Patsy Lou is an authorized Chevrolet dealer, who bought Chevrolet-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 57 for lack of knowledge or information sufficient to form a belief as to their truth.

58.    During the Class Period Plaintiff Patsy Lou purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.  Plaintiff Patsy Lou also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Patsy Lou purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Michigan. Plaintiff Patsy Lou has also displayed, sold, serviced, and advertised its vehicles in Michigan during the Class Period.

**ANSWER:**    Takata denies the allegations in Paragraph 58 for lack of knowledge or information sufficient to form a belief as to their truth.


59.    Plaintiff John Greene is a North Carolina corporation, with its principal place of business in Morganton, North Carolina. Plaintiff John Greene is an authorized Chrysler, Dodge, Jeep, and Ram dealer, who bought Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:**    Takata denies the allegations in Paragraph 59 for lack of knowledge or information sufficient to form a belief as to their truth.

60.     During the Class Period Plaintiff John Greene purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff John Greene also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff John Greene purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in North Carolina. Plaintiff John Greene has also displayed, sold, serviced, and advertised its vehicles in North Carolina during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 60 for lack of knowledge or information sufficient to form a belief as to their truth.


61.     Plaintiff Planet Nissan is an Arizona corporation, with its principal place of business in Flagstaff, Arizona. Plaintiff Planet Nissan is an authorized Nissan and Subaru dealer, who bought Nissan- and Subaru-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators during the Class Period.

39

**ANSWER:** Takata denies the allegations in Paragraph 61 for lack of knowledge or information sufficient to form a belief as to their truth.

62. During the Class Period Plaintiff Planet Nissan purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators. Plaintiff Planet Nissan also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Planet Nissan purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Arizona. Plaintiff Planet Nissan has also displayed, sold, serviced, and advertised its vehicles in Arizona during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 62 for lack of knowledge or information sufficient to form a belief as to their truth.

63. Plaintiff Champion is a Nevada corporation, with its principal place of business in Reno, Nevada. Plaintiff Champion is an authorized Chevrolet dealer, who bought Chevrolet-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the

40

Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 63 for lack of knowledge or information sufficient to form a belief as to their truth.

64.   During the Class Period Plaintiff Champion purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.   Plaintiff Champion also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Champion purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Nevada. Plaintiff Champion has also displayed, sold, serviced, and advertised its vehicles in Nevada during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 64 for lack of knowledge or information sufficient to form a belief as to their truth.

65.   Plaintiff Commonwealth Motors is a Delaware corporation, with its principal place of business in Lawrence, Massachusetts. Plaintiff Commonwealth Motors is an authorized Chevrolet, Honda, and Kia dealer, who bought Chevrolet-, Honda-, and Kia-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as

Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 65 for lack of knowledge or information sufficient to form a belief as to their truth.

66.   During the Class Period Plaintiff Commonwealth Motors purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Commonwealth Motors also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Commonwealth Motors purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Massachusetts. Plaintiff Commonwealth Motors has also displayed, sold, serviced, and advertised its vehicles in Massachusetts during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 66 for lack of knowledge or information sufficient to form a belief as to their truth.

67.   Plaintiff Commonwealth Volkswagen is a Massachusetts corporation with its principal place of business in Lawrence, Massachusetts. Plaintiff Commonwealth Volkswagen is an authorized Volkswagen dealer, who bought

Volkswagen-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 67 for lack of knowledge or information sufficient to form a belief as to their truth.

**68.** During the Class Period Plaintiff Commonwealth Volkswagen purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Commonwealth Volkswagen also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Commonwealth Volkswagen purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Massachusetts. Plaintiff Commonwealth Volkswagen has also displayed, sold, serviced and advertised its vehicles in Massachusetts during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 68 for lack of knowledge or information sufficient to form a belief as to their truth.

**69.** Plaintiff Commonwealth Nissan is a Massachusetts corporation with

its principal place of business in the Lawrence, Massachusetts. Plaintiff Commonwealth Nissan is an authorized Nissan dealer, who bought Nissan-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 69 for lack of knowledge or information sufficient to form a belief as to their truth.

70.    During the Class Period Plaintiff Commonwealth Nissan purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Commonwealth Nissan also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Commonwealth Nissan purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Massachusetts. Plaintiff Commonwealth Nissan has also displayed, sold, serviced, and advertised its vehicles in Massachusetts during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 70 for lack of knowledge or information sufficient to form a belief as to their truth.

**71.**     Plaintiff Ramey is a West Virginia company with its principal place of business in Princeton, West Virginia. Plaintiff Ramey is an authorized Toyota, Chrysler, Dodge, Jeep, and Ram dealer, who bought Toyota-, Chrysler-, Dodge-, Jeep-, and Ram-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 71 for lack of knowledge or information sufficient to form a belief as to their truth.


**72.**     During the Class Period Plaintiff Ramey purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators.   Plaintiff Ramey also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Ramey purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in West Virginia. Plaintiff Ramey has also displayed, sold, serviced, and advertised its vehicles in West Virginia during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 72 for lack of

knowledge or information sufficient to form a belief as to their truth.

**73.** Plaintiff Thornhill is a West Virginia corporation, with its principal place of business in Chapmanville, West Virginia. Plaintiff Thornhill is an authorized Chevrolet, Buick, and GMC dealer, who bought Chevrolet-, Buick-, and GMC-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 73 for lack of knowledge or information sufficient to form a belief as to their truth.

**74.** During the Class Period Plaintiff Thornhill purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.   Plaintiff Thornhill also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Thornhill purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in West Virginia. Plaintiff Thornhill has also displayed, sold, serviced, and advertised its vehicles in West Virginia during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 74 for lack of knowledge or information sufficient to form a belief as to their truth.

75. Plaintiff Lakeland is a Wisconsin corporation with its principal place of business in Sheboygan, Wisconsin. Plaintiff Lakeland is an authorized Toyota, Honda, Mazda, and Subaru dealer who bought Toyota- Honda-, Mazda-, and Subaru-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 75 for lack of knowledge or information sufficient to form a belief as to their truth.

76. During the Class Period Plaintiff Lakeland purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators. Plaintiff Lakeland also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Lakeland purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Wisconsin. Plaintiff Lakeland has also displayed, sold,

47

serviced, and advertised its vehicles in Wisconsin during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 76 for lack of knowledge or information sufficient to form a belief as to their truth.

77.     Plaintiff Salt Lake Valley is a Utah company, with its principal place of business in Salt Lake City, Utah. Plaintiff Salt Lake Valley is an authorized Buick and GMC dealer, who bought Buick- and GMC-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 77 for lack of knowledge or information sufficient to form a belief as to their truth.

78.     During the Class Period Plaintiff Salt Lake Valley purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.  Plaintiff Salt Lake Valley also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Salt Lake Valley purchased and received both the afore-mentioned

vehicles and Occupant Safety Restraint Systems in Utah. Plaintiff Salt Lake Valley has also displayed, sold, serviced, and advertised its vehicles in Utah during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 78 for lack of knowledge or information sufficient to form a belief as to their truth.

**79.** Plaintiff Capitol Chevrolet is an Oregon corporation, with its principal place of business in Salem, Oregon. Plaintiff Capitol Chevrolet is an authorized Chevrolet, Cadillac, and Subaru dealer, who bought Chevrolet-, Cadillac-, and Subaru-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 79 for lack of knowledge or information sufficient to form a belief as to their truth.

**80.** During the Class Period Plaintiff Capitol Chevrolet purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators. Plaintiff Capitol Chevrolet also purchased Occupant Safety Restraint Systems, manufactured by one or more

49

Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Capitol Chevrolet purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Oregon. Plaintiff Capitol Chevrolet has also displayed, sold, serviced, and advertised its vehicles in Oregon during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 80 for lack of knowledge or information sufficient to form a belief as to their truth.

81.    Plaintiff Capitol Toyota is an Oregon corporation with its principal place of business in Salem, Oregon. Plaintiff Capitol Toyota is an authorized Toyota dealer, who bought Toyota-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 81 for lack of knowledge or information sufficient to form a belief as to their truth.

82.    During the Class Period Plaintiff Capitol Toyota purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.   Plaintiff Capitol Toyota also purchased

Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Capitol Toyota purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Oregon. Plaintiff Capitol Toyota has also displayed, sold, serviced, and advertised its vehicles in Oregon during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 82 for lack of knowledge or information sufficient to form a belief as to their truth.

83.    Plaintiff Beck is a South Dakota corporation, with its principal place of business in Pierre, South Dakota. Plaintiff Beck is an authorized Chevrolet and Cadillac dealer, who bought Chevrolet- and Cadillac-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 83 for lack of knowledge or information sufficient to form a belief as to their truth.

84.    During the Class Period Plaintiff Beck purchased vehicles containing

Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Beck also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Beck purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in South Dakota. Plaintiff Beck has also displayed, sold, serviced, and advertised its vehicles in South Dakota during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 84 for lack of knowledge or information sufficient to form a belief as to their truth.

**85.** Plaintiff Wade is a Utah corporation, with its principal place of business in St. George, Utah. Plaintiff Wade is an authorized Toyota dealer, who bought Toyota-brand cars containing Occupant Safety Restraint Systems manufactured by the Defendants or their coconspirators, as well as Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 85 for lack of knowledge or information sufficient to form a belief as to their truth.

**86.** During the Class Period Plaintiff Wade purchased vehicles containing

52

Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Wade also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period.  Plaintiff Wade purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Utah. Plaintiff Wade has also displayed, sold, serviced, and advertised its vehicles in Utah during the Class Period.

**ANSWER:**  Takata denies the allegations in Paragraph 86 for lack of knowledge or information sufficient to form a belief as to their truth.

**87.**    Plaintiff Johnson is a Mississippi limited liability company, with its principal place of business in Meridian, Mississippi. Plaintiff Johnson is an authorized Toyota dealer, who bought Toyota-brand cars containing Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators during the Class Period.

**ANSWER:**  Takata denies the allegations in Paragraph 87 for lack of knowledge or information sufficient to form a belief as to their truth.

**88.**    During the Class Period Plaintiff Johnson purchased vehicles

containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators. Plaintiff Johnson also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Johnson purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Mississippi. Plaintiff Johnson has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 88 for lack of knowledge or information sufficient to form a belief as to their truth.

89. Plaintiff Hartley is a New York corporation, with its principal place of business in Jamestown, New York. During the Class Period, Plaintiff Hartley has been an authorized Honda, Buick, Pontiac, and GM dealer, who bought Honda-, Buick-, Pontiac-, and GM-brand cars containing Occupant Safety Restraint Systems manufactured by the Defendants or their coconspirators, as well as Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators.

**ANSWER:** Takata denies the allegations in Paragraph 89 for lack of knowledge or information sufficient to form a belief as to their truth.

**90.** During the Class Period Plaintiff Hartley purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Hartley also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Hartley purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in New York. Plaintiff Hartley has also displayed, sold, serviced, and advertised its vehicles in New York during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 90 for lack of knowledge or information sufficient to form a belief as to their truth.

**91.** Plaintiff Lee Honda is a Maine corporation, with its principal place of business in Auburn, Maine. Plaintiff Lee Honda is an authorized Honda dealer, who bought Honda-brand cars containing Occupant Safety Restraint Systems manufactured by the Defendants or their coconspirators, as well as Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 91 for lack of knowledge or information sufficient to form a belief as to their truth.

92.     During the Class Period Plaintiff Lee Honda purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.  Plaintiff Lee Honda also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Lee Honda purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Maine. Plaintiff Lee Honda has also displayed, sold, serviced, and advertised its vehicles in Maine during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 92 for lack of knowledge or information sufficient to form a belief as to their truth.


93.     Plaintiff Topsham is a Maine corporation, with its principal place of business in Topsham, Maine. Plaintiff Topsham is an authorized Toyota dealer, who bought Toyota-brand cars containing Occupant Safety Restraint Systems manufactured by the Defendants or their coconspirators, as well as Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 93 for lack of knowledge or information sufficient to form a belief as to their truth.

**94.**    During the Class Period Plaintiff Topsham purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.  Plaintiff Topsham also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Topsham purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Maine. Plaintiff Topsham has also displayed, sold, serviced, and advertised its vehicles in Maine during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 94 for lack of knowledge or information sufficient to form a belief as to their truth.

**95.**    Plaintiff Hazelwood is an Arkansas corporation, with its principal place of business in Hazelwood, Missouri. Plaintiff Hazelwood is an authorized Toyota dealer, who bought Toyota-brand cars containing Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 95 for lack of knowledge or information sufficient to form a belief as to their truth.

**96.** During the Class Period Plaintiff Hazelwood purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.  Plaintiff Hazelwood also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Hazelwood purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Missouri. Plaintiff Hazelwood has also displayed, sold, serviced, and advertised its vehicles in Missouri during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 96 for lack of knowledge or information sufficient to form a belief as to their truth.

**97.** Plaintiff Cannon Nissan is a Mississippi limited liability company with its principal place of business in Jackson, Mississippi. Plaintiff Cannon is an authorized Nissan dealer, who bought Nissan-brand cars containing Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 97 for lack of knowledge or information sufficient to form a belief as to their truth.

**98.** During the Class Period Plaintiff Cannon Nissan purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators. Plaintiff Cannon Nissan also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Cannon purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Mississippi. Plaintiff Cannon has also displayed, sold, serviced, and advertised its vehicles in Mississippi during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 98 for lack of knowledge or information sufficient to form a belief as to their truth.

**99.** Plaintiff Hudson Nissan is a South Carolina limited liability company with its principal place of business in North Charleston, South Carolina. Plaintiff Hudson Nissan is an authorized Nissan dealer, who bought Nissan-brand cars containing Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by the Defendants or their co-conspirators during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 99 for lack of

59

knowledge or information sufficient to form a belief as to their truth.

**100.** During the Class Period Plaintiff Hudson Nissan purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.  Plaintiff Hudson Nissan also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Hudson Nissan purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in South Carolina. Plaintiff Hudson Nissan has also displayed, sold, serviced, and advertised its vehicles in South Carolina during the Class Period.

**ANSWER:**  Takata denies the allegations in Paragraph 100 for lack of knowledge or information sufficient to form a belief as to their truth.

**101.** Plaintiff Shearer is a Vermont corporation with its principal place of business in Rutland, Vermont. Plaintiff Shearer is an authorized Honda dealer, who bought Honda-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 101 for lack of knowledge or information sufficient to form a belief as to their truth.

102.     During the Class Period Plaintiff Shearer purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators.  Plaintiff Shearer also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Shearer purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Vermont. Plaintiff Shearer has also displayed, sold, serviced and advertised its vehicles in Vermont during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 102 for lack of knowledge or information sufficient to form a belief as to their truth.

103.     Plaintiff Apex is a Vermont corporation with its principal place of business in South Burlington, Vermont. Plaintiff Apex is an authorized Acura dealer, who bought Acura-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 103 for lack of knowledge or information sufficient to form a belief as to their truth.

104. During the Class Period Plaintiff Apex purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators. Plaintiff Apex also purchased Occupant Safety Restraint Systems, manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Apex purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Vermont. Plaintiff Apex has also displayed, sold, serviced and advertised its vehicles in Vermont during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 104 for lack of knowledge or information sufficient to form a belief as to their truth.

105. Plaintiff Rainbow is a Hawaii corporation, with its principal place of business in Honolulu, Hawaii. Plaintiff Rainbow is an authorized Chevrolet dealer who bought Chevrolet-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 105 for lack of knowledge or information sufficient to form a belief as to their truth.

106. During the Class Period Plaintiff Rainbow purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators. Plaintiff Rainbow also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, for its repair and service business, during the Class Period. Plaintiff Rainbow purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Hawaii. Plaintiff Rainbow has also displayed, sold, serviced and advertised its vehicles in Hawaii during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 106 for lack of knowledge or information sufficient to form a belief as to their truth.

107. Plaintiff Windward is a Hawaii corporation, with its principal place of business in Kaneohe, Hawaii. Plaintiff Windward is an authorized Honda dealer, who bought Honda-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the

63

Defendants or their co-conspirators during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 107 for lack of knowledge or information sufficient to form a belief as to their truth.

108.    During the Class Period Plaintiff Windward purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.  Plaintiff Rainbow also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, for its repair and service business, during the class period. Plaintiff Windward purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Hawaii. Plaintiff Windward has also displayed, sold, serviced and advertised its vehicles in Hawaii during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 108 for lack of knowledge or information sufficient to form a belief as to their truth.

109.    Plaintiff Gastonia is a North Carolina limited liability company with its principal place of business in Gastonia, North Carolina. Plaintiff Gastonia is an authorized Nissan dealer, who bought Nissan-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems

manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 109 for lack of knowledge or information sufficient to form a belief as to their truth.

**110.**   During the Class Period, Plaintiff Gastonia purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators.   Plaintiff Gastonia also purchased Occupant Safety Restraint Systems, manufactured by one or more of the Defendants or their co-conspirators, for its repair and service business, during the class period. Plaintiff Gastonia purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in North Carolina. Plaintiff Gastonia has also displayed, sold, serviced, and advertised its vehicles in North Carolina during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 110 for lack of knowledge or information sufficient to form a belief as to their truth.

