IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 |
|  | : : | Case No. 12-cv-00102 Case No. 12-cv-00202 |
| PRODUCT(S): | : : : | Case No. 12-cv-00302 Case No. 12-cv-00602 Case No. 13-cv-00702 |
| AUTOMOTIVE WIRE HARNESSES; INSTRUMENT PANEL CLUSTERS; FUEL SENDERS; OCCUPANT SAFETY RESTRAINT SYSTEMS; SWITCHES; STEERING ANGLE SENSORS; HID BALLASTS, ALTERNATORS, STARTERS, IGNITION COILS, MOTOR GENERATORS, INVERTERS, AIR FLOW METERS, FUEL INJECTION SYSTEMS, VALVE TIMING CONTROL DEVICES, ELECTRONIC THROTTLE BODIES, RADIATORS, AND ATF WARMERS | : : : : : : : : : : : : : : | Case No. 13-cv-01002 Case No. 13-cv-01102 Case No. 13-cv-01302 Case No. 13-cv-01402 Case No. 13-cv-01502 Case No. 13-cv-01602 Case No. 13-cv-01702 Case No. 13-cv-01802 Case No. 13-cv-02002 Case No. 13-cv-02202 Case No. 13-cv-02402 Case No. 13-cv-02502 Case No. 13-cv-02602 |
| This Document Relates to: ALL DEALERSHIP ACTIONS | : : : : | Hon. Marianne O. Battani |

**Automobile Dealership Plaintiffs' Motion to Authorize Dissemination of Class Notice and to Conduct Hearing for Final Approval of Settlements and Application <u>for Interim Expenses, Attorneys' Fees, and Service Awards</u>**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Automobile Dealership Plaintiffs move the Court for approval to disseminate class notice for a series of preliminarily approved settlements (the "Settlements") and to conduct a hearing for final approval of the Settlements and an application for an interim award of expenses, attorneys' fees, and class representative service awards.

1

In support of this Motion, Automobile Dealership Plaintiffs rely upon and incorporate by reference herein the facts and legal arguments set forth in the accompanying Memorandum of Law and the Declaration of Alan Vasquez.

The Automobile Dealership Plaintiffs and settling Defendants do **not** request a hearing for this motion. The settling Defendants do not oppose this motion and consent to the entry of the proposed order.

Dated: August 25, 2015               Respectfully submitted,

/s Gerard Mantese
Gerard V. Mantese
(Michigan Bar No. P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com

*Interim Liaison Counsel for Dealership Plaintiffs*

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
**CUNEO, GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com

2

Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834-2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

*Interim Co-Lead Class Counsel for Dealership Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : : : | Master File No. 12-md-02311 |
| | : | Case No. 12-cv-00102 |
| | | Case No. 12-cv-00202 |
| PRODUCT(S): | : | Case No. 12-cv-00302 |
| | : | Case No. 12-cv-00602 |
| | : | Case No. 13-cv-00702 |
| AUTOMOTIVE WIRE HARNESSES; | : | Case No. 13-cv-01002 |
| INSTRUMENT PANEL CLUSTERS; | : | Case No. 13-cv-01102 |
| FUEL SENDERS; OCCUPANT SAFETY | : | Case No. 13-cv-01302 |
| RESTRAINT SYSTEMS; SWITCHES; | : | Case No. 13-cv-01402 |
| STEERING ANGLE SENSORS; HID | : | Case No. 13-cv-01502 |
| BALLASTS, ALTERNATORS, | | Case No. 13-cv-01602 |
| STARTERS, IGNITION COILS, MOTOR | | Case No. 13-cv-01702 |
| GENERATORS, INVERTERS, AIR | | Case No. 13-cv-01802 |
| FLOW METERS, FUEL INJECTION | | Case No. 13-cv-02002 |
| SYSTEMS, VALVE TIMING CONTROL | | Case No. 13-cv-02202 |
| DEVICES, ELECTRONIC THROTTLE | | Case No. 13-cv-02402 |
| BODIES, RADIATORS, | | Case No. 13-cv-02502 |
| AND ATF WARMERS | | Case No. 13-cv-02602 |

| | | |
|---|---|---|
| | : | |
| This Document Relates to: | : | Hon. Marianne O. Battani |
| | : | |
| ALL DEALERSHIP ACTIONS | : | |

**Memorandum in Support of Dealership Plaintiffs' Motion to Authorize Dissemination of Class Notice and to Conduct Hearing for Final Approval of Settlements and Application for Interim Expenses, <u>Attorneys' Fees, and Service Awards</u>**

The Automobile Dealership Plaintiffs ("Dealership Plaintiffs") respectfully submit this Memorandum in support of their motion seeking Court approval to disseminate class notice for a series of preliminarily approved settlements (the "Settlements") in the various cases noted above and to conduct a hearing for final approval of the Settlements and an application for an interim award of expenses, attorneys' fees, and class representative service awards.

