# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| | : | |
| IN RE: AUTOMOTIVE PARTS | : | Master File No. 12-md-02311 |
| ANTITRUST LITIGATION | : | |
| | : | |
| | : | Case No. 12-cv-00102 |
| PRODUCT(S): | : | Case No. 12-cv-00202 |
| | : | Case No. 12-cv-00302 |
| AUTOMOTIVE WIRE HARNESSES; | : | Case No. 12-cv-00602 |
| INSTRUMENT PANEL CLUSTERS; | : | Case No. 13-cv-00702 |
| FUEL SENDERS; OCCUPANT | : | Case No. 13-cv-01002 |
| SAFETY RESTRAINT SYSTEMS; | : | Case No. 13-cv-01102 |
| SWITCHES; STEERING ANGLE | : | Case No. 13-cv-01302 |
| SENSORS; HID BALLASTS, | : | Case No. 13-cv-01402 |
| ALTERNATORS, STARTERS, | : | Case No. 13-cv-01502 |
| IGNITION COILS, MOTOR | : | Case No. 13-cv-01602 |
| GENERATORS, INVERTERS, AIR | : | Case No. 13-cv-01702 |
| FLOW METERS, FUEL INJECTION | : | Case No. 13-cv-01802 |
| SYSTEMS, VALVE TIMING | : | Case No. 13-cv-02002 |
| CONTROL DEVICES, ELECTRONIC | : | Case No. 13-cv-02202 |
| THROTTLE BODIES, RADIATORS, | : | Case No. 13-cv-02402 |
| and ATF WARMERS | : | Case No. 13-cv-02502 |
| | : | Case No. 13-cv-02602 |
| | : | |
| | : | |
| This Document Relates to: | : | Hon. Marianne O. Battani |
| | : | |
| ALL DEALERSHIP ACTIONS | : | |
| | : | |

## Auto Dealers' Motion Concerning Claims of Multistate Dealership Groups

The Automobile Dealership Plaintiffs move the Court for approval of the recommended claim determination for dealership groups headquartered in indirect purchaser states that also operate in other states.

In support of this Motion, Automobile Dealership Plaintiffs rely upon and incorporate by reference herein the facts and legal arguments set forth in the accompanying Memorandum of Law.

Dated: May 26, 2017                    Respectfully submitted,

                                       By: /s/ Gerard V. Mantese
                                       Gerard V. Mantese
                                       (Michigan Bar No. P34424)
                                       **MANTESE HONIGMAN, P.C.**
                                       1361 E. Big Beaver Road
                                       Troy, Michigan 48083
                                       Telephone: (248) 457-9200
                                       gmantese@manteselaw.com
                                       *Interim Liaison Counsel for Dealership*
                                       *Plaintiffs*

                                       Jonathan W. Cuneo
                                       Joel Davidow
                                       Daniel Cohen
                                       Victoria Romanenko
                                       **CUNEO, GILBERT & LADUCA, LLP**
                                       507 C Street, N.E.
                                       Washington, DC 20002
                                       Telephone: (202) 789-3960
                                       jonc@cuneolaw.com
                                       joel@cuneolaw.com
                                       danielc@cuneolaw.com
                                       vicky@cuneolaw.com

1

Don Barrett
David McMullan
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834-2628
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for
Dealership Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| | : | |
| IN RE: AUTOMOTIVE PARTS | : | Master File No. 12-md-02311 |
| ANTITRUST LITIGATION | : | |
| | : | |
| | : | Case No. 12-cv-00102 |
| PRODUCT(S): | : | Case No. 12-cv-00202 |
| | : | Case No. 12-cv-00302 |
| AUTOMOTIVE WIRE HARNESSES; | : | Case No. 12-cv-00602 |
| INSTRUMENT PANEL CLUSTERS; | : | Case No. 13-cv-00702 |
| FUEL SENDERS; OCCUPANT | : | Case No. 13-cv-01002 |
| SAFETY RESTRAINT SYSTEMS; | : | Case No. 13-cv-01102 |
| SWITCHES; STEERING ANGLE | : | Case No. 13-cv-01302 |
| SENSORS; HID BALLASTS, | : | Case No. 13-cv-01402 |
| ALTERNATORS, STARTERS, | : | Case No. 13-cv-01502 |
| IGNITION COILS, MOTOR | : | Case No. 13-cv-01602 |
| GENERATORS, INVERTERS, AIR | : | Case No. 13-cv-01702 |
| FLOW METERS, FUEL INJECTION | : | Case No. 13-cv-01802 |
| SYSTEMS, VALVE TIMING | : | Case No. 13-cv-02002 |
| CONTROL DEVICES, ELECTRONIC | : | Case No. 13-cv-02202 |
| THROTTLE BODIES, RADIATORS, | : | Case No. 13-cv-02402 |
| and ATF WARMERS | : | Case No. 13-cv-02502 |
| | : | Case No. 13-cv-02602 |
| | : | |
| | : | |
| This Document Relates to: | : | Hon. Marianne O. Battani |
| | : | |
| ALL DEALERSHIP ACTIONS | : | |
| | : | |