**111.**   Plaintiff Hodges is a Michigan corporation with its principal place of business in Ferndale, Michigan. Plaintiff Hodges is an authorized Subaru dealer, who bought Subaru-brand vehicles containing Occupant Safety Restraint Systems

manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 111 for lack of knowledge or information sufficient to form a belief as to their truth.

**112.**   During the Class Period, Plaintiff Hodges purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.  Plaintiff Hodges also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the class period. Plaintiff Hodges purchased and received both the afore-mentioned vehicles and Occupant Safety Restraint Systems in Michigan. Plaintiff Hodges has also displayed, sold, serviced, and advertised its vehicles in Michigan during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 112 for lack of knowledge or information sufficient to form a belief as to their truth.

**113.**   Plaintiff Don Weir is a Nevada corporation with its principal place of business in Reno, Nevada. Plaintiff Weir is an authorized Chrysler, Dodge and Jeep dealer, who bought Chrysler-, Dodge- and Jeep-brand vehicles containing

Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 113 for lack of knowledge or information sufficient to form a belief as to their truth.

**114.** During the Class Period, Plaintiff Don Weir purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators. Plaintiff Don Weir also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the class period. Plaintiff Don Weir purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Nevada. Plaintiff Weir has also displayed, sold, serviced, and advertised its vehicles in Nevada during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 114 for lack of knowledge or information sufficient to form a belief as to their truth.

**115.** Plaintiff John Lee is a Florida corporation with its principal place of business in Panama City, Florida. Plaintiff John Lee is an authorized Nissan

dealer, who bought Nissan-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as well as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 115 for lack of knowledge or information sufficient to form a belief as to their truth.

116. During the Class Period, Plaintiff John Lee purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators. Plaintiff John Lee also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the class period. Plaintiff John Lee purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in Florida. Plaintiff John Lee has also displayed, sold, serviced, and advertised its vehicles in Florida during the Class Period.

**ANSWER:** Takata denies the allegations in Paragraph 116 for lack of knowledge or information sufficient to form a belief as to their truth.

117. Plaintiff Empire Nissan is a California limited liability company with its principal place of business in Santa Rosa, California. Plaintiff Empire

Nissan is an authorized Nissan dealer, who bought Nissan-brand vehicles containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators, as wells as Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their coconspirators during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 117 for lack of knowledge or information sufficient to form a belief as to their truth.

**118.**    During the Class Period, Plaintiff Empire Nissan purchased vehicles containing Occupant Safety Restraint Systems manufactured by one or more Defendants or their coconspirators.  Plaintiff Empire Nissan also purchased Occupant Safety Restraint Systems manufactured by one or more Defendants or their co-conspirators, for its repair and service business, during the class period. Plaintiff Empire Nissan purchased and received both the aforementioned vehicles and Occupant Safety Restraint Systems in California. Plaintiff Empire Nissan has also displayed, sold, serviced, and advertised its vehicles in California during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 118 for lack of knowledge or information sufficient to form a belief as to their truth.

119.     Defendant TRW Automotive Holdings Corp. ("TRW U.S.") is a Delaware corporation with its principal place of business in Livonia, Michigan. TRW U.S., directly or through its wholly-owned and/or controlled subsidiaries, manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members.

**ANSWER:**   Takata denies the allegations in Paragraph 119 for lack of knowledge or information sufficient to form a belief as to their truth.

120.     Defendant TRW Deutschland Holding Gmbh ("TRW Germany") is a German corporation with its principal place of business in Koblenz, Germany. Defendant TRW Germany is a subsidiary of and wholly-owned and/or controlled by Defendant TRW U.S. Defendant TRW Germany, directly and/or through its subsidiaries which it wholly owned and/or controlled, manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members. At all times during the Class Period, its activities were under the control and direction of TRW U.S., which controlled its policies, sales, and finances.

**ANSWER:** Takata denies the allegations in Paragraph 120 for lack of knowledge or information sufficient to form a belief as to their truth.

121.    TRW Germany and TRW U.S. are collectively referred to as "TRW."

**ANSWER:** Takata admits that Plaintiffs purport to define the term "TRW" as stated in Paragraph 121 and denies the allegations in Paragraph 121 in all other respects.

122.    Defendant Takata Corp. is a Japanese corporation with its principal place of business in Tokyo, Japan. Defendant Takata Corp. directly and/or through its subsidiaries, which it wholly owned and/or controlled, manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members.

**ANSWER:** Takata admits that Takata Corporation is a Japanese corporation with its principal place of business located in Tokyo, Japan and denies the allegations in Paragraph 122 in all other respects.

123.    Defendant TK Holdings, Inc. ("TK"), is a Delaware corporation

71

with its principal place of business in Auburn Hills, Michigan. It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Takata. Defendant TK manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales, and finances.

**ANSWER:**  Takata admits that TK Holdings Inc. is a Delaware corporation with its principal place of business located in Auburn Hills, Michigan, that it is a subsidiary of its ultimate parent Takata Corporation, and that it sold seat belts, airbags, steering wheels, and other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" that were purchased in the United States during the alleged Class Period.  Takata denies the allegations in Paragraph 123 in all other respects.

**124.**    Executives who have worked at Takata Corp., in Japan, have also worked at TK, in the U.S. Yoshiyasu Kikuchi, an executive officer at Takata Corp. is a director at TK. Yoichiro Nomura, the Chief Financial Officer at Takata Corp. is a director at TK. Juichiro Takada, the former Chairman and CEO of Takata

Corp. was also a director at TK. Shunkichi Shimizu, a former executive officer at Takata Corp., in charge of "America Operations" was also the president and secretary of TK Holdings. Takata Corporation also refers to TK Holdings as its American headquarters, stating "Takata's regional headquarters for the Americas is in Auburn Hills, Michigan."

**ANSWER:** Takata admits that some executives who have worked at Takata Corporation, in Japan, have also held positions at TK Holdings, Inc.  Takata admits that Yoshiyasu Kikuchi is an Executive Director and Executive Officer at Takata Corporation and a Director at TK Holdings Inc. and denies the allegations in the second sentence of Paragraph 124 in all other respects.  Takata admits that Yoichiro Nomura is the Chief Financial Officer at Takata Corporation and is a Director at TK Holdings Inc.  Takata admits that Juichiro Takada is a former Chairman and CEO of Takata Corporation and was also a Director at TK Holdings Inc.  Takata admits that Shunkichi Shimizu is a former executive officer at Takata Corporation in charge of America Operations and was also a President and Secretary of TK Holdings Inc.  Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 124 in all other respects.

125.    Takata has targeted the U.S. and U.S. customers in myriad ways.

Takata's annual report states that "Takata and GM jointly developed a front center airbag, which will be installed in GM's 2013 models." http://www.takata.com/ir/pdf/material05/120831ar_en.pdf at 36.

Takata's 2011 report states that "auto industry in North America is expected to continue its recovery, and we will tap growing demand for high value added safety products such as curtain airbags and side airbags . . . " http://www.takata.com/ir/pdf/material05/110829ar_en.pdf at 11.   Takata's 2011 report reviewed new U.S. regulations regarding automotive restraints, which it deemed "driver[s] of growth," for its business. *Id.* at 20. Takata's report also announces that "[i]n April 2010, Takata Corporation was chosen by Ford Motor Company to be one of 13 suppliers newly added to Ford's Aligned Business Framework (ABF) for closer collaboration and long-term partnership." It also states that "[t]he close proximity of Ford and Takata's North American headquarters in southeast Michigan has enabled synergies that in recent years have strengthened the partnership between the two companies." *Id.* at 22. Takata's report also mentions specific initiatives aimed at the U.S. market including "buckle-up campaigns, child restraint training sessions at maternity classes, anti drunk driving campaigns, and skill improvement courses such as those we run in the United States."

      **ANSWER:**  Takata refers to the referenced documents for their content and

denies any characterization of them, and denies the allegations in Paragraph 125 in all other respects.

126.     Defendants Takata Corp. and TK are collectively referred to as "Takata."

**ANSWER:**   Takata admits that Plaintiffs purport to define the term "Takata" as stated in Paragraph 126 and denies the allegations in Paragraph 126 in all other respects.

127.     Defendant Autoliv, Inc. ("Autoliv") is a Delaware corporation with its principal place of business in Stockholm, Sweden. Defendant Autoliv, Inc.— directly and/or through its subsidiaries, which it wholly owned and/or controlled— manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members.

**ANSWER:**   Takata denies the allegations in Paragraph 127 for lack of knowledge or information sufficient to form a belief as to their truth.

128.     Defendant Autoliv ASP, Inc. is an Indiana corporation with its

principal place of business in Ogden, Utah. It is a subsidiary of and wholly owned and/or controlled by its Swedish parent, Autoliv, Inc. Defendant Autoliv ASP, Inc. manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Swedish parent, which controlled its policies, sales, and finances.

**ANSWER:** Takata denies the allegations in Paragraph 128 for lack of knowledge or information sufficient to form a belief as to their truth.


**129.** Defendant Autoliv B.V. & Co. KG is a German corporation with its principal place of business in Elmshorn, Germany. It is a subsidiary of and wholly owned and/or controlled by its Swedish parent, Autoliv, Inc. Defendant Autoliv B.V. & Co. KG manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Swedish parent, which controlled its policies, sales, and finances.

**ANSWER:** Takata denies the allegations in Paragraph 129 for lack of knowledge or information sufficient to form a belief as to their truth.

130.     Autoliv Japan Ltd. is a Japanese corporation with its principal place of business in Yokohama, Japan. It is a wholly owned and/or controlled subsidiary of Autoliv, Inc. Autoliv Japan Ltd. manufactured, marketed, and/or sold Automobile Occupant Safety Systems that were purchased throughout the United States, including in this district, the Class Period, including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Swedish parent, which controlled its policies, sales, and finances.

**ANSWER:** Takata denies the allegations in Paragraph 130 for lack of knowledge or information sufficient to form a belief as to their truth.

131.     Defendants Autoliv, Inc., Autoliv ASP, Inc., Autoliv B.V. & Co. KG and Autoliv Japan Ltd. are collectively referred to as "Autoliv."

**ANSWER:** Takata admits that Plaintiffs purport to define the term "Autoliv" as stated in Paragraph 131 and denies the allegations in Paragraph 131 in all other respects.

132.     Defendant Tokai Rika Co., Ltd. is a Japanese corporation with its principal place of business in Aichi, Japan. Defendant Tokai Rika Co., Ltd.— directly and/or through its subsidiaries, which it wholly owned and/or controlled— manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members.

**ANSWER:**   Takata denies the allegations in Paragraph 132 for lack of knowledge or information sufficient to form a belief as to their truth.


133.     Defendant TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. is a Michigan corporation with its principal place of business in Plymouth, Michigan. It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Tokai Rika Co., Ltd. Defendant TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled

its policies, sales, and finances.

**ANSWER:**   Takata denies the allegations in Paragraph 133 for lack of knowledge or information sufficient to form a belief as to their truth.

**134.**     Executives who have worked at Tokai Rika Co. Ltd. have also worked at TRAM, Inc. For instance, Masayuki Morita, the President and Chief Operating Officer at TRAM, Inc. previously served as a Managing Director and Director at Tokai Rika Co., Ltd. Yoshihei Iida, the former Chairman of Tokai Rika Co. Ltd., is a Board member at TRAM, Inc. Kiyoshi Kinoshita, the former Chairman of the Board and Representative Director, at Tokai Rika Co. Ltd., was also previously the President of TRAM, Inc.

**ANSWER:**   Takata denies the allegations in Paragraph 134 for lack of knowledge or information sufficient to form a belief as to their truth.

**135.**     The same year that TRAM was established in the U.S., Tokai Rika received its "QS9000 certification," a quality standard the possession of which was required by the three major U.S. manufacturers: Ford, GM and Chrysler.

**ANSWER:**   Takata denies the allegations in Paragraph 135 for lack of knowledge or information sufficient to form a belief as to their truth.

136.     Defendants Tokai Rika Co., Ltd. and TRAM, Inc. are collectively referred to as "Tokai Rika."

**ANSWER:**  Takata admits that Plaintiffs purport to define the term "Tokai Rika" as stated in Paragraph 136 and denies the allegations in Paragraph 136 in all other respects.

137.     Toyoda Gosei Co., Ltd. ("Toyoda Gosei") is a Japanese corporation with its principal place of business in Aichi, Japan. Toyoda Gosei— directly and/or through its subsidiaries, which it wholly owned and/or controlled— manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members.

**ANSWER:**  Takata denies the allegations in Paragraph 137 for lack of knowledge or information sufficient to form a belief as to their truth.

138.     Toyoda Gosei North America Corp. is a Michigan corporation with its principal place of business in Troy, Michigan. It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Toyoda Gosei. Toyoda Gosei North America Corp. manufactured, marketed and/or sold Occupant Safety

Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales, and finances.

**ANSWER:** Takata denies the allegations in Paragraph 138 for lack of knowledge or information sufficient to form a belief as to their truth.

**139.** TG Missouri Corp. is a Missouri corporation with its principal place of business in Perryville, Missouri. It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Toyoda Gosei. TG Missouri Corp. manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales, and finances.

**ANSWER:** Takata denies the allegations in Paragraph 139 for lack of knowledge or information sufficient to form a belief as to their truth.

**140.**     Each Defendant acted as the principal of or agent for the other Defendant with respect to the acts, violations, and common course of conduct alleged.

**ANSWER:**  The allegations in Paragraph 140 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 140 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 140 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**141.**     Various persons, partnerships, sole proprietors, firms, corporations, and individuals not named as Defendants in this lawsuit, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this complaints, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anti-competitive conduct.

**ANSWER:**  The allegations in Paragraph 141 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the

conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 141 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 141 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

142.    Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's or limited liability entity's business or affairs.

ANSWER:  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 142 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 142 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

143.    Occupant Safety Restraint Systems are generally comprised of the parts in an automotive vehicle that protect drivers and passengers from bodily

harm.  Occupant Safety Restraint Systems include seat belts, air bags, steering wheels (or steering systems), and safety electronic systems.

**ANSWER:**  Takata admits that seat belts, airbags, steering wheels, and other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" are automotive parts with specific functions, some of which relate to occupant safety, and denies the allegations in Paragraph 143 in all other respects.

**144.**     Occupant Safety Restraint Systems are installed by automobile original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process. They are also installed in cars to replace worn out, defective, or damaged Occupant Safety Restraint Systems.

**ANSWER:**  Takata admits that seat belts, air bags, steering wheels, and other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" are installed by automobile original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process and may be later replaced, and denies the allegations in Paragraph 144 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**145.**     When purchasing Occupant Safety Restraint Systems, OEMs issue

Requests for Quotation ("RFQs") to automotive parts suppliers—Occupant Safety Restraint Systems are not commodity items. Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs and the OEMs usually award the business to the selected automotive parts supplier for four to six years. Typically, the bidding process begins approximately three years prior to the start of production of a new model.

**ANSWER:**   Takata admits that, from time to time, some automobile manufacturers use requests for quotations to procure certain products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" for certain US-manufactured motor vehicles. Takata admits that OEMs often issue RFQs for some products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" several years in advance of vehicle production.  Takata denies the allegations in Paragraph 145 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

146.   Suppliers, including Defendants, supply OEMs with both Occupant Safety Restraint Systems to be installed in vehicles and Occupant Safety Restraint Systems to be used for replacement purposes.

**ANSWER:**   Takata admits that Takata sometimes supplies some OEMs with seat belts, air bags, steering wheels, and other products that may be

encompassed in Plaintiffs' term Occupant Safety Restraint Systems to be installed in certain new vehicles as part of the manufacturing process and for replacement purposes.  Takata denies the allegations in Paragraph 146 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**147.**    The Defendants and their co-conspirators supplied Occupant Safety Restraint Systems to OEMs for installation in vehicles manufactured and sold in the United States and elsewhere. The Defendants and their co-conspirators manufactured Occupant Safety Restraint Systems (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) abroad for export to the United States and installation in vehicles manufactured and sold in the United States, and (c) abroad for installation in vehicles manufactured abroad for export to and sale in the United States.

**ANSWER:**  Takata admits that Takata Corporation manufactured certain seat belts, airbags, steering wheels, and/or other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" abroad for installation in certain vehicles manufactured abroad for export to and sale in the United States. Takata admits that TK Holdings Inc. manufactured certain seat belts, airbags, steering wheels, and/or other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" for certain motor vehicles (a) in the United

States for installation in certain vehicles manufactured and sold in the United States, (b) abroad for export to the United States and installation in certain vehicles manufactured and sold in the United States, and (c) abroad for installation in certain vehicles manufactured abroad for export to and sale in the United States. Takata denies the remaining allegations in Paragraph 147 for lack of knowledge or information sufficient to form a belief as to their truth.

**148.**    TRW's main customers include: GM, Chrysler, Ford, Mercedes, Renault, Nissan, Fiat, Toyota, BMW, Honda, Hyundai and Volkswagen.