1

With the Court's consent, the Dealership Plaintiffs deferred providing notice of the Settlements to class members because the Settlements initially involved a relatively small number of parts and Defendants in only certain of the cases within 12-md-02311. The interests of economy were better served by deferring notice and final approval until more settlements were reached. The aggregate Settlements now warrant the Dealership Plaintiffs' request to issue notices in these cases at this time. Dealership Plaintiffs believe that notice should be issued and the final approval process should be started.

Dealership Plaintiffs move the Court to approve the form and plan for dissemination of notice to the Dealership Plaintiff settlement classes. At a final approval hearing, the Dealership Plaintiffs will ask the Court to consider: (1) the fairness, reasonableness, and adequacy of the Settlements; (2) a request for an interim reimbursement of incurred litigation expenses; (3) a request for the establishment of an interim litigation expense fund for future costs; (4) a request for an interim award of attorneys' fees; and (5) a request for service awards for the named Dealership Plaintiffs.

## Pertinent Procedural History

**A.     Automobile Dealership Settlements with Certain Defendants.**

On February 18, 2014, the Court granted preliminary approval to the Dealership Plaintiffs' settlement with Nippon Seiki Company Ltd., N.S. International, Ltd., and New Sabina Industries, Inc. and provisionally certified a settlement class. [Case No. 12-cv-00202, ECF No. 79].

On July 8, 2014, the Court entered: (1) an order granting preliminary approval to the Dealership Plaintiffs' settlement with Lear Corporation and provisionally certifying a settlement class [Case No. 12-cv-00102, ECF No. 178], (2) an order granting preliminary approval to the Dealership Plaintiffs' settlement with Kyungshin-Lear Sales and Engineering, LLC and provisionally certifying a settlement class [Case No. Case No. 12-cv-00102, ECF No. 178], and (3) an order granting

preliminary approval to Dealership Plaintiffs' settlement with Autoliv, Inc., Autoliv ASP, Inc., AutoLiv B.V. & Co. KG, Autoliv Safety Technology, Inc., and Autoliv Japan Ltd. and provisionally certifying a settlement class [Case No. 12-cv-00602, ECF No. 73].

On October 10, 2014, the Court entered (1) an order granting preliminary approval to the Dealership Plaintiffs' settlement with Yazaki Corporation and Yazaki North America, Incorporated and provisionally certifying three settlement classes [Case No. 12-cv-00102, ECF No. 212; Case No. 12-cv-00202, ECF No. 112; and Case No. 12-cv-00302, ECF No. 127] and (2) an order granting preliminary approval to the Dealership Plaintiffs' settlement with TRW Automobile Holdings Corp. (now known as ZF TRW Automotive Holdings Corp.) and TRW Deutschland Holding GmbH and provisionally certifying a settlement class [Case No. 12-cv-00602, ECF No. 80].

On April 10, 2015, the Court entered an order granting preliminary approval to the Dealership Plaintiffs' settlements with Panasonic Corporation and Panasonic Corporation of North America and provisionally certifying three settlement classes [Case No. 13-cv-01302, Case No. 13-cv-01602, Case No. 13-cv-01702; ECF No. 116]. On April 19, 2015, the Court entered an order granting preliminary approval to the Dealership Plaintiffs' settlements with Hitachi Automotive Systems, Ltd. and provisionally certifying nine settlement classes. [Case No. 13-cv-002002, Case No. 13-cv-00702, Case No. 13-cv-01102, Case No. 13-cv-01402, Case No. 13-cv-01502, Case No. 13-cv-01802, Case No. 13-cv-02202, Case No. 13-cv-02502, Case No. 13-cv-02602; ECF No. 21].