**Memorandum in Support of Auto Dealers' Recommendation
Regarding Claim Allocations for Dealerships Operating in Different States**

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Whether the Court should approve the recommended claim determinations for dealerships groups headquartered in indirect purchaser states that also operate in other states?

    Answer:       Yes.  The proposed claim determinations, which are supported by the Auto Dealers' allocation consultant and Settlement Class Counsel, are fair and reasonable under the circumstances of these settlements.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, WL 4036042 (N.D. Cal. July 28, 2016)

*In re Flonase Antitrust Litig.*, 815 F.Supp.2d 867 (E.D.Pa. 2011)

*In re Packaged Ice Antitrust Litig.*, 2011 WL 6178891 (E.D. Mich. Dec. 12, 2011)

*In re Polyurethane Foam Antitrust Litig.*, 2015 WL 4459636 (N.D. Ohio Jul. 21, 2015)

*In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D.Mass.2004)

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
64 F.Supp.3d 665 (E.D. Pa. Dec. 3, 2014)

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 3809767 (N.D. Cal. Aug. 29, 2011)

*In re Wellbutrin XL Antitrust Litig.*, No. 08-2433, 2011 WL 3563835 (E.D.Pa. Aug. 15, 2011)

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
737 F.Supp.2d 380 (E.D.Pa.2010)

# TABLE OF CONTENTS

**Page**

Background .................................................................................................................

Factual Background.....................................................................................................

    A.    New Car Dealership with Multi-State Operations...................................................

    B.    Recommendations of the Allocation Consultant and Auto Dealer Settlement Class Counsel .........................................................................................................

Legal Standards...........................................................................................................

    A.    Approval of Allocation Plans ...............................................................................

    B.    Role of Allocation Consultants ............................................................................

    C.    Role of Settlement Class Counsel .......................................................................

Analysis ......................................................................................................................

    I.    The Court Should Approve the Recommended Claim Determinations for Dealerships Headquartered in Indirect Purchaser States That Also Operate in Other States...........................................................................................................

Conclusion..................................................................................................................

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Denny v. Jenkins and Gilchrist*, 230 F.R.D. 317 (S.D.N.Y. 2005) .......................................................

*Dotson v. United States*, 87 F.3d 682 (5th Cir. 1996) ...........................................................................

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454 (9th Cir. 2000) ..........................

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ...................................................................

*Hammon v. Barry*, 752 F.Supp. 1087 (D.D.C. 1990) .............................................................................

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................................................................

*In re Agent Orange Litig.*, 818 F.2d 145 (2d Cir. 1987) .........................................................................

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, WL 4036042 (N.D. Cal. July 28, 2016) ...................

*In re Cendant Corp. Sec. Litig.*, 109 F.Supp.2d 235 (D.N.J. 2000) ........................................................

*In re Computron Software, Inc. Sec. Litig.*, 6 F.Supp.2d 313 (D.N.J. 1998) ..........................................

*In re Exxon Valdez*, No. A89-0095, 1996 U.S. Dist. LEXIS 8173 (D. Alaska, June 11, 1996) ....

*In re Flonase Antitrust Litig.*, 815 F.Supp.2d 867 (E.D.Pa. 2011) ........................................................

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ..................................