**ANSWER:**   Takata denies the allegations in Paragraph 148 for lack of knowledge or information sufficient to form a belief as to their truth.

**149.**    Takata's main customers include: Toyota, Honda, BMW, Mazda, Nissan, GM, Chrysler and Ford.

**ANSWER:**   Takata admits Toyota, Honda, BMW, Mazda, Nissan, GM, Chrysler and Ford are Takata customers and denies the allegations in Paragraph 149 in all other respects.

**150.**    Autoliv's main customers include: GM, Ford, Nissan, Renault, Hyundai, Kia, VW, Chrysler, Fiat, Honda, Toyota, BMW, Mercedes, Daimler and

Volvo.

**ANSWER:** Takata denies the allegations in Paragraph 150 for lack of knowledge or information sufficient to form a belief as to their truth.

151. Tokai Rika's main customers include: Toyota, Subaru, SAAB, Volvo, Nissan, Subaru, Isuzu, GM, Ford, Suzuki, Mazda, Isuzu, Mitsubishi and Chrysler.

**ANSWER:** Takata denies the allegations in Paragraph 151 for lack of knowledge or information sufficient to form a belief as to their truth.

152. Plaintiffs and members of the proposed Classes purchased Occupant Safety Restraint Systems indirectly from the Defendants and their co-conspirators. By way of example, automobile dealers indirectly purchase Occupant Safety Restraint Systems from the Defendants when they purchase new vehicles to sell or lease to consumers. Likewise, when repairing a damaged vehicle or when the vehicle's Occupant Safety Restraint Systems are defective, Plaintiffs and other automobile dealers indirectly purchase replacement Occupant Safety Restraint Systems from Defendants.

**ANSWER:** Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 152 regarding

purported class members.  Takata denies the allegations in Paragraph 152 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**153.**     Replacement Occupant Safety Restraint Systems sold by OEMs to dealerships are the same as the Occupant Safety Restraint Systems installed in vehicles and are made by the same manufacturer who made the Occupant Safety Restraint Systems originally installed—that is the purpose of an OEM part, made by the OEM supplier. Such replacement parts are not the same as aftermarket parts, which are made by different manufacturers than those who manufactured the original parts.  The prices of replacement Occupant Safety Restraint Systems were inflated by Defendants' collusion.

**ANSWER:**  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 153 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 153 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**154.**     According to Autoliv's 2011 Annual Report, the global market for Occupant Safety Restraint Systems in 2010 was $18.1 billion and the North

American market for Occupant Safety Restraint Systems was $4.2 billion.

**ANSWER:**  Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems."  Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 154 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**155.**    The global Occupant Safety Restraint Systems market is dominated and controlled by large manufacturers, the top three of which are Defendants who control almost 75% of the market. The Autoliv Defendants account for more than 33% of the global market for Occupant Safety Restraint Systems; as Autoliv states in its 2011 Annual Report, it is "the world's largest automotive safety supplier with sales to all the leading car manufacturers in the world." TRW accounts for approximately 20% of the global market for Occupant Safety Restraint Systems. And the Takata Defendants account for approximately 20% of the Occupant Safety Restraint Systems global market.

**ANSWER:**  Takata denies that there is a legally meaningful or cognizable "Occupant Safety Restraint Systems market."  Takata refers to the referenced document Paragraph 155 for its content and denies any characterization of it. Takata denies the allegations in Paragraph 155 for lack of knowledge or

information sufficient to form a belief as to their truth in all other respects.

**156.**    By virtue of their market shares, Defendants are the dominant manufacturers and suppliers of Occupant Safety Restraint Systems in the United States and the world.

**ANSWER:**  Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems."  Takata denies the allegations in Paragraph 156 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**157.**    Airbags are a type of Occupant Safety Restraint System. Airbags are occupant restraints designed to control the movement of an occupant inside a vehicle in the event of a collision. An Airbag consists of a light fabric air bag, an inflator, which, through use of pressurized gas (typically generated by pyrotechnic materials), rapidly inflates the Airbag upon deployment, and an initiator to initiate the deployment. It may also include, depending on the requirements of the vehicle manufacturer, an injection molded plastic decorative cover or other devices associated with the Airbag. According to the National Highway Traffic Safety Administration, a typical new Airbag retailed for approximately $1,000 from a car dealer in 2011.

**ANSWER:**   Takata admits air bags are encompassed in Plaintiffs' term "Occupant Safety Restraint Systems."   Takata admits that airbags are designed to soften the impact of collisions by keeping passengers from contacting the steering wheel, dashboard, front glass, and other parts of the automobile.   Takata admits that an airbag typically consists of fabric, an inflator, which rapidly inflates the airbag upon deployment, and an initiator to start the deployment.   Takata admits that certain airbags may also include an injection molded plastic cover or other devices associated with the airbag.   Takata refers to the referenced document for its content and denies any characterization of it.   Takata denies the allegations in Paragraph 157 in all other respects.

**158.**   In 2012, the total dollar-value of Airbags sold in the U.S. reached $6.7 billion.

**ANSWER:**   Takata denies the allegations in Paragraph 158 for lack of knowledge or information sufficient to form a belief as to their truth.

**159.**   According to Autoliv's website, it manufactures more than one-third of the Airbags sold in North America, and according to its 2011 10-K, Autoliv manufactures more than 40% of the side Airbags and almost 30% of the frontal Airbags sold in the world. TRW, Takata and Toyoda Gosei are also major

manufacturers of Airbags.

**ANSWER:** Takata admits it manufactures airbags. Takata refers to the referenced document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 159 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**160.** Seatbelts are another type of Occupant Safety Restraint System. Seatbelts are safety strap restraints designed to secure an occupant in position in a vehicle in the event of a collision. A Seatbelt includes belt webbing, a buckle, a retractor, and hardware for installation in a vehicle. It may also include, depending on the requirements of the vehicle manufacturer, a height adjuster, a pretensioner, or other devices associated with the Seatbelt. In 2012, the total dollar-value of Seatbelts sold in the U.S. reached over $900 million.

**ANSWER:** Takata admits seat belts are encompassed in Plaintiffs' term "Occupant Safety Restraint Systems." Takata admits that seat belts are designed to secure a person in a motor vehicle in order to mitigate the results of any accident. Takata admits that a seat belt typically includes belt webbing, a buckle, and a retractor. Takata admits that a seat belt may also include a height adjuster, pretensioner, or other devices associated with the seat belt. Takata denies the allegations in Paragraph 160 in all other respects.

**161.**     According to Autoliv's website, it manufactures almost one-third of the Seatbelts sold in North America, and according to its 2011 10-K, Autoliv manufactures 40% of the Seatbelts sold in the world. TRW and Takata are also major manufacturers of Seatbelts.

**ANSWER:**  Takata admits it manufactures seat belts. Takata refers to the referenced documents for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 161 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**162.**     Steering Wheels are another type of Occupant Safety Restraint System. Steering Wheels consist of a die-cast armature (frame) covered by molded polyurethane. Steering Wheels are then finished with leather, wood trim, or plastic, and may include various electronic features and controls, depending on the requirements of a vehicle manufacturer.

**ANSWER:**  Takata admits steering wheels are encompassed in Plaintiffs' term "Occupant Safety Restraint Systems."  Takata admits that some steering wheels may consist of a die-cast armature (frame) covered by molded polyurethane and finished with leather, wood trim, or plastic.  Takata admits that steering wheels may also include various electronic features and controls. Takata denies the

94

allegations in Paragraph 162 in all other respects.

**163.** In 2012, the dollar-value for Steering Wheels and related components sold in the U.S. reached $2.24 billion.

**ANSWER:** Takata denies the allegations in Paragraph 163 for lack of knowledge or information sufficient to form a belief as to their truth.

**164.** According to its website, Autoliv manufactures more than 15% of the Steering Wheels sold in North America, and in its 2011 10-K, Autoliv states that it manufactures almost 30% of the Steering Wheels sold in the world. TRW, Takata and Toyoda Gosei are also major manufacturers of Steering Wheels.

**ANSWER:** Takata admits it manufactures steering wheels. Takata refers to the referenced documents for their content and denies any characterization of them. Takata denies the allegations in Paragraph 164 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**165.** The structure and other characteristics of the Occupant Safety Restraint Systems market in the United States are conducive to a price-fixing agreement, and have made collusion particularly attractive in these markets. Specifically, the Occupant Safety Restraint Systems market: (1) has high barriers

to entry; (2) has inelasticity of demand; (3) is highly concentrated; and (4) is rife with opportunities to conspire.

**ANSWER:** Takata denies that there is a legally meaningful or cognizable "Occupant Safety Restraint Systems market," denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint, and denies the allegations in Paragraph 165 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 165 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**166.** A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supracompetitive pricing. Where, however, there are significant barriers to entry, new entrants are less likely. Thus, barriers to entry help facilitate the formation and maintenance of a cartel.

**ANSWER:** Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 166 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 166 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

167.    There are substantial barriers that preclude, reduce, or make more difficult entry into the Occupant Safety Restraint Systems market. A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long-standing customer relationships.

**ANSWER:**  Takata denies that there is a legally meaningful or cognizable "Occupant Safety Restraint Systems market."  Takata denies the allegations in Paragraph 167 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.


168.    In addition, an OEM cannot freely change its suppliers of Occupant Safety Restraint Systems because OEMs design the features of their vehicles, including the electronics, mechanics, thermal distribution, and other features, so that they may be integrated with a selected Occupant Safety Restraint System. Thus, it would be difficult for a new competitor to enter the market after a vehicle has been specifically designed to be integrated with a particular Occupant Safety Restraint System.

**ANSWER:**  Takata denies that there is a legally meaningful or cognizable

97

"market for Occupant Safety Restraint Systems." Takata denies the allegations in Paragraph 168 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**169.** Research and development costs are also significant for Occupant Safety Restraint Systems, creating an additional barrier to entry. Airbags are constantly researched for better deployment speeds, Seatbelts are constantly researched for better functionality and quality, and Steering Wheels are constantly researched for better precision and rotation.

**ANSWER:** Takata denies the allegations in Paragraph 169 for lack of knowledge or information sufficient to form a belief as to their truth.

**170.** Defendants also own several patents for Occupant Safety Restraint Systems. For example, TRW owns Airbag, Steering Wheel and Seatbelt patents. These patents place a significant and costly burden on potential new entrants, who must avoid infringing on the patents when entering the market with a new product.

**ANSWER:** Takata admits that it owns patents for products that may be encompassed in Plaintiffs' definition of Occupant Safety Restraint Systems. Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems." Takata denies the allegations in Paragraph

170 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

171.    "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

**ANSWER:**   Takata denies the allegations in Paragraph 171 for lack of knowledge or information sufficient to form a belief as to their truth.

172.    For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales, revenues, and profits, as customers purchased substitute products or declined to buy altogether. Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

**ANSWER:**   Takata denies the allegations in Paragraph 172 for lack of knowledge or information sufficient to form a belief as to their truth.

**173.**    Demand for Occupant Safety Restraint Systems is highly inelastic. This is because there are no close substitutes for these products. Additionally, customers must purchase Occupant Safety Restraint Systems as essential parts of a vehicle, regardless of whether prices are kept at supra-competitive levels. Customers wanting to purchase a car simply have no choice but to purchase Occupant Safety Restraint Systems.

**ANSWER:**  Takata denies the allegations in Paragraph 173 for lack of knowledge or information sufficient to form a belief as to their truth.

**174.**    Defendants dominate the Occupant Safety Restraint Systems market. Three of the Defendants control almost 75% of the global market.

**ANSWER:**  Takata denies that there is a legally meaningful or cognizable "Occupant Safety Restraint Systems market."  Takata denies the allegations in Paragraph 174 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**175.**    Defendants attended industry events where they had the opportunity to meet, have improper discussions under the guise of legitimate business contacts, and perform acts necessary for the operation and furtherance of

the conspiracy. In a June 6, 2012, press release, the DOJ explained that Defendant Autoliv and its co-conspirators met in secret and agreed to allocate the supply of various automotive parts. According to the Autoliv information, Autoliv and its coconspirators participated in meetings, conversations and communications to discuss and agree on the bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems, and agreed, during meetings, conversations and communications, to allocate the supply of Occupant Safety Restraint Systems sold to certain automobile manufacturers on a model-by-model basis.

**ANSWER:** Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 175 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata refers to the referenced document for its content and denies any characterization of it. Takata denies the allegations in Paragraph 175 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**176.** A globally coordinated antitrust investigation is taking place in the United States, Europe, Canada, and Japan, aimed at suppliers of automotive parts in general and Occupant Safety Restraint Systems in particular. The DOJ has

confirmed that its auto parts investigation is the largest criminal investigation that the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the illegal conduct. Almost $1 billion in criminal fines have already been levied against various automotive parts manufacturers.

**ANSWER:**  Takata denies the allegations in Paragraph 176 for lack of knowledge or information sufficient to form a belief as to their truth.

177.     The probe originated in Europe as the result of several European OEMs coming together to bring a complaint to the EC. The EC and the FBI have executed surprise raids at the European and U.S. offices of several auto parts manufacturers, including certain Defendants, as part of an investigation into anticompetitive conduct related to the manufacturing and sale of automotive parts.

**ANSWER:**  Takata admits that on February 8, 2011, the FBI raided the Auburn Hills, Michigan offices of TK Holdings Inc.  Takata denies the allegations directed at other Defendants in Paragraph 177 for lack of knowledge or information sufficient to form a belief as to their truth.

178.     Defendants Autoliv, TRW, and Takata have admitted that they are cooperating with the antitrust investigators. Autoliv, Inc. stated in its 2011 Annual Report that its subsidiary, Autoliv ASP, Inc., received a grand jury subpoena from

the Antitrust Division of the United States Department of Justice on February 8, 2011. "The subpoena requested documents and information as part of a long-running investigation into possible anticompetitive behavior among certain suppliers to the automotive vehicle industry, including Autoliv." Autoliv, Inc.'s 2011 Annual Report also stated that, on June 7-9, 2011, representatives of the EC visited two facilities of Autoliv B.V. & Co. KG to gather information for a similar inquiry.

**ANSWER:**  Takata admits that Takata Corporation pleaded guilty per a plea agreement.  Takata refers to the referenced documents for their content and denies any characterization of them, and denies the allegations in Paragraph 178 to the extent directed at Takata in all other respects.  Takata denies the allegations in Paragraph 178 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

179.     TRW stated in its 2011 Annual Report that "in June 2011, European antitrust authorities visited certain of our Occupant Safety Systems business unit locations in Germany to gather information. We also received a subpoena related to the Antitrust Investigations in the United States from the U.S. Department of Justice."

**ANSWER:**  Takata refers to the referenced document for its content and

103

denies any characterization of it, and denies the allegations in Paragraph 179 in all other respects.

**180.**     On February 23, 2010, investigators from the FBI raided the Plymouth, Michigan, offices of Tokai Rika as part of a federal antitrust investigation. Special Agent Sandra Berchtold stated that the affidavits that contain facts supporting issuance of the search warrants were filed in federal court under seal.

**ANSWER:**   Takata denies the allegations in Paragraph 180 for lack of knowledge or information sufficient to form a belief as to their truth.

**181.**     Takata Corp. stated in its 2011 Annual Report that TK Holdings, Inc., a U.S. subsidiary, "became the subject to an investigation conducted by the Federal Bureau of Investigation on February 8, 2011.  TK Holdings, Inc. is cooperating fully with the investigation." Alby Berman, vice-president of marketing and public relations for TK Holdings, Inc., said the subpoena "targeted safety system suppliers – seat belts, air bags, steering wheels and safety electronics – any communications with competitors, and specifically mentioned Tokai Rika" and that the subpoena targeted communications dating back to January 1, 2005.

Special Agent Sandra Berchtold, media coordinator for the FBI, confirmed that

the FBI raided TK Holdings, Inc.'s offices in Auburn Hills, Michigan.

**ANSWER:**  Takata admits that on February 8, 2011, the FBI raided the Auburn Hills, Michigan offices of TK Holdings Inc.   Takata refers to the referenced document in the first and second sentences of Paragraph 181 for their content and denies any characterization of them.  Takata admits that Alby Berman is TK Holdings Inc.'s vice president of marketing and public relations.  Takata refers to the referenced document in the third sentence of Paragraph 181 for its content and denies any characterization of it.  Takata denies the allegations in the fourth sentence of Paragraph 181 for lack of knowledge or information sufficient to form a belief as to their truth.  Takata denies the allegations in Paragraph 181 in all other respects.

182.     The DOJ has stated that it is conducting an investigation of potential antitrust activity and coordinating its investigation with antitrust regulators in Europe.

**ANSWER:**  Takata denies the allegations in Paragraph 182 for lack of knowledge or information sufficient to form a belief as to their truth.