On August 7, 2015, Dealership Plaintiffs filed an unopposed motion seeking preliminary approval to the Dealership Plaintiffs' settlement with T.RAD Co., Ltd. and T.RAD North America, Inc. and seeking provisional certification of two settlement classes. [Case No. 13-cv-01002, Case No. 13-cv-02402; ECF No. 81]. On August 24, 2015, Dealership Plaintiffs filed an unopposed motion seeking preliminary approval of the Dealership Plaintiffs' settlement with Fujikura Ltd. and

Fujikura Automotive America LLC. and seeking provisional certification of a settlement class. [Case No. 12-cv-00102; ECF No. 336.][1]

For each of the foregoing Settlements, the Court approved the Dealership Plaintiffs' proposal to defer providing notice until a later time. The size and number of settlements between Dealership Plaintiffs and the settling Defendants in these actions now make it appropriate to commence the notice process under Rule 23(c)(2)(B) and to conduct a final approval hearing for the Settlements.

**B.    Plan for Dissemination of Notice to Potential Members of the Settlement Classes.**

The Settlements provide cash benefits to dealerships that purchased certain parts and/or purchased vehicles containing those parts in jurisdictions that the Dealership Plaintiffs contend allow antitrust indirect purchasers to seek money damages: Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (the "Included States"). Through a class action notice consultant, mailing addresses for approximately 20,000 potential dealer class members in the Included States have been identified. (See Declaration of Allen Vasquez.) Similarly, the notice consultant obtained a list of approximately 192,000 email addresses associated with dealerships in the Included States. (Id.)

To provide notice of these Settlements to potential class members, Dealership Plaintiffs propose a multi-faceted notice program intended to provide the best notice practicable under the

---

[1] The provisionally certified settlement classes are referred to collectively as "the Settlement Classes."

circumstances. Dealership Plaintiffs retained Gilardi & Co., an experienced class-notice consultant, to design and implement the notice plan. Gilardi & Co. has proposed a notice plan that includes:

- Direct mail notice to approximately 20,000 postal addresses of dealerships potentially eligible for money benefits under the Settlements;

- Email notice to approximately 192,000 email addresses associated with dealerships potentially eligible for money benefits under the Settlements;

- Published notice in magazines like *Ward's AutoWorld*, *Automotive News*, and *Auto Dealer Monthly* and digital media designed to target new car automobile dealerships nationwide;

- Online media efforts through outlets like Facebook and Twitter; and

- Earned media efforts through a national press release and the settlement web site, www.AutoDealerSettlement.com

(See Vasquez Decl.) This comprehensive notice plan will reach more than 95 percent of the potential class members in the Included States. (*Id.*)

**Argument**

**I.      The Court Should Approve the Form and Manner of Notice to the Automobile Dealer Settlement Class Members.**

Fed. R. Civ. P. 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." For Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

**A.      Notice Standards and Requirements.**

The purpose of notice in a class action is to "afford members of the class due-process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,

173-74 (1974)). Due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the action, and affording them the opportunity to opt out or object. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. See *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548-53 (N.D. Ga. 1992); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.311, at 288 (2004) ("MANUAL"). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standard imposed by due-process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975). Each class member need not receive actual notice for the due-process standard to be met, "so long as class counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D. N.Y. 1996).

Where names and addresses of known or potential class members are reasonably available, direct-mail notice should be provided. *See, e.g., Eisen*, 417 U.S. at 175-76; MANUAL, § 21.311, at 292. If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due-process clause and Rule 23. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950); *Carlough v. Amchem Prods.*, 158 F.R.D. 314, 325 (E.D. Pa. 1993).

Due process is satisfied even if all class members do not receive actual notice, as long as the plan was reasonably likely to inform the persons affected. *See, e.g., Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir. 1988). Whether a notice dissemination plan is reasonable is a function of the plan's anticipated results. *In re Domestic Air Transp.*, 141 F.R.D. at 539; see also *Berland v. Mack*, 48 F.R.D. 121, 129-30 (S.D.N.Y. 1969).

6

### B. The Proposed Manner of Notice Satisfies the Requirements of Fed. R. Civ. P. 23(c)(2)(B) and (e)(1).

Dealership Plaintiffs propose providing notice through several different channels. Individual notice (the "Postal Notice" Exhibit 1 to the Proposed Order) will be mailed to the more than 20,000 known postal addresses associated with current and former dealerships in the Included States. The Postal Notice will direct recipients to a settlement website ("Settlement Website") for additional information. (See Ex. 1.)