*In re Heritage Bond Litig.*, MDL No. 1475, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. 2005) .........

*In re Holocaust Victims Asset Litig.*, 105 F.Supp.2d 139 (E.D.N.Y. 2000) .........................................

*In re March ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010) ...............................................................

*In re Packaged Ice Antitrust Litig.*, 2011 WL 6178891 (E.D. Mich. Dec. 12, 20110 ........................

*In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1977) .....................................

*In re Polyurethane Foam Antitrust Litig.*, 2015 WL 4459636 (N.D. Ohio Jul. 21, 2015) ..................

1

*In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004) .........................................................

*In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085 FSH,
2005 WL 3008808 (D.N.J. Nov. 9, 2005) .............................................................................

*In re Remeron End-Payor Antitrust Litig.*, No. 02-2007 FSH,
2005 WL 2230314 (D.N.J. Sept. 13, 2005)...........................................................................

*In re Suboxon (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
64 F.Supp.3d 6651 (E.D. Pa. Dec. 3, 2014) ..........................................................................

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 3809767 (N.D. Cal. Aug. 29, 2011) .........

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (E.D. Del. 2002) .....................................

*In re Wellbutrin XL Antitrust Litig.*, No. 08-2433, 2011 WL 356835 (E.D.Pa. Aug. 15, 2011) .....

*Law v. NCAA*, 108 F.Supp.2d 1193 (D. Kan. 2000) ......................................................................

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .........................................

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) ...................................................................

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC,*
737 F.Supp.2d 380 (E.D. Pa. Dec. 3, 2014).........................................................................

*Smith v. MCI Telecomm. Corp.*, No. 87-2110, 1993 WL 142006 (D.Kan. Apr. 28, 1993) ...............

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956 (3d Cir. 1983) .............................................

## Background

The Auto Dealer plaintiffs, acting in conjunction with the Court-appointed claim administrator and allocation consultant, have completed the claim qualification process for the first round of Auto Dealer settlements approved by the Court. The Auto Dealers are ready to disburse the settlement proceeds but first seek approval from the Court about claim awards for multi-state dealership groups that are headquartered in an *Illinois Brick* repealer state.

The Auto Dealers' allocation consultant and Settlement Class Counsel recommend that claim calculations and allocations for dealership groups headquartered in an *Illinois Brick* repealer state, but which also have operations in non-repealer states, include the new vehicles and parts purchased for sale in the non-repealer states. Such a conclusion, for settlement allocation purposes, is reasonable and supported by the case law.

## Factual Background

### A.      New Car Dealerships with Multi-State Operations.

Some states permit indirect purchasers to bring actions for damages for antitrust violations of the type alleged here, while others do not. As a result, the Auto Dealer settlements in this litigation provide monetary benefits only to dealerships that purchased new vehicles or covered automobile parts in the states that permit indirect purchaser antitrust claims. Eligibility to make a monetary claim from the Auto Dealer Settlement Funds depends on the state in which the purchase occurred, which is usually the state in which the dealership claimant is located. For single location dealerships or a dealership with multiple dealerships in a single state, this eligibility determination is clear. In those circumstances, claim calculations are made based on whether the dealership is located an indirect purchaser state or is located

1

in a state that does not recognize indirect purchaser actions.

Complexities in the Auto Dealer claim calculations arise when a dealership group's operations are headquartered in one state but it has locations that are fanned out across other states.  In the first round of Auto Dealer settlements, certain dealership groups headquartered in an indirect purchaser state filed claims for vehicles and parts acquired and sold by their dealerships in both indirect and non-indirect purchaser states.  Those with headquarters located in an indirect purchaser state filed claims for all their dealerships, even those whose physical operations are not located in indirect purchaser states.  This created a question about whether those multi-state dealerships should receive claim credit for the vehicles and parts acquired for sale in non-indirect purchaser states.  The claim administrator, Gilardi & Co., sought guidance from Settlement Class Counsel and Stuart Rosenthal, Esq., the Court-appointed allocation consultant.