183.     To obtain the search warrant to raid TK Holdings, Inc., the FBI was legally required to have probable cause, accepted by a magistrate, to believe

that it would obtain evidence of an antitrust violation as a result of executing the search warrant—that is, the United States had to have evidence sufficient to warrant a person of reasonable caution to believe that raiding the offices of a seemingly lawful business would uncover evidence of antitrust violations and that claimed evidence must have been examined and accepted by a magistrate. That belief, which was recounted in sworn affidavits or testimony, must be grounded on reasonably trustworthy information.

**ANSWER:** The allegations in Paragraph 183 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies the allegations in Paragraph 183 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**184.** Defendant Autoliv has pleaded guilty and agreed to pay a total of $14.5 million in criminal fines concerning a two-count criminal investigation for fixing the prices of seatbelts, steering wheels, and airbags. Autoliv has admitted to conspiring with others to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Occupant Safety Restraint Systems sold to certain automobile manufacturers in the United States and elsewhere at various times from at least as

early as March 2006 and continuing until at least February 2011 in violation of the Sherman Act, 15 U.S.C. § 1. Among other things, Autoliv admitted to: (a) participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems; (b) agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems; (c) agreeing, during those meetings, conversations, and communications, to allocate the supply of Occupant Safety Restraint Systems sold to certain automobile manufacturers on a model-by-model basis; (d) submitting bids and price quotations to certain automobile manufacturers in accordance with the agreements reached; (e) selling Occupant Safety Restraint Systems to certain automobile manufacturers at collusive and noncompetitive prices; and (f) accepting payment for Occupant Safety Restraint Systems sold to certain automobile manufacturers at collusive and noncompetitive prices.

**ANSWER:**  Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 184 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**185.**     The plea agreement requires it and its subsidiaries to cooperate with the DOJ, including producing documents in their control and providing their "directors, officers and employees" for interviews and the provision of testimony in grand jury, trial and other judicial proceedings.

**ANSWER:**   Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 185 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**186.**     The plea agreement further provides that upon acceptance of the agreement, the United States will not bring further criminal charges against, among other entities, Autoliv Inc.'s subsidiaries arising out of the conspiracy.

**ANSWER:**   Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 186 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**187.**     Pursuant to the plea agreement, Autoliv Inc. agreed that if the United States determines that it or its subsidiaries fail to provide truthful and continuing cooperation, the United States could elect to subject Autoliv Inc. or its

subsidiaries to criminal prosecution and that the United States would have the right, among other things, to prosecute both Autoliv Inc. and its subsidiaries for the conspiracy set forth in the plea agreement.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 187 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**188.** In addition to Autoliv, Takayoshi Matsunaga, the former Vice President of the Toyota Global Business Unit at Autoliv Japan, pleaded guilty to a one count Criminal Information charging him with participating in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of certain seat belts sold to Toyota in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1. In connection with his guilty, plea, Matsunaga was criminally fined $20,000 and sentence to serve one year and one day in a U.S. prison.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 188 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**189.**    On October 9, 2013, Defendant Takata Corporation announced that it agreed to pay a $71.3 million criminal fine and plead guilty to a one-count criminal Information charging it with participating in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of seatbelts sold to automobile manufacturers, including, Toyota, Honda, Nissan, Fuji Heavy Industries, Ltd. (Subaru), and Mazda, in the United States and elsewhere from at least as early as January 1, 2003 and continuing until at least February 2011 in violation of the Sherman Act, 15 U.S.C. § 1. According to the Information filed, Defendant Takata Corporation and its coconspirators carried out the Occupant Safety Restraint Systems conspiracy by: (a) participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to automobile manufacturers for Occupant Safety Restraint Systems; (b) agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to automobile manufacturers for Occupant Safety Restraint Systems; (c) agreeing, during those meetings, conversations, and communications, to allocate the supply of Occupant Safety Restraint Systems sold to automobile manufacturers on a model-by-model basis; (d) submitting bids and price quotations to automobile manufacturers in accordance with the agreements reached; (e) selling Occupant Safety Restraint Systems to automobile

manufacturers.

**ANSWER:** Takata admits that Takata Corporation pleaded guilty per a plea agreement, and refers to the referenced documents for their content and denies any characterization of them, and denies the allegations in Paragraph 189 in all other respects.

**190.** On November 21, 2013, the DOJ announced that three high-level Takata executives, Yasuhiko Ueno, Saburo Imamiya, and, Yoshinobu Fujino pleaded guilty to three separate one-count criminal Informations charging them with participating in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of seatbelts sold to Toyota, Honda, Nissan, Fuji Heavy Industries, Ltd. (Subaru), and Mazda in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1. In connection with their guilty pleas, the Takata executives were criminally fined $20,000 each and sentenced to serve between 14 and 19 months in U.S. prison. Ueno's criminal Information notes that was employed by Defendant TK Holdings Inc., in the United States as senior vice president for sales for Japanese manufacturers from at least January 2006 through December 2007.

**ANSWER:** Takata admits that Takata Corporation and/or TK Holdings Inc.

has employed Yasuhiko Ueno, Saburo Imamiya, and Yoshinobu Fujino. Takata admits that Mr. Ueno, Mr. Imamiya, and Mr. Fujino pleaded guilty pursuant to plea agreements and refers to the referenced documents for their content and denies any characterization of them. Takata admits that Mr. Ueno was employed by TK Holdings Inc. as Senior Vice President of Sales for the Transplant Sales Department from at least January 2006 through December 2007. Takata denies the allegations in Paragraph 190 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

191.     A fourth Takata executive, Gary Walker – employed by Defendant TK Holdings, Inc. – pleaded guilty to a one-count criminal Information charging him with participating in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of certain seatbelts sold to Toyota, Honda, Nissan, Fuji Heavy Industries (Subaru) and Mazda in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1. In connection with his guilty plea, Walker was criminally fined $20,000 and sentenced to serve 14 months in a U.S. prison. A fifth Takata executive, Gikou Nakajima, was indicted on June 5, 2014 for his participation in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and

maintain the prices of seatbelts sold to Honda, Nissan, Fuji Heavy Industries (Subaru) and Mazda in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1.

**ANSWER:** Takata admits that Gary Walker was employed by TK Holdings Inc. Takata admits that Mr. Walker pleaded guilty pursuant to a plea agreement and refers to that document for its content and denies any characterization of it. Takata admits that a former Takata Corporation executive, Gikou Nakajima, was indicted on June 5, 2014 and refers to the indictment for its content and denies any characterization of it. Takata denies the allegations in Paragraph 191 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

192.     Defendant TRW Germany has agreed to plead guilty and agreed to pay a total of $5.1 million in criminal fines concerning a two-count criminal investigation for fixing the prices of seatbelts, steering wheels and airbags. TRW Germany has admitted to conspiring with others to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Occupant Safety Restraint Systems sold to certain automobile manufacturers in the United States and elsewhere at various times from at least as early as January 2008 to until at least June 2011 in violation

of the Sherman Act, 15 U.S.C. § 1. Among other things, TRW Germany admitted to: (a) participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems; (b) agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to certain automobile manufacturers for Occupant Safety Restraint Systems; (c) agreeing, during those meetings, conversations, and communications, to allocate the supply of Occupant Safety Restraint Systems sold to certain automobile manufacturers on a model-by-model basis; (d) agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by certain automobile manufacturers; (e) submitting bids and price quotations to certain automobile manufacturers in accordance with the agreements reached; (f) selling Occupant Safety Restraint Systems to certain automobile manufacturers at collusive and noncompetitive prices; (g) accepting payment for Occupant Safety Restraint Systems sold to certain automobile manufacturers at collusive and noncompetitive prices; and (h) engaging inmeetings, conversations and communications for the purpose of monitoring and enforcing adherence to the agreed upon bid rigging and price-fixing scheme.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 192 for

lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**193.**     The plea agreement requires it and its subsidiaries to cooperate with the DOJ, including producing documents in their control and providing their "directors, officers and employees" for interviews and the provision of testimony in grand jury, trial and other judicial proceedings.

**ANSWER:**  Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 193 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**194.**     The plea agreement further provides that upon acceptance of the agreement, the United States will not bring further criminal charges against, among other entities, TRW Germany's subsidiaries arising out of the conspiracy.

**ANSWER:**  Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 194 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**195.** Pursuant to the plea agreement, TRW Germany agreed that if the United States determines that it or its subsidiaries fail to provide truthful and continuing cooperation, the United could elect to subject TRW Germany or its subsidiaries to criminal prosecution and that the United States would have the right, among other things, to prosecute both TRW Germany and its subsidiaries for the conspiracy set forth in the plea agreement.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 195 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**196.** On December 12, 2012, Tokai Rika agreed to pay a $17.7 million fine and plead guilty to a two-count criminal information charging Tokai Rika with participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of Heater Control Panels sold to an automobile manufacturer from at least September 2003 until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 196 for

lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**197.**     The information also charged Tokai Rika and one of its executives with obstruction of justice for directing employees to delete electronic data and destroy paper documents, which destroyed evidence relevant to the government's investigation into Tokai Rika's antitrust violations in violation of 15 U.S.C. § 1512(b)(2)(B). Tokai Rika's plea agreement states "[a]fter becoming aware of the FBI search of the defendant's United States subsidiary, an executive of the defendant directed employees to delete electronic data and destroy paper documents likely to contain evidence of antitrust crimes. As a result, electronic data were deleted and paper documents were destroyed, including data and documents evidencing antitrust crimes, and some of the deleted electronic data and destroyed paper documents were non-recoverable."

**ANSWER:**  Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 197 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**198.**     Tokai Rika's plea agreement requires it and its subsidiaries to

cooperate with the DOJ, including producing documents in their control and providing their "directors, officers and employees . . ." for "interviews and the provision of testimony in grand jury, trial and other judicial proceedings . . . ."

**ANSWER:**  Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 198 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**199.**    According to the criminal information filed against Tokai Rika, Tokai Rika and its co-conspirators carried out the conspiracy by: (a) participating in meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations; (b)agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted; (c) agreeing, during those meetings, conversations, and communications, to allocate the supply of [Heater Control Panels]; (d) agreeing, during those meetings, conversations, and communications, to coordinate price adjustments; (e) submitting bids, price quotations, and price adjustments in accordance with the agreements reached; (f)selling [Heater Control Panels] in the United States and elsewhere at collusive and noncompetitive prices; (g) accepting payment for [Heater Control Panels] sold at collusive and noncompetitive prices; (h) engaging

in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and (i) employing measures to keep their conduct secret, including using code names and choosing meeting places and times to avoid detection.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 199 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

200.    Tokai Rika's plea agreement states that during a period from at least as early as September 2003 until at least February 2010 Tokai Rika's sales of Heater Control Panels subject to the conspiracy totaled approximately $73.6 million.

**ANSWER:** Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 200 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

201.    On September 29, 2014, the DOJ announced that Defendant

Toyoda Gosei Co., Ltd. agreed to pay a $26 million criminal fine and plead guilty to a two-count criminal Information charging it with participating in conspiracies to: (1) allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of certain automotive hoses sold in the United States and elsewhere from at least as early as February 2004 and continuing until at least September 2010 in violation of the Sherman Act, 15 U.S.C. § 1; and (2) allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of, automotive airbags and steering wheels sold in the United States and elsewhere from at least as early as September 2003 and continuing until at least September 2010 in violation of the Sherman Act, 15 U.S.C. §

**ANSWER:**  Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 201 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**202.**    According to the Information filed, Defendant Toyoda Gosei Co., Ltd. and its co-conspirators carried out the Occupant Safety Restraint Systems conspiracy by: (a) participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted for Occupant Safety Restraint Systems; (b) agreeing, during those meetings, conversations, and communications,

120

to allocate among the companies sales of Occupant Safety Restraint Systems; (c) agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted; (d) exchanging information on bids and price quotations to be submitted; (e) submitting bids and price quotations in accordance with the agreements; (f) selling Occupant Safety Restraint Systems at collusive and noncompetitive prices; and (g) accepting payment for Occupant Safety Restraint Systems at collusive and noncompetitive prices.

**ANSWER:**  Takata refers to the referenced document for its content and denies any characterization of it, and denies the allegations in Paragraph 202 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**203.**    In addition to Autoliv, Inc., Toyoda, Takata and TRW Germany, a number of other manufacturers of automotive parts have pleaded guilty, or agreed to plead guilty, to price fixing and bid rigging in the automotive parts industry, including: Furukawa Electric Co., Ltd.; Yazaki Corp.; G.S. Electech, Inc.; Fujikura Ltd.; Denso Corporation; and Nippon Seiki Co. Ltd. These companies have pleaded guilty to engaging in the same conduct as Autoliv, Inc. with regard to Automotive Wire Harness Systems, Instrument Panel Clusters, Fuel Senders and Heater Control Panels. The majority of these violators pleaded guilty to engaging

in bid-rigging, price-fixing, and market allocation during the same time period as Autoliv, Inc. with multiple OEMs as their targets.

**ANSWER:** Takata admits that Takata Corporation pleaded guilty per a plea agreement. Takata refers to the referenced documents for their content and denies any characterization of them, and denies the allegations in Paragraph 203 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

204. The Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA") provides leniency benefits for a participant in a price-fixing conspiracy that voluntarily discloses its conduct to the Department of Justice. In most recent cases in which guilty pleas for pricefixing conduct have been obtained, there has been a cooperating party who has been accepted into the DOJ's ACPERA program as an amnesty applicant. One of the leniency benefits for a conspirator that is accepted into the ACPERA program is that the applicant is not charged with a criminal offense and is not required to plead guilty to criminal charges.

**ANSWER:** Takata refers to the referenced statute for its content and denies any characterization of it, and denies the allegations in Paragraph 204 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**205.**     In light of the multiple guilty pleas in this case, in related automotive parts antitrust cases and the DOJ's ongoing investigation into the industry, it is reasonable for this Court to infer that there is an ACPERA "amnesty applicant" in this case.

**ANSWER:**   Takata denies the allegations in Paragraph 205 for lack of knowledge or information sufficient to form a belief as to their truth.

**206.**     Deputy Assistant Attorney General Scott Hammond, recently stated that the automotive parts cartel is "the biggest [cartel] with respect to the impact on U.S. business and consumers."

**ANSWER:**   Takata refers to the referenced document for its content and denies any characterization of it.  Takata denies the allegations in Paragraph 206 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**207.**     Defendants' conspiracy resulted in Defendants charging inflated prices to firms who directly purchased Occupant Safety Restraint Systems from them and in those purchasers raising their prices to subsequent purchasers.

**ANSWER:**  Takata denies that it was involved in the conspiracy as alleged

in Plaintiffs' complaint and denies the allegations in Paragraph 207 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 207 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**208.** Having paid higher prices for components of the cars they sold to Plaintiffs and the Classes and the Occupant Safety Restraint Systems they sold to Plaintiffs and the Classes, firms who sold such Occupant Safety Restraint Systems and vehicles passed Defendants' overcharges on to Plaintiffs and the Classes.

**ANSWER:** Takata the allegations in Paragraph 208 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 208 regarding purported class members. Takata denies the allegations in Paragraph 208 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**209.** Plaintiffs and the Classes are entitled to the overcharges they paid for Occupant Safety Restraint Systems.

**ANSWER:** The allegations in Paragraph 209 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations.

To the extent any response is required, Takata denies the allegations in Paragraph 209 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 209 regarding purported class members. Takata denies the allegations in Paragraph 209 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

210.     Plaintiffs and the Classes had to and did absorb, at the very least, a significant portion of the overcharges that they paid due to Defendants' illegal activities.

**ANSWER:** Takata denies the allegations in Paragraph 210 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 210 regarding purported class members. Takata denies the allegations in Paragraph 210 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

211.     Plaintiffs have standing and have suffered damage compensable by indirect purchaser laws and they and members of the classes they seek to represent

have sustained significant damage and injury as a result of Defendants' conspiracy.

**ANSWER:**  The allegations in Paragraph 211 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies the allegations in Paragraph 211 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 211 regarding purported class members.  Takata denies the allegations in Paragraph 211 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**212.**     Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"): All automobile dealers that during the Class Period, (a) indirectly purchased Occupant Safety Restraint Systems manufactured by the Defendants or any current or former subsidiary or affiliate thereof or any co-conspirator, or (b) purchased vehicles containing Occupant Safety Restraint Systems manufactured by the Defendants or any current or former subsidiary, affiliate thereof or co-conspirator.

**ANSWER:** The allegations in Paragraph 212 call for a legal conclusion and characterize Plaintiffs' purported claims and the putative "Nationwide Class," to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata admits that Paragraph 212 purports to state Plaintiffs' definition of the "Nationwide Class," but denies the remaining allegations in Paragraph 212, denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 212 regarding purported class members.

213.    Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the antitrust, unfair competition, unjust enrichment and consumer protection laws of the states whose laws are set forth in the Second and Third Claims below, (except California as to unjust enrichment claims), as well as unjust enrichment laws of Missouri, Massachusetts, Illinois, and South Carolina. The states whose laws are set forth in the Second and Third Claims below, as well as Missouri, Massachusetts, Illinois, and South Carolina are collectively referred to as the "Indirect Purchaser States." These claims are brought by Plaintiffs on behalf of themselves and entities in the Indirect Purchaser States listed in the Second, Third and Fourth Claims as follows (the "Damages Class"):

127

All automobile dealers, in the Indirect Purchaser States, that, during the Class Period (a) indirectly purchased Occupant Safety Restraint Systems manufactured by one of the Defendants or any current or former subsidiary or affiliate thereof, or any coconspirator or (b) purchased vehicles containing Occupant Safety Restraint Systems manufactured by one of the Defendants or any current or former subsidiary, affiliate or co-conspirator thereof.