A summary form of notice (the "Email Notice," Exhibit 2 to the Proposed Order) will be sent by email to approximately 192,000 email addresses associated with dealers in the Included States. (See Ex. 2). The Email Notice will direct recipients to the Settlement Website for additional information. A summary notice (the "Publication Notice") will be published in: (1) two insertions in *Ward's AutoWorld*, (2) a single insertion in *Automotive News*, and (3) a single insertion in *Auto Dealer Monthly*. (Vasquez Decl.) The content of the Publication Notice will be the same as the Email Notice and will direct readers to the Settlement Website for further information. (*Id.*) A press release on a national newswire will be issued, directing readers to the Settlement Website for additional information. (*Id.*)

The Settlement Website will provide the definitions of the Settlement Classes, a detailed description of the Settlements, the settlement agreements, and the long-form Postal Notice (Ex. 1) that describes the options for participating in, seeking exclusion from, or objecting to the Settlements. The Settlement Website will also display, as the relevant information becomes available: (1) information about the proposed methods for allocating the settlement funds (the "Plans of Allocation"); (2) deadlines and Proof of Claim forms; (3) relevant court documents and filings; and (4) updates on the status of Court approval. The notices and the Settlement Website will also provide a toll-free telephone number that can be called for assistance or more information. (See Ex. 1 & 2).

To further supplement the Postal, Email, and Publication notices, online notice efforts will also be used. For example, banner ads prominently displaying the address of the Settlement Website will run in *Ward's* e-newsletter, which is distributed to 33,000 automobile dealer professionals throughout the United States. (Vasquez Decl.) Gilardi & Co. will also maintain Facebook and Twitter accounts to further publicize the Settlements and the Settlement Website. (*Id.*)

The methods of notice proposed here are the best available under the circumstances. The proposed methods are well-designed to reach potential Settlement Class members and to comply with due process. Nearly all potential Settlement Class members in the Included States will receive direct, mailed notice. The more than 95 per cent "reach" for these potential class members far exceeds due process requirements. *See, e.g.*, *Larson v. Sprint Nextel Corp.*, No. 07-5325, 2009 WL 1228443, at *11 (D. N.J. April 30, 2009). The "reach" of the notice proposed here far exceeds notice reach approved in other cases. *Id.* at *12. ("No case stands for the proposition that a publication notice reach of 49-53 percent is disallowed."). The Court should preliminarily approve the Dealership Plaintiffs' proposed notice plan and should allow the notice process to begin.

  **C.** **The Proposed Form of Notice Satisfies the Requirements of Fed. R. Civ. P. 23(c)(2)(B) and (e)(1).**

The content of a class action settlement notice "must clearly and concisely state in plain, easily understood language" seven types of information: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

The long form Postal Notice and short-form Email and Publication Notices are drafted in the "plain language" format preferred by federal courts and provide the information required by

8

Rule 23. (See Vasquez Decl.) The notices were drafted with assistance from Gilardi & Co., a well-regarded class action notice expert. Gilardi & Co. believes that these notices are understandable and compliant with due process. (*Id.*) The notices satisfy the content requirements of Federal Rule of Civil Procedure 23. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 496 (D.N.J. 1997); MANUAL at § 21.633.

At final approval, the Dealership Plaintiffs will show that the form and content of the notices, together with the manners of dissemination, were reasonably calculated to reach the members of the Settlement Classes and were the best form of notice available under the circumstances, in satisfaction of federal law and due process

## II.     The Proposed Notices Provide Class Members With Sufficient Information About the Details of the Settlements.

The notice plan also provides potential members of the Settlement Classes with information about the benefits available under the Settlements, their options, and the attorneys' fees, costs, and service awards that may be requested at final approval.

Counsel for the Dealership Plaintiffs will seek reimbursement of certain of the litigation expenses already incurred during the course of the litigation of the cases involved in the Settlements. *See, e.g.*, Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorneys' fees and untaxable costs that are authorized by law or by the parties' agreement."); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ("Under the common fund doctrine, class counsel are entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." (Citation and internal quotation marks omitted.)).

The full Postal Notice provides notice that counsel for the Dealership Plaintiffs will also request that they be permitted to use a portion of the Settlements to create a fund to pay future

9

expenses incurred in the ongoing litigation against the non-settling Defendants.[2] This Court has already granted a similar request by the Direct Purchasers to establish a fund to pay future litigation expenses and allowing a portion of the settlement funds to be used for future expenses is well-accepted. *See*, *e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 717519, at *13-14 (E.D. Mich. Feb. 22, 2011) (approving class counsel's request to use up to $750,000 of proceeds from early settlement to pay litigation expenses); *see also* MANUAL at § 13.21 ("[p]artial settlements may provide funds needed to pursue the litigation . . . .").