**B.      Recommendations of the Allocation Consultant and Auto Dealer Settlement Class Counsel.**

Settlement Class Counsel for the Auto Dealers considered these issues and sought guidance from Mr. Rosenthal about the geographic contours of the plans of allocation and claim calculations.  Additional information was provided by certain of these dealerships about how these dealerships acquired, financed, and sold the new vehicles and parts covered by these settlements.

In general, the operations of the dealerships at issue work as follows.  The dealerships or dealership groups maintain centralized headquarters that provided direct financing for vehicle purchases; maintained the liability for non-payment to an OEM; controlled many aspects of the dealership operations; and is liable for their losses.  Such dealership groups

believe that if they were to litigate their dealerships' claims outside of these class action cases, they could assert claims for all of their locations under the law of the headquarters state.   Mr. Rosenthal and Settlement Class Counsel for the Auto Dealers believe that those dealership groups are entitled to assert claims for the new vehicles and parts purchased for sale in all states in which the dealerships operate.  (See Exhibit A.)

A contrasting situation exists where the headquarters operation of a group of dealerships is not in an indirect purchaser state but the group operates dealerships in dealerships in some indirect purchaser states.  Mr. Rosenthal and Settlement Class Counsel for the Auto Dealers believe that those dealerships are entitled to assert claims for the new vehicles and parts purchased for sale in the indirect purchaser states in which the dealerships operate.

## Legal Standards

### A.     Approval of Allocation Plans

Approval of plans of allocation and distribution of settlement funds in class actions is governed by the same standards applicable to approval of the settlement as a whole – namely, allocation and distribution plans must be fair, adequate, and reasonable.  *In re Lucent Tech., Inc. Sec. Litig.*, 307 F.Supp.2d 633, 649 (D.N.J. 2004) (quoting *In re Computron Software, Inc. Sec. Litig.,* 6 F.Supp.2d 313, 321 (D.N.J. 1998)); see also *In re Remeron End-Payor Antitrust Litig.,* No. 02-2007 FSH, 2005 WL 2230314, at *25 (D.N.J. Sept. 13, 2005).  The district court's approval of an allocation plan for a settlement in a class action is reviewed for an abuse of discretion. *Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454 (9th Cir. 2000); see also *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011). ("[D]istrict courts enjoy broad supervisory powers over the administration of class action settlements to allocate the proceeds among the claiming class members equitably.") *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085 FSH, 2005 WL 3008808, at *11 (D.N.J. Nov. 9, 2005) (quoting *Hammon v. Barry*, 752 F. Supp.

3

1087, 1095 (D.D.C. 1990) (internal quotation marks and citations omitted)).

By any objective measure, "a Plan of Allocation need not be, and cannot be, perfect." *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 272 (D.N.J. 2000), aff'd, 264 F.3d 201 (3d Cir.), cert. denied, 535 U.S. 929 (2002). Neither need a plan of distribution be optimal from the perspective of each and every potential claimant. In many cases, if not in most cases, perfection to everyone's satisfaction is unattainable. *In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 258 (E.D. Del. 2002), aff'd, 391 F.3d 516, 534 (3d Cir. 2004). In designing a plan of distribution for a settlement such as this involving a large number of different products and millions of class members, a delicate balance must be achieved between precision and administrative feasibility. *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104,135 (S.D.N.Y. 1977) ("Efficiency, ease of administration and conservation of public and private resources are highly relevant in the reasonableness of a settlement."). The key standards for allocation and distribution of settlements are broad notions of fairness, reasonableness and adequacy. "A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.' *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)." *Sullivan*, supra, 677 F.3d at 326.

## B.     The Role of the Allocation Consultant

Allocation Special Masters or consultants are frequently used to assist settling parties and the courts in arriving at fair, adequate and reasonable plans of allocation and distribution.[1] *See e.g.*, *Dotson v. United States*, 87 F.3d 682, 684 (5th Cir. 1996) (acknowledging that special master developed plan of distribution for settlement that was ultimately approved by the court); *In re Agent Orange Litig.*, 818 F.2d 145, 157-8 (2d Cir. 1987) (recognizing that lower court adopted special master's plan of distribution with modifications); *Denny v. Jenkins and Gilchrist*,

---

[1] Mr. Rosenthal was appointed as an allocation consultant in this litigation but plays a role similar to the allocation or settlement masters described in the cases cited herein.