**ANSWER:** The allegations in Paragraph 213 call for a legal conclusion and characterize Plaintiffs' purported claims and the putative "Nationwide Class," to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata admits that Paragraph 213 purports to state Plaintiffs' definitions of "Indirect Purchaser States" and the "Damages Class," but denies the remaining allegations in Paragraph 213, denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 213 regarding purported class members.

214.    The Nationwide Class and the Damages Class are referred to herein as the "Classes." Excluded from the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities, and instrumentalities of the federal government, states, and their subdivisions, agencies, and instrumentalities.

**ANSWER:** Takata admits that the allegations contained in Paragraph 214 purport to state Plaintiffs' definition of the "Classes" and description of persons excluded from Plaintiffs' purported class definitions, denies that any class properly may be certified, and denies the allegations in Paragraph 214 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

215.    Although Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are at least thousands of members in each Class.

**ANSWER:** Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 215 regarding purported class members. Takata denies the allegations in Paragraph 215 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

216.    Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and

fact common to the Classes include, but are not limited to: (a) Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Occupant Safety Restraint Systems sold in the United States; (b) The identity of the participants of the alleged conspiracy; (c) The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy; (d) Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief; (e) Whether the alleged conspiracy violated state antitrust and unfair competition law, and/or state consumer protection law, as alleged in the Second and Third Claims for Relief; (f) Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief; (g) Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes; (h) The effect of the alleged conspiracy on the prices of Occupant Safety Restraint Systems sold in the United States during the Class Period; (i) Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiffs and the members of the Classes; (j) The appropriate injunctive and related equitable relief for the

Nationwide Class; and (k) The appropriate class-wide measure of damages for the Damages Class.

**ANSWER:**  The allegations in Paragraph 216 call for a legal conclusion and characterize Plaintiffs' purported claims, to which no response is required, and on that basis Takata denies these allegations.  To the extent any response is required, Takata denies the allegations in Paragraph 216 and denies that this action is appropriate for class certification.

217.    Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct because they paid artificially inflated prices for Occupant Safety Restraint Systems purchased indirectly from Defendants or their co-conspirators.

**ANSWER:**  The allegations in Paragraph 217 call for a legal conclusion and characterize Plaintiffs' purported claims, to which no response is required, and on that basis Takata denies these allegations.  To the extent any response is required, Takata denies the allegations in Paragraph 217 and denies that this action is appropriate for class certification.

218.    Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

**ANSWER:** The allegations in Paragraph 218 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 218 regarding purported class members. Takata denies the allegations in Paragraph 218 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

219.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

**ANSWER:** The allegations in Paragraph 219 call for a legal conclusion and characterize Plaintiffs' purported claims, to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies the allegations in Paragraph 219 and denies that this action is

appropriate for class certification.

**220.**    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism provide injured entities with a method for obtaining redress for claims that might not be practicable to pursue individually and substantially outweigh any difficulties that may arise in the management of this class action.

**ANSWER:**  The allegations in Paragraph 220 call for a legal conclusion and characterize Plaintiffs' purported claims, to which no response is required, and on that basis Takata denies these allegations.  To the extent any response is required, Takata denies the allegations in Paragraph 220 and denies that this action is appropriate for class certification.

**221.**    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

**ANSWER:** The allegations in Paragraph 221 call for a legal conclusion and characterize Plaintiffs' purported claims, to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies the allegations in Paragraph 221 and denies that this action is appropriate for class certification.

222.    Defendants' price-fixing conspiracy had the following effects, among others: (a) Price competition has been restrained or eliminated with respect to Occupant Safety Restraint Systems; (b) The prices of Occupant Safety Restraint Systems have been fixed, raised, maintained, or stabilized at artificially inflated levels; (c) Defendants charged purchasers of their Occupant Safety Restraint Systems inflated, fixed and stabilized prices for such Occupant Safety Restraint Systems; (d) Having paid higher prices for components of the cars they sold to Plaintiffs and the Classes and the Occupant Safety Restraint Systems they sold to Plaintiffs and the Classes, firms who sold Defendants' Occupant Safety Restraint Systems and vehicles to Plaintiffs and the Classes passed Defendants' overcharges on to them; (e) Defendants' overcharges passed through each level of distribution as they traveled to Plaintiffs and the Classes; and (f) Automobile dealers purchasing Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems have been deprived of free and open competition.

**ANSWER:**   Takata denies the allegations in Paragraph 222 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.   Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 222 regarding purported class members.   Takata denies the allegations in Paragraph 222 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**223.**     During the Class Period, Plaintiffs and the members of the Classes paid supracompetitive prices for Occupant Safety Restraint Systems, as a result of Defendants' conspiracy.

**ANSWER:**   Takata denies the allegations in Paragraph 223 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.   Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 223 regarding purported class members.   Takata denies the allegations in Paragraph 223 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**224.**     An increase in the prices of Occupant Safety Restraint Systems caused an increase in the price of vehicles during the Class Period.

**ANSWER:**   Takata denies the allegations in Paragraph 224 to the extent

they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 224 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

225.    The market for Occupant Safety Restraint Systems and the market for cars are inextricably linked and intertwined because the market for Occupant Safety Restraint Systems exists to serve the vehicle market. Without the vehicles, the Occupant Safety Restraint Systems have little to no value because they have no independent utility and must be inserted into vehicles to serve any function. Indeed, the demand for vehicles creates the demand for Occupant Safety Restraint Systems.

ANSWER:  Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems", and denies the allegations in Paragraph 225 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

226.    Occupant Safety Restraint Systems are identifiable, discrete physical products that remain essentially unchanged when incorporated into a vehicle and are not altered during the manufacturing process. As a result, Occupant Safety Restraint Systems follow a traceable physical chain of distribution from the

Defendants to Plaintiffs and the members of the Classes, and any costs attributable to Occupant Safety Restraint Systems can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

**ANSWER:**   Takata denies that this action is appropriate for class certification and denies the allegations in Paragraph 226.

**227.**   Just as Occupant Safety Restraint Systems can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of Occupant Safety Restraint Systems affect prices paid by indirect purchasers of new motor vehicles containing Occupant Safety Restraint Systems.

**ANSWER:**  Takata denies the allegations in Paragraph 227.

**228.**   Occupant Safety Restraint Systems have their own part numbers, which permit them to be tracked.

**ANSWER:**   Takata admits seat belts, airbags, steering wheels, and other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" sometimes have part numbers, and denies the allegations in Paragraph 228 in all other respects.

229.     Occupant Safety Restraint Systems are pieces of sophisticated equipment that are necessary to operate a vehicle.

**ANSWER:**  Takata admits seat belts, airbags, steering wheels, and other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" are sophisticated pieces of equipment.  Takata admits steering wheels are necessary to operate a vehicle.  Takata denies the allegations in Paragraph 229 for lack of knowledge or information sufficient to form a belief as to their truth.

230.     Occupant Safety Restraint Systems are found in every modern vehicle and can be removed from a finished vehicle and replaced.

**ANSWER:**  Takata admits seat belts, airbags, steering wheels, and other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" can be removed from a finished vehicle and replaced and denies the allegations in Paragraph 230 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

231.     The Occupant Safety Restraint Systems subject to Defendants' conspiracy and at issue in this lawsuit only have one use: to be inserted into vehicles. Whether Occupant Safety Restraint Systems are sold by themselves or in vehicles, their purpose is to be inserted into vehicles to protect drivers and

passengers from bodily harm.

**ANSWER:**  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in the first sentence of Paragraph 231 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata, and denies the allegations in the first sentence of Paragraph 231 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.  Takata admits that seat belts, airbags, steering wheels, and other products that may be encompassed in Plaintiffs' term "Occupant Safety Restraint Systems" are automotive parts with specific functions, some of which relate to occupant safety, and denies the allegations in Paragraph 231 in all other respects.

**232.**     Occupant Safety Restraint Systems comprise a not insignificant portion of the cost of a vehicle.

**ANSWER:**  Takata denies the allegations in Paragraph 232 for lack of knowledge or information sufficient to form a belief as to their truth.

**233.**     The purpose of the conspiratorial conduct of the Defendants and their coconspirators was to raise, fix, rig, or stabilize the price of Occupant Safety Restraint Systems and, as a direct and foreseeable result, the price of new motor

vehicles containing Occupant Safety Restraint Systems and the price of Occupant Safety Restraint Systems purchased for repair purposes. Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis—called regression analysis—is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product or service that is an assemblage of costs. Thus, it is possible to isolate and identify only the impact of an increase in the price of Occupant Safety Restraint Systems on prices for new motor vehicles even though such products contain a number of other components whose prices may be changing over time. A regression model can explain how variation in the price of Occupant Safety Restraint Systems affects changes in the price of new motor vehicles. In such models, the price of Occupant Safety Restraint Systems would be treated as an independent or explanatory variable. The model can isolate how changes in the price of Occupant Safety Restraint Systems impact the price of new motor vehicles containing Occupant Safety Restraint Systems while controlling for the impact of other price-determining factors.

**ANSWER:** Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in the first sentence of Paragraph

233 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata and denies the allegations in the first sentence of Paragraph 233 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.  Takata denies the allegations in Paragraph 233 in all other respects.

234.     The precise amount of the overcharge impacting the prices of new motor vehicles containing Occupant Safety Restraint Systems can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiffs and members of the Classes can be quantified.

**ANSWER:**   Takata denies the allegations in Paragraph 234 for lack of knowledge or information sufficient to form a belief as to their truth.

235.     By reason of the alleged violations of the antitrust laws, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Occupant Safety Restraint Systems than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently

undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent and Plaintiffs' and Class members' damages are measureable.

**ANSWER:**  The allegations in Paragraph 235 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 235 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 235 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

236.     Plaintiffs repeat and reallege the allegations set forth above.

**ANSWER:**  Takata incorporates by reference its responses set forth above and adopts the same as though fully set forth herein.

237.     Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on

inquiry notice of the claims set forth herein, until the public announcements of Autoliv's agreement to plead guilty, on June 6, 2012. Plaintiffs and Class members did not have knowledge of Toyoda Gosei's participation in the conspiracy until September, 2014, when the DOJ announced that Toyoda Gosei had agreed to plead guilty to participating in the OSS conspiracy.

**ANSWER:** The allegations in Paragraph 237 call for a legal conclusion, to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 237 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 237 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 237 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**238.** Plaintiffs and the members of the Classes are automobile dealers who purchased automobiles or purchased Occupant Safety Restraint Systems to replace or repair damaged or defective Occupant Safety Restraint Systems.

**ANSWER:** Takata denies that this action is appropriate for class

certification, and Takata therefore denies all allegations in Paragraph 238 regarding purported class members.  Takata denies the allegations in Paragraph 238 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**239.**     They had no direct contact or interaction with any of the Defendants in this case and had no means from which they could have discovered the combination and conspiracy described in this Complaint before the public announcements of Autoliv's agreement to plead guilty, on June 6, 2012 or the participation of Toyoda Gosei before September, 2014.

**ANSWER:**     Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 239 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 239 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 239 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**240.**     No information in the public domain was available to the Plaintiffs

and the members of the Classes prior to the public announcements of Autoliv's agreement to plead guilty, on June 6, 2012, that revealed sufficient information to suggest that any one of the Defendants was involved in a criminal conspiracy to price-fix and rig bids for Occupant Safety Restraint Systems. Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or other direct purchasers, much less the fact that they had engaged in the combination and conspiracy alleged herein.

**ANSWER:** Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 240 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 240 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 240 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

241.    For these reasons, the statute of limitations as to Plaintiffs' and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

145

**ANSWER:** The allegations in Paragraph 241 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 241 regarding purported class members. Takata denies the allegations in Paragraph 241 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

242.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes. Plaintiffs and the members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until the public announcement of Autoliv's agreement to plead guilty, on June 6, 2012. Plaintiffs and Class members could not have discovered Toyoda Gosei's participation in the conspiracy, until September, 2014.

**ANSWER:** The allegations in Paragraph 242 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 242

regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 242 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 242 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**243.**     Because Defendants' agreements, understandings, and conspiracies were kept secret until June 6, 2012, Plaintiffs and members of the Classes before that time were unaware of Defendants' unlawful conduct, and they did not know before then that they were paying supracompetitive prices for Occupant Safety Restraint Systems throughout the United States during the Class Period.

**ANSWER:**  The allegations in Paragraph 243 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 243 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 243 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph

243 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**244.**    Defendants had secret communications to collusively fix prices, rig bids and allocate markets for Occupant Safety Restraint Systems.

**ANSWER:**  Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems."  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 244 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 244 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**245.**    Defendants also concealed their conspiracy by submitting bids to OEMs, to give the appearance of competition, despite having already determined, among themselves, who would win each bid.

**ANSWER:**  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 245 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 245 for lack of knowledge or

information sufficient to form a belief as to their truth in all other respects.

**246.**     The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

**ANSWER:**  The allegations in Paragraph 246 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 246 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 246 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**247.**     By its very nature, Defendants' anticompetitive conspiracy was inherently selfconcealing. Occupant Safety Restraint Systems are not exempt from antitrust regulation, and thus, before June 6, 2012, Plaintiffs reasonably considered it to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' Occupant Safety Restraint Systems' prices before June 6, 2012 and a

reasonable person would not have been alerted to file claims against Toyoda Gosei until September 2014.

**ANSWER:** The allegations in Paragraph 247 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 247 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 247 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**248.** Plaintiffs and the members of the Classes could not have discovered the alleged contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

**ANSWER:** The allegations in Paragraph 248 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate

for class certification, and Takata therefore denies all allegations in Paragraph 248 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 248 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 248 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

249.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until June 6, 2012, when the DOJ announced that Autoliv had agreed to plead guilty to the conspiracy. Plaintiffs and members of the Classes had no knowledge of Toyoda Gosei's participation in the conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether it had participated in the conspiracy until September 2014.

**ANSWER:**  The allegations in Paragraph 249 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations.

To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 249 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the remaining allegations in Paragraph 249 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 249 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

250.   As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

ANSWER:  The allegations in Paragraph 250 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 250 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the remaining allegations in Paragraph 250 to the extent they are directed at Takata or intended to reference

actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 250 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**251.**     Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

**ANSWER:**  The allegations in Paragraph 251 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 251 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 251 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**252.**     The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

**ANSWER:**  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 252 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 252 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

253.    At least as early as January 2003, and continuing until at least the filing of this Complaint, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Occupant Safety Restraint Systems, thereby creating anticompetitive effects.

**ANSWER:**  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 253 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 253 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

254.    The anticompetitive acts were intentionally directed at the United States market for Occupant Safety Restraint Systems and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Occupant

Safety Restraint Systems throughout the United States.

**ANSWER:**  The allegations in Paragraph 254 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems," denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the remaining allegations in Paragraph 254 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 254 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**255.**  The conspiratorial acts and combinations have caused unreasonable restraints in the market for Occupant Safety Restraint Systems.

**ANSWER:**  The allegations in Paragraph 255 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems," denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the remaining allegations in Paragraph 255 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the

allegations in Paragraph 255 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**256.**    As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Occupant Safety Restraint Systems have been harmed by being forced to pay inflated, supracompetitive prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

**ANSWER:**  The allegations in Paragraph 256 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 256 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 256 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 256 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**257.**    In formulating and carrying out the alleged agreement,

156

understanding, and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth herein.

**ANSWER:**  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 257 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 257 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**258.**    Defendants' conspiracy had the following effects, among others: (a) Price competition in the market for Occupant Safety Restraint Systems has been restrained, suppressed, and/or eliminated in the United States; (b) Prices for Occupant Safety Restraint Systems sold by Defendants and their coconspirators have been fixed, raised, maintained, and stabilized at artificially high, noncompetitive levels throughout the United States; (c) Prices for vehicles purchased by Plaintiffs and the members of the Nationwide Class containing Occupant Safety Restraint Systems manufactured by Defendants and their coconspirators were inflated; and (d) Plaintiffs and members of the Nationwide Class who purchased Occupant Safety Restraint Systems indirectly from Defendants have been deprived of the benefits of free and open competition.

**ANSWER:** Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems." Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 258 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 258 regarding purported class members. Takata denies the allegations in Paragraph 258 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

259.    Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems than they would have paid and will pay in the absence of the conspiracy.

**ANSWER:** Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 259 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 259 to the extent they are directed at Takata or intended to reference actions taken by or on

behalf of Takata.  Takata denies the allegations in Paragraph 259 for lack of knowledge or information sufficient to form a belief as to their truth.