Counsel for the Dealership Plaintiffs will request that up to 6 percent be set aside from the Settlements and used to fund future litigation expenses in the cases that continue against non-settling Defendants. Granting such a request is well within the court's authority. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp.2d 631, 643 (E.D. Pa. 2003) (concluding that a partial "settlement provides class plaintiffs with an immediate financial recovery that ensures funding to pursue the litigation against the non-settling defendants"); see also *Newby v. Enron Corp.*, 394 F.3d 296, 302-03 (5th Cir. 2004) (affirming establishment of a $15 million litigation expense fund from the proceeds of a partial settlement); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) (approving class counsel's request for $500,000 set aside to pay outstanding and future litigation costs); *In re WorldCom, Inc. Sec. Litig.*, 02-civ-3288 (DLC), 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12, 2004) (creating a $5 million fund for the continuation of litigation against non-settling defendants).

The notice plan will also advise Settlement Class members that information about the Plans of Allocation of the proceeds of the Settlements will be published on the Settlement Website before the date that a decision about whether to participate in these Settlements must be made. Dealership Plaintiffs do not yet ask the Court to approve the Plans of Allocation and the Court may grant final

---

[2] This fund will only be used in the parts cases in which the Settlements have been reached.

approval before approving a plan of allocation. *See, e.g.*, MANUAL § 21.312 ("Often . . . the . . . details of allocation and distribution are not established until after the settlement is approved."); *In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155379, at *3 (E.D. Tenn. May 17, 2013) (district court gave final approval to a settlement without a plan of allocation, noting that "[o]nce the claim processing procedure is completed, plaintiffs will submit a proposed plan of allocation of the settlement proceeds for the Court's approval"); *Packaged Ice*, 2011 WL 717519, at *2, *17 (E.D. Mich. Feb. 22, 2011) ("[c]lass Counsel explained at the Fairness Hearing that the final plan of allocation was not included in the original Notice in part because of the potential for additional settlements with other Defendants which may affect the final plan of allocation," and finally approving the settlements that were presented, retaining jurisdiction to, among other things, "enter[] any Orders or conducting any hearings in connection with any final plan of distribution or claims submission process . . . ."); *see also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987) ("To impose an absolute requirement that a hearing on the fairness of a settlement follow adoption of a distribution plan would immensely complicate settlement negotiations and might so overburden the parties and the district court as to prevent either task from being accomplished."); *In re Washington Public Power Supply System Sec. Litig.*, [1989 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 94,326, at 92,143, 1988 WL 158947 (W.D. Wash. July 28, 1988) ("Such deferral of allocation decisions is routinely followed in partial settlements where the appropriate allocation among class members can best be determined when further settlements have been achieved or the litigation is completely resolved.").

Information about how the settlement money will be allocated through the Plans of Allocation will be published and submitted before the final approval hearing. Dealership Plaintiffs have engaged Stuart A. Rosenthal, an attorney with extensive experience representing dealers, to assist in devising the Plans of Allocation. Mr. Rosenthal spent more than 19 years as Vice President,

11

Legal Affairs and General Counsel for the Greater New York Automobile Dealers Association, an association of 400 franchised new car dealers in the twelve downstate counties of New York. He is currently in private practice and continues to represent new car dealers. Mr. Rosenthal will help decide how the Plans of Allocation will determine how the proceeds of the Settlements will be allocated to (1) dealers who purchased vehicle models that were subject to alleged collusion on bids for component parts, (2) dealers who purchased vehicles from manufacturers of vehicles allegedly affected by collusion on bids for component parts, (3) dealers who purchased allegedly affected component parts manufactured by the Settling Defendants or their alleged co-conspirators, and (4) a reserve fund for future allocation and distribution to eligible Settlement Class members.

Class representatives are "an essential ingredient of any class action" and incentive awards are appropriate to induce a business or consumer to participate in worthy class action lawsuits. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 2008). "Such "[i]ncentive awards serve an important function, particularly where the named plaintiffs participated actively in the litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (*citing Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 2005 WL 388562, at *31 (S.D.N.Y. Feb. 18, 2005)).