230 F.R.D. 317, 321 n. 21 (S.D.N.Y. 2005) (tax shelter advice settlement provided that a court-appointed master would recommend a plan of distribution for the court's approval, taking into account the various factors relating to the extent of each class members' injuries); *In re Holocaust Victims Asset Litig.*, 105 F. Supp. 2d 139 (E.D.N.Y. 2000) (special master appointed to develop a proposed plan for allocating and distributing settlement funds); *Smith v. MCI Telecomm. Corp.*, No. 87-2110, 1993 WL 142006, (D. Kan. Apr. 28, 1993) (special master assisted parties in developing allocation plan of settlement funds).

The Special Master's role in the recommendation of a plan of allocation and distribution is not unlike the court's principal role, which "is to protect the unnamed members of the class." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010). Accordingly, as the court in *Sullivan* advised, judges and special masters alike must:

> [R]emain cognizant that our "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Rodriguez*, 563 F.3d at 965 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)); see also *GM Truck*, 55 F.3d at 805 (same). *Sullivan*, 667 F.3d at 325-26. Based upon first hand observation, the Special Master finds that the proposed plan of distribution to the Indirect Purchaser Settlement Class is in no way the product of collusion, fraud, or overreaching by any party or counsel.

### C.      Role of Settlement Class Counsel

The crafting of a plan of distribution with input from counsel familiar with the litigation is the preferred method of arriving at a fair, reasonable and adequate allocation and distribution of the settlement proceeds. As noted by the district court in *In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010):

> A district court has broad supervisory powers with respect to allocating a class action settlement and wide latitude in determining what to consider in approving a settlement allocation. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 179, 181 (2d Cir. 1987). 'When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.' *In re*

5

> *Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004). In
> determining whether a plan of allocation is fair, courts give substantial weight
> to the opinions of experienced counsel. *See In re Painewebber Ltd. P'ships. Litig.*,
> 171 F.R.D. 104, 133 (S.D.N.Y. 1997).

*Id.* at 145-46; see also *Law v. NCAA*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000); *In re Heritage Bond Litig.*, MDL No. 1475, 2005 U.S. Dist. LEXIS 13555, at *38-39 (C. D. Cal. 2005) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002); *In re Exxon Valdez*, No. A89-0095 (HRH), 1996 U.S. Dist. LEXIS 8173, at *5 (D. Alaska, June 11, 1996) ("In light of the experience and views of counsel and the zeal with which they represent their clients, the court is satisfied that the Plan of Allocation is in the best interests of plaintiffs.").

## Analysis

### I.     The Court Should Approve the Recommended Claim Determinations for Dealerships Headquartered in Indirect Purchaser States That Also Operate in Other States.

The Auto Dealers seek the Court's approval of the recommendations of Mr. Rosenthal and Settlement Class Counsel that the claims of dealership groups headquartered in indirect purchaser states will be calculated, for settlement allocation purposes, by including all eligible new vehicles and parts purchased by the dealership group.[2]

The recommendation to recognize claims based on the laws of the state in which a dealership group is headquartered is sufficiently supported in the case law. For claim allocation

---

[2] In their proposed order, the Auto Dealers make it clear that this ruling is only applicable to the calculation of claims in Auto Dealer settlements and is not applicable to any other issue in this litigation.

purposes, a multistate dealership that makes its purchase decisions for all locations from a single national headquarters will be considered based on the law of the state in which the headquarters is located.

The recommendation is consistent with the general rule that a state law antitrust claim is governed by the laws of the state in which the injury was sustained. *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 276–77 (D.Mass.2004) (location of injury more pertinent to choice of law in antitrust action). Courts overseeing antitrust actions often apply choice of law principles to conclude that the place of injury is the place of purchase, which may or may not be the purchaser's home state. *In re Flonase Antitrust Litig.,* 815 F.Supp.2d 867 (E.D.Pa. 2011) (holding that the law of the "purchase state" should be applied); *In re Wellbutrin XL Antitrust. Litig.,* No. 08–2433, 2011 WL 3563835, at *6-7 (E.D.Pa. Aug. 15, 2011) ("The statutory language of the laws at issue here contain no prohibitions that would indicate that a state has a policy of only covering transactions that involve in-state citizens, rather than in-state transactions."); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC,* 737 F.Supp.2d 380, 390–93 (E.D.Pa.2010); *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.,* 64 F.Supp.3d 665 (E.D. Pa. Dec. 3, 2014) (purchaser could sue under either the law of the home state or of the purchase state).