**260.**     Plaintiffs and members of the Nationwide Class will continue to be subject to Defendants' price-fixing, bid-rigging, and market allocations, which will deprive Plaintiffs and members of the Nationwide Class of the benefits of free competition, including competitively priced Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

**ANSWER:**     Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 260 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 260 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 260 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**261.**     Plaintiffs and members of the Nationwide Class will continue to lose funds due to overpayment for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems because they are required to

purchase vehicles and Occupant Safety Restraint Systems to continue to operate their businesses.

**ANSWER:**    Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 261 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 261 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 261 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**262.**    Plaintiffs and members of the Nationwide Class continue to purchase vehicles and Occupant Safety Restraint Systems, on a regular basis.

**ANSWER:**    Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 262 regarding purported class members.  Takata denies the allegations in Paragraph 262 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**263**.    Vehicles and Occupant Safety Restraint Systems continue to be

sold at inflated and supracompetitive prices.

**ANSWER:**  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 263 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 263 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**264.**    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

**ANSWER:**  The allegations in Paragraph 264 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 264 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 264 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**265.**    Plaintiffs and members of the Nationwide Class will be at the mercy of Defendants' unlawful conduct until the Court orders an injunction.

**ANSWER:** Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 265 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 265 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 265 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

266. Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants preventing and restraining the violations alleged herein.

**ANSWER:** The allegations in Paragraph 266 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 266 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 266 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph

266 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**267.**     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

**ANSWER:**  Takata incorporates by reference its responses set forth above and adopts the same as though fully set forth herein.

**268.**     From as early as January 2003 until at least the filing of this Complaint, Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Occupant Safety Restraint Systems in unreasonable restraint of trade and commerce and in violation of the various state antitrust statutes set forth below.

**ANSWER:**  The allegations in Paragraph 268 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 268 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 268 for lack of knowledge or information sufficient to form a belief as to their truth

in all other respects.

269.     The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize and/or maintain artificially supracompetitive prices for Occupant Safety Restraint Systems, to rig bids for the sale of Occupant Safety Restraint Systems and to allocate customers for Occupant Safety Restraint Systems in the United States.

ANSWER:  The allegations in Paragraph 269 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 269 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 269 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

270.     In formulating and effectuating this conspiracy, Defendants and their coconspirators performed acts in furtherance of the combination and conspiracy, including: (a) participating in meetings and conversations among

themselves in the United States and elsewhere during which they agreed to price Occupant Safety Restraint Systems at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Occupant Safety Restraint Systems sold in the United States; (b) allocating customers and markets for Occupant Safety Restraint Systems in the United States in furtherance of their agreements; and (c) participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

**ANSWER:**  The allegations in Paragraph 270 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that there is a legally meaningful or cognizable "market for Occupant Safety Restraint Systems," denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 270 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 270 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**271.**    Defendants and their co-conspirators engaged in the actions

described above for the purpose of carrying out their unlawful agreements to fix, maintain, decrease, or stabilize prices and to allocate customers with respect to Occupant Safety Restraint Systems.

**ANSWER:** The allegations in Paragraph 271 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 271 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 271 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

272.    Defendants' anticompetitive acts described above were knowing, willful, and constitute violations or flagrant violations of the following state antitrust statutes.

**ANSWER:** The allegations in Paragraph 272 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 272 to the extent they are directed at Takata or intended to reference

166

actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 272 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

273.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.* (a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems. (b) During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce. (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

**ANSWER:**  The allegations in Paragraph 273 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations.

To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 273 regarding purported class members.   Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 273 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.   Takata denies the allegations in Paragraph 273 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**274.**   Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq*. (a) During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720 of the California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Occupant Safety Restraint Systems at supracompetitive levels. (b) The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators the substantial terms of which were to fix,

raise, maintain, and stabilize the prices of, and to allocate markets for, Occupant Safety Restraint Systems. (c) For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of Occupant Safety Restraint Systems; and (2) Allocating among themselves the production of Occupant Safety Restraint Systems. (d) The combination and conspiracy alleged herein has had, inter alia, the following effects upon the commerce of California: (1) Price competition in the sale of Occupant Safety Restraint Systems has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Occupant Safety Restraint Systems sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased Occupant Safety Restraint Systems or vehicles containing Occupant Safety Restraint Systems manufactured by Defendants and their co-conspirators have been deprived of the benefit of free and open competition. (e) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Occupant Safety Restraint Systems than they otherwise would have paid

in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

**ANSWER:** The allegations in Paragraph 274 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 274 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 274 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 274 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**275.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Official Code §§ 28-4501, *et seq.* (a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and

eliminated throughout the District of Columbia; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or purchased Occupant Safety Restraint Systems or vehicles in the District of Columbia, were deprived of free and open competition, including in the District of Columbia; and (4) Plaintiffs and members of the Damages Class, including those who resided in the District of Columbia and/or purchased Occupant Safety Restraint Systems or vehicles in the District of Columbia, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems, including in the District of Columbia. (b) During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce. (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury. (d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq*.

**ANSWER:** The allegations in Paragraph 275 call for a legal conclusion to

which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 275 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 275 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 275 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

276.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*. (a) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems' price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Occupant Safety Restraint Systems' prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems. (b) During the Class

Period, Defendants' illegal conduct substantially affected Hawaii commerce. (c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-4, *et seq*.

**ANSWER:**  The allegations in Paragraph 276 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 276 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 276 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 276 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**277.**     Defendants have entered into an unlawful agreement in restraint of

trade in violation of the Iowa Code §§ 553.1, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

**ANSWER:** The allegations in Paragraph 277 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations.

To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 277 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 277 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 277 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**278.**     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq*. (b) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(c) During the Class Period, Defendants' illegal conduct substantially affected

Kansas commerce. (d) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury. (e) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq*.

**ANSWER:** The allegations in Paragraph 278 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 278 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 278 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 278 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

279.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§

1101, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Maine; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition: and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10. §§ 1101, *et seq.*

**ANSWER:**  The allegations in Paragraph 279 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations.

To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 279 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 279 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 279 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**280.**     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially

affected Michigan commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq*.

**ANSWER:**  The allegations in Paragraph 280 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 280 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 280 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 280 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**281.**     Defendants have entered into an unlawful agreement in

unreasonable restraint of trade in violation of the Minnesota Statutes Annotated §§ 325D.49, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant  Safety Restraint Systems price competition was restrained, suppressed, and eliminated  throughout Minnesota; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and  members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs  and members of the Damages Class paid supracompetitive, artificially inflated prices for  Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)  During  the  Class  Period  Defendants'  illegal  conduct  substantially affected Minnesota commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

**ANSWER:**  The allegations in Paragraph 281 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 281 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 281 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 281 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**282.**     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant  Safety Restraint Systems price competition was restrained, suppressed, and eliminated  throughout Mississippi; (2) Occupant Safety Restraint Systems prices were raised, fixed,  maintained, and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and  members of the Damages Class, including those who resided in Mississippi and/or purchased  Occupant Safety Restraint Systems or vehicles in Mississippi were deprived of free and open

competition, including in Mississippi: and (4) Plaintiffs and members of the Damages Class, including those who resided in Mississippi and/or purchased Occupant Safety Restraint Systems or vehicles in Mississippi paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems, including in Mississippi.

(b) During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

**ANSWER:** The allegations in Paragraph 282 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 282 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in

Paragraph 282 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 282 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

283.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business

and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

**ANSWER:** The allegations in Paragraph 283 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 283 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 283 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 283 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**284.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed,

and eliminated throughout Nevada; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased Occupant Safety Restraint Systems or vehicles in Nevada, were deprived of free and open competition including in Nevada; and (4) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased Occupant Safety Restraint Systems or vehicles in Nevada, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems, including in Nevada.

(b) During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.060, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq*.

**ANSWER:** The allegations in Paragraph 284 call for a legal conclusion to

185

which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 284 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 284 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 284 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**285.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety

Restraint Systems.

(b) During the Class Period Defendants' illegal conduct substantially affected New Hampshire commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq*.

**ANSWER:** The allegations in Paragraph 285 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 285 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 285 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 285 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**286.**     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief

available under New Mexico Stat. Ann.§§ 57-1-1, *et seq*.

**ANSWER:** The allegations in Paragraph 286 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 286 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 286 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 286 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**287.** Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased Occupant Safety

Restraint Systems or vehicles in New York, were deprived of free and open competition, including in New York; and (4) Plaintiffs and members of the Damages Class, including those who resided in New York, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems when they purchased, including in New York, Occupant Safety Restraint Systems or vehicles containing Occupant Safety Restraint Systems, or purchased, including in New York, Occupant Safety Restraint Systems or vehicles that were otherwise of lower quality, than would have been absent the conspirators' illegal acts, or were unable to purchase Occupant Safety Restraint Systems or vehicles that they would have otherwise have purchased absent the illegal conduct.

(b) During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*. The conduct set forth above is a per se violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

**ANSWER:** The allegations in Paragraph 287 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 287 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 287 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 287 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**288.**     Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Occupant Safety Restraint Systems or vehicles in North Carolina, were deprived of free and open

competition, including in North Carolina; and (4) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Occupant Safety Restraint Systems or vehicles in North Carolina, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles including in North Carolina.

(b) During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(c) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et seq*.

**ANSWER:** The allegations in Paragraph 288 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 288 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 288 to the extent they are directed at Takata or intended to reference

actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 288 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

289.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant  Safety Restraint Systems price competition was restrained, suppressed, and eliminated  throughout North Dakota; (2) Occupant Safety Restraint Systems prices were raised, fixed,  maintained, and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and  members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs  and members of the Damages Class paid supracompetitive, artificially inflated prices for  Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq*.

**ANSWER:**  The allegations in Paragraph 289 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 289 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 289 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 289 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**290.**     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant  Safety Restraint Systems price competition was restrained, suppressed, and eliminated  throughout Oregon; (2) Occupant Safety Restraint Systems prices

were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b) During the Class Period Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

**ANSWER:** The allegations in Paragraph 290 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 290 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in

195

Paragraph 290 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 290 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

291.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1., *et seq*.

 (a) Defendants' combinations or conspiracies had the following effects: (1) Occupant  Safety Restraint Systems price competition was restrained, suppressed, and eliminated  throughout South Dakota; (2) Occupant Safety Restraint Systems prices were raised, fixed,  maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and  members of the Damages Class, including those who resided in South Dakota and/or purchased  Occupant Safety Restraint Systems or vehicles in South Dakota, were deprived of free and open competition including in South Dakota; and (4) Plaintiffs and members of the Damages Class,  including those who resided in South Dakota and/or purchased vehicles or  Occupant  Safety  Restraint  Systems  in  South  Dakota,  paid supracompetitive, artificially inflated prices for   Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems  including in South Dakota.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq*.

**ANSWER:** The allegations in Paragraph 291 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 291 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 291 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 291 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

292.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class, including those who resided in Tennessee and/or purchased Occupant Safety Restraint Systems or vehicles in Tennessee, were deprived of free and open competition including in Tennessee; and (4) Plaintiffs and members of the Damages Class, including those who resided in Tennessee, and/or purchased Occupant Safety Restraint Systems or vehicles in Tennessee, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems including in Tennessee.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(c) By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25- 101, *et seq*.

**ANSWER:** The allegations in Paragraph 292 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 292 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 292 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 292 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

293.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant  Safety Restraint Systems price competition was restrained, suppressed, and eliminated  throughout Utah; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained,  and stabilized at artificially high levels throughout

Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq*.

**ANSWER:** The allegations in Paragraph 293 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 293 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 293 to the extent they are directed at Takata or intended to reference

actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 293 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

294.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the 9 Vermont Stat. Ann. §§ 2451, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant  Safety Restraint Systems price competition was restrained, suppressed, and eliminated  throughout Vermont; (2) Occupant Safety Restraint Systems prices were raised, fixed,  maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and  members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs  and members of the Damages Class paid supracompetitive, artificially inflated prices for   Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b) During the Class Period Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of 9 Vermont Stat. Ann. §§ 2451, *et seq*. Plaintiffs are entitled to relief pursuant to 9 Vermont Stat. Ann. § 2465 and any other applicable authority. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under 9 Vermont Stat. Ann. §§ 2451, *et seq*.

**ANSWER:**  The allegations in Paragraph 294 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 294 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 294 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 294 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**295.**    Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant  Safety Restraint Systems price competition was restrained, suppressed, and eliminated  throughout West Virginia; (2) Occupant Safety Restraint Systems

prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased Occupant Safety Restraint Systems or vehicles in West Virginia, were deprived of free and open competition including in West Virginia; and (4) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased vehicles or Occupant Safety Restraint Systems in West Virginia, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems including in West Virginia.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia §§ 47-18-1, *et seq*.

**ANSWER:** The allegations in Paragraph 295 call for a legal conclusion to

which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 295 regarding purported class members.   Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 295 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.   Takata denies the allegations in Paragraph 295 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**296.**   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant  Safety Restraint Systems price competition was restrained, suppressed, and eliminated  throughout Wisconsin; (2) Occupant Safety Restraint Systems prices were raised, fixed,  maintained, and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and  members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for  Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint

Systems.

(b) During the Class Period Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq*.

**ANSWER:** The allegations in Paragraph 296 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 296 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 296 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 296 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

297.    Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy, and agreement. Plaintiffs and members of the Damages Class have paid more for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

ANSWER: The allegations in Paragraph 297 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 297 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 297 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 297 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**298**.    In addition, Defendants have profited significantly from the aforesaid conspiracy.    Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class

**ANSWER:** The allegations in Paragraph 298 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 298 regarding purported class members.   Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 298 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.   Takata denies the allegations in Paragraph 298 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**299.**    Accordingly, Plaintiffs and the members of the Damages Class in each of the  above jurisdictions seek damages (including statutory damages where applicable), to be trebled  or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit,  including reasonable attorneys' fees, to the extent permitted by the above state laws.

**ANSWER:** Takata admits Plaintiffs seeks damages as stated in Paragraph 299. Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 299 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 299 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 299 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**300**. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

**ANSWER:** Takata incorporates by reference its responses set forth above and adopts the same as though fully set forth herein.

**301.** Defendants knowingly engaged in unlawful, unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

**ANSWER:** The allegations in Paragraph 301 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the

conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 301 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 301 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**302.** Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101.

(a) Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b) The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout

Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(d) During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e) As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

**ANSWER:** The allegations in Paragraph 302 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 302 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 302 to the extent they are directed at Takata or intended to reference

actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 302 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

303.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq*.

(a) During the Class Period, Defendants marketed, sold, or distributed Occupant Safety Restraint Systems in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq*. of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b) During the Class Period, Defendants' illegal conduct substantially affected California commerce and consumers.

(c) This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(d) The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants,

as alleged herein,  constituted a common, continuous, and continuing course of conduct of unfair competition by  means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of  California Business and Professions Code, Section 17200, *et seq*., including, but not limited to,  the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the  violations of Section 16720, *et seq*., of the California Business and Professions Code, set forth  above;

(e)  Defendants' acts, omissions, misrepresentations, practices, and nondisclosures, as  described above, whether or not in violation of Section 16720, *et seq*., of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair,  unconscionable, unlawful or fraudulent;

(f) Defendants' acts or practices are unfair to purchasers of Occupant Safety Restraint Systems (or vehicles containing them) in the State of California within the meaning of  Section 17200, California Business and Professions Code; and

(g) Defendants' unlawful conduct had the following effects: (1) Occupant Safety  Restraint Systems price competition was restrained, suppressed, and eliminated throughout  California; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and  stabilized at artificially high levels throughout California; (3) Plaintiffs and members of the  Damages Class, including those who

212

resided in California and/ or purchased Occupant Safety  Restraint Systems or vehicles in California, were deprived of free and open competition,  including in California; and (4) Plaintiffs and members of the Damages Class, including those who resided in California and/or purchased Occupant Safety Restraint Systems or vehicles in   California, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint   Systems and vehicles containing Occupant Safety Restraint Systems, including in California.

(h) Defendants' acts and practices are unlawful, fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(i) The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(j) The unlawful, fraudulent, deceptive, and unfair business practices of Defendants,  and each of them, as described above, have caused and continue to cause Plaintiffs and the  members of the Damages Class to pay supracompetitive and artificially-inflated prices for  Occupant Safety Restraint Systems (or vehicles containing them). Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(k) As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants'

unfair competition.    Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief  including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and  benefits that may have been obtained by Defendants as a result of such business practices,  pursuant to the California Business and Professions Code, Sections 17203 and 17204.

**ANSWER:**  The allegations in Paragraph 303 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 303 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 303 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 303 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**304.**    Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair  Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.

(a) Defendants' unlawful conduct had the following effects: (1) Occupant

Safety   Restraint  Systems  price  competition  was  restrained,  suppressed,  and eliminated throughout  Florida; (2) Occupant Safety Restraint Systems prices were raised,  fixed,  maintained,  and   stabilized  at  artificially  high  levels  throughout Florida; (3) Plaintiffs and members of the  Damages Class were deprived of free and  open  competition;  (4)  Plaintiffs  and  members  of  the   Damages  Class  paid supracompetitive,  artificially  inflated  prices  for  Occupant  Safety  Restraint Systems; and (5) Reasonable purchasers in Florida were deceived into believing that they were  paying competitive prices for their vehicles and Occupant Safety Restraint Systems.