The notice plan advises Settlement Class members that interim service awards will be requested for the automobile dealerships that have served as class representatives in these cases. These dealerships have already sustained a significant discovery burden and will continue to face depositions and additional document discovery for a considerable period of time. An award from the Court recognizing the class representatives' efforts will be appropriate. *See In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *5 (E.D. Mich. Jan. 20, 2015) (in a $19 million settlement, award of $50,000 to each class representative); *In re Skelaxin Antitrust Litig.*, No. 12–cv–83, 2014 WL 2946459 (E.D. Tenn. June 30, 2014) (settlement of direct purchaser pharmaceutical antitrust action, awarding $50,000 to each class representative); *Connectivity Systems Inc. v. National City*

*Bank*, 2011 WL 292008, at *20 (S.D. Ohio Jan. 26, 2011) (in $10 million settlement, awarding $50,000 each to three named plaintiffs); *Liberte Capital Group v. Capwill*, 2007 WL 2492461, at *3 (N.D. Ohio Aug. 29, 2007) (awarding $97,133.83 and $95,172.47 to two named plaintiffs representing subclasses that received $11 million and $7 million); *Hainey v. Parrott*, No. 1:02–cv–733, 2007 WL 3308027 (S.D. Ohio Nov. 6, 2007) (approving service award of $50,000 for each class representative); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535-36 (E.D. Mich.2003) (awarding $75,000 to each class representative); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913–14 (S.D. Ohio 2001) (granting a $50,000 service award out of a $5.25 million fund); *In re Revco Sec. Litig.*, 1992 WL 118800, *7 (N.D. Ohio May 6, 1992) ($200,000 incentive award to named plaintiff); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards of $50,000 to six class representatives out of a settlement fund of $56.6 million).

The notice plan also provides notice of counsel for the Dealership Plaintiffs' intent to request an interim award of attorneys' fees and expenses as part of the final approval process. The Court may award attorneys' fees and expenses before the litigation is concluded. *See In re Air Cargo Shipping Serv. Litig.*, No. 06-md-1775 (JG) (VVP), 2011 WL 2909162, at *5-7 (E.D.N.Y., Jul. 15, 2011) (interim award granted); *In re Sterling Foster & Company, Inc. Sec. Litig.*, 238 F. Supp. 2d 480, 484-85, 489-90 (E.D.N.Y. 2002) (interim attorneys' fees awarded). Counsel for the Dealership Plaintiffs have litigated these cases for three years and will continue to vigorously represent the interests of dealerships. *See In re Diet Drugs Prod. Liab. Litig.*, 2002 WL 32154197, at *12 (E.D. Pa., Oct. 3, 2002) (awarding an interim fee after four years of litigation and noting "to make them wait any longer for at least some award would be grossly unfair").

### III. The Court Should Enter the Proposed Order, Which Schedules the Final Approval Hearing and Establishes Other Deadlines.

Dealership Plaintiffs respectfully request that the Court hold a single final approval hearing in connection with the Settlements. At the hearing, the Court should consider whether the

13

Settlements are fair, reasonable, and adequate; whether to approve a request for interim attorneys' fees and reimbursement of litigation expenses; and whether to approve a request for initial service awards for the named Dealership Plaintiffs.

The proposed order sets out the method and timing of requests for exclusion and for submitting any objections to the Settlements. Other dates are also set out in the proposed order. The Dealership Plaintiffs propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Mailing of Postal Notice and Email Notice, Establishment of Settlement Website | 10 days from Order allowing dissemination of notice |
| Commence Placement of Publication Notice | 10 days from Order allowing dissemination of notice |
| Posting of information relating to the Plans of Allocation on Settlement Website | October 15, 2015 |
| Filing of Motion in Support of Request for Attorneys' Fees, Reimbursement of Expenses, and Service Awards | October 15, 2015 |
| Deadline for filing Opt-Outs or objections to Settlements | October 30, 2015 |
| Deadline for appearance of Counsel regarding objections | October 30, 2015 |
| Deadline for Counsel to file notice of intent to appear at Final Approval Hearing | October 30, 2015 |
| Final Approval Hearing | November 18, 2015 at 2:30 p.m. |

14

| | |
|---|---|
| Proof of Claim deadline | March 31, 2016 |

Dated: August 25, 2015        Respectfully submitted,

/s Gerard Mantese
Gerard V. Mantese
(Michigan Bar No. P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com

*Interim Liaison Counsel for Dealership Plaintiffs*

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone:  (651) 312-6500
Facsimile:   (651) 312-6618
sraiter@larsonking.com

Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
**CUNEO, GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com

Don Barrett
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**

15

P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone:  (662) 834-2488
Facsimile:   (662)834-2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

*Interim Co-Lead Class Counsel for Dealership Plaintiffs*

Lk1470559