The above line of authority has been cited favorably by this Court when considering standing to assert antitrust claims:

> Contrary to Defendants' suggestion otherwise, the Court did not purport to limit IP Plaintiffs to claims of injury suffered within their states of residence. Specifically, the Court held that "named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury." *Id.* at 657. The Court did not exclude the possibility that an IP Plaintiff could state a claim based on injury suffered in a state in which he or

7

she did not reside but in which he or she nonetheless allegedly purchased packaged ice and suffered injury. In fact, several courts have held that the state of purchase is the relevant state for purposes of assessing and redressing antitrust injury. *See, e.g. In re Wellbutrin XL Antitrust. Litig.,* No. 08–2433, 2011 WL 3563835, at *5 (E.D.Pa. Aug.15, 2011) (recognizing that antitrust violations are "essentially tortious acts" and finding that the place of purchase represents a significant place of contact); *In re Flonase Antitrust. Litig.,* —— F.Supp.2d ——, 2011 WL 4464823, at *9–10 (E.D.Pa. Sept.26, 2011) (applying the law of the state of purchase).

*In re Packaged Ice Antitrust Litig.,* 2011 WL 6178891, at *10 (E.D. Mich. Dec. 12, 2011); see also

*In re Polyurethane Foam Antitrust Litig.,* 2015 WL 4459636 (N.D. Ohio Jul. 21, 2015) (citing

*Wellbutrin* and holding that "the choice-of-law analysis here is simple: the law of the state where

the class member purchased their foam-containing product will apply in every instance");

compare *In re: Cathode Ray Tube (CRT) Antitrust Litig.,* WL 4036042 (N.D. Cal. July 28, 2016)

(place of injury and purchase, as to multistate purchaser, is headquarters state); *In re TFT-LCD*

*(Flat Panel) Antitrust Litig.,* 2011 WL 3809767 (N.D. Cal. Aug. 29, 2011) (same).

Mr. Rosenthal and Settlement Class Counsel for the Auto Dealers believe that

dealership groups with centralized headquarters in an indirect purchaser state are entitled to

assert claims for the new vehicles and parts purchased for sale in all states in which the

dealerships operate. Mr. Rosenthal and Settlement Class Counsel for the Auto Dealers believe

that dealership groups with centralized headquarters in a non-indirect purchaser state are

entitled to assert claims for the new vehicles and parts purchased for sale in the indirect

purchaser states in which the dealerships operate.

## Conclusion

For the above reasons, the Auto Dealers respectfully request that the Court grant approval of the proposed claim determination and allocation decisions outlined in this brief and motion.

Dated: May 26, 2017                                    Respectfully submitted,


By: /s/ Gerard V. Mantese

Gerard V. Mantese
(Michigan Bar No. P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, Michigan 48083
Telephone: (248) 457-9200
gmantese@manteselaw.com
*Interim Liaison Counsel for Dealership Plaintiffs*

Jonathan W. Cuneo
Joel Davidow
Daniel Cohen
Victoria Romanenko
**CUNEO, GILBERT & LADUCA, LLP**
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com
vicky@cuneolaw.com


Don Barrett
David McMullan
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095

9

Telephone: (662) 834-2488
Facsimile: (662)834-2628
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Class Counsel for
Dealership Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Gerard V. Mantese, hereby certify that I caused a true and correct copy of **MOTION AND MEMORANDUM IN SUPPORT OF AUTOMOBILE DEALERS' MOTION CONCERNING CLAIMS OF MULTISTATE DEALERSHIP GROUPS/RECOMMENDATION REGARDING CLAIMS ALLOCATION FOR DEALERSHIPS OPERATING IN DIFFERENT STATES** to be served via e-mail upon all registered counsel of record via the Court's CM/ECF system on May 26, 2017

/s/ Gerard V. Mantese
Gerard V. Mantese

10