(b)  During  the  Class  Period,  Defendants'  illegal  conduct  substantially affected Florida commerce and consumers.

(c)  As  a  direct  and  proximate  result  of  Defendants'  unlawful  conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) Defendants have engaged in unfair competition or unlawful, unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**ANSWER:**  The allegations in Paragraph 304 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations.

To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 304 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 304 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 304 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

305. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq*.

(a) Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b) Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to

the price charged by Defendants for Occupant Safety Restraint Systems. Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Occupant Safety Restraint Systems because they were unaware of the unlawful overcharge and because they had to purchase Occupant Safety Restraint Systems in order to be able to operate their vehicles. Defendants' conduct with regard to sales of Occupant Safety Restraint Systems, including their illegal conspiracy to secretly fix the price of Occupant Safety Restraint Systems at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs.

(c) The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A.§ 57-12-3, in that such conduct, inter alia, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Occupant Safety Restraint Systems as set forth in N.M.S.A. § 57-12-2E, due to the inflated prices paid by Plaintiffs and Class members for vehicles and Occupant Safety Restraint Systems.

(d) Defendants' unlawful conduct had the following effects: (1) Occupant

217

Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(e) During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(f) As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(g) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq*., and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

**ANSWER:** The allegations in Paragraph 305 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 305

regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 305 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 305 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**306.** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq*.

(a) Defendants agree to, and did in fact, act in restraint of trade or commerce by  affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the  prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in New  York and took efforts to conceal their agreements from Plaintiffs and members of the Damages  Class.

 (b) Defendants deceptively led purchasers, such as Plaintiffs and Class members, to  believe that the Occupant Safety Restraint Systems they had purchased as replacements and  inside vehicles had been sold at legal competitive prices, when they had in fact been sold at  collusively obtained inflated prices, that were passed on to them.  (c) The conduct of the Defendants described herein

constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in  injuries to purchasers and broad adverse impact on the public at large, and harmed the public  interest of New York State in an honest marketplace in which economic activity is conducted in  a competitive manner.

(d) Because of Defendants' unlawful trade practices in the State of New York, New York purchasers who indirectly purchased Occupant Safety Restraint Systems were misled to believe that they were paying a fair price for Occupant Safety Restraint Systems or the price increases for Occupant Safety Restraint Systems were for valid business reasons; and similarly situated purchasers were potentially affected by Defendants' conspiracy.

(e) Defendants' unlawful conduct had the following effects: (1) Occupant Safety   Restraint Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and  stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the  Damages Class, who resided in and/or made purchases of vehicles or Occupant Safety Restraint  Systems in New York, were deprived of free and open competition and were subject to Defendants' deceptive practices in New York; and (4) Plaintiffs and members of the Damages   Class, who resided in and/or made  purchases of vehicles and

Occupant Safety Restraint Systems  in New York, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint  Systems and vehicles containing Occupant Safety Restraint Systems, and were subjected to  Defendants' deceptive practices.

(f) Defendants knew that their unlawful trade practices with respect to pricing Occupant Safety Restraint Systems would have an impact on all purchasers in New York and not just the Defendants' direct customers.

(g) Defendants knew that their unlawful trade practices with respect to pricing  Occupant Safety Restraint Systems would have a broad impact, causing class members who  indirectly purchased Occupant Safety Restraint Systems to be injured by paying more for  Occupant Safety Restraint Systems than they would have paid in the absence of Defendants'  unlawful trade acts and practices.

(h) During the Class Period, Defendants marketed, sold, or distributed Occupant Safety Restraint Systems in New York and their illegal conduct substantially affected New York  commerce and New York purchasers.

(i) During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled manufactured, sold, and/or distributed Occupant Safety Restraint Systems in New York.

(j) Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349(h).

221

**ANSWER:**  The allegations in Paragraph 306 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 306 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 306 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 306 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**307.**    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*.

(a) Defendants agree to, and did in fact, act in restraint of trade or commerce by  affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the  prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in North  Carolina and took efforts to conceal their agreements from Plaintiffs and members of the  Damages Class.

(b) The conduct of the Defendants described herein constitutes consumer-

oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in injuries to purchasers of Occupant Safety Restraint Systems and vehicles, and broad adverse impact on the public at large, and harmed the public interest of North Carolina purchasers in an honest marketplace in which economic activity is conducted in a competitive manner.

(c) Defendants' unlawful conduct had the following effects upon purchasers of Occupant Safety Restraint Systems in North Carolina: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Occupant Safety Restraint Systems or vehicles in North Carolina, were deprived of free and open competition including in North Carolina; and (4) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Occupant Safety Restraint Systems or vehicles in North Carolina, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems including in North Carolina.

(d) During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and purchasers of Occupant Safety Restraint

223

Systems and vehicles. Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. Moreover, Defendants deceptively concealed their unlawful activities by conducting meetings and conversations in secret. (e) During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, marketed, sold and/or distributed Occupant Safety Restraint Systems in North Carolina.

(f) Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**ANSWER:** The allegations in Paragraph 307 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 307

regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 307 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 307 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**308.** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq*.

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct had a substantial

effect on South Carolina commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

**ANSWER:** The allegations in Paragraph 308 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 308 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 308 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 308 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**309.** Defendants have engaged in unfair competition or unfair,

unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq*. (a) Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in Vermont.

(b) Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Occupant Safety Restraint Systems. Defendants owed a duty to disclose such facts, and Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' Occupant Safety Restraint Systems prices were competitive and fair.

(c) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(d) As a direct and proximate result of the Defendants' violations of law,

Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(e) Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Occupant Safety Restraint Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Occupant Safety Restraint Systems at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitute unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**ANSWER:**  The allegations in Paragraph 309 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 309 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 309 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph

309 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

**310.**      Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

**ANSWER:**  Takata incorporates by reference its responses set forth above and adopts the same as though fully set forth herein.

**311.**      Plaintiffs bring this claim under the laws of all states listed in the Second and Third Claims, supra, except California.  Plaintiffs also bring this claim under the laws of Missouri, Illinois, Massachusetts and South Carolina, on behalf of the Plaintiffs who have their primary places of business in those states and the class members in those states.

**ANSWER:**  Takata admits Plaintiffs purport to bring the claims as stated in Paragraph 311.  Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 311 regarding purported class members.   Takata denies the allegations in Paragraph 311 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

312.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Occupant Safety Restraint Systems.

**ANSWER:**  The allegations in Paragraph 312 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 312 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 312 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

313.    Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs or the members of the Damages Class for Occupant Safety Restraint Systems.

**ANSWER:**  The allegations in Paragraph 313 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate

for class certification, and Takata therefore denies all allegations in Paragraph 313 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 313 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata.  Takata denies the allegations in Paragraph 313 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

314.    Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct.  Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

**ANSWER:**  The allegations in Paragraph 314 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 314 regarding purported class members.  Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in

Paragraph 314 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 314 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

315.    Pursuit of any remedies against the firms from whom Plaintiffs and the Class members purchased vehicles containing Occupant Safety Restraint Systems and Occupant Safety Restraint Systems subject to Defendants' conspiracy would have been futile, given that those firms did not take part in Defendants' conspiracy.

**ANSWER:** The allegations in Paragraph 315 call for a legal conclusion to which no response is required, and on that basis Takata denies these allegations. To the extent any response is required, Takata denies that this action is appropriate for class certification, and Takata therefore denies all allegations in Paragraph 315 regarding purported class members. Takata denies that it was involved in the conspiracy as alleged in Plaintiffs' complaint and denies the allegations in Paragraph 315 to the extent they are directed at Takata or intended to reference actions taken by or on behalf of Takata. Takata denies the allegations in Paragraph 315 for lack of knowledge or information sufficient to form a belief as to their truth in all other respects.

To the extent any response to Plaintiffs' "Prayer for Relief" is required, Takata denies all allegations of that section and specifically denies that Plaintiffs, or any other person, are entitled to any relief sought in the complaint or to any other relief sought in this action.

Takata expressly denies all allegations, claims, and other statements contained in the complaint that are not specifically admitted herein and denies that Plaintiffs are entitled to any of the requested relief.

## AFFIRMATIVE AND OTHER DEFENSES TO DEALERSHIP SECOND CONSOLIDATED CLASS COMPLAINT

Takata states the following affirmative and other defenses without assuming the burden of proof for such defenses that would otherwise rest on Plaintiffs:

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Plaintiffs' claims and those of the putative class should be dismissed because the complaint fails to state facts sufficient to plausibly suggest the conspiracy it alleges and also because Plaintiffs fail to state a claim under the relevant laws upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Lack of Injury)

Plaintiffs' claims and those of the putative class should be dismissed because Plaintiffs and/or one or more members of the proposed class have suffered no injury or damages as a result of the matters alleged in the complaint.

## THIRD AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, by the applicable statute(s) of limitations.

## FOURTH AFFIRMATIVE DEFENSE

### (No Fraudulent Concealment)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, because Plaintiffs and/or one of more members of the proposed class may not rely upon the doctrine of fraudulent concealment as they cannot show concealment, actual and reasonable reliance on such affirmative acts of concealment, and/or due diligence in discovery of their claim.

## FIFTH AFFIRMATIVE DEFENSE

### (No Antitrust Injury)

234

Plaintiffs' claims and those of the putative class should be dismissed because Plaintiffs and/or one or more members of the proposed class have not suffered actual, cognizable antitrust injury of the type antitrust laws are intended to remedy.

## SIXTH AFFIRMATIVE DEFENSE

### (Uncertainty of Damages)

Plaintiffs' claims and those of the putative class should be dismissed because the alleged damages sought are too speculative and uncertain, and because of the impossibility of the proof of these alleged damages, and because these alleged damages cannot be practicably ascertained or allocated.

## SEVENTH AFFIRMATIVE DEFENSE

### (Lack of Proximate Cause)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, due to the absence of any injury or damage for which Takata's actions, conduct, or omissions were the proximate cause, including, without limitation, damages suffered due to the acts or omissions of others.

## EIGHTH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

Plaintiffs' claims and those of the putative class for injunctive relief should be dismissed because Plaintiffs and/or one or more members of the proposed class

have available an adequate remedy at law.

## NINTH AFFIRMATIVE DEFENSE

### (Privilege)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, because any action taken by or on behalf of Takata was justified, constituted bona fide business competition, and was taken in pursuit of its own legitimate business and economic interests, and is therefore privileged.

## TENTH AFFIRMATIVE DEFENSE

### (Lack of Standing to Sue for Injuries Alleged)

Plaintiffs' claims and those of the putative class should be dismissed, in whole or in part, to the extent Plaintiffs and/or one or more members of the proposed class lack standing to sue for the injuries alleged in the complaint.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Improper Joinder)

Plaintiffs' claims and those of the putative class are improperly joined within the meaning of Rule 20 of the Federal Rules of Civil Procedure because they did not arise out of the same transaction, occurrence or series of transactions or occurrences, and/or do not involve questions of law or fact common to all Defendants.

## TWELFTH AFFIRMATIVE DEFENSE

### (Due Process)

Plaintiffs' claims and those of the putative class are barred in whole or in part because an award of treble damages or punitive or exemplary damages against Takata based on the alleged conduct would be excessive and, therefore, violate the Due Process Clauses of the Fifth and Fourteenth Amendments of the Constitution of the United States.  In addition, to the extent Plaintiffs' claims would result in Takata paying damages to more than one claimant for the same alleged overcharge, they are barred because such multiple liability would violate rights guaranteed to Takata by the United States Constitution, including, without limitation, rights guaranteed under the Due Process Clause of the Fourteenth Amendment.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Ultra Vires)

Plaintiffs' claims and those of the putative class are barred to the extent that such conduct was committed by any individual acting ultra vires.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Duty to Arbitrate)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that any Plaintiff has an agreement to arbitrate its claims.

## FIFTEENTH AFFIRMATIVE DEFENSE

**(Failure to Mitigate Damages)**

Without admitting liability, Plaintiffs and/or one or more of the members of the proposed class cannot recover damages, in whole or in part, because and to the extent of, their failure to mitigate their alleged damages.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Competition Not Harmed)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, because Takata's actions did not lessen competition in any relevant properly defined market.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Intervening or Superseding Acts of Third Parties)

The damages of Plaintiffs and/or one or more members of the proposed class, if any, resulted from the acts or omissions of third parties over whom Takata had no control or responsibility.   The acts of such third parties constitute intervening or superseding causes of harm, if any, suffered by Plaintiffs and/or one or more members of the proposed class.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Injury or Damages Offset by Benefits Received)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, because any claimed injury or

238

damage has been offset by benefits received by Plaintiffs and/or one or more members of the proposed class with respect to the challenged conduct.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Set Off)

Without admitting that Plaintiffs and/or one or members of the proposed class are entitled to recover damages in this matter, Takata is entitled to set off from any recovery Plaintiffs and/or one or more members of the proposed class may obtain against Takata any amount paid to Plaintiffs and/or one or more members of the proposed class by any other Defendants who have settled, or do settle, Plaintiffs' claims in this matter.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Lack of Jurisdiction)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, because any alleged conduct of Takata occurred outside of the jurisdiction of the Court.  Among other things, the Court lacks subject matter jurisdiction because the claims relate to conduct outside the jurisdiction of the United States and individual states based on the application of the Foreign Trade Antitrust Improvement Act, comity and other principles of law.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

**(Other Defenses Incorporated by Reference)**

Takata adopts and incorporates by reference any and all other additional or affirmative defenses asserted or to be asserted by any other Defendant in this proceeding to the extent that Takata may share in such affirmative defenses.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Failure to Meet Requirements for Class Action)

Plaintiffs' request for class certification is barred because Plaintiffs cannot meet the requirements for class certification under Fed. R. Civ. P. 23 and any applicable state laws.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Personal Jurisdiction)

Takata asserts that, to the extent that Plaintiffs and/or one or more members of the proposed class seek to assert claims outside of the Eastern District of Michigan, such claims should be dismissed and barred for lack of personal jurisdiction.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Venue)

Takata asserts that, to the extent that Plaintiffs and/or one or more members of the proposed class seek to assert claims outside of the Eastern District of Michigan, such claims should be dismissed and barred for improper venue.

240

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Duplicative Recovery)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, because they would constitute duplicative recovery.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Indirect Purchasers Barred)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, by the direct-purchaser requirement of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Commerce Clause/Constitutionality)

Some or all of Plaintiffs' claims and those of the putative class cannot be applied extraterritorially to conduct by Takata without violating the Commerce Clause and Takata's due process rights and equal protection of laws guaranteed by the United States Constitution. Plaintiffs' claims and those of the putative class are barred in whole or in part because an award of treble damages or punitive or exemplary damages against Takata based on the alleged conduct would be excessive and, therefore, violate the Due Process Clauses of the Fifth and Fourteenth Amendments of the Constitution of the United States. In addition, to

the extent Plaintiffs' and those of the putative class claims would result in Takata paying damages to more than one claimant for the same alleged overcharge, they are barred because such multiple liability would violate rights guaranteed to Takata by the United States Constitution, including, without limitation, rights guaranteed under the Due Process Clause of the Fourteenth Amendment.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Waiver, Estoppel, Good Faith, and/or Laches)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, by the doctrines of waiver, good faith, unclean hands, failure to mitigate, estoppel, and/or laches.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Failure to Join)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, for failure to join indispensable parties.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Passed on Injury)

Plaintiffs' claims for damages and those of the putative class are barred, in whole or in part, to the extent that injury or damage alleged in the complaint was absorbed by, passed on to, or incurred by third parties, including direct or indirect purchasers of Occupant Safety Restraint System Products.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Acts of Other Defendants)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because Takata is not liable for the acts of any other Defendant.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Insufficiently Alleged Market)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because the complaint has insufficiently alleged a product and geographic market, and is so vague and ambiguous as to deny Takata notice of the markets alleged by Plaintiffs.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Withdrawal from Alleged Conspiracy)

Without admitting liability, Plaintiffs' claims and those of the putative class are barred, in whole or in part, because to the extent that Takata is deemed to have joined any conspiracy alleged in the complaint, it withdrew from such conspiracy.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

### (Duty to Minimize)

Plaintiffs and/or one or more members of the proposed class had a duty to take reasonable action to minimize any damage, injury, or loss allegedly sustained as a result of the conduct alleged in the complaint, and they are barred from

recovering any damages that might have been reasonably avoided.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

### (Doctrine of Release)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, by the doctrines of release and/or accord and satisfaction.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (Settled Claims)

The claims asserted in the complaint are barred to the extent that they have been settled, compromised, released, or otherwise discharged.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### (Interstate Commerce)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that they are based on alleged acts, conduct, or statements that did not affect interstate commerce.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (Remote Injury)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because the alleged injury is indirect and too remote.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

### (Independent Entities Market)

To the extent any actionable conduct occurred, it occurred by entities independent from and not controlled by Takata.

### FORTIETH AFFIRMATIVE DEFENSE

### (Injunction)

Plaintiffs and/or one or more members of the proposed class have failed to state a claim for injunctive relief insofar as Plaintiffs seek to enjoin alleged events that already have transpired without the requisite showing of threatened harm or continuing harm.

### FORTY-FIRST AFFIRMATIVE DEFENSE

### (Acts or Omissions of Others)

Any damages suffered by Plaintiffs and/or by one or more members of the proposed class were caused, in whole or in part, by the acts or omissions of persons or entities other than Takata, and Takata is entitled to a reduction of the damages, if any, to which it may be liable to the extent such damages were the result of the acts or omissions of persons or entities other than Takata.

### FORTY-SECOND AFFIRMATIVE DEFENSE

### (Tolling)

Plaintiffs' claims and those of the putative class are barred because Plaintiffs cannot prove the requisite elements of fraudulent concealment, equitable estoppel, statutory tolling provisions, or any other theory under which Plaintiffs seek to toll

the applicable statute of limitations.

## FORTY-THIRD AFFIRMATIVE DEFENSE

### (Ratification)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, by reason of Plaintiffs' ratification of, acquiescence in, agreement with, or consent to Takata's conduct, and/or by reason of same by one or more members of the proposed class.

## FORTY-FOURTH AFFIRMATIVE DEFENSE

### (Waiver to Seek Certain Remedies)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, to the extent that they and/or one or more members of the proposed class have waived, under any applicable contract, their rights to seek certain remedies, including but not limited to, treble damages and attorneys' fees.

## FORTY-FIFTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Plaintiffs' claims and those of the putative class should be dismissed to the extent that they are barred, in whole or in part, by the doctrine of unclean hands.

## FORTY-SIXTH AFFIRMATIVE DEFENSE

### (Reservation of Defenses)

Takata has not knowingly or intentionally waived any applicable defenses,

and it reserves the right to assert and rely upon other applicable defenses that may become available or apparent during discovery in this matter. Takata reserves the right to amend or seek to amend its Answer and/or affirmative defenses.

## FORTY-SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Plead Fraud and/or Fraudulent Concealment With Particularity)

Plaintiffs have failed to allege fraud and/or fraudulent concealment with particularity.

## FORTY-EIGHTH AFFIRMATIVE DEFENSE

### (Comparative Fault)

Plaintiffs' claims are barred, in whole or in part, to the extent the injuries alleged in the Complaint, the fact and extent of which are expressly denied by Takata, were directly and proximately caused by or contributed to by the statements, acts or omissions of third persons or entities unaffiliated with Takata.

## FORTY-NINTH AFFIRMATIVE DEFENSE

### (Failure To Exhaust Remedies)

Plaintiffs' claims for unjust enrichment are barred, in whole or in part, because Plaintiffs failed to exhaust all remedies against the parties with whom each plaintiff is in privity.

## FIFTIETH AFFIRMATIVE DEFENSE

### (No Benefit Conferred)

Plaintiffs' claim for unjust enrichment is barred, in whole or in part, because Plaintiffs did not confer a benefit on Takata.

## FIFTY-FIRST AFFIRMATIVE DEFENSE

### (No Retention of Benefit)

Plaintiffs' claim for unjust enrichment is barred, in whole or in part, because Takata did not retain any benefit allegedly conferred on it by Plaintiffs.

## FIFTY-SECOND AFFIRMATIVE DEFENSE

### (No Unjust Retention of Benefit)

Plaintiffs' claim for unjust enrichment is barred, in whole or in part, because any alleged retention of a benefit conferred by Plaintiffs on Takata was not unjust.

## FIFTY-THIRD AFFIRMATIVE DEFENSE

### (Dependent on Other Flaws)

Plaintiffs' claim for unjust enrichment is barred, in whole or in part, because Plaintiffs' claim is dependent on the allegations supporting their state law antitrust claims and thus suffers from the same flaws that preclude Plaintiffs from stating an antitrust claim.

## FIFTY-FOURTH AFFIRMATIVE DEFENSE

### (No Privity)

Plaintiffs' claim for unjust enrichment is barred, in whole or in part, because Plaintiffs do not and cannot allege that privity exists between Plaintiffs and Takata.

248

## FIFTY-FIFTH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

Plaintiffs' claim for unjust enrichment is barred, in whole or in part, because to the extent that Plaintiffs succeed on their statutory claims, Plaintiffs have an adequate remedy at law.

## FIFTY-SIXTH AFFIRMATIVE DEFENSE

### (Consideration Given)

Plaintiffs' claim for unjust enrichment is barred, in whole or in part, because Takata gave consideration.

## FIFTY-SEVENTH AFFIRMATIVE DEFENSE

### (No Pass Through)

Plaintiffs' antitrust claims under the laws of California, New Mexico, Hawaii, the District of Columbia, and any other applicable state claims for any illegal overcharge are barred, in whole or in part, to the extent that such overcharge, the existence of which Takata expressly denies, was absorbed, in whole or in part, by others, and was not passed through to plaintiffs or passed on by plaintiffs to other parties, so as to avoid the duplication of recovery of compensatory damages.

## FIFTY-EIGHTH AFFIRMATIVE DEFENSE

### (Alleged Conduct Was Not Consumer-Oriented)

249

Plaintiffs' antitrust claim under the law of New York should be dismissed to the extent that it is barred, in whole or in part, because Defendants' alleged conduct was not 'consumer-oriented' within the meaning of N.Y. Gen. Bus. Law § 349.

## FIFTY-NINTH AFFIRMATIVE DEFENSE

### (No Fraudulent Concealment)

Plaintiffs' antitrust claims under the laws of Iowa, Michigan, Minnesota, Mississippi, New Hampshire, North Carolina, North Dakota, South Dakota, Tennessee, and West Virginia and consumer protection claims under the laws of Arkansas and Florida, and any other applicable state claims should be dismissed to the extent that they are barred, in whole or in part, because plaintiffs may not rely upon the doctrine of fraudulent concealment as they cannot show concealment, actual and reasonable reliance on such affirmative acts of concealment, or due diligence in discovery of their claim.

## SIXTIETH AFFIRMATIVE DEFENSE

### (Duplicative Recovery)

Plaintiffs' antitrust claims under the laws of Arizona, Minnesota, Wisconsin, and any other applicable state claims should be dismissed to the extent that they are barred, in whole or in part, because they would constitute duplicative recovery in violation of applicable law.

## SIXTY-FIRST AFFIRMATIVE DEFENSE

### (No Actionable Conduct)

Plaintiffs' antitrust claim under Wisconsin law should be dismissed to the extent that it is barred, in whole or in part, because no actionable conduct occurred within the state of Wisconsin and no alleged conduct had a substantial effect on the people of Wisconsin.

## SIXTY-SECOND AFFIRMATIVE DEFENSE

### (No Substantial Effects)

Plaintiffs' antitrust claims under the laws of North Carolina, Tennessee, Wisconsin, and any other applicable state claims should be dismissed to the extent that they are barred, in whole or in part, because the conduct complained of did not have a substantial effect commerce within those states.

## SIXTY-THIRD AFFIRMATIVE DEFENSE

### (No Effect on Minnesota Commerce)

Plaintiffs' antitrust claim under Minnesota law should be dismissed to the extent that it is barred, in whole or in part, by Minn. Stat. § 325D.54, as no contract combination or conspiracy was created, formed, or entered into within the state of Minnesota nor did any contract combination or conspiracy that was allegedly created, formed, or entered into elsewhere affect commerce within the state of Minnesota.

## SIXTY-FOURTH AFFIRMATIVE DEFENSE

### (Acts Not Flagrant)

Plaintiffs' request for treble damages under the Arizona Antitrust Act, Arizona Revised Statutes, §§ 44-1401, et seq., is barred on the ground that the alleged violations of that act are not flagrant.

## SIXTY-FIFTH AFFIRMATIVE DEFENSE

### (No Intrastate Commerce)

Plaintiffs' antitrust claims under the laws of California, Mississippi, Tennessee, and any other applicable state claims, should be dismissed because the claims do not involve intrastate commerce within those states as required by the applicable state statutes.

## SIXTY-SIXTH AFFIRMATIVE DEFENSE

### (No Class Action)

Plaintiffs' antitrust claim under Mississippi and Illinois law, consumer protection claim under South Carolina law, and any other applicable state claims, should be dismissed because class actions are barred under the applicable state laws.

## SIXTY-SEVENTH AFFIRMATIVE DEFENSE

### (Indirect Purchasers Barred)

Plaintiffs' antitrust claims under New Hampshire law should be dismissed

because plaintiffs are indirect purchasers and indirect purchaser antitrust claims are barred under New Hampshire law.

## SIXTY-EIGHTH AFFIRMATIVE DEFENSE

### (Damages Not Recoverable)

Plaintiffs' claims under the Florida Deceptive & Unfair Trade Practices Act are barred to the extent that Plaintiffs seek to recover punitive, special, consequential, statutory, nominal, or incidental damages.

## SIXTY-NINTH AFFIRMATIVE DEFENSE

### (Other Defenses Incorporated)

Takata incorporates all affirmative defenses alleged for any and all claims that are the predicate claims for any unlawful conduct claim brought by Plaintiffs under California Business & Professions Code Section 17200, *et seq.*

## SEVENTIETH AFFIRMATIVE DEFENSE

### (Not Deceptive)

To the extent that Plaintiffs' claim of a violation of California Business & Professions Code Sections 17200, *et seq.*, is based on any allegedly fraudulent conduct, Plaintiffs' claim is barred because the conduct was not likely to deceive and/or was mere puffing.

## SEVENTY-FIRST AFFIRMATIVE DEFENSE

### (Federalism)

Plaintiffs' state-law claims and those of the putative class are barred, in whole or in part, by the principle of federalism.

## SEVENTY-SECOND AFFIRMATIVE DENSE

### (No Intrastate Commerce)

Plaintiffs' state-law claims and those of the putative class are barred, in whole or in part, because, to the extent the alleged, unlawful conduct occurred predominantly or entirely outside the state at issue and/or predominantly outside the United States, and did not involve intrastate commerce.

## SEVENTY-THIRD AFFIRMATIVE DEFENSE

### (No Effect on People or Commerce in State)

Plaintiffs' state-law claims and those of the putative class are barred, in whole or in part, because the alleged conduct did not substantially affect the people or commerce of the respective states at issue.

## SEVENTY-FOURTH AFFIRMATIVE DEFENSE

### (No Application of State Laws to Class-Actions)

Some or all of the respective state laws at issue cannot be, and were not intended to be, applied in the class-action context.

## SEVENTY-FIFTH AFFIRMATIVE DEFENSE

### (Not Efficient Enforcers)

Plaintiffs are not efficient enforcers of the antitrust laws and other laws at

issue.

## SEVENTY-SIXTH AFFIRMATIVE DEFENSE

### (Lawful and Legitimate Business)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because any and all of Takata's conduct challenged by Plaintiffs was lawful, justified and pro-competitive; constituted a bona fide business practice consistent with the industry carried out in furtherance of legitimate business interests; and was an essential part of Takata's lawful business operations.

## SEVENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Not Consumer Oriented)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because Takata's alleged conduct was not "consumer oriented."

## SEVENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Benefits Outweigh Harm)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because the benefits of the alleged conduct outweigh any possible harm, including, without limitation, harm to competition.

## SEVENTY-NINTH AFFIRMATIVE DEFENSE

### (Economic Loss Doctrine)

Plaintiffs' claims and those of the putative class are barred, in whole or in

part, by the economic loss doctrine, because Plaintiffs did not suffer any personal injury or property damage.

## EIGHTIETH AFFIRMATIVE DEFENSE

### (Not for Personal, Family or Household Purposes)

Plaintiffs' claims under applicable state laws are barred, in whole or in part, because Plaintiffs did not purchase any relevant products primarily for personal, family or household purposes.

## EIGHTY-FIRST AFFIRMATIVE DEFENSE

### (No Private Right of Action)

Some or all of Plaintiffs' state-law claims are barred, in whole or in part, because there is no private right of action to bring such claims. For instance, and without limitation, there is no private right of action for injunctive relief arising under the Arkansas Deceptive Trade Practices Act.

## EIGHTY-SECOND AFFIRMATIVE DEFENSE

### (Failure to Define a Market)

Plaintiffs and any putative class members are barred from recovery of any damages because the Complaint fails to allege sufficiently or properly define any market for the purpose of asserting a claim against Takata.

## EIGHTY-THIRD AFFIRMATIVE DEFENSE

### (FTAIA)

256

Plaintiffs' claims are barred, in whole or in part, by the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a.

## EIGHTY-FOURTH AFFIRMATIVE DEFENSE

### (Not Flagrant)

Plaintiffs' request for treble damages under the Michigan Antitrust Reform Act, MCL 445.771, *et seq.*, is barred on the ground that the alleged violations of that Act are not flagrant.

## EIGHTY-FIFTH AFFIRMATIVE DEFENSE

### (No Treble Damages)

Plaintiffs' claims under the Mississippi Antitrust Act for treble damages and attorneys' fees are barred because treble damages and attorneys' fees may not be recovered under said statute.

## EIGHTY-SIXTH AFFIRMATIVE DEFENSE

### (No Affirmative False Statements)

Plaintiffs' claims under the New Mexico Unfair Practices Act are barred because plaintiffs have not alleged that Takata made any affirmative false statements with regard to the costs or pricing of the parts at issue.

## EIGHTY-SEVENTH AFFIRMATIVE DEFENSE

### (Full and Adequate Remedy at Law)

Plaintiffs cannot seek equitable relief under Nevada law, because such

claims are barred, in whole or in part, to the extent that plaintiffs possess a full and adequate remedy at law.

## EIGHTY-EIGHTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

Plaintiffs lack standing to assert antitrust claims under Hawaii and North Dakota law because no named plaintiff resides in those states.

## EIGHTY-NINTH AFFIRMATIVE DEFENSE

### (Plaintiffs Are Not Consumers)

Plaintiffs may not maintain their consumer protection claim under District of Columbia law because they are not consumers.

## NINETIETH AFFIRMATIVE DEFENSE

### (No Retroactive Claim)

Plaintiffs' antitrust claims under New Hampshire and Utah law fail, in whole or in part, because they may not assert damages for alleged conduct that pre-dates the enactment of the respective statutes.

## NINETY-FIRST AFFIRMATIVE DEFENSE

### (Benefit of the Bargain)

Plaintiffs' claims and those of the putative class are barred in whole or in part because they accepted the benefit of the bargain.

## NINETY-SECOND AFFIRMATIVE DEFENSE

**(Motion to Dismiss)**

Takata incorporates by reference any affirmative defenses to Plaintiffs' state law claims that it made in Defendants' Collective Motion to Dismiss End-Payors' Consolidated Amended Class Action Complaint and the Automobile Dealers' Consolidated Class Complaint (Oct. 21, 2013).

## NINETY-THIRD AFFIRMATIVE DEFENSE

### (Order on Motion to Dismiss)

Plaintiffs' claims are barred, in whole or in part, to the extent they are inconsistent with Judge Battani's Opinion and Order Granting in Part and Denying in Part Defendants' Collective Motion to Dismiss Indirect Purchaser Actions (Sept. 25, 2014).

## NINETY-FOURTH AFFIRMATIVE DEFENSE

### (No Harm to Competition)

Plaintiffs' claims and those of the putative class are barred, in whole or in part, because the alleged conduct did not cause harm to competition with respect to the Plaintiffs' class.

## PRAYER FOR RELIEF

**WHEREFORE**, Takata prays as follows:

1.   That this suit be determined unable to be maintained as a class action;

2.      That this action be dismissed with prejudice and that Plaintiffs take nothing by their complaint;

3.      That judgment be entered in favor of Takata and against Plaintiffs with respect to the causes of action asserted in the complaint;

4.      That Plaintiffs take nothing by the complaint;

5.      That the Court award Takata reasonable costs and expenses, including, but not limited to, attorneys' fees and costs of defense; and

6.      That the Court award such other relief as may be appropriate.

## JURY DEMAND

Takata admits that Plaintiffs purport to request a trial by jury for all of the claims asserted in the complaint so triable.  Pursuant to the Seventh Amendment and Rule 38(b) of the Federal Rules of Civil Procedure, Takata demands a trial by jury of all issues so triable.

Dated: December 22, 2014                    Respectfully submitted,


By: /s/ Robert J. Wierenga
Robert J. Wierenga (P59785)
Suzanne L. Wahl (P71364)
**Schiff Hardin LLP**
340 S. Main Street, Suite 210
Ann Arbor, MI  48104

260

734-222-1500
Fax: 734-222-1501
rwierenga@schiffhardin.com
swahl@schiffhardin.com

David M. Zinn
John E. Schmidtlein
Samuel Bryant Davidoff
**Williams & Connolly LLP**
725 Twelfth Street, N.W. Washington, DC 20005
 202-434-5000
Fax: 202-434-5029
dzinn@wc.com
jschmidtlein@wc.com
sdavidoff@wc.com

*Counsel for Defendants Takata Corporation and TK Holdings Inc.*

261

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2014 a copy of the foregoing was filed with
the Court using the ECF system which will send notification of such filing to all
attorneys of record.


By: /s/ Robert W. Wierenga

Robert W. Wierenga