# **EXHIBIT 2**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TK HOLDINGS INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 17-11375 (BLS)<br><br>Jointly Administered |

**Objection Deadline: December 11, 2018 at 4:00 p.m. (ET)**
**Hearing Date: December 19, 2018 at 10:00 a.m. (ET)**

## MOTION OF JOSEPH J. FARNAN, JR., AS TRUSTEE OF THE REORGANIZED TK HOLDINGS TRUST, PURSUANT TO FED. R. BANKR. P. 9019, FOR APPROVAL OF SETTLEMENT AGREEMENTS AMONG INDIRECT PURCHASER PLAINTIFFS RESOLVING PROOF OF CLAIM NUMBERS 279, 3558, AND 3611

Joseph J. Farnan, Jr., in his capacity as trustee (the "Trustee") of the Reorganized TK

Holdings Trust (as defined in the *Amended and Restated Trust Agreement* ) (the "Trust") in

the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors"), hereby

moves (the "Motion") this Court for entry of an order, pursuant to Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving three related settlement

agreements (collectively, the "Agreements") entered into between the Trustee on the one hand

and (i) the Truck and Equipment Plaintiffs, (ii) the Automobile Dealership Plaintiffs, and (iii)

the End-Payor Plaintiffs, respectively, on the other hand.[2]  In support of this Motion, the

Trustee states as follows:

---

[1] The debtors in these chapter 11 cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A).  Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

[2] A copy of each of the Agreements is attached as **Exhibit A, B, and C**, respectively, to the *Declaration of John A. Morris In Support Of Trustee's Motion For Approval of Settlement Agreements Resolving Claim Numbers*

## PRELIMINARY STATEMENT

1.  Prior to the Petition Date, numerous class actions lawsuits were commenced in the United States and Canada against TK Holdings Inc. ("TKH"), TKH's parent, Takata Corporation, and others (collectively, the "Defendants") in which it was alleged that the Defendants engaged in an illegal conspiracy to rig bids and fix prices for certain "occupant safety systems" ("OSS"), all in violation of applicable Antitrust laws (collectively, the "Antitrust Cases"). The Antitrust Cases were all premised on, among other things, (a) Criminal Informations that were filed against Takata Corporation and others, and (b) plea agreements subsequently entered into by Takata Corporation, certain executives, and others.[3]

2.  Prior to the Petition Date, the Antitrust Cases in the United States were centralized for pre-trial purposes before Judge Marianne O. Battani in the action captioned *In re: Automotive Parts Antitrust Litig*, 2:12-cv-02311 (.D. Mich.), the parties engaged in certain motion practice, and all of the Defendants except Takata Corporation and TKH entered into settlements that resolved the claims against them.

3.  Following the Petition Date, twelve (12) proofs of claim were filed that purported to be "class action claims" arising out of or otherwise relating to the Antitrust Cases, five (5) on behalf of Canadian claimants and seven (7) on behalf of domestic claimants. Among the domestic claimants were "indirect purchaser plaintiffs" ("IPPs"). There are three types of IPPs: (a) truck and equipment dealers; (b) automobile dealers; and (c) end-payors.

4.  Here, the Trustee seeks approval of three separate proposed settlements that will resolve the proofs of claim filed on behalf of each the three types of IPPs (specifically,

---

*279, 3558, and 3611* ("Morris Dec."), filed contemporaneously herewith. Capitalized terms not defined in this Motion shall have the meanings ascribed to them in the Agreements.

[3] Pursuant to certain of the plea agreements, (i) Takata Corporation admitted that the conspiracy began in 2003 and continued until at least early 2011, and paid a fine in excess of $71 million, and (ii) certain executives agreed to serve prison terms and pay fines.

proofs of claim numbered 279, 3558, and 3611; collectively, the "IPP Claims"), as well as the

Antitrust Cases brought by the IPPs that were pending in the United States District Court for the

Eastern District of Michigan (the "District Court") as of the Petition Date.

5.      In general, each of the Agreements provides, among other things, that:

(a) the Releasees (including the Trust, the Trustee, TKH and certain individuals) shall be

released from the Released Claims; (b) the respective Actions shall be dismissed with prejudice

as to the Releasees; and (c) the IPP Claims will be allowed as general unsecured, non-priority

Class 6 Claims in the aggregate amount of $78 million, allocated as follows:

- Claim No. 279, brought on behalf of the Truck and Equipment Dealer Plaintiffs, in the amount of $8,000,000;

- Claim No. 3558, brought on behalf of the Automobile Dealership Plaintiffs, in the amount of $16,800,000; and

- Claim No. 3611, brought on behalf of the End-Payor Plaintiffs, in the amount of $53,200,000.[4]

6.      The proposed settlements will allow the Trust to eliminate meaningful

litigation risk, particularly on the issue of liability.  While the Trust believes it has favorable

arguments with respect to the issues of class certification and damages, the guilty pleas by

Takata Corporation and certain of its executives present substantial impediments to successfully

defending these claims.  Indeed, every Defendant in the Antitrust Cases, except Takata

Corporation and TKH, has entered into court-approved settlements comparable in scope to the

settlements proposed here.

7.      Moreover, the cost of litigation would be prohibitive, likely in the millions

of dollars, because Takata Corporation and TKH did not provide any formal discovery in any of

the Antitrust Cases prior to the Petition Date.  Thus, at a minimum, the Trust would have to

---

[4] The Agreements will not become effective until both the Bankruptcy Court and the District Court enter final orders and judgments as described in the Agreements.

engage in document discovery, third-party discovery, expert discovery, and depositions relating to a historical class period covering 2003 through the Petition Date. Moreover, issues concerning class certification and damages would also have to be addressed. The expense of such endeavors would surely exceed the economic value of the contemplated resolution – and would not eliminate the litigation risk.

8.      Given the substantial litigation risk, the complexity of the issues (including class certification, liability and damages), the delay in making distributions to Class 6 creditors that may result from prolonged litigation, and the substantial expenses that would be incurred by the Trust in defending each of the Antitrust Cases, the Agreements embody a "fair and reasonable" exercise of the Trustee's business judgment.

9.      For these reasons, and those set forth below, the Trustee respectfully requests that the Motion be granted.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Trustee consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

11.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

12.      The predicate for the relief requested herein is Bankruptcy Rule 9019.

## BACKGROUND

### A.    The Chapter 11 Cases

13.    On June 25, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

14.    On July 7, 2017, the Debtors filed their *Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 171] (the "Bar Date Motion").

15.    On October 4, 2017, the Bankruptcy Court (as defined below) granted the Bar Date Motion and entered an *Order For Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 959] (the "Bar Date Order").

16.    Pursuant to the Bar Date Order, November 27, 2017, was established as the General Bar Date.

17.    On February 21, 2018, the Bankruptcy Court entered an order [D.I. 2120] confirming the *Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings and its Affiliated Debtors* [D.I. 2116] (the "Plan").

18.    The Plan became effective on April 10, 2018 [D.I. 2646].

19.     After the Plan became effective, the Trust was established for the purpose of reconciling certain claims, administering the trust assets and making distributions to the trust beneficiaries, all as provided for under the Plan.

**B.      The Truck and Equipment Antitrust Case and Claim**

20.     On June 5, 2015, the Truck and Equipment Plaintiffs commenced an action against TKH and others by filing a complaint captioned *Rush Truck Centers of Arizona, Inc. v. TRW Automotive Holdings Corp.*, Case No. 2:15-cv-12050, and pending in the United States District Court for the Eastern District of Michigan, Southern Division as of the Petition Date (the "T&E Action").  T&E Action Docket No. 1.

21.     The T&E Action was brought as a proposed class action against TKH and other manufacturers and suppliers of OSS "globally and in the United States for engaging in a lengthy conspiracy to suppress and eliminate competition in the vehicle parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of these products, which were sold to vehicle manufacturers in the United States and elsewhere."  *Id.* ¶1.

22.     In the T&E Action, the Truck and Equipment Plaintiffs assert, on their own behalf and on the behalf of the purported class, claims under section 1 of the Sherman Act and various state antitrust and consumer protection statutes, as well as for unjust enrichment. The plaintiffs in the T&E Action seek, among other things, treble damages, restitution, disgorgement of profits, pre and post-judgment interest, and costs and expenses, including reasonable attorneys' fees.

23.     The plaintiffs in the T&E Action settled their claims with certain Defendants.  Thus, on January 19, 2017, a *Final Judgment Entering Dismissal With Prejudice As to Certain Defendants* was filed in the T&E Action at Docket No. 27 (the "T&E Judgment").

24.     TKH did not participate in the settlement that led to the T&E Judgment. Instead, on February 3, 2017, TKH moved to dismiss the T&E Action. T&E Action Docket No. 28. The plaintiffs in the T&E Action filed their response on May 4, 2017, and TKH filed its reply on June 19, 2017. T&E Action Docket Nos. 32 and 33, respectively.

25.     Less than a week later, on June 25, 2017, TKH filed for bankruptcy protection in this Court.

26.     On October 20, 2017, the Truck and Equipment Plaintiffs timely filed a proof of claim that was denoted by the Debtors' claims agent as Claim No. 279 ("Claim No. 279"), and that purports to be a claim filed on behalf of themselves and all similarly situated truck and equipment dealers. A true and correct copy of Claim No. 279 is attached as **Exhibit D** to the Morris Declaration.

27.     Pursuant to the terms of Agreement with the Truck and Equipment Plaintiffs, upon the Effective Date, Claim No. 279 will be allowed as a general unsecured, non-priority claim in the amount of $8,000,000. Morris Dec. Ex. A ¶18.

**C.     The Automobile Dealership Antitrust Case and Claim**

28.     On July 3, 2013, the Automobile Dealership Plaintiffs commenced an action against TKH and others by filing an amended *Dealership Consolidated Class Complaint* in Case No. 2:12-cv-00602 that was pending in the United States District Court for the Eastern District of Michigan, Southern Division as of the Petition Date (the "AD Action"). AD Action Docket No. 55.

29.     The AD Action was brought as a proposed class action against TKH and other manufacturers and suppliers of OSS "globally and in the United States for engaging in a lengthy conspiracy to suppress and eliminate competition in the vehicle parts industry by

agreeing to rig bids for, and to fix, stabilize, and maintain the prices of these products, which were sold to vehicle manufacturers in the United States and elsewhere." *Id.* ¶1.

30.     In the AD Action, the Automobile Dealership Plaintiffs assert, on their own behalf and on the behalf of the purported class, claims under section 1 of the Sherman Act and various state antitrust and consumer protection statutes, as well as for unjust enrichment. The plaintiffs in the AD Action seek, among other things, injunctive relief, treble damages, restitution, disgorgement of profits, pre and post-judgment interest, and costs and expenses, including reasonable attorneys' fees.

31.     On October 21, 2013, the Defendants moved to dismiss the AD Action.[5] After the motion was fully briefed, the District Court rendered its *Opinion and Order Granting in Part And Denying In Part Defendants' Collective Motion To Dismiss Indirect Purchaser Actions* in which the District Court dismissed certain state law causes of action and limited damages for certain state law claims and otherwise denied Defendants' motion to dismiss.  AD Action Docket No. 75.

32.     Thereafter, the AD plaintiffs filed that certain *Dealership Second Consolidated Class Complaint* (the "AD Second Amended Complaint.").  AD Action Docket No. 85.  All Defendants except Takata Corporation and TKH have resolved the claims brought against them in the AD Action.

33.     On December 22, 2014, TKH and its parent, Takata Corporation, filed its *Answer and Affirmative Defenses* to the AD Second Amended Complaint.  AD Action Docket No. 88.  Certain other non-settling Defendants also filed answers to the AD Second Amended Complaint.

---

[5] As part of the same motion, the Defendants also moved to dismiss the *Amended Class Action Complaint* brought by the End-Payor Plaintiffs in the End-Payor Action (as that term is defined below).

34.     TKH filed for bankruptcy protection in this Court on June 25, 2017.

35.     On November 27, 2017, the Automobile Dealership Plaintiffs timely filed a proof of claim that was denoted by the Debtors' claims agent as Claim No. 3558 ("Claim No. 3558"), and that purports to be a claim filed on behalf of themselves and all similarly situated automobile dealerships.  A true and correct copy of Claim No. 3558 is attached as **Exhibit E** to the Morris Declaration.

36.     Pursuant to the terms of Agreement with the Automobile Dealership Plaintiffs, upon the Effective Date, Claim No. 3558 will be allowed as a general unsecured claim in the amount of $16,800,000.  Morris Dec. Ex. B¶18.

**D.     The End-Payor Antitrust Case And Claim**

37.     On June 3, 2013, the End-Payor Plaintiffs commenced an action against TKH and others by filing that certain *Occupant Safety Restraint Systems' Consolidated Amended Class Action Complaint* in Case No. 2:12-cv-00603 that was pending in the United States District Court for the Eastern District of Michigan, Southern Division as of the Petition Date (the "End-Payor Action").  End-Payor Action Docket No. 58.

38.     The End-Payor Action was brought as a proposed class action against TKH and other suppliers of OSS "globally and in the United States, for engaging in a multi-year conspiracy to fix, raise, maintain, and/or stabilize prices, rig bids, and allocate the market and customers in the United States for Occupant Safety Restraint Systems."  *Id.* ¶1.

39.     In the End-Payor Action, the End-Payor Plaintiffs assert, on their own behalf and on the behalf of the purported class, claims under section 1 of the Sherman Act and various state antitrust and consumer protection statutes, as well as for unjust enrichment.  The plaintiffs in the End-Payor Action seek, among other things, injunctive relief, treble damages,

restitution, disgorgement of profits, pre and post-judgment interest, and costs and expenses, including reasonable attorneys' fees.

40.     On October 21, 2013, the Defendants moved to dismiss the End-Payor Action.  After the motion was fully briefed, the District Court rendered its *Opinion and Order Granting in Part And Denying In Part Defendants' Collective Motion To Dismiss Indirect Purchaser Actions* in which the District Court dismissed certain state law causes of action and limited damages for certain state law claims and otherwise denied Defendants' motion to dismiss.  End-Payor Action Docket No. 87.

41.     Thereafter, the End-Payor plaintiffs filed a *Second Consolidated Amended Class Action Complaint* (the "End-Payor Second Amended Complaint.").  End-Payor Action Docket No. 91.  All Defendants except Takata Corporation and TKH have resolved the claims brought against them in the End-Payor Action.

42.     On December 22, 2014, TKH and its parent, Takata Corporation, filed its *Answer and Affirmative Defenses* to the End-Payor Second Amended Complaint.  End-Payor Action Docket No. 94.  Certain other non-settling Defendants also filed answers to the End-Payor Second Amended Complaint.

43.     TKH filed for bankruptcy protection in this Court on June 25, 2017.

44.     On November 27, 2017, the End-Payor Plaintiffs timely filed a proof of claim that was denoted by the Debtors' claims agent as Claim No. 3611 ("Claim No. 3611"), and that purports to be a claim filed on behalf of themselves and all similarly situated end-payors.  A true and correct copy of Claim No. 3611 is attached as **Exhibit F** to the Morris Declaration.

10

45.     Pursuant to the terms of Agreement with the End-Payor Plaintiffs, upon the Effective Date, Claim No. 3611 will be allowed as a general unsecured claim in the amount of $53,200,000.  Morris Dec. Ex. C ¶18.

**E.     Summary of Settlement Terms**

46.     Each of the Agreements provides, among other things, that upon the Effective Date:

- The Antitrust Case underlying the applicable IPP proof of claim shall be dismissed with prejudice as to the Releasees;

- The Releasees (including TKH, the Trust, the Trustee, and related individuals) shall be released from all known and unknown claims relating to or arising out of (a) any conduct alleged in the respective pleading and/or (b) any act or omission concerning occupant Safety Restraint Systems (as limited in the Agreement);

- Each IPP proof of claim shall be allowed as a general unsecured, non-priority claim as provided in the respective Agreements.

Morris Dec. Ex. A ¶¶18, 23-25; Ex. B ¶¶ 19, 24-26; Ex. C ¶¶ 18, 23-25.

47.     In general, the "Effective Date" of each Agreement will occur when the Bankruptcy Court has entered a final order granting this Motion; the District Court has entered the District Court Order and Judgment with respect to the proposed settlement; and the time to appeal the foregoing orders and judgments has expired (*see* Morris Dec. Ex. A ¶23; Ex.¶23; and Ex. C¶23).

## **RELIEF REQUESTED**

48.     By this Motion, the Trustee seeks the entry of an order, pursuant to Bankruptcy Rule 9019(a), approving the Agreements and authorizing the parties to take all actions necessary to effectuate and implement the Agreements without the need for further order by this Court.

## BASIS FOR RELIEF REQUESTED

49.     Bankruptcy Rule 9019 governs the procedural prerequisites to approve a

settlement, providing that:

> On motion by the trustee and after notice and a hearing, the court
> may approve a compromise or settlement.  Notice shall be given
> to creditors, the United States trustee, the debtor, and indenture
> trustees as provided in Rule 2002 and to any other entity as the
> court may direct.

Fed. R. Bankr. P. 9019(a).

50.     Settlements in bankruptcy are favored as a means of minimizing litigation,

expediting the administration of the bankruptcy estate, and providing for the efficient resolution

of bankruptcy cases.  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

51.     Bankruptcy Rule 9019 provides that on motion by the trustee and after

notice and a hearing, the court may approve a compromise or settlement.  In deciding whether to

approve a settlement pursuant to Bankruptcy Rule 9019, the court should determine whether the

compromise is fair, reasonable, and in the interests of the estates.  *In re Marvel Entertainment

Group, Inc*., 222 B.R. 243, 249 (D. Del. 1998).  The decision whether to accept or reject a

compromise lies within the sound discretion of the court.  *In re Neshaminy Office Bldg. Assocs.*,

62 B.R. 798, 803 (E.D. Pa. 1986).

52.     In making this determination, the United States Court of Appeals for the

Third Circuit has provided four criteria that a bankruptcy court should consider: (a) the

probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of

the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d)

the paramount interest of the creditors.  *Martin*, 91 F.3d at 393.  Courts generally defer to a

debtor's business judgment when there is a legitimate business justification for the debtor's

decision.  *See id.* at 395.

53.     When applying the *Martin* factors to a particular motion, "the court is not supposed to have a 'mini-trial' on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Aetna Casualty & Surety Co. v. Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D.N.J. 2000) (internal quotations omitted); *see also In re TSIC, Inc.*, 393 B.R. 71, 79 (Bankr. D. Del. 2008); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).  Although approval of a compromise is within the "sound discretion" of the bankruptcy court (*World Health*, 344 B.R. at 296), the court should not substitute its judgment for that of a trustee or debtor in possession.  *In re Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996).  The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interests of the estate." *TSIC*, 393 B.R. at 78.  A court need not be convinced that a proposed settlement is the best possible settlement, but "must conclude that it is within the reasonable range of litigation possibilities." *World Health*, 344 B.R. at 296 (internal citations omitted).

54.     Here, approval of the Agreements is appropriate and meets the *Martin* factors.  First, the likelihood of the Trust prevailing in the Antitrust Cases is far from certain.  Indeed, the guilty pleas by TKH's parent Takata Corporation and certain executives, present substantial hurdles to defeating all of the claims asserted.

55.     Second, while there are common issues of fact concerning liability, neither Takata Corporation nor TKH have provided formal discovery in any of the Antitrust Cases.  Complex issues concerning liability, class certification and damages would have to be addressed and expert discovery would be required.  Litigating these matters in three different Antitrust Cases will cost millions of dollars and will take years to complete.

56.     Finally, entry into the Agreements is clearly in the best interests of creditors because, in exchange for the allowance of general unsecured, non-priority proofs of claim in the aggregate amount of $78 million, (a) the IPP Claims will be finally liquidated; (b) the litigation risk arising from the Antitrust Cases and IPP Claims will be eliminated; (c) resolution of the IPP Claims will remove a potential impediment to the timely making of distributions from the Trust, and (d) the actual economic cost to the Trust is extremely modest relative to the substantial expenses that would be needed to litigate these matters.

## NOTICE

57.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Truck and Equipment Plaintiffs, the Automobile Dealership Plaintiffs, and the End-Payor Plaintiffs, respectively; (b) the Office of the United States Trustee; and (c) all parties who have requested notice pursuant to Fed. R. Bankr. P. 2002. The Trustee respectfully submits that such notice is sufficient under the circumstances.

## NO PRIOR REQUEST

58.     No prior request for the particular relief sought in this Motion has been made to this or any other court in connection with these chapter 11 cases.


[remainder of page intentionally blank]

WHEREFORE, the Trustee respectfully requests that this Court enter an order, in substantially the form attached hereto, (a) granting the Motion, (b) approving the Agreements, (c) authorizing the parties to each Agreement to take all actions necessary to effectuate and implement the terms of such Agreement without the need for further order by this Court, and (d) granting such other and further relief as the Court deems just and proper.


Dated: November 27, 2018                    PACHULSKI STANG ZIEHL & JONES LLP

                                            */s/ Peter J. Keane*
                                            Laura Davis Jones (Bar No. 2436)
                                            David M. Bertenthal (CA Bar No. 167624)
                                            John A. Morris (NY Bar No. 2405397)
                                            Peter J. Keane (Bar No. 5503)
                                            919 N. Market Street, 17th Floor
                                            P.O. Box 8705
                                            Wilmington, DE 19899-8705 (Courier 19801)
                                            Telephone: (302) 652-4100
                                            Facsimile: (302) 652-4400
                                            E-mail:  ljones@pszjlaw.com
                                                     dbertenthal@pszjlaw.com
                                                     jmorris@pszjlaw.com
                                                     pkeane@pszjlaw.com

                                            *Attorneys for the Trustee of the Reorganized TK*
                                            *Holdings Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>TK HOLDINGS INC., *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 17-11375 (BLS)<br><br>Jointly Administered |

**Objection Deadline: December 11, 2018 at 4:00 p.m. (ET)**
**Hearing Date: December 19, 2018 at 10:00 a.m. (ET)**

### NOTICE OF HEARING ON MOTION OF JOSEPH J. FARNAN, JR., AS TRUSTEE OF THE REORGANIZED TK HOLDINGS TRUST, PURSUANT TO FED. R. BANKR. P. 9019, FOR APPROVAL OF SETTLEMENT AGREEMENTS AMONG INDIRECT PURCHASER PLAINTIFFS RESOLVING PROOF OF CLAIM NUMBERS 279, 3558, AND 3611

**PLEASE TAKE NOTICE** that on November 27, 2018, Joseph J. Farnan, Jr., in his capacity as trustee (the "Trustee") of the Reorganized TK Holdings Trust (as defined in the *Amended and Restated Trust Agreement*) (the "Trust"), in the chapter 11 cases of the above-captioned debtors, filed the *Motion of Joseph J. Farnan, Jr., as Trustee of The Reorganized TK Holdings Trust, Pursuant to Fed. R. Bankr. P. 9019, For Approval of Settlement Agreements Among Indirect Purchaser Plaintiffs Resolving Proof of Claim Numbers 279, 3558, and 3611* (the "Motion"), with the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 (the "Bankruptcy Court").   A copy of the Motion is attached hereto.

**PLEASE TAKE FURTHER NOTICE** that any response or objection to Motion

---

[1] The debtors in these chapter 11 cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

must be in writing and must be filed with the Clerk of the Bankruptcy Court on or before

**December 11, 2018, at 4:00 p.m. (prevailing Eastern Time)**.

         **PLEASE TAKE FURTHER NOTICE** that at the same time, you must also

serve a copy of the response or objection upon the undersigned counsel to the Trustee.

         **PLEASE TAKE FURTHER NOTICE** THAT IF YOU FAIL TO RESPOND

OR OBJECT IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE

RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

         **PLEASE TAKE FURTHER NOTICE** THAT A HEARING TO CONSIDER

THE MOTION WILL BE HELD ON **DECEMBER 19, 2018 AT 10:00 A.M. (PREVAILING**

**EASTERN TIME)** BEFORE THE HONORABLE BRENDAN L. SHANNON, UNITED

STATES BANKRUPTCY JUDGE, AT THE UNITED STATES BANKRUPTCY COURT FOR

THE DISTRICT OF DELAWARE, 824 MARKET STREET, SIXTH FLOOR, COURTROOM

NO. 1, WILMINGTON, DELAWARE 19801.

Dated:  November 27, 2018         PACHULSKI STANG ZIEHL & JONES LLP

         */s/ Peter J. Keane*
         Laura Davis Jones (Bar No. 2436)
         David M. Bertenthal (CA Bar No. 167624)
         Peter J. Keane (Bar No. 5503)
         919 North Market Street, 17th Floor
         P.O. Box 8705
         Wilmington, DE 19899 (Courier 19801)
         Telephone: (302) 652-4100
         Facsimile:  (302) 652-4400
         E-mail: ljones@pszjlaw.com
                dbertenthal@pszjlaw.com
                pkeane@pszjlaw.com

         *Attorneys for the Trustee of the Reorganized TK*
         *Holdings Trust*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| TK HOLDINGS INC., *et al.*, | Case No. 17-11375 (BLS) |
|  | Jointly Administered |
| Debtors.[1] | **Re: Docket No. ____** |

### ORDER GRANTING MOTION OF JOSEPH J. FARNAN, JR., AS TRUSTEE OF THE REORGANIZED TK HOLDINGS TRUST, PURSUANT TO FED. R. BANKR. P. 9019, FOR APPROVAL OF SETTLEMENT AGREEMENTS AMONG INDIRECT PURCHASER PLAINTIFFS RESOLVING
### PROOF OF CLAIM NUMBERS 279, 3558, AND 3611

Upon the motion (the "Motion")[2] of Joseph J. Farnan, Jr., in his capacity as trustee (the "Trustee") of the Reorganized TK Holdings Trust (as defined in the *Amended and Restated Trust Agreement* ) (the "Trust") in the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors"), for entry of an order (this "Order") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving three related settlement agreements (collectively, the "Agreements") each of which is attached as **Exhibits A, B, and C** to the Morris Declaration, as entered into between the Trustee on the one hand and the Truck and Equipment Plaintiffs, the Automobile Dealership Plaintiffs, and the End-Payor Plaintiffs, respectively, on the other hand (collectively, the "Parties"); and the Court having reviewed the Motion and the Agreements; and the Court having found that (a) the Court has jurisdiction over this matter

---

[1] The Debtors in these chapter 11 cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the

United States District Court for the District of Delaware, dated February 29, 2012, and the Court

may enter a final order consistent with Article III of the United States Constitution, (b) this is a

core proceeding pursuant to 28 U.S.C. § 157(b) and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409, and (c) notice of the Motion and hearing was sufficient

under the circumstances; and it appearing that the relief requested in the Motion is in the best

interests of the Trust, the Debtors' estates, creditors, and all parties in interest; and the Court

having determined that the legal and factual bases set forth in the Motion establish just cause for

the relief granted herein; IT IS HEREBY ORDERED THAT**:**

     1.    The Motion is GRANTED.

     2.    The terms of the Agreements attached to the Morris Declaration as

**Exhibits A, B, and C** are APPROVED in their entirety pursuant to Bankruptcy Rule 9019.

     3.    Notwithstanding any provisions to the contrary in the Bankruptcy Rules,

the terms and conditions of this Order shall be immediately effective and enforceable upon its

entry.

     4.    The Parties are hereby authorized to take such additional actions or

execute such additional documents as are necessary or appropriate to implement the terms of the

Agreements.

5.      The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, enforcement or interpretation of this Order and the

Agreements.

Dated: _____, 2018

_____

The Honorable Brendan L. Shannon
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TK HOLDINGS INC., *et al.,* | Case No. 17-11375 (BLS) |
| Debtors.[1] | Jointly Administered |

## DECLARATION OF JOHN A. MORRIS IN SUPPORT OF TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENTS RESOLVING CLAIM NUMBERS 279, 3558, AND 3611

JOHN A. MORRIS makes this declaration pursuant to 28 U.S.C. § 1746, and states:

1.    I am a partner in the law firm Pachulski Stang Ziehl & Jones LLP, counsel to Joseph J. Farnan, Jr., in his capacity as trustee (the "Trustee") of the Reorganized TK Holdings Trust (as defined in the Amended and Restated Trust Agreement) (the "Trust"), and I submit this Declaration in support of the *Motion of Joseph J. Farnan, Jr., As Trustee of the TK Holdings Trust, Pursuant To Fed. R. Bankr. P. 9019, For Approval Of Settlement Agreements Among Indirect Purchaser Plaintiffs Resolving Proof of Claim Numbers 279, 3558, and 3611.*

2.    Attached as **Exhibit A** is a true and correct copy of the Stipulation and Settlement Agreement Resolving Proof Of Claim No. 279, entered into between the Trustee and the Truck and Equipment Plaintiffs.

---

[1] The debtors in these chapter 11 cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); Takata de Mexico S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

3.      Attached as **Exhibit B** is a true and correct copy of the Stipulation and Settlement Resolving Proof of Claim No. 3558, entered into between the Trustee and the Automobile Dealership Plaintiffs.

4.      Attached as **Exhibit C** is a true and correct copy of the Stipulation and Settlement Resolving Proof of Claim No. 3611, entered into between the Trustee and the End-Payor Plaintiffs.

5.      Attached as **Exhibit D** is a true and correct copy of Claim No. 279, filed by the Truck and Equipment Plaintiffs on October 20, 2017.

6.      Attached as **Exhibit E** is a true and correct copy of Claim No. 3558, filed by the Automobile Dealership Plaintiffs on November 27, 2017.

7.      Attached as **Exhibit F** is a true and correct copy of Claim No. 3611, filed by the End-Payor Plaintiffs on November 27, 2017.


Dated: New York, New York
       November 27, 2018                         _____*/s/ John A. Morris*_____
                                                         John A. Morris

# EXHIBIT A

# THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TK HOLDINGS INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 17-11375 (BLS)<br>Jointly Administered |

## STIPULATION AND SETTLEMENT AGREEMENT RESOLVING PROOF OF CLAIM NO. 279

This Stipulation and Settlement Agreement ("Agreement") is made and entered into this 27th day of November 2018 ("Execution Date") by and between Joseph J. Farnan, Jr., solely as Trustee (the "Trustee") of the Reorganized TK Holdings Trust (the "Trust"), and Truck and Equipment Plaintiffs ("Truck and Equipment Dealer Plaintiffs" and together with the Trust, the "Parties"), both individually and on behalf of a class of indirect purchasers of Occupant Safety Restraint Systems ("Settlement Class"), as more particularly defined in paragraph 10 below.

## RECITALS

WHEREAS, Truck and Equipment Dealer Plaintiffs are prosecuting the case *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.) (the "Action") on their own behalf and on behalf of the Settlement Class;

---

[1] The debtors in these chapter 11 cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A).  Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

WHEREAS, Truck and Equipment Dealer Plaintiffs allege that they and each of the members of the Settlement Class were injured as a result of TK Holdings, Inc.'s ("TKH") participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Occupant Safety Restraint Systems (as defined below) in violation of Section 1 of the Sherman Act and various state antitrust, unfair competition, unjust enrichment, and consumer protection laws as set forth in the Truck and Equipment Dealer Plaintiffs' Class Action Complaint filed in the Action (the "Complaint");

WHEREAS, TKH denied Truck and Equipment Dealer Plaintiffs' allegations and asserted defenses to the Truck and Equipment Dealer Plaintiffs' claims set forth in the Complaint;

WHEREAS, on June 25, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, on July 7, 2017, the Debtors filed their *Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 171] (the "Bar Date Motion");

WHEREAS, on October 4, 2017, the Bankruptcy Court (as defined below) granted the Bar Date Motion and entered an *Order For Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III)*

2

*Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 959] (the "Bar Date Order");

WHEREAS, pursuant to the Bar Date Order, November 27, 2017, was established as the General Bar Date;

WHEREAS, on October 20, 2017, Truck and Equipment Dealer Plaintiffs timely filed a proof of claim that was denoted by the Debtors' claims agent as Claim No. 279 ("Claim No. 279"), and that purported to be a claim filed on behalf of themselves and the Settlement Class; and

WHEREAS, on February 21, 2018, the Bankruptcy Court entered an order [D.I. 2120] confirming the *Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings and its Affiliated Debtors* [D.I. 2116] (the "Plan");

WHEREAS, the Plan became effective on April 10, 2018 [D.I. 2646];

WHEREAS, after the Plan became effective, the Trust was established for the purpose of reconciling certain claims, administering the trust assets and making distributions to the trust beneficiaries, all as provided for under the Plan;

WHEREAS, Settlement Class Counsel (as defined below) and counsel for the Trustee have engaged in arm's-length settlement negotiations, and this Agreement is the result of those negotiations;

WHEREAS, Truck and Equipment Dealer Plaintiffs, through Settlement Class Counsel, have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving the claims against TKH and the Trust, according to the terms set forth in this Agreement, is in the best interests of Truck and Equipment Dealer Plaintiffs

DOCS_NY:38332.1 82828/003

and the Settlement Class because of the payment of the Settlement Amount (as that term is defined below) that the Trustee has agreed to provide pursuant to this Agreement; and

WHEREAS, the Trust, despite its belief that it has no liability for the claims asserted and that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid the expense, inconvenience, distraction, and risk of protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement for the benefit of its stakeholders, and to finally resolve all claims that have been or could have been asserted by any Settlement Class Member (as defined below) against TKH or the Trust based on the claims and allegations in the Action, as more particularly set out below.

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that Claim No. 279 be hereby resolved and that the Action be settled, compromised, and dismissed with prejudice as to the Releasees and except as hereafter provided, without costs to Truck and Equipment Dealer Plaintiffs, the Settlement Class, TKH or the Trust, subject to the approval of the United States Bankruptcy Court for the District of Delaware overseeing the above-captioned bankruptcy cases (the "Bankruptcy Court"), and the United States District Court for the Eastern District of Michigan overseeing the Action (the "District Court").

A.    Definitions

1.    "Defendant" means any party named as a defendant in the Action at any time up to and including the date when the District Court has entered a final approval order certifying the Settlement Class described below and approving this Agreement under Federal Rule of Civil Procedure ("Rule") 23(e).

4

2.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a), including without limitation, electronically stored information. A draft or non-identical copy is a separate Document within the meaning of this term.

3.      "Indirect Purchaser States" means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

4.      "Occupant Safety Restraint Systems" shall have the meaning set forth in paragraph 2 of the Complaint.

5.      "Opt-Out Deadline" means the deadline set by the District Court for the timely submission of requests by Settlement Class Members to be excluded from the Settlement Class.

6.      "Released Claims" means the claims described in paragraphs 23 and 24.

7.      "Releasees" shall refer to (i) TKH; (ii) the Trust; and (iii) each of TKH and the Trust's respective present and former principals, partners, officers, directors, supervisors, employees, agents, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns (including but not limited to the Trustee, the Trustee's representatives, attorneys, and financial advisors, and the Trust's Claims Oversight Committee and its individual members) each solely in their capacity as such. "Releasees" does not include Takata Corporation or any other defendant in the Action other than TKH.

8.      "Releasors" shall refer to Truck and Equipment Plaintiffs and each of the Settlement Class Members, as defined herein, and their past and present officers, directors, supervisors, employees, agents, stockholders, members, attorneys, servants, representatives,

parents, subsidiaries, affiliates, principals, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing, each solely in their capacity as such.

9. "Settlement Amount" shall refer to all monies received by Truck and Equipment Dealer Plaintiffs in connection with the treatment of Claim No. 279 as a general unsecured, non-priority claim in the amount of $8,000,000 under the Plan in the above-captioned Bankruptcy cases as set forth in paragraph 18 of this Agreement. The "Settlement Fund" shall be the Settlement Amount plus any income or accrued interest that may be earned on that amount after distributions are made by the Trust for the benefit of the Settlement Class.

10. For purposes of this Agreement, the "Settlement Class" is defined as:

> All Trucks and Equipment dealers that, from January 1, 2003 through the Execution Date, (a) indirectly purchased Occupant Safety Restraint Systems manufactured or sold by a Defendant, any current or former subsidiary or affiliate thereof or any co-conspirator, of a Defendant, or any co-conspirator or (b) purchased Trucks or Equipment containing Occupant Safety Restraint Systems manufactured or sold by a Defendant or any current or former subsidiary affiliate thereof or co-conspirator..

11. "Settlement Class Counsel" shall refer to the law firm of:

> Duane Morris LLP
> 30 S. 17th Street
> Philadelphia, Pennsylvania 19103

12. "Settlement Class Member" means each member of the Settlement Class who has not timely elected to be excluded from the Settlement Class.

13. "Trucks and Equipment" means medium duty (Class 4, 5, 6, & 7) trucks and heavy-duty (Class 8) trucks, buses, commercial vehicles (excluding automobiles, light trucks, vans, sports utility, and/or similar motor vehicles sold by automobile dealers), construction

DOCS_NY:38332.1 82828/003

equipment, mining equipment, agricultural equipment, railway vehicles, and other similar vehicles.

14.     "Truck and Equipment Plaintiffs" means those Settlement Class Members, as defined in paragraph 14 below, who are named plaintiffs in the Complaint.

B.     Approval of this Agreement and Dismissal of Claims Against TKH

15.     Truck and Equipment Dealer Plaintiffs and the Trust shall use their best efforts to effectuate this Agreement, including cooperating in seeking the District Court's approval for the establishment of procedures (including the giving of class notice under Rules 23(c) and (e)) to secure the complete, and final dismissal with prejudice of the Action as to the Releasees only.

16.     No later than thirty (30) days after any order entered by the Bankruptcy Court granting the Rule 9019 Motion (as defined below) has become a final, none-appealable order which is not subject to a pending appeal. Truck and Equipment Dealer Plaintiffs shall submit to the District Court a motion seeking preliminary approval of this Agreement ("Preliminary Approval Motion"). The Preliminary Approval Motion shall include (i) the proposed form of an order preliminarily approving this Agreement, and (ii) a proposed form of order and final judgment that shall include at least the District Court Relief (as defined below).

17.     Truck and Equipment Dealer Plaintiffs, at a time to be decided in their sole discretion, shall submit to the District Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Settlement Class Members identified by Truck and Equipment Dealer Plaintiffs ("Notice Motion"). To mitigate the costs of notice, Truck and Equipment Dealer Plaintiffs shall endeavor, if practicable, to disseminate notice of this settlement with notice of any other settlements reached in the Action. The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice.

7

C.    Treatment of Claim No. 279

18.    Subject to the provisions hereof, upon the Effective Date (as defined herein), Claim No. 279 shall be allowed as a general unsecured, non-priority claim in the amount of $8,000,000.

19.    The Trust shall make distributions with respect to Claim No. 279 at the same time and in the same manner as distributions are made to other holders of allowed Class 6 claims under the Plan.

D.    Bankruptcy Court Approval

20.    As soon as practicable after the execution of this Agreement, the Trust shall file a motion pursuant to Rule 9019 (the "Rule 9019 Motion") of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for Bankruptcy Court approval of this Agreement. Settlement Class Counsel shall be responsible for providing whatever evidence or other proof is reasonably necessary to demonstrate to the Bankruptcy Court that the Settlement Class should be certified for settlement purposes under Bankruptcy Rule 7023.

E.    District Court Approval

21.    Truck and Equipment Dealer Plaintiffs shall, at their own cost and expense, use their best efforts to obtain the District Court Relief described below. Towards that end, Truck and Equipment Dealer Plaintiffs shall seek, and the Trust will not object unreasonably to, the entry of an order and final judgment in the Action that will include, at a minimum, the substance of the following provisions (collectively, the "District Court Relief"):

(a)    certifying the Settlement Class described above, pursuant to Rule 23, solely for purposes of this settlement as Settlement Class for the Action;

DOCS_NY:38332.1 82828/003

(b)    as to the Action, approving finally this settlement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 and directing its consummation according to its terms;

(c)    directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims;

(d)    as to TKH, directing that the Action be dismissed with prejudice and without costs;

(e)    providing that both the Bankruptcy Court and District Court shall have jurisdiction concerning the interpretation, administration, consummation and enforcement of this Agreement;

(f)    determining under Rule 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to TKH shall be final; and

(g)    providing that (i) the District Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any Defendant, including TKH, to contest certification of any other class proposed in the Action, (ii) the District Court's findings in the order shall have no effect on the District Court's ruling on any motion to certify any class in the Action or on the District Court's rulings concerning any Defendant's motion; and (iii) no party may cite or refer to the District Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

22.    This Agreement shall become effective (the "Effective Date") when all of the following have occurred: (i) the Bankruptcy Court has entered a final order granting the Rule 9019 Motion; (ii) the District Court has entered a final approval order and judgment that contains at least all of the District Court Relief (the "District Court Order and Judgment"); and (iii) the

time for appeal or to seek permission to appeal from the foregoing final orders and judgment has

expired or, if appealed, the order granting the Rule 9019 Motion and the District Court Order and

Judgment have been affirmed in their entirety by the court of last resort to which such appeal has

been taken, and such affirmance has become no longer subject to further appeal or review, and

no other motion or pleading is pending with respect thereto in any court.  It is agreed that the

provisions of Rule 60 shall not be taken into account in determining the above-stated times. On

the date that Truck and Equipment Dealership Plaintiffs and the Trustee have executed this

Agreement, Truck and Equipment Dealer Plaintiffs and Trustee shall be bound by its terms and

this Agreement shall not be rescinded except as provided in this Agreement.

F.      Release, Discharge, and Covenant Not To Sue

      23.      In addition to the effect of any final order or judgment entered in accordance with

this Agreement, upon the Effective Date, and in consideration of payment of the Settlement

Amount, as specified in paragraph 18 of this Agreement, into the Settlement Fund, and in

consideration of the allowance of Claim No. 279 as set forth above, and for other valuable

consideration, the Releasees shall be completely released, acquitted, and forever discharged from

any and all claims, demands, actions, suits, causes of action, whether class, individual, or

otherwise in nature (whether or not any Settlement Class Member has objected to the settlement

or makes a claim upon or participates in the Settlement Fund, whether directly, representatively,

derivatively or in any other capacity) that Releasors, or any of them, ever had, now has, or

hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or

in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected

or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the

consequences thereof in any way arising out of or relating in any way to (i) any conduct alleged

in the Complaint, and/or (ii) any act or omission of the Releasees (or any of them) concerning

Occupant Safety Restraint Systems, including, but not limited to, any conduct and causes of action alleged or asserted or that could have been alleged or asserted, in any class action or other complaint filed in the Action ("Released Claims"), provided however, that nothing herein shall release: (1) any claims made by direct purchasers of Occupant Safety Restraint Systems; (2) any claims made by end payors that are indirect purchasers of Occupant Safety Restraint Systems; (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State as to government purchases and/or penalties; (4) claims involving any negligence, personal injury, property damage, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to Occupant Safety Restraint Systems; (5) claims concerning any automotive part other than Occupant Safety Restraint Systems; (6) claims under laws other than those of the United States relating to purchases of Occupant Safety Restraint Systems made by any Releasor outside of the United States; and (7) claims under federal law or the state or local laws of any jurisdiction other than an Indirect Purchaser State. Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee as to, in whole or in part, any of the Released Claims unless this Agreement is terminated or not finally approved.

24.     In addition, upon the Effective Date, the Releasors hereby expressly waive and release any and all provisions, rights, and benefits, as to their claims concerning Occupant Safety Restraint Systems conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

11

or by any equivalent law or statute of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.

26.    Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon the Effective Date, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Trust and Truck and Equipment Dealer Plaintiffs have agreed to release pursuant to this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

G.    <u>Settlement Amount.</u>

26.    Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, the Trust, shall pay or cause to be paid the Settlement Amount. The Settlement Amount shall be paid in U.S. dollars into one or more accounts designated in a writing provided by Settlement Class Counsel to the counsel for the Trust.  None of the Releasees shall have any contractual, legal, or equitable responsibility or obligation with respect to any account designated by Settlement Class Counsel, any assets held therein or any payments or distributions made therefrom.

27.    <u>Exclusions from the Settlement Class.</u>

Subject to District Court approval, any person or entity seeking exclusion from the Settlement Class must file a written request for exclusion by the Opt-Out Deadline. Any person or entity that files such a request shall be excluded from the Settlement Class and shall have no rights with respect to this settlement. Subject to District Court approval, a

request for exclusion that does not comply with all of the provisions set forth in the applicable class notice will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by the Settlement Agreement upon the Effective Date. Settlement Class Counsel shall, within ten (10) business days of the Opt Out Deadline, provide the Trust with a list and copies of all opt out requests it receives in the Action and shall file with the District Court a list of all Settlement Class Members who timely and validly opted out of the settlement.

      (a)     Subject to District Court Approval, any member of the Settlement Class who submits a valid and timely request for exclusion from the Settlement Class will not be a Settlement Class Member and shall not be bound by the terms of this Agreement. The Trust reserves all of its legal and equitable rights and defenses, including, but not limited to, any defenses relating to (i) whether any excluded member of the Settlement Class is an indirect purchaser of Occupant Safety Restraint Systems or has standing to bring any claim against TKH, or (ii) the expiration of the General Bar Date as provided for in the Bar Date Motion.

      (b)     Subject to District Court Approval, in the written request for exclusion, the member of the Settlement Class must state his, her, or its full name, street address, and telephone number. Further, the member of the Settlement Class must include a statement in the written request for exclusion that he, she, or it wishes to be excluded from the Settlement Class. Any member of the Settlement Class that submits a written request for exclusion may also identify the number of Trucks and Equipment purchased from December 1, 2003 through the Execution Date of this Agreement as requested in the notice to the Settlement Class as provided in paragraph 17.

      (c)     The Trust or Settlement Class Counsel may dispute an exclusion request, and the parties shall, if possible, resolve the disputed exclusion request by agreement and shall

inform the District Court of their position, and, if necessary, obtain a ruling thereon within thirty (30) days of the Opt-Out Deadline.

28.    Payment of Expenses

The Parties shall bear their own respective costs and expenses for all purposes, including but not limited to those incurred in connection with the negotiation and execution of this Agreement, the Rule 9019 Motion, and the Action, regardless of whether the Effective Date occurs.  For the avoidance of doubt, none of the Releasees shall be liable for any of the costs or expenses of the litigation of the Action, including but not limited to attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the District Court or Special Master, appeals, trials, or the negotiation of other settlements, or for class administration and costs.

H.    The Settlement Fund

29.    After the Effective Date, the Settlement Fund shall be distributed in accordance with a plan to be submitted to the District Court at the appropriate time by Settlement Class Counsel, subject to approval by the District Court.  None of the Releasees shall have any financial, contractual, legal or equitable responsibility, obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration.

30.    Truck and Equipment Dealer Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs, as may be provided by District Court Order.  None of the Releasees shall be liable for any costs, fees, or expenses of any of Truck and Equipment Dealer Plaintiffs or the Settlement Class' respective

14

DOCS_NY:38332.1 82828/003

attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the District Court shall be paid out of the Settlement Fund.

31.     Settlement Class Counsel's Attorneys' Fees, Reimbursement
        of Expenses, and Incentive Awards for Truck and Equipment Dealer Plaintiffs

(a)     Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval, submit an application or applications to the District Court ("Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action and incentive awards, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid), as may be awarded by the District Court ("Fee and Expense Award"). Settlement Class Counsel reserves the right to make additional applications for District Court approval of fees and expenses incurred and reasonable incentive awards, but in no event shall any of the Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)     Subject to District Court approval, Truck and Equipment Dealer Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses and incentive awards. Attorneys' fees and expenses awarded by the District Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund with interest, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is

15

reduced or reversed, or in the event the Agreement is rescinded or terminated pursuant to the terms of this Agreement.

(c)    The procedure for and the allowance or disallowance by the District Court of the application by Settlement Class Counsel for attorneys' fees, costs, and expenses, and incentive awards for class representatives to be paid out of the Settlement Fund is not part of this Agreement, and is to be considered by the District Court separately from the District Court's consideration of the fairness, reasonableness and adequacy of the Settlement. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate, cancel, amend or modify this Agreement, or affect the finality of the settlement.

(d)    None of the Releasees shall have any responsibility for, or interest in, or liability (whether legal or equitable) whatsoever with respect to any payment to Settlement Class Counsel and/or Truck and Equipment Dealer Plaintiffs of any Fee and Expense Award in the Action.

(e)    None of the Releasees shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation of the Settlement Fund among Settlement Class Counsel, Truck and Equipment Dealer Plaintiffs and/or any other person who may assert some claim thereto, or of any Fee and Expense Award that the District Court may make in the Action.

I.    Rescission If Final Orders And Judgments Are Not Entered

32.    If (a) the Bankruptcy Court does not grant the Rule 9019 Motion, *or* (b) the District Court does not enter the District Court Judgment; or (c) if the order granting the Rule 9019 Motion or the District Court Order or Judgment is modified in any material way or is set aside on appeal, then TKH and Truck and Equipment Dealer Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise

16

of any such right to rescind shall be made according to the terms set forth below. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the District Court from the Settlement Fund shall not be deemed a material modification of all or a part of the terms of this Agreement or such final judgment.

33. If the Effective Date of this Agreement does not occur, or this Agreement otherwise is terminated pursuant to paragraph 32, then this Agreement shall be of no force or effect. The Trust expressly reserves all rights and defenses if this Agreement does not become final.

34. Further, and in any event, Truck and Equipment Dealer Plaintiffs and the Trust agree that this Agreement, whether or not it shall become final, and any and all negotiations, Documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by TKH, or the other Releasees, to be used against TKH, or (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the Action, to be used against TKH, and evidence thereof shall not be discoverable or used in any way, whether in the Action or in any other action or proceeding, against TKH.

35. This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement.

36. The Parties to this Agreement contemplate and agree that, prior to final approval of the settlement by the District Court as provided for in paragraphs 15-31 hereof, appropriate notice (1) of the settlement; and (2) of a hearing at which the District Court will consider the approval of this Agreement, will be given to the Settlement Class.

17

J.      Miscellaneous

37.      The Trust shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

38.      This Agreement does not settle or compromise any claim by the Truck and Equipment Dealer Plaintiffs or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent complaint, against any Defendant or alleged co-conspirator other than TKH. All rights against such other Defendants or alleged co-conspirators are specifically reserved by the Truck and Equipment Dealer Plaintiffs and the Settlement Class.  All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than TKH and other Releasees, for sales made by TKH and TKH's alleged illegal conduct are specifically reserved by Truck and Equipment Dealer Plaintiffs and Settlement Class Members.  TKH's sales to the class and its alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than TKH and the other Releasees.

39.      This Agreement shall be governed by and interpreted according to the substantive laws of the State of Michigan without regard to its choice of law or conflict of law principles.

40.      This Agreement constitutes the entire, complete and integrated agreement between Truck and Equipment Dealer Plaintiffs and the Trust pertaining to the resolution of Claim No. 279 and the settlement of the Action against TKH, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between Truck and Equipment Dealer Plaintiffs and the Trust in connection herewith.  This Agreement may not be modified or amended except in

18

writing executed by Truck and Equipment Dealer Plaintiffs and the Trust, and approved by both the Bankruptcy Court and the District Court.

41.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Truck and Equipment Dealer Plaintiffs and the Trust. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Truck and Equipment Dealer Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than the Trust which is a party hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

42.     This Agreement may be executed in counterparts by Truck and Equipment Dealer Plaintiffs and the Trust, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

43.     Neither Truck and Equipment Dealer Plaintiffs nor the Trust shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

44.     Where this Agreement requires either party to provide notice or any other communication or Document to the other, such notice shall be in writing, and such notice, communication or Document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

19

45.     Each of the undersigned attorneys represents that he or she is fully authorized to
enter into the terms and conditions of, and to execute, this Agreement subject to the approval of
the Bankruptcy Court and District Court.

*[signature pages follow]*

Dated: November 27, 2018

_____
Wayne A. Mack
J. Manly Parks
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 979-1000

*Interim Co-Lead Class Counsel and Settlement*
*Class Counsel for Truck and Equipment Plaintiffs*

_____
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
John A. Morris (NY Bar No. 2405397)
Peter J. Keane (Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
ljones@pszjlaw.com
dbertenthal@pszjlaw.com
jmorris@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for the Trustee of the Reorganized TK*
*Holdings Trust*

DOCS_NY:38332.1 82828/003

# EXHIBIT B

## THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TK HOLDINGS INC., *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 17-11375 (BLS)<br>Jointly Administered |

## STIPULATION AND SETTLEMENT AGREEMENT RESOLVING PROOF OF CLAIM NO. 3558

This Stipulation and Settlement Agreement ("Agreement") is made and entered into this 27th day of November 2018 ("Execution Date") by and between Joseph J. Farnan, Jr., solely as Trustee (the "Trustee") of the Reorganized TK Holdings Trust (the "Trust"), and Automobile Dealership Plaintiffs ("Automobile Dealership Plaintiffs" and together with the Trust, the "Parties"), both individually and on behalf of a class of indirect purchasers of Occupant Safety Restraint Systems ("Settlement Class"), as more particularly defined in Paragraph 12 below.

## RECITALS

WHEREAS, Automobile Dealership Plaintiffs are prosecuting the cases *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.) (the "MDL Litigation") and Case No. 2:12-cv-00602 (E.D. Mich.) (the "Action") on their own behalf and on behalf of the Settlement Class;

---

[1] The debtors in these chapter 11 cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

WHEREAS, Automobile Dealership Plaintiffs allege that they and each of the members of the Settlement Class were injured as a result of TK Holdings, Inc.'s ("TKH") participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Occupant Safety Restraint Systems (as defined below) in violation of Section 1 of the Sherman Act and various state antitrust, unfair competition, unjust enrichment, and consumer protection laws as set forth in the Automobile Dealership Plaintiffs' Second Consolidated Class Action Complaint filed in the Action (the "Complaint");

WHEREAS, TKH denied Automobile Dealership Plaintiffs' allegations and asserted defenses to the Automobile Dealership Plaintiffs' claims set forth in the Complaint;

WHEREAS, on June 25, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, on July 7, 2017, the Debtors filed their *Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 171] (the "Bar Date Motion");

WHEREAS, on October 4, 2017, the Bankruptcy Court (as defined below) granted the Bar Date Motion and entered an *Order For Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III)*

*Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 959] (the "Bar Date Order");

WHEREAS, pursuant to the Bar Date Order, November 27, 2017, was established as the General Bar Date;

WHEREAS, on November 27, 2017, Automobile Dealership Plaintiffs timely filed a proof of claim that was denoted by the Debtors' claims agent as Claim No. 3558 ("Claim No. 3558"), and that purported to be a claim filed on behalf of themselves and the Settlement Class; and

WHEREAS, on February 21, 2018, the Bankruptcy Court entered an order [D.I. 2120] confirming the *Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings and its Affiliated Debtors* [D.I. 2116] (the "Plan");

WHEREAS, the Plan became effective on April 10, 2018 [D.I. 2646];

WHEREAS, after the Plan became effective, the Trust was established for the purpose of reconciling certain claims, administering the trust assets and making distributions to the trust beneficiaries, all as provided for under the Plan;

WHEREAS, Settlement Class Counsel (as defined below) and counsel for the Trustee have engaged in arm's-length settlement negotiations, and this Agreement is the result of those negotiations;

WHEREAS, Automobile Dealership Plaintiffs, through Settlement Class Counsel, have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving the claims against TKH and the Trust, according to the terms set forth in this Agreement, is in the best interests of Automobile Dealership Plaintiffs and the

Settlement Class because of the payment of the Settlement Amount (as that term is defined below) that the Trustee has agreed to provide pursuant to this Agreement; and

WHEREAS, the Trust, despite its belief that it has no liability for the claims asserted and that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid the expense, inconvenience, distraction, and risk of protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement for the benefit of its stakeholders, and to finally resolve all claims that have been or could have been asserted by any Settlement Class Member (as defined below) against TKH or the Trust based on the claims and allegations in the Action, as more particularly set out below.

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that Claim No. 3558 be hereby resolved and that the Action be settled, compromised, and dismissed with prejudice as to the Releasees and except as hereafter provided, without costs to Automobile Dealership Plaintiffs, the Settlement Class, TKH or the Trust, subject to the approval of the United States Bankruptcy Court for the District of Delaware overseeing the above-captioned bankruptcy cases (the "Bankruptcy Court"), and the United States District Court for the Eastern District of Michigan overseeing the Action (the "District Court").

A.    Definitions

1.    "Automobile Dealership" or "Dealer" means an entity or person authorized to engage in the business of selling and / or leasing Vehicles at retail in the United States.

2.    "Automobile Dealership Plaintiffs" means those Settlement Class Members, as defined in Paragraph 14 below, who are named plaintiffs in the Complaint.

3.     "<u>Defendant</u>" means any party named as a defendant in the Action at any time up to and including the date when the District Court has entered a final approval order certifying the Settlement Class described below and approving this Agreement under Federal Rule of Civil Procedure ("<u>Rule</u>") 23(e).

4.     "<u>Document</u>" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a), including without limitation, electronically stored information. A draft or non-identical copy is a separate Document within the meaning of this term.

5.     "<u>Indirect Purchaser States</u>" means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

6.     "<u>Occupant Safety Restraint Systems</u>" shall have the meaning set forth in Paragraph 2 of the Complaint.

7.     "<u>Opt-Out Deadline</u>" means the deadline set by the District Court for the timely submission of requests by Settlement Class Members to be excluded from the Settlement Class.

8.     "<u>Released Claims</u>" means the claims described in Paragraphs 24 and 25.

9.     "<u>Releasees</u>" shall refer to (i) TKH; (ii) the Trust; and (iii) each of TKH and the Trust's respective present and former principals, partners, officers, directors, supervisors, employees, agents, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns (including but not limited to the Trustee, the Trustee's representatives, attorneys, and financial advisors, and the Trust's Claims Oversight Committee

5

and its individual members), each solely in their capacity as such. "Releasees" does not include Takata Corporation or any other defendant in the MDL Litigation other than TKH.

10.     "Releasors" shall refer to Automobile Dealership Plaintiffs and each of the Settlement Class Members, as defined herein, and their past and present officers, directors, supervisors, employees, agents, stockholders, members, attorneys, servants, representatives, parents, subsidiaries, affiliates, principals, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing, each solely in their capacity as such.

11.     "Settlement Amount" shall refer to all monies received by Automobile Dealership Plaintiffs in connection with the treatment of Claim No. 3558 as a general unsecured, non-priority claim in the amount of $16,800,000 under the Plan in the above-captioned Bankruptcy cases as set forth in Paragraph 19 of this Agreement.   The "Settlement Fund" shall be the Settlement Amount plus any income or accrued interest that may be earned on that amount after distributions are made by the Trust for the benefit of the Settlement Class.

12.     For purposes of this Agreement, the "Settlement Class" is defined as:

> All Automobile Dealerships that, from January 1, 2003 through the Execution Date, (a) indirectly purchased Occupant Safety Restraint Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Occupant Safety Restraint Systems manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies, and instrumentalities.

13.     "Settlement Class Counsel" shall refer to the law firms of:

6

BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square
Lexington, MS 39095
CUNEO GILBERT & LaDUCA, LLP
Suite 200
4725 Wisconsin Avenue, NW
Washington, DC 20016

LARSON • KING, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101

14. "Settlement Class Member" means each member of the Settlement Class who has not timely elected to be excluded from the Settlement Class.

15. "Vehicles" shall refer to new four-wheeled passenger automobiles, vans, sports utility vehicles, and crossover or pick-up trucks.

B. Approval of this Agreement and Dismissal of Claims Against TKH

16. Automobile Dealership Plaintiffs and the Trust shall use their best efforts to effectuate this Agreement, including cooperating in seeking the District Court's approval for the establishment of procedures (including the giving of class notice under Rules 23(c) and (e)) to secure the complete, and final dismissal with prejudice of the Action as to the Releasees only.

17. No later than thirty (30) days after any order entered by the Bankruptcy Court granting the Rule 9019 Motion (as defined below) has become a final, non-appealable order which is not subject to a pending appeal. Automobile Dealership Plaintiffs shall submit to the District Court a motion seeking preliminary approval of this Agreement ("Preliminary Approval Motion"). The Preliminary Approval Motion shall include (i) the proposed form of an order preliminarily approving this Agreement, and (ii) a proposed form of order and final judgment that shall include at least the District Court Relief (as defined below).

18.     Automobile Dealership Plaintiffs, at a time to be decided in their sole discretion, shall submit to the District Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Settlement Class Members identified by Automobile Dealership Plaintiffs ("Notice Motion"). To mitigate the costs of notice, Automobile Dealership Plaintiffs shall endeavor, if practicable, to disseminate notice of this settlement with notice of any other settlements reached in the MDL Litigation. The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice.

C.      Treatment of Claim No. 3558

19.     Subject to the provisions hereof, upon the Effective Date (as defined herein), Claim No. 3558 shall be allowed as a general unsecured, non-priority claim in the amount of $16,800,000.

20.     The Trust shall make distributions with respect to Claim No. 3558 at the same time and in the same manner as distributions are made to other holders of allowed Class 6 claims under the Plan.

D.      Bankruptcy Court Approval

21.     As soon as practicable after the execution of this Agreement, the Trust shall file a motion pursuant to Rule 9019 (the "Rule 9019 Motion") of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for Bankruptcy Court approval of this Agreement. Settlement Class Counsel shall be responsible for providing whatever evidence or other proof is reasonably necessary to demonstrate to the Bankruptcy Court that the Settlement Class should be certified for settlement purposes under Bankruptcy Rule 7023.

E.      District Court Approval

22.     Automobile Dealership Plaintiffs shall, at their own cost and expense, use their best efforts to obtain the District Court Relief described below.  Towards that end, Automobile

8

18.     Automobile Dealership Plaintiffs, at a time to be decided in their sole discretion, shall submit to the District Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Settlement Class Members identified by Automobile Dealership Plaintiffs ("Notice Motion"). To mitigate the costs of notice, Automobile Dealership Plaintiffs shall endeavor, if practicable, to disseminate notice of this settlement with notice of any other settlements reached in the MDL Litigation. The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice.

C.     Treatment of Claim No. 3558

19.     Subject to the provisions hereof, upon the Effective Date (as defined herein), Claim No. 3558 shall be allowed as a general unsecured, non-priority claim in the amount of $16,800,000.

20.     The Trust shall make distributions with respect to Claim No. 3558 at the same time and in the same manner as distributions are made to other holders of allowed Class 6 claims under the Plan.

D.     Bankruptcy Court Approval

21.     As soon as practicable after the execution of this Agreement, the Trust shall file a motion pursuant to Rule 9019 (the "Rule 9019 Motion") of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for Bankruptcy Court approval of this Agreement. Settlement Class Counsel shall be responsible for providing whatever evidence or other proof is reasonably necessary to demonstrate to the Bankruptcy Court that the Settlement Class should be certified for settlement purposes under Bankruptcy Rule 7023.

E.     District Court Approval

22.     Automobile Dealership Plaintiffs shall, at their own cost and expense, use their best efforts to obtain the District Court Relief described below.  Towards that end, Automobile

8

Dealership Plaintiffs shall seek, and the Trust will not object unreasonably to, the entry of an order and final judgment in the Action that will include, at a minimum, the substance of the following provisions (collectively, the "District Court Relief"):

      (a)     certifying the Settlement Class described above, pursuant to Rule 23, solely for purposes of this settlement as Settlement Class for the Action;

      (b)     as to the Action, approving finally this settlement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 and directing its consummation according to its terms;

      (c)     directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims;

      (d)     as to TKH, directing that the Action be dismissed with prejudice and without costs;

      (e)     providing that both the Bankruptcy Court and District Court shall have jurisdiction concerning the interpretation, administration, consummation and enforcement of this Agreement;

      (f)     determining under Rule 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to TKH shall be final; and

      (g)     providing that (i) the District Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any Defendant, including TKH, to contest certification of any other class proposed in the MDL Litigation, (ii) the District Court's findings in the order shall have no effect on the District Court's ruling on any motion to certify any class in the MDL Litigation or on the District Court's rulings concerning any Defendant's motion; and (iii) no party may cite or refer to the District Court's approval of the Settlement Class as

persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

23.     This Agreement shall become effective (the "<u>Effective Date</u>") when all of the following have occurred: (i) the Bankruptcy Court has entered a final order granting the Rule 9019 Motion; (ii) the District Court has entered a final approval order and judgment that contains at least all of the District Court Relief (the "<u>District Court Order and Judgment</u>"); and (iii) the time for appeal or to seek permission to appeal from the foregoing final orders and judgment has expired or, if appealed, the order granting the Rule 9019 Motion and the District Court Order and Judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken, and such affirmance has become no longer subject to further appeal or review, and no other motion or pleading is pending with respect thereto in any court.  It is agreed that the provisions of Rule 60 shall not be taken into account in determining the above-stated times. On the date that Automobile Dealership Plaintiffs and the Trustee have executed this Agreement, Automobile Dealership Plaintiffs and Trustee shall be bound by its terms and this Agreement shall not be rescinded except as provided in this Agreement.

F.     <u>Release, Discharge, and Covenant Not To Sue</u>

24.     In addition to the effect of any final order or judgment entered in accordance with this Agreement, upon the Effective Date, and in consideration of payment of the Settlement Amount, as specified in Paragraph 19 of this Agreement, into the Settlement Fund, and in consideration of the allowance of Claim No. 3558 as set forth above, and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively,

derivatively or in any other capacity) that Releasors, or any of them, ever had, now has, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to (i) any conduct alleged in the Complaint, and/or (ii) any act or omission of the Releasees (or any of them) concerning Occupant Safety Restraint Systems, including, but not limited to, any conduct and causes of action alleged or asserted or that could have been alleged or asserted, in any class action or other complaint filed in the Action ("Released Claims"), provided however, that nothing herein shall release: (1) any claims made by direct purchasers of Occupant Safety Restraint Systems; (2) any claims made by end payors that are indirect purchasers of Occupant Safety Restraint Systems; (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State as to government purchases and/or penalties; (4) claims involving any negligence, personal injury, property damage, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to Occupant Safety Restraint Systems; (5) claims concerning any automotive part other than Occupant Safety Restraint Systems; (6) claims under laws other than those of the United States relating to purchases of Occupant Safety Restraint Systems made by any Releasor outside of the United States; and (7) claims under federal law or the state or local laws of any jurisdiction other than an Indirect Purchaser State. Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee as to, in whole or in part, any of the Released Claims unless this Agreement is terminated or not finally approved.

25.     In addition, upon the Effective Date, the Releasors hereby expressly waive and release any and all provisions, rights, and benefits concerning Occupant Safety Restraint Systems conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

or by any equivalent law or statute of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.

26.     Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon the Effective Date, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Trust and Automobile Dealership Plaintiffs have agreed to release pursuant to this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

G.     Settlement Amount.

27.     Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, the Trust, shall pay or cause to be paid the Settlement Amount. The Settlement Amount shall be paid in U.S. dollars into one or more accounts designated in a writing provided by Settlement Class Counsel to the counsel for the Trust.   None of the Releasees shall have any contractual, legal, or equitable responsibility or obligation with respect

12

to any account designated by Settlement Class Counsel, any assets held therein or any payments or distributions made therefrom.

28.   Exclusions from the Settlement Class.

Subject to District Court approval, any person or entity seeking exclusion from the Settlement Class must file a written request for exclusion by the Opt-Out Deadline. Any person or entity that files such a request shall be excluded from the Settlement Class and shall have no rights with respect to this settlement. Subject to District Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable class notice will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by the Settlement Agreement upon the Effective Date. Settlement Class Counsel shall, within ten (10) business days of the Opt Out Deadline, provide the Trust with a list and copies of all opt out requests it receives in the Action and shall file with the District Court a list of all Settlement Class Members who timely and validly opted out of the settlement.

(a)   Subject to District Court Approval, any member of the Settlement Class who submits a valid and timely request for exclusion from the Settlement Class will not be a Settlement Class Member and shall not be bound by the terms of this Agreement. The Trust reserves all of its legal and equitable rights and defenses, including, but not limited to, any defenses relating to (i) whether any excluded member of the Settlement Class is an indirect purchaser of Occupant Safety Restraint Systems or has standing to bring any claim against TKH, or (ii) the expiration of the General Bar Date as provided for in the Bar Date Motion.

(b)   Subject to District Court Approval, in the written request for exclusion, the member of the Settlement Class must state his, her, or its full name, street address, and telephone

number. Further, the member of the Settlement Class must include a statement in the written request for exclusion that he, she, or it wishes to be excluded from the Settlement Class. Any member of the Settlement Class that submits a written request for exclusion may also identify the number of Vehicles purchased from December 1, 2003 through the Execution Date of this Agreement as requested in the notice to the Settlement Class as provided in Paragraph 18.

(c)   The Trust or Settlement Class Counsel may dispute an exclusion request, and the parties shall, if possible, resolve the disputed exclusion request by agreement and shall inform the District Court of their position, and, if necessary, obtain a ruling thereon within thirty (30) days of the Opt-Out Deadline.

29.   <u>Payment of Expenses</u>

The Parties shall bear their own respective costs and expenses for all purposes, including but not limited to those incurred in connection with the negotiation and execution of this Agreement, the Rule 9019 Motion, and the Action, regardless of whether the Effective Date occurs. For the avoidance of doubt, none of the Releasees shall be liable for any of the costs or expenses of the litigation of the Action, including but not limited to attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the District Court or Special Master, appeals, trials, or the negotiation of other settlements, or for class administration and costs.

H.   <u>The Settlement Fund</u>

30.   After the Effective Date, the Settlement Fund shall be distributed in accordance with a plan to be submitted to the District Court at the appropriate time by Settlement Class Counsel, subject to approval by the District Court. None of the Releasees shall have any financial, contractual, legal or equitable responsibility, obligation, or liability whatsoever with

respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration.

31.    Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs, as may be provided by District Court Order. None of the Releasees shall be liable for any costs, fees, or expenses of any of Automobile Dealership Plaintiffs or the Settlement Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the District Court shall be paid out of the Settlement Fund.

32.    Settlement Class Counsel's Attorneys' Fees, Reimbursement
of Expenses, and Incentive Awards for Automobile Dealership Plaintiffs

(a)    Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval, submit an application or applications to the District Court ("Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action and incentive awards, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid), as may be awarded by the District Court ("Fee and Expense Award"). Settlement Class Counsel reserves the right to make additional applications for District Court approval of fees and expenses incurred and reasonable incentive awards, but in no event shall any of the Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)    Subject to District Court approval, Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation

expenses and incentive awards. Attorneys' fees and expenses awarded by the District Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund with interest, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is reduced or reversed, or in the event the Agreement is rescinded or terminated pursuant to the terms of this Agreement.

(c)     The procedure for and the allowance or disallowance by the District Court of the application by Settlement Class Counsel for attorneys' fees, costs, and expenses, and incentive awards for class representatives to be paid out of the Settlement Fund is not part of this Agreement, and is to be considered by the District Court separately from the District Court's consideration of the fairness, reasonableness and adequacy of the Settlement. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate, cancel, amend or modify this Agreement, or affect the finality of the settlement.

(d)     None of the Releasees shall have any responsibility for, or interest in, or liability (whether legal or equitable) whatsoever with respect to any payment to Settlement Class Counsel and/or Automobile Dealership Plaintiffs of any Fee and Expense Award in the Action.

(e)     None of the Releasees shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation of the Settlement Fund among Settlement Class Counsel, Automobile Dealership Plaintiffs and/or any other person who may assert some claim thereto, or of any Fee and Expense Award that the District Court may make in the Action.

I.    Rescission If Final Orders And Judgments Are Not Entered

33.    If (a) the Bankruptcy Court does not grant the Rule 9019 Motion, *or* (b) the District Court does not enter the District Court Judgment; or (c) if the order granting the Rule 9019 Motion or the District Court Order or Judgment is modified in any material way or is set aside on appeal, then TKH and Automobile Dealership Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms set forth below. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the District Court from the Settlement Fund shall not be deemed a material modification of all or a part of the terms of this Agreement or such final judgment.

34.    If the Effective Date of this Agreement does not occur, or this Agreement otherwise is terminated pursuant to Paragraph 33, then this Agreement shall be of no force or effect. The Trust expressly reserves all rights and defenses if this Agreement does not become final.

35.    Further, and in any event, Automobile Dealership Plaintiffs and the Trust agree that this Agreement, whether or not it shall become final, and any and all negotiations, Documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by TKH, or the other Releasees, to be used against TKH, or (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the MDL Litigation, to be used against TKH, and evidence thereof shall not be discoverable or used in any way, whether in the MDL Litigation or in any other action or proceeding, against TKH.

36.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement.

37.     The Parties to this Agreement contemplate and agree that, prior to final approval of the settlement by the District Court as provided for in Paragraphs 16-32 hereof, appropriate notice (1) of the settlement; and (2) of a hearing at which the District Court will consider the approval of this Agreement, will be given to the Settlement Class.

J.     Miscellaneous

38.     The Trust shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

39.     This Agreement does not settle or compromise any claim by the Automobile Dealership Plaintiffs or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent complaint, against any Defendant or alleged co-conspirator other than TKH. All rights against such other Defendants or alleged co-conspirators are specifically reserved by the Automobile Dealership Plaintiffs and the Settlement Class.  All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than TKH and other Releasees, for sales made by TKH and TKH's alleged illegal conduct are specifically reserved by Automobile Dealership Plaintiffs and Settlement Class Members.  TKH's sales to the class and its alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than TKH and the other Releasees.

40.     This Agreement shall be governed by and interpreted according to the substantive laws of the State of Michigan without regard to its choice of law or conflict of law principles.

41. This Agreement constitutes the entire, complete and integrated agreement between Automobile Dealership Plaintiffs and the Trust pertaining to the resolution of Claim No. 3558 and the settlement of the Action against TKH, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between Automobile Dealership Plaintiffs and the Trust in connection herewith. This Agreement may not be modified or amended except in writing executed by Automobile Dealership Plaintiffs and the Trust, and approved by both the Bankruptcy Court and the District Court.

42. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Automobile Dealership Plaintiffs and the Trust. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Automobile Dealership Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than the Trust which is a party hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

43. This Agreement may be executed in counterparts by Automobile Dealership Plaintiffs and the Trust, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

44. Neither Automobile Dealership Plaintiffs nor the Trust shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

45. Where this Agreement requires either party to provide notice or any other communication or Document to the other, such notice shall be in writing, and such notice,

19

communication or Document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

46.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement subject to the approval of the Bankruptcy Court and District Court.

*[signature pages follow]*

**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TK HOLDINGS INC., *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 17-11375 (BLS)<br>Jointly Administered |

## STIPULATION AND SETTLEMENT AGREEMENT RESOLVING PROOF OF CLAIM NO. 3558

This Stipulation and Settlement Agreement ("Agreement") is made and entered into this 27ᵗʰ day of November 2018 ("Execution Date") by and between Joseph J. Farnan, Jr., solely as Trustee (the "Trustee") of the Reorganized TK Holdings Trust (the "Trust"), and Automobile Dealership Plaintiffs ("Automobile Dealership Plaintiffs" and together with the Trust, the "Parties"), both individually and on behalf of a class of indirect purchasers of Occupant Safety Restraint Systems ("Settlement Class"), as more particularly defined in Paragraph 12 below.

### RECITALS

WHEREAS, Automobile Dealership Plaintiffs are prosecuting the cases *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.) (the "MDL Litigation") and Case No. 2:12-cv-00602 (E.D. Mich.) (the "Action") on their own behalf and on behalf of the Settlement Class;

---

[1] The debtors in these chapter 11 cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

WHEREAS, Automobile Dealership Plaintiffs allege that they and each of the members of the Settlement Class were injured as a result of TK Holdings, Inc.'s ("TKH") participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Occupant Safety Restraint Systems (as defined below) in violation of Section 1 of the Sherman Act and various state antitrust, unfair competition, unjust enrichment, and consumer protection laws as set forth in the Automobile Dealership Plaintiffs' Second Consolidated Class Action Complaint filed in the Action (the "Complaint");

WHEREAS, TKH denied Automobile Dealership Plaintiffs' allegations and asserted defenses to the Automobile Dealership Plaintiffs' claims set forth in the Complaint;

WHEREAS, on June 25, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, on July 7, 2017, the Debtors filed their *Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 171] (the "Bar Date Motion");

WHEREAS, on October 4, 2017, the Bankruptcy Court (as defined below) granted the Bar Date Motion and entered an *Order For Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III)*

*Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 959] (the "Bar Date Order");

WHEREAS, pursuant to the Bar Date Order, November 27, 2017, was established as the General Bar Date;

WHEREAS, on November 27, 2017, Automobile Dealership Plaintiffs timely filed a proof of claim that was denoted by the Debtors' claims agent as Claim No. 3558 ("Claim No. 3558"), and that purported to be a claim filed on behalf of themselves and the Settlement Class; and

WHEREAS, on February 21, 2018, the Bankruptcy Court entered an order [D.I. 2120] confirming the *Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings and its Affiliated Debtors* [D.I. 2116] (the "Plan");

WHEREAS, the Plan became effective on April 10, 2018 [D.I. 2646];

WHEREAS, after the Plan became effective, the Trust was established for the purpose of reconciling certain claims, administering the trust assets and making distributions to the trust beneficiaries, all as provided for under the Plan;

WHEREAS, Settlement Class Counsel (as defined below) and counsel for the Trustee have engaged in arm's-length settlement negotiations, and this Agreement is the result of those negotiations;

WHEREAS, Automobile Dealership Plaintiffs, through Settlement Class Counsel, have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving the claims against TKH and the Trust, according to the terms set forth in this Agreement, is in the best interests of Automobile Dealership Plaintiffs and the

communication or Document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

46.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement subject to the approval of the Bankruptcy Court and District Court.

*[signature pages follow]*

Dated: November __, 2018

Don Barrett
David McMullan
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488

Jonathan W. Cuneo
Joel Davidow
Jennifer E. Kelly
Yifei Li
**CUNEO GILBERT & LaDUCA, LLP**
Suite 200
4725 Wisconsin Avenue, NW
Washington, DC 20016
Telephone: (202)789-3960

Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500

*Interim Co-Lead Class Counsel and Settlement
Class Counsel for Automobile Dealership Plaintiffs*

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
John A. Morris (NY Bar No. 2405397)
Peter J. Keane (Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
ljones@pszjlaw.com
dbertenthal@pszjlaw.com
jmorris@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for the Trustee of the Reorganized TK Holdings Trust*

Dealership Plaintiffs shall seek, and the Trust will not object unreasonably to, the entry of an order and final judgment in the Action that will include, at a minimum, the substance of the following provisions (collectively, the "District Court Relief"):

(a)    certifying the Settlement Class described above, pursuant to Rule 23, solely for purposes of this settlement as Settlement Class for the Action;

(b)    as to the Action, approving finally this settlement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 and directing its consummation according to its terms;

(c)    directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims;

(d)    as to TKH, directing that the Action be dismissed with prejudice and without costs;

(e)    providing that both the Bankruptcy Court and District Court shall have jurisdiction concerning the interpretation, administration, consummation and enforcement of this Agreement;

(f)    determining under Rule 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to TKH shall be final; and

(g)    providing that (i) the District Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any Defendant, including TKH, to contest certification of any other class proposed in the MDL Litigation, (ii) the District Court's findings in the order shall have no effect on the District Court's ruling on any motion to certify any class in the MDL Litigation or on the District Court's rulings concerning any Defendant's motion; and (iii) no party may cite or refer to the District Court's approval of the Settlement Class as

9

persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

23.     This Agreement shall become effective (the "<u>Effective Date</u>") when all of the following have occurred: (i) the Bankruptcy Court has entered a final order granting the Rule 9019 Motion; (ii) the District Court has entered a final approval order and judgment that contains at least all of the District Court Relief (the "<u>District Court Order and Judgment</u>"); and (iii) the time for appeal or to seek permission to appeal from the foregoing final orders and judgment has expired or, if appealed, the order granting the Rule 9019 Motion and the District Court Order and Judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken, and such affirmance has become no longer subject to further appeal or review, and no other motion or pleading is pending with respect thereto in any court.  It is agreed that the provisions of Rule 60 shall not be taken into account in determining the above-stated times. On the date that Automobile Dealership Plaintiffs and the Trustee have executed this Agreement, Automobile Dealership Plaintiffs and Trustee shall be bound by its terms and this Agreement shall not be rescinded except as provided in this Agreement.

F.     <u>Release, Discharge, and Covenant Not To Sue</u>

24.     In addition to the effect of any final order or judgment entered in accordance with this Agreement, upon the Effective Date, and in consideration of payment of the Settlement Amount, as specified in Paragraph 19 of this Agreement, into the Settlement Fund, and in consideration of the allowance of Claim No. 3558 as set forth above, and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively,

derivatively or in any other capacity) that Releasors, or any of them, ever had, now has, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to (i) any conduct alleged in the Complaint, and/or (ii) any act or omission of the Releasees (or any of them) concerning Occupant Safety Restraint Systems, including, but not limited to, any conduct and causes of action alleged or asserted or that could have been alleged or asserted, in any class action or other complaint filed in the Action ("Released Claims"), provided however, that nothing herein shall release: (1) any claims made by direct purchasers of Occupant Safety Restraint Systems; (2) any claims made by end payors that are indirect purchasers of Occupant Safety Restraint Systems; (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State as to government purchases and/or penalties; (4) claims involving any negligence, personal injury, property damage, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to Occupant Safety Restraint Systems; (5) claims concerning any automotive part other than Occupant Safety Restraint Systems; (6) claims under laws other than those of the United States relating to purchases of Occupant Safety Restraint Systems made by any Releasor outside of the United States; and (7) claims under federal law or the state or local laws of any jurisdiction other than an Indirect Purchaser State. Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee as to, in whole or in part, any of the Released Claims unless this Agreement is terminated or not finally approved.

25.     In addition, upon the Effective Date, the Releasors hereby expressly waive and release any and all provisions, rights, and benefits concerning Occupant Safety Restraint Systems conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

or by any equivalent law or statute of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.

26.     Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon the Effective Date, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Trust and Automobile Dealership Plaintiffs have agreed to release pursuant to this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

G.     <u>Settlement Amount</u>.

27.     Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, the Trust, shall pay or cause to be paid the Settlement Amount. The Settlement Amount shall be paid in U.S. dollars into one or more accounts designated in a writing provided by Settlement Class Counsel to the counsel for the Trust. None of the Releasees shall have any contractual, legal, or equitable responsibility or obligation with respect

25.     In addition, upon the Effective Date, the Releasors hereby expressly waive and release any and all provisions, rights, and benefits concerning Occupant Safety Restraint Systems conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

or by any equivalent law or statute of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.

26.     Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon the Effective Date, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Trust and Automobile Dealership Plaintiffs have agreed to release pursuant to this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

G.     Settlement Amount.

27.     Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, the Trust, shall pay or cause to be paid the Settlement Amount. The Settlement Amount shall be paid in U.S. dollars into one or more accounts designated in a writing provided by Settlement Class Counsel to the counsel for the Trust.  None of the Releasees shall have any contractual, legal, or equitable responsibility or obligation with respect

to any account designated by Settlement Class Counsel, any assets held therein or any payments or distributions made therefrom.

28. <u>Exclusions from the Settlement Class.</u>

Subject to District Court approval, any person or entity seeking exclusion from the Settlement Class must file a written request for exclusion by the Opt-Out Deadline. Any person or entity that files such a request shall be excluded from the Settlement Class and shall have no rights with respect to this settlement. Subject to District Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable class notice will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by the Settlement Agreement upon the Effective Date. Settlement Class Counsel shall, within ten (10) business days of the Opt Out Deadline, provide the Trust with a list and copies of all opt out requests it receives in the Action and shall file with the District Court a list of all Settlement Class Members who timely and validly opted out of the settlement.

(a)  Subject to District Court Approval, any member of the Settlement Class who submits a valid and timely request for exclusion from the Settlement Class will not be a Settlement Class Member and shall not be bound by the terms of this Agreement. The Trust reserves all of its legal and equitable rights and defenses, including, but not limited to, any defenses relating to (i) whether any excluded member of the Settlement Class is an indirect purchaser of Occupant Safety Restraint Systems or has standing to bring any claim against TKH, or (ii) the expiration of the General Bar Date as provided for in the Bar Date Motion.

(b)  Subject to District Court Approval, in the written request for exclusion, the member of the Settlement Class must state his, her, or its full name, street address, and telephone

number. Further, the member of the Settlement Class must include a statement in the written request for exclusion that he, she, or it wishes to be excluded from the Settlement Class. Any member of the Settlement Class that submits a written request for exclusion may also identify the number of Vehicles purchased from December 1, 2003 through the Execution Date of this Agreement as requested in the notice to the Settlement Class as provided in Paragraph 18.

(c)     The Trust or Settlement Class Counsel may dispute an exclusion request, and the parties shall, if possible, resolve the disputed exclusion request by agreement and shall inform the District Court of their position, and, if necessary, obtain a ruling thereon within thirty (30) days of the Opt-Out Deadline.

29.     Payment of Expenses

The Parties shall bear their own respective costs and expenses for all purposes, including but not limited to those incurred in connection with the negotiation and execution of this Agreement, the Rule 9019 Motion, and the Action, regardless of whether the Effective Date occurs. For the avoidance of doubt, none of the Releasees shall be liable for any of the costs or expenses of the litigation of the Action, including but not limited to attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the District Court or Special Master, appeals, trials, or the negotiation of other settlements, or for class administration and costs.

H.     The Settlement Fund

30.     After the Effective Date, the Settlement Fund shall be distributed in accordance with a plan to be submitted to the District Court at the appropriate time by Settlement Class Counsel, subject to approval by the District Court. None of the Releasees shall have any financial, contractual, legal or equitable responsibility, obligation, or liability whatsoever with

14

respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration.

31.     Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs, as may be provided by District Court Order. None of the Releasees shall be liable for any costs, fees, or expenses of any Automobile Dealership Plaintiffs or the Settlement Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the District Court shall be paid out of the Settlement Fund.

32.     Settlement Class Counsel's Attorneys' Fees, Reimbursement
        of Expenses, and Incentive Awards for Automobile Dealership Plaintiffs

(a)     Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval, submit an application or applications to the District Court ("Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action and incentive awards, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid), as may be awarded by the District Court ("Fee and Expense Award"). Settlement Class Counsel reserves the right to make additional applications for District Court approval of fees and expenses incurred and reasonable incentive awards, but in no event shall any of the Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)     Subject to District Court approval, Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation

expenses and incentive awards. Attorneys' fees and expenses awarded by the District Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund with interest, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is reduced or reversed, or in the event the Agreement is rescinded or terminated pursuant to the terms of this Agreement.

(c)    The procedure for and the allowance or disallowance by the District Court of the application by Settlement Class Counsel for attorneys' fees, costs, and expenses, and incentive awards for class representatives to be paid out of the Settlement Fund is not part of this Agreement, and is to be considered by the District Court separately from the District Court's consideration of the fairness, reasonableness and adequacy of the Settlement. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate, cancel, amend or modify this Agreement, or affect the finality of the settlement.

(d)    None of the Releasees shall have any responsibility for, or interest in, or liability (whether legal or equitable) whatsoever with respect to any payment to Settlement Class Counsel and/or Automobile Dealership Plaintiffs of any Fee and Expense Award in the Action.

(e)    None of the Releasees shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation of the Settlement Fund among Settlement Class Counsel, Automobile Dealership Plaintiffs and/or any other person who may assert some claim thereto, or of any Fee and Expense Award that the District Court may make in the Action.

I.      Rescission If Final Orders And Judgments Are Not Entered

33.      If (a) the Bankruptcy Court does not grant the Rule 9019 Motion, *or* (b) the District Court does not enter the District Court Judgment; or (c) if the order granting the Rule 9019 Motion or the District Court Order or Judgment is modified in any material way or is set aside on appeal, then TKH and Automobile Dealership Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms set forth below. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the District Court from the Settlement Fund shall not be deemed a material modification of all or a part of the terms of this Agreement or such final judgment.

34.      If the Effective Date of this Agreement does not occur, or this Agreement otherwise is terminated pursuant to Paragraph 33, then this Agreement shall be of no force or effect. The Trust expressly reserves all rights and defenses if this Agreement does not become final.

35.      Further, and in any event, Automobile Dealership Plaintiffs and the Trust agree that this Agreement, whether or not it shall become final, and any and all negotiations, Documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by TKH, or the other Releasees, to be used against TKH, or (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the MDL Litigation, to be used against TKH, and evidence thereof shall not be discoverable or used in any way, whether in the MDL Litigation or in any other action or proceeding, against TKH.

36.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement.

37.     The Parties to this Agreement contemplate and agree that, prior to final approval of the settlement by the District Court as provided for in Paragraphs 16-32 hereof, appropriate notice (1) of the settlement; and (2) of a hearing at which the District Court will consider the approval of this Agreement, will be given to the Settlement Class.

J.     <u>Miscellaneous</u>

38.     The Trust shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

39.     This Agreement does not settle or compromise any claim by the Automobile Dealership Plaintiffs or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent complaint, against any Defendant or alleged co-conspirator other than TKH. All rights against such other Defendants or alleged co-conspirators are specifically reserved by the Automobile Dealership Plaintiffs and the Settlement Class.  All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than TKH and other Releasees, for sales made by TKH and TKH's alleged illegal conduct are specifically reserved by Automobile Dealership Plaintiffs and Settlement Class Members.  TKH's sales to the class and its alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than TKH and the other Releasees.

40.     This Agreement shall be governed by and interpreted according to the substantive laws of the State of Michigan without regard to its choice of law or conflict of law principles.

41.     This Agreement constitutes the entire, complete and integrated agreement between Automobile Dealership Plaintiffs and the Trust pertaining to the resolution of Claim No. 3558 and the settlement of the Action against TKH, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between Automobile Dealership Plaintiffs and the Trust in connection herewith.  This Agreement may not be modified or amended except in writing executed by Automobile Dealership Plaintiffs and the Trust, and approved by both the Bankruptcy Court and the District Court.

42.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Automobile Dealership Plaintiffs and the Trust. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Automobile Dealership Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than the Trust which is a party hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

43.     This Agreement may be executed in counterparts by Automobile Dealership Plaintiffs and the Trust, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

44.     Neither Automobile Dealership Plaintiffs nor the Trust shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

45.     Where this Agreement requires either party to provide notice or any other communication or Document to the other, such notice shall be in writing, and such notice,

communication or Document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

46.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement subject to the approval of the Bankruptcy Court and District Court.

*[signature pages follow]*

# THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TK HOLDINGS INC., *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 17-11375 (BLS)<br>Jointly Administered |

## STIPULATION AND SETTLEMENT AGREEMENT RESOLVING PROOF OF CLAIM NO. 3558

This Stipulation and Settlement Agreement ("Agreement") is made and entered into this 27th day of November 2018 ("Execution Date") by and between Joseph J. Farnan, Jr., solely as Trustee (the "Trustee") of the Reorganized TK Holdings Trust (the "Trust"), and Automobile Dealership Plaintiffs ("Automobile Dealership Plaintiffs" and together with the Trust, the "Parties"), both individually and on behalf of a class of indirect purchasers of Occupant Safety Restraint Systems ("Settlement Class"), as more particularly defined in Paragraph 12 below.

## RECITALS

WHEREAS, Automobile Dealership Plaintiffs are prosecuting the cases *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.) (the "MDL Litigation") and Case No. 2:12-cv-00602 (E.D. Mich.) (the "Action") on their own behalf and on behalf of the Settlement Class;

---

[1] The debtors in these chapter 11 cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

WHEREAS, Automobile Dealership Plaintiffs allege that they and each of the members of the Settlement Class were injured as a result of TK Holdings, Inc.'s ("TKH") participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Occupant Safety Restraint Systems (as defined below) in violation of Section 1 of the Sherman Act and various state antitrust, unfair competition, unjust enrichment, and consumer protection laws as set forth in the Automobile Dealership Plaintiffs' Second Consolidated Class Action Complaint filed in the Action (the "Complaint");

WHEREAS, TKH denied Automobile Dealership Plaintiffs' allegations and asserted defenses to the Automobile Dealership Plaintiffs' claims set forth in the Complaint;

WHEREAS, on June 25, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, on July 7, 2017, the Debtors filed their *Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 171] (the "Bar Date Motion");

WHEREAS, on October 4, 2017, the Bankruptcy Court (as defined below) granted the Bar Date Motion and entered an *Order For Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III)*

*Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 959] (the "Bar Date Order");

WHEREAS, pursuant to the Bar Date Order, November 27, 2017, was established as the General Bar Date;

WHEREAS, on November 27, 2017, Automobile Dealership Plaintiffs timely filed a proof of claim that was denoted by the Debtors' claims agent as Claim No. 3558 ("Claim No. 3558"), and that purported to be a claim filed on behalf of themselves and the Settlement Class; and

WHEREAS, on February 21, 2018, the Bankruptcy Court entered an order [D.I. 2120] confirming the *Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings and its Affiliated Debtors* [D.I. 2116] (the "Plan");

WHEREAS, the Plan became effective on April 10, 2018 [D.I. 2646];

WHEREAS, after the Plan became effective, the Trust was established for the purpose of reconciling certain claims, administering the trust assets and making distributions to the trust beneficiaries, all as provided for under the Plan;

WHEREAS, Settlement Class Counsel (as defined below) and counsel for the Trustee have engaged in arm's-length settlement negotiations, and this Agreement is the result of those negotiations;

WHEREAS, Automobile Dealership Plaintiffs, through Settlement Class Counsel, have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving the claims against TKH and the Trust, according to the terms set forth in this Agreement, is in the best interests of Automobile Dealership Plaintiffs and the

communication or Document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

46.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement subject to the approval of the Bankruptcy Court and District Court.

*[signature pages follow]*

Dated: November __, 2018

Don Barrett
David McMullan
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488

Jonathan W. Cuneo
Joel Davidow
Jennifer E. Kelly
Yifei Li
**CUNEO GILBERT & LaDUCA, LLP**
Suite 200
4725 Wisconsin Avenue, NW
Washington, DC 20016
Telephone: (202)789-3960

Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500

*Interim Co-Lead Class Counsel and Settlement*
*Class Counsel for Automobile Dealership Plaintiffs*

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
John A. Morris (NY Bar No. 2405397)
Peter J. Keane (Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
ljones@pszjlaw.com
dbertenthal@pszjlaw.com
jmorris@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for the Trustee of the Reorganized TK
Holdings Trust*

to any account designated by Settlement Class Counsel, any assets held therein or any payments or distributions made therefrom.

      28.   <u>Exclusions from the Settlement Class.</u>

      Subject to District Court approval, any person or entity seeking exclusion from the Settlement Class must file a written request for exclusion by the Opt-Out Deadline. Any person or entity that files such a request shall be excluded from the Settlement Class and shall have no rights with respect to this settlement. Subject to District Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable class notice will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by the Settlement Agreement upon the Effective Date. Settlement Class Counsel shall, within ten (10) business days of the Opt Out Deadline, provide the Trust with a list and copies of all opt out requests it receives in the Action and shall file with the District Court a list of all Settlement Class Members who timely and validly opted out of the settlement.

      (a)     Subject to District Court Approval, any member of the Settlement Class who submits a valid and timely request for exclusion from the Settlement Class will not be a Settlement Class Member and shall not be bound by the terms of this Agreement. The Trust reserves all of its legal and equitable rights and defenses, including, but not limited to, any defenses relating to (i) whether any excluded member of the Settlement Class is an indirect purchaser of Occupant Safety Restraint Systems or has standing to bring any claim against TKH, or (ii) the expiration of the General Bar Date as provided for in the Bar Date Motion.

      (b)     Subject to District Court Approval, in the written request for exclusion, the member of the Settlement Class must state his, her, or its full name, street address, and telephone

13

number. Further, the member of the Settlement Class must include a statement in the written request for exclusion that he, she, or it wishes to be excluded from the Settlement Class. Any member of the Settlement Class that submits a written request for exclusion may also identify the number of Vehicles purchased from December 1, 2003 through the Execution Date of this Agreement as requested in the notice to the Settlement Class as provided in Paragraph 18.

       (c)    The Trust or Settlement Class Counsel may dispute an exclusion request, and the parties shall, if possible, resolve the disputed exclusion request by agreement and shall inform the District Court of their position, and, if necessary, obtain a ruling thereon within thirty (30) days of the Opt-Out Deadline.

      29.    <u>Payment of Expenses</u>

    The Parties shall bear their own respective costs and expenses for all purposes, including but not limited to those incurred in connection with the negotiation and execution of this Agreement, the Rule 9019 Motion, and the Action, regardless of whether the Effective Date occurs.  For the avoidance of doubt, none of the Releasees shall be liable for any of the costs or expenses of the litigation of the Action, including but not limited to attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the District Court or Special Master, appeals, trials, or the negotiation of other settlements, or for class administration and costs.

H.    <u>The Settlement Fund</u>

    30.    After the Effective Date, the Settlement Fund shall be distributed in accordance with a plan to be submitted to the District Court at the appropriate time by Settlement Class Counsel, subject to approval by the District Court.  None of the Releasees shall have any financial, contractual, legal or equitable responsibility, obligation, or liability whatsoever with

respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration.

31.     Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs, as may be provided by District Court Order.  None of the Releasees shall be liable for any costs, fees, or expenses of any of Automobile Dealership Plaintiffs or the Settlement Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the District Court shall be paid out of the Settlement Fund.

32.     Settlement Class Counsel's Attorneys' Fees, Reimbursement
of Expenses, and Incentive Awards for Automobile Dealership Plaintiffs

(a)     Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval, submit an application or applications to the District Court ("Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action and incentive awards, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid), as may be awarded by the District Court ("Fee and Expense Award"). Settlement Class Counsel reserves the right to make additional applications for District Court approval of fees and expenses incurred and reasonable incentive awards, but in no event shall any of the Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)     Subject to District Court approval, Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation

expenses and incentive awards. Attorneys' fees and expenses awarded by the District Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund with interest, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is reduced or reversed, or in the event the Agreement is rescinded or terminated pursuant to the terms of this Agreement.

(c)     The procedure for and the allowance or disallowance by the District Court of the application by Settlement Class Counsel for attorneys' fees, costs, and expenses, and incentive awards for class representatives to be paid out of the Settlement Fund is not part of this Agreement, and is to be considered by the District Court separately from the District Court's consideration of the fairness, reasonableness and adequacy of the Settlement. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate, cancel, amend or modify this Agreement, or affect the finality of the settlement.

(d)     None of the Releasees shall have any responsibility for, or interest in, or liability (whether legal or equitable) whatsoever with respect to any payment to Settlement Class Counsel and/or Automobile Dealership Plaintiffs of any Fee and Expense Award in the Action.

(e)     None of the Releasees shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation of the Settlement Fund among Settlement Class Counsel, Automobile Dealership Plaintiffs and/or any other person who may assert some claim thereto, or of any Fee and Expense Award that the District Court may make in the Action.

I.    Rescission If Final Orders And Judgments Are Not Entered

33.    If (a) the Bankruptcy Court does not grant the Rule 9019 Motion, *or* (b) the District Court does not enter the District Court Judgment; or (c) if the order granting the Rule 9019 Motion or the District Court Order or Judgment is modified in any material way or is set aside on appeal, then TKH and Automobile Dealership Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms set forth below. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the District Court from the Settlement Fund shall not be deemed a material modification of all or a part of the terms of this Agreement or such final judgment.

34.    If the Effective Date of this Agreement does not occur, or this Agreement otherwise is terminated pursuant to Paragraph 33, then this Agreement shall be of no force or effect. The Trust expressly reserves all rights and defenses if this Agreement does not become final.

35.    Further, and in any event, Automobile Dealership Plaintiffs and the Trust agree that this Agreement, whether or not it shall become final, and any and all negotiations, Documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by TKH, or the other Releasees, to be used against TKH, or (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the MDL Litigation, to be used against TKH, and evidence thereof shall not be discoverable or used in any way, whether in the MDL Litigation or in any other action or proceeding, against TKH.

36.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement.

37.     The Parties to this Agreement contemplate and agree that, prior to final approval of the settlement by the District Court as provided for in Paragraphs 16-32 hereof, appropriate notice (1) of the settlement; and (2) of a hearing at which the District Court will consider the approval of this Agreement, will be given to the Settlement Class.

J.     Miscellaneous

38.     The Trust shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

39.     This Agreement does not settle or compromise any claim by the Automobile Dealership Plaintiffs or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent complaint, against any Defendant or alleged co-conspirator other than TKH. All rights against such other Defendants or alleged co-conspirators are specifically reserved by the Automobile Dealership Plaintiffs and the Settlement Class. All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than TKH and other Releasees, for sales made by TKH and TKH's alleged illegal conduct are specifically reserved by Automobile Dealership Plaintiffs and Settlement Class Members. TKH's sales to the class and its alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than TKH and the other Releasees.

40.     This Agreement shall be governed by and interpreted according to the substantive laws of the State of Michigan without regard to its choice of law or conflict of law principles.

41.     This Agreement constitutes the entire, complete and integrated agreement between Automobile Dealership Plaintiffs and the Trust pertaining to the resolution of Claim No. 3558 and the settlement of the Action against TKH, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between Automobile Dealership Plaintiffs and the Trust in connection herewith.  This Agreement may not be modified or amended except in writing executed by Automobile Dealership Plaintiffs and the Trust, and approved by both the Bankruptcy Court and the District Court.

42.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Automobile Dealership Plaintiffs and the Trust. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Automobile Dealership Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than the Trust which is a party hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

43.     This Agreement may be executed in counterparts by Automobile Dealership Plaintiffs and the Trust, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

44.     Neither Automobile Dealership Plaintiffs nor the Trust shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

45.     Where this Agreement requires either party to provide notice or any other communication or Document to the other, such notice shall be in writing, and such notice,

communication or Document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

46.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement subject to the approval of the Bankruptcy Court and District Court.

*[signature pages follow]*

## THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TK HOLDINGS INC., *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 17-11375 (BLS)<br>Jointly Administered |

## STIPULATION AND SETTLEMENT AGREEMENT RESOLVING PROOF OF CLAIM NO. 3558

This Stipulation and Settlement Agreement ("Agreement") is made and entered into this 27ᵗʰ day of November 2018 ("Execution Date") by and between Joseph J. Farnan, Jr., solely as Trustee (the "Trustee") of the Reorganized TK Holdings Trust (the "Trust"), and Automobile Dealership Plaintiffs ("Automobile Dealership Plaintiffs" and together with the Trust, the "Parties"), both individually and on behalf of a class of indirect purchasers of Occupant Safety Restraint Systems ("Settlement Class"), as more particularly defined in Paragraph 12 below.

## RECITALS

WHEREAS, Automobile Dealership Plaintiffs are prosecuting the cases *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.) (the "MDL Litigation") and Case No. 2:12-cv-00602 (E.D. Mich.) (the "Action") on their own behalf and on behalf of the Settlement Class;

---

[1] The debtors in these chapter 11 cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

WHEREAS, Automobile Dealership Plaintiffs allege that they and each of the members of the Settlement Class were injured as a result of TK Holdings, Inc.'s ("TKH") participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Occupant Safety Restraint Systems (as defined below) in violation of Section 1 of the Sherman Act and various state antitrust, unfair competition, unjust enrichment, and consumer protection laws as set forth in the Automobile Dealership Plaintiffs' Second Consolidated Class Action Complaint filed in the Action (the "Complaint");

WHEREAS, TKH denied Automobile Dealership Plaintiffs' allegations and asserted defenses to the Automobile Dealership Plaintiffs' claims set forth in the Complaint;

WHEREAS, on June 25, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, on July 7, 2017, the Debtors filed their *Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 171] (the "Bar Date Motion");

WHEREAS, on October 4, 2017, the Bankruptcy Court (as defined below) granted the Bar Date Motion and entered an *Order For Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III)*

*Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 959] (the "Bar Date Order");

WHEREAS, pursuant to the Bar Date Order, November 27, 2017, was established as the General Bar Date;

WHEREAS, on November 27, 2017, Automobile Dealership Plaintiffs timely filed a proof of claim that was denoted by the Debtors' claims agent as Claim No. 3558 ("Claim No. 3558"), and that purported to be a claim filed on behalf of themselves and the Settlement Class; and

WHEREAS, on February 21, 2018, the Bankruptcy Court entered an order [D.I. 2120] confirming the *Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings and its Affiliated Debtors* [D.I. 2116] (the "Plan");

WHEREAS, the Plan became effective on April 10, 2018 [D.I. 2646];

WHEREAS, after the Plan became effective, the Trust was established for the purpose of reconciling certain claims, administering the trust assets and making distributions to the trust beneficiaries, all as provided for under the Plan;

WHEREAS, Settlement Class Counsel (as defined below) and counsel for the Trustee have engaged in arm's-length settlement negotiations, and this Agreement is the result of those negotiations;

WHEREAS, Automobile Dealership Plaintiffs, through Settlement Class Counsel, have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving the claims against TKH and the Trust, according to the terms set forth in this Agreement, is in the best interests of Automobile Dealership Plaintiffs and the

communication or Document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

46.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement subject to the approval of the Bankruptcy Court and District Court.

*[signature pages follow]*

Dated: November ___, 2018

Don Barrett
David McMullan
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488

Jonathan W. Cuneo
Joel Davidow
Jennifer E. Kelly
Yifei Li
**CUNEO GILBERT & LaDUCA, LLP**
Suite 200
4725 Wisconsin Avenue, NW
Washington, DC 20016
Telephone: (202)789-3960

Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500

*Interim Co-Lead Class Counsel and Settlement*
*Class Counsel for Automobile Dealership Plaintiffs*

_(signature)_

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
John A. Morris (NY Bar No. 2405397)
Peter J. Keane (Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
ljones@pszjlaw.com
dbertenthal@pszjlaw.com
jmorris@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for the Trustee of the Reorganized TK Holdings Trust*

respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration.

31.     Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs, as may be provided by District Court Order.  None of the Releasees shall be liable for any costs, fees, or expenses of any of Automobile Dealership Plaintiffs or the Settlement Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the District Court shall be paid out of the Settlement Fund.

32.     Settlement Class Counsel's Attorneys' Fees, Reimbursement
        of Expenses, and Incentive Awards for Automobile Dealership Plaintiffs

(a)     Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval, submit an application or applications to the District Court ("Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action and incentive awards, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid), as may be awarded by the District Court ("Fee and Expense Award"). Settlement Class Counsel reserves the right to make additional applications for District Court approval of fees and expenses incurred and reasonable incentive awards, but in no event shall any of the Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)     Subject to District Court approval, Automobile Dealership Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation

expenses and incentive awards. Attorneys' fees and expenses awarded by the District Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund with interest, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is reduced or reversed, or in the event the Agreement is rescinded or terminated pursuant to the terms of this Agreement.

(c)     The procedure for and the allowance or disallowance by the District Court of the application by Settlement Class Counsel for attorneys' fees, costs, and expenses, and incentive awards for class representatives to be paid out of the Settlement Fund is not part of this Agreement, and is to be considered by the District Court separately from the District Court's consideration of the fairness, reasonableness and adequacy of the Settlement. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate, cancel, amend or modify this Agreement, or affect the finality of the settlement.

(d)     None of the Releasees shall have any responsibility for, or interest in, or liability (whether legal or equitable) whatsoever with respect to any payment to Settlement Class Counsel and/or Automobile Dealership Plaintiffs of any Fee and Expense Award in the Action.

(e)     None of the Releasees shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation of the Settlement Fund among Settlement Class Counsel, Automobile Dealership Plaintiffs and/or any other person who may assert some claim thereto, or of any Fee and Expense Award that the District Court may make in the Action.

16

I.     Rescission If Final Orders And Judgments Are Not Entered

33.     If (a) the Bankruptcy Court does not grant the Rule 9019 Motion, *or* (b) the District Court does not enter the District Court Judgment; or (c) if the order granting the Rule 9019 Motion or the District Court Order or Judgment is modified in any material way or is set aside on appeal, then TKH and Automobile Dealership Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms set forth below. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the District Court from the Settlement Fund shall not be deemed a material modification of all or a part of the terms of this Agreement or such final judgment.

34.     If the Effective Date of this Agreement does not occur, or this Agreement otherwise is terminated pursuant to Paragraph 33, then this Agreement shall be of no force or effect. The Trust expressly reserves all rights and defenses if this Agreement does not become final.

35.     Further, and in any event, Automobile Dealership Plaintiffs and the Trust agree that this Agreement, whether or not it shall become final, and any and all negotiations, Documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by TKH, or the other Releasees, to be used against TKH, or (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the MDL Litigation, to be used against TKH, and evidence thereof shall not be discoverable or used in any way, whether in the MDL Litigation or in any other action or proceeding, against TKH.

36.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement.

37.     The Parties to this Agreement contemplate and agree that, prior to final approval of the settlement by the District Court as provided for in Paragraphs 16-32 hereof, appropriate notice (1) of the settlement; and (2) of a hearing at which the District Court will consider the approval of this Agreement, will be given to the Settlement Class.

J.     Miscellaneous

38.     The Trust shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

39.     This Agreement does not settle or compromise any claim by the Automobile Dealership Plaintiffs or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent complaint, against any Defendant or alleged co-conspirator other than TKH. All rights against such other Defendants or alleged co-conspirators are specifically reserved by the Automobile Dealership Plaintiffs and the Settlement Class.  All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than TKH and other Releasees, for sales made by TKH and TKH's alleged illegal conduct are specifically reserved by Automobile Dealership Plaintiffs and Settlement Class Members.  TKH's sales to the class and its alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a basis for damage claims and shall be part of any joint and several liability claims against other current or future Defendants in the Action or other persons or entities other than TKH and the other Releasees.

40.     This Agreement shall be governed by and interpreted according to the substantive laws of the State of Michigan without regard to its choice of law or conflict of law principles.

41.    This Agreement constitutes the entire, complete and integrated agreement between Automobile Dealership Plaintiffs and the Trust pertaining to the resolution of Claim No. 3558 and the settlement of the Action against TKH, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between Automobile Dealership Plaintiffs and the Trust in connection herewith.  This Agreement may not be modified or amended except in writing executed by Automobile Dealership Plaintiffs and the Trust, and approved by both the Bankruptcy Court and the District Court.

42.    This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Automobile Dealership Plaintiffs and the Trust. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Automobile Dealership Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than the Trust which is a party hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

43.    This Agreement may be executed in counterparts by Automobile Dealership Plaintiffs and the Trust, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

44.    Neither Automobile Dealership Plaintiffs nor the Trust shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

45.    Where this Agreement requires either party to provide notice or any other communication or Document to the other, such notice shall be in writing, and such notice,

19

communication or Document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

46.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement subject to the approval of the Bankruptcy Court and District Court.

*[signature pages follow]*

# THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TK HOLDINGS INC., *et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 17-11375 (BLS)<br>Jointly Administered |

## STIPULATION AND SETTLEMENT AGREEMENT RESOLVING PROOF OF CLAIM NO. 3558

This Stipulation and Settlement Agreement ("Agreement") is made and entered into this 27th day of November 2018 ("Execution Date") by and between Joseph J. Farnan, Jr., solely as Trustee (the "Trustee") of the Reorganized TK Holdings Trust (the "Trust"), and Automobile Dealership Plaintiffs ("Automobile Dealership Plaintiffs" and together with the Trust, the "Parties"), both individually and on behalf of a class of indirect purchasers of Occupant Safety Restraint Systems ("Settlement Class"), as more particularly defined in Paragraph 12 below.

## RECITALS

WHEREAS, Automobile Dealership Plaintiffs are prosecuting the cases *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.) (the "MDL Litigation") and Case No. 2:12-cv-00602 (E.D. Mich.) (the "Action") on their own behalf and on behalf of the Settlement Class;

---

[1] The debtors in these chapter 11 cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases. The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

WHEREAS, Automobile Dealership Plaintiffs allege that they and each of the members of the Settlement Class were injured as a result of TK Holdings, Inc.'s ("TKH") participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Occupant Safety Restraint Systems (as defined below) in violation of Section 1 of the Sherman Act and various state antitrust, unfair competition, unjust enrichment, and consumer protection laws as set forth in the Automobile Dealership Plaintiffs' Second Consolidated Class Action Complaint filed in the Action (the "Complaint");

WHEREAS, TKH denied Automobile Dealership Plaintiffs' allegations and asserted defenses to the Automobile Dealership Plaintiffs' claims set forth in the Complaint;

WHEREAS, on June 25, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, on July 7, 2017, the Debtors filed their *Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 171] (the "Bar Date Motion");

WHEREAS, on October 4, 2017, the Bankruptcy Court (as defined below) granted the Bar Date Motion and entered an *Order For Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III)*

*Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 959] (the "Bar Date Order");

WHEREAS, pursuant to the Bar Date Order, November 27, 2017, was established as the General Bar Date;

WHEREAS, on November 27, 2017, Automobile Dealership Plaintiffs timely filed a proof of claim that was denoted by the Debtors' claims agent as Claim No. 3558 ("Claim No. 3558"), and that purported to be a claim filed on behalf of themselves and the Settlement Class; and

WHEREAS, on February 21, 2018, the Bankruptcy Court entered an order [D.I. 2120] confirming the *Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings and its Affiliated Debtors* [D.I. 2116] (the "Plan");

WHEREAS, the Plan became effective on April 10, 2018 [D.I. 2646];

WHEREAS, after the Plan became effective, the Trust was established for the purpose of reconciling certain claims, administering the trust assets and making distributions to the trust beneficiaries, all as provided for under the Plan;

WHEREAS, Settlement Class Counsel (as defined below) and counsel for the Trustee have engaged in arm's-length settlement negotiations, and this Agreement is the result of those negotiations;

WHEREAS, Automobile Dealership Plaintiffs, through Settlement Class Counsel, have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving the claims against TKH and the Trust, according to the terms set forth in this Agreement, is in the best interests of Automobile Dealership Plaintiffs and the

communication or Document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

46.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement subject to the approval of the Bankruptcy Court and District Court.

*[signature pages follow]*

Dated: November ___, 2018

*Don Barrett by JWC / permission*

Don Barrett
David McMullan
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488

*Jonathan W. Cuneo*

Jonathan W. Cuneo
Joel Davidow
Jennifer E. Kelly
Yifei Li
**CUNEO GILBERT & LaDUCA, LLP**
Suite 200
4725 Wisconsin Avenue, NW
Washington, DC 20016
Telephone: (202)789-3960

*Shawn Raiter by JWC / permission*

Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500

*Interim Co-Lead Class Counsel and Settlement
Class Counsel for Automobile Dealership Plaintiffs*

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
John A. Morris (NY Bar No. 2405397)
Peter J. Keane (Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
ljones@pszjlaw.com
dbertenthal@pszjlaw.com
jmorris@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for the Trustee of the Reorganized TK Holdings Trust*

Dated: November ___, 2018

Don Barrett
David McMullan
**BARRETT LAW GROUP, P.A.**
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488

Jonathan W. Cuneo
Joel Davidow
Jennifer E. Kelly
Yifei Li
**CUNEO GILBERT & LaDUCA, LLP**
Suite 200
4725 Wisconsin Avenue, NW
Washington, DC 20016
Telephone: (202)789-3960

Shawn M. Raiter
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500

*Interim Co-Lead Class Counsel and Settlement
Class Counsel for Automobile Dealership Plaintiffs*

20

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
John A. Morris (NY Bar No. 2405397)
Peter J. Keane (Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
ljones@pszjlaw.com
dbertenthal@pszjlaw.com
jmorris@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for the Trustee of the Reorganized TK*
*Holdings Trust*

# EXHIBIT C

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TK HOLDINGS INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 17-11375 (BLS)<br>Jointly Administered |

## STIPULATION AND SETTLEMENT AGREEMENT RESOLVING PROOF OF CLAIM NO. 3611

This Stipulation and Settlement Agreement ("Agreement") is made and entered into this 21st day of November 2018 ("Execution Date") by and between Joseph J. Farnan, Jr., solely as Trustee (the "Trustee") of the Reorganized TK Holdings Trust (the "Trust"), and End-Payor Plaintiffs ("End-Payor Plaintiffs" and together with the Trust, the "Parties"), both individually and on behalf of a class of indirect purchasers of Occupant Safety Restraint Systems ("Settlement Class"), as more particularly defined in Paragraph 11 below.

## RECITALS

WHEREAS, End-Payor Plaintiffs are prosecuting the cases *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.) (the "MDL Litigation") and Case No. 2:12-cv-00603 (E.D. Mich.) (the "Action") on their own behalf and on behalf of the Settlement Class;

---

[1] The debtors in these chapter 11 cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A).  Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these chapter 11 cases.  The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

WHEREAS, End-Payor Plaintiffs allege that they and each of the members of the Settlement Class were injured as a result of TK Holdings, Inc.'s ("TKH") participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Occupant Safety Restraint Systems (as defined below) in violation of Section 1 of the Sherman Act and various state antitrust, unfair competition, unjust enrichment, and consumer protection laws as set forth in the End-Payor Plaintiffs' Third Consolidated Amended Class Action Complaint filed in the Action (the "Complaint");

WHEREAS, TKH denied End-Payor Plaintiffs' allegations and asserted defenses to the End-Payor Plaintiffs' claims set forth in the Complaint;

WHEREAS, on June 25, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, on July 7, 2017, the Debtors filed their *Motion of Debtors Pursuant to 11 U.S.C. §§ 502(b)(9) and 105(a), Fed. R. Bankr. P. 2002, 3003(c)(3), 5005, and 9007, and Local Rules 2002-1(e), 3001-1, and 3003-1 for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 171] (the "Bar Date Motion");

WHEREAS, on October 4, 2017, the Bankruptcy Court (as defined below) granted the Bar Date Motion and entered an *Order For Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, and (III) Approve Procedures for Providing Notice of Bar Date and Other Important Deadlines and Information to Potential PSAN Inflator Claimants* [D.I. 959] (the "Bar Date Order");

2

WHEREAS, pursuant to the Bar Date Order, November 27, 2017, was established as the General Bar Date;

WHEREAS, on November 27, 2017, End-Payor Plaintiffs timely filed a proof of claim that was denoted by the Debtors' claims agent as Claim No. 3611 ("Claim No. 3611"), and that purported to be a claim filed on behalf of themselves and the Settlement Class; and

WHEREAS, on February 21, 2018, the Bankruptcy Court entered an order [D.I. 2120] confirming the *Fifth Amended Joint Chapter 11 Plan of Reorganization of TK Holdings and its Affiliated Debtors* [D.I. 2116] (the "Plan");

WHEREAS, the Plan became effective on April 10, 2018 [D.I. 2646];

WHEREAS, after the Plan became effective, the Trust was established for the purpose of reconciling certain claims, administering the trust assets and making distributions to the trust beneficiaries, all as provided for under the Plan;

WHEREAS, Settlement Class Counsel (as defined below) and counsel for the Trustee have engaged in arm's-length settlement negotiations, and this Agreement is the result of those negotiations;

WHEREAS, End-Payor Plaintiffs, through Settlement Class Counsel, have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving the claims against TKH and the Trust, according to the terms set forth in this Agreement, is in the best interests of End-Payor Plaintiffs and the Settlement Class because of the payment of the Settlement Amount (as that term is defined below) that the Trustee has agreed to provide pursuant to this Agreement; and

WHEREAS, the Trust, despite its belief that it has no liability for the claims asserted and that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to

avoid the expense, inconvenience, distraction, and risk of protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement for the benefit of its stakeholders, and to finally resolve all claims that have been or could have been asserted by any Settlement Class Member (as defined below) against TKH or the Trust based on the claims and allegations in the Action, as more particularly set out below.

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that Claim No. 3611 be hereby resolved and that the Action be settled, compromised, and dismissed with prejudice as to the Releasees and except as hereafter provided, without costs to End-Payor Plaintiffs, the Settlement Class, TKH or the Trust, subject to the approval of the United States Bankruptcy Court for the District of Delaware overseeing the above-captioned bankruptcy cases (the "Bankruptcy Court"), and the United States District Court for the Eastern District of Michigan overseeing the Action (the "District Court").

A.  Definitions

1.    "Defendant" means any party named as a defendant in the Action at any time up to and including the date when the District Court has entered a final approval order certifying the Settlement Class described below and approving this Agreement under Federal Rule of Civil Procedure ("Rule") 23(e).

2.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a), including without limitation, electronically stored information. A draft or non-identical copy is a separate Document within the meaning of this term.

3.    "End-Payor Plaintiffs" means those Settlement Class Members, as defined in Paragraph 13 below, who are named plaintiffs in the Complaint.

4

4.  "<u>Indirect Purchaser States</u>" means Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

5.  "<u>Occupant Safety Restraint Systems</u>" shall have the meaning set forth in Paragraph 2 of the Complaint.

6.  "<u>Opt-Out Deadline</u>" means the deadline set by the District Court for the timely submission of requests by Settlement Class Members to be excluded from the Settlement Class.

7.  "<u>Released Claims</u>" means the claims described in Paragraphs 23 and 24.

8.  "<u>Releasees</u>" shall refer to (i) TKH; (ii) the Trust; and (iii) each of TKH and the Trust's respective present and former principals, partners, officers, directors, supervisors, employees, agents, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns (including but not limited to the Trustee, the Trustee's representatives, attorneys, and financial advisors, and the Trust's Claims Oversight Committee and its individual members), each solely in their capacity as such. "Releasees" does not include Takata Corporation or any other defendant in the MDL Litigation other than TKH.

9.  "<u>Releasors</u>" shall refer to End-Payor Plaintiffs and each of the Settlement Class Members, as defined herein, and their past and present officers, directors, supervisors, employees, agents, stockholders, members, attorneys, servants, representatives, parents, subsidiaries, affiliates, principals, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing, each solely in their capacity as such.

10.     "Settlement Amount" shall refer to all monies received by End-Payor Plaintiffs in connection with the treatment of Claim No. 3611 as a general unsecured, non-priority claim in the amount of $53,200,000 under the Plan in the above-captioned Bankruptcy cases as set forth in Paragraph 18 of this Agreement. The "Settlement Fund" shall be the Settlement Amount plus any income or accrued interest that may be earned on that amount after distributions are made by the Trust for the benefit of the Settlement Class.

11.     For purposes of this Agreement, the "Settlement Class" is defined as:

All persons and entities that, from January 1, 2003 through the Execution Date, purchased or leased a new Vehicle in the United States not for resale, which included one or more Occupant Safety Restraint Systems as a component part, or indirectly purchased one or more Occupant Safety Restraint Systems as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Occupant Safety Restraint Systems directly or for resale.

12.     "Settlement Class Counsel" shall refer to the law firms of:

Cotchett, Pitre, & McCarthy LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010

Robins Kaplan LLP
399 Park Avenue, Suite 3600
New York, NY 10022

Susman Godfrey L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067

13.     "Settlement Class Member" means each member of the Settlement Class who has not timely elected to be excluded from the Settlement Class.

6

14.    "Vehicles" shall refer to new four-wheeled passenger automobiles, vans, sports utility vehicles, and crossover or pick-up trucks.

B.    Approval of this Agreement and Dismissal of Claims Against TKH

15.    End-Payor Plaintiffs and the Trust shall use their best efforts to effectuate this Agreement, including cooperating in seeking the District Court's approval for the establishment of procedures (including the giving of class notice under Rules 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Action as to the Releasees only.

16.    No later than thirty (30) days after any order entered by the Bankruptcy Court granting the Rule 9019 Motion (as defined below) has become a final, non-appealable order which is not subject to a pending appeal, End-Payor Plaintiffs shall submit to the District Court a motion seeking preliminary approval of this Agreement ("Preliminary Approval Motion"). The Preliminary Approval Motion shall include (i) the proposed form of an order preliminarily approving this Agreement, and (ii) a proposed form of order and final judgment that shall include at least the District Court Relief (as defined below).

17.    End-Payor Plaintiffs, at a time to be decided in their sole discretion, shall submit to the District Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Settlement Class Members identified by End-Payor Plaintiffs ("Notice Motion"). To mitigate the costs of notice, End-Payor Plaintiffs shall endeavor, if practicable, to disseminate notice of this settlement with notice of any other settlements reached in the MDL Litigation. The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice.

C.    Treatment of Claim No. 3611

18.    Subject to the provisions hereof, upon the Effective Date (as defined herein), Claim No. 3611 shall be allowed as a general unsecured, non-priority claim in the amount of $53,200,000.

19.     The Trust shall make distributions with respect to Claim No. 3611 at the same time and in the same manner as distributions are made to other holders of allowed Class 6 claims under the Plan.

### D.   Bankruptcy Court Approval

20.     As soon as practicable after the execution of this Agreement, the Trust shall file a motion pursuant to Rule 9019 (the "Rule 9019 Motion") of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for Bankruptcy Court approval of this Agreement. Settlement Class Counsel shall be responsible for providing whatever evidence or other proof is reasonably necessary to demonstrate to the Bankruptcy Court that the Settlement Class should be certified for settlement purposes under Bankruptcy Rule 7023.

### E.   District Court Approval

21.     End-Payor Plaintiffs shall, at their own cost and expense, use their best efforts to obtain the District Court Relief described below. Towards that end, End-Payor Plaintiffs shall seek, and the Trust will not object unreasonably to, the entry of an order and final judgment in the Action that will include, at a minimum, the substance of the following provisions (collectively, the "District Court Relief"):

        (a)     certifying the Settlement Class described above, pursuant to Rule 23, solely for purposes of this settlement as Settlement Class for the Action;

        (b)     as to the Action, approving finally this settlement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 and directing its consummation according to its terms;

        (c)     directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims;

(d)      as to TKH, directing that the Action be dismissed with prejudice and without costs;

(e)      providing that both the Bankruptcy Court and District Court shall have jurisdiction concerning the interpretation, administration, consummation and enforcement of this Agreement;

(f)      determining under Rule 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Action as to TKH shall be final; and

(g)      providing that (i) the District Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any Defendant, including TKH, to contest certification of any other class proposed in the MDL Litigation, (ii) the District Court's findings in the order shall have no effect on the District Court's ruling on any motion to certify any class in the MDL Litigation or on the District Court's rulings concerning any Defendant's motion; and (iii) no party may cite or refer to the District Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion.

22.      This Agreement shall become effective (the "Effective Date") when all of the following have occurred: (i) the Bankruptcy Court has entered a final order granting the Rule 9019 Motion; (ii) the District Court has entered a final approval order and judgment that contains at least all of the District Court Relief (the "District Court Order and Judgment"); and (iii) the time for appeal or to seek permission to appeal from the foregoing final orders and judgment has expired or, if appealed, the order granting the Rule 9019 Motion and the District Court Order and Judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken, and such affirmance has become no longer subject to further appeal or review, and no other motion or pleading is pending with respect thereto in any court.  It is agreed that the provisions of Rule 60

9

shall not be taken into account in determining the above-stated times. On the date that End-Payor Plaintiffs and the Trustee have executed this Agreement, End-Payor Plaintiffs and Trustee shall be bound by its terms and this Agreement shall not be rescinded except as provided in this Agreement.

F.  Release, Discharge, and Covenant Not To Sue

23.    In addition to the effect of any final order or judgment entered in accordance with this Agreement, upon the Effective Date, and in consideration of payment of the Settlement Amount, as specified in Paragraphs 10 and 18 of this Agreement, into the Settlement Fund, and in consideration of the allowance of Claim No. 3611 as set forth above, and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or any of them, ever had, now has, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to (i) any conduct alleged in the Complaint, and/or (ii) any act or omission of the Releasees (or any of them) concerning Occupant Safety Restraint Systems, including, but not limited to, any conduct and causes of action alleged or asserted or that could have been alleged or asserted, in any class action or other complaint filed in the Action ("Released Claims"), provided however, that nothing herein shall release: (1) any claims made by direct purchasers of Occupant Safety Restraint Systems; (2) any claims made by automotive dealerships that are indirect purchasers of Occupant Safety Restraint Systems; (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State as to government

10

purchases and/or penalties; (4) claims involving any negligence, personal injury, property damage, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to Occupant Safety Restraint Systems; (5) claims concerning any automotive part other than Occupant Safety Restraint Systems; (6) claims under laws other than those of the United States relating to purchases of Occupant Safety Restraint Systems made by any Releasor outside of the United States; and (7) claims under federal law or the state or local laws of any jurisdiction other than an Indirect Purchaser State. Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee as to, in whole or in part, any of the Released Claims unless this Agreement is terminated or not finally approved.

24. In addition, upon the Effective Date, the Releasors hereby expressly waive and release any and all provisions, rights, and benefits, as to their claims concerning Occupant Safety Restraint Systems conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

or by any equivalent law or statute of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.

25. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon the Effective Date, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Trust and End-Payor Plaintiffs have

11

agreed to release pursuant to this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

G. Settlement Amount

26. Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, the Trust, shall pay or cause to be paid the Settlement Amount. The Settlement Amount shall be paid in U.S. dollars into one or more accounts designated in a writing provided by Settlement Class Counsel to the counsel for the Trust. None of the Releasees shall have any contractual, legal, or equitable responsibility or obligation with respect to any account designated by Settlement Class Counsel, any assets held therein or any payments or distributions made therefrom.

27. Exclusions from the Settlement Class

Subject to District Court approval, any person or entity seeking exclusion from the Settlement Class must file a written request for exclusion by the Opt-Out Deadline. Any person or entity that files such a request shall be excluded from the Settlement Class and shall have no rights with respect to this settlement. Subject to District Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable class notice will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by the Settlement Agreement upon the Effective Date. Settlement Class Counsel shall, within ten (10) business days of the Opt-Out Deadline, provide the Trust with a list and copies of all opt out requests it receives in the Action and shall file with the District Court a list of all Settlement Class Members who timely and validly opted out of the settlement.

(a) Subject to District Court Approval, any member of the Settlement Class who submits a valid and timely request for exclusion from the Settlement Class will not be a

Settlement Class Member and shall not be bound by the terms of this Agreement. The Trust reserves all of its legal and equitable rights and defenses, including, but not limited to, any defenses relating to (i) whether any excluded member of the Settlement Class is an indirect purchaser of Occupant Safety Restraint Systems or has standing to bring any claim against TKH, or (ii) the expiration of the General Bar Date as provided for in the Bar Date Motion.

(b)     Subject to District Court Approval, in the written request for exclusion, the member of the Settlement Class must state his, her, or its full name, street address, and telephone number. Further, the member of the Settlement Class must include a statement in the written request for exclusion that he, she, or it wishes to be excluded from the Settlement Class. Any member of the Settlement Class that submits a written request for exclusion may also identify the number of Vehicles purchased from January 1, 2003 through the Execution Date of this Agreement as requested in the notice to the Settlement Class as provided in Paragraph 17.

(c)     The Trust or Settlement Class Counsel may dispute an exclusion request, and the parties shall, if possible, resolve the disputed exclusion request by agreement and shall inform the District Court of their position, and, if necessary, obtain a ruling thereon within thirty (30) days of the Opt-Out Deadline.

28.    Payment of Expenses

The Parties shall bear their own respective costs and expenses for all purposes, including but not limited to those incurred in connection with the negotiation and execution of this Agreement, the Rule 9019 Motion, and the Action, regardless of whether the Effective Date occurs.  For the avoidance of doubt, none of the Releasees shall be liable for any of the costs or expenses of the litigation of the Action, including but not limited to attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with

discovery, motion practice, hearings before the District Court or Special Master, appeals, trials, or the negotiation of other settlements, or for class administration and costs.

H. The Settlement Fund.

29. After the Effective Date, the Settlement Fund shall be distributed in accordance with a plan to be submitted to the District Court at the appropriate time by Settlement Class Counsel, subject to approval by the District Court. None of the Releasees shall have any financial, contractual, legal or equitable responsibility, obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration.

30. End-Payor Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs, as may be provided by District Court Order. None of the Releasees shall be liable for any costs, fees, or expenses of any of End-Payor Plaintiffs or the Settlement Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the District Court shall be paid out of the Settlement Fund.

31. Settlement Class Counsel's Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for End-Payor Plaintiffs

(a) Settlement Class Counsel may, at a time to be determined in its sole discretion after preliminary approval, submit an application or applications to the District Court ("Fee and Expense Application") for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action and incentive awards, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid), as may be awarded by the District Court ("Fee and Expense Award"). Settlement Class Counsel

14

reserves the right to make additional applications for District Court approval of fees and expenses incurred and reasonable incentive awards, but in no event shall any of the Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)    Subject to District Court approval, End-Payor Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses and incentive awards. Attorneys' fees and expenses awarded by the District Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund with interest, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is reduced or reversed, or in the event the Agreement is rescinded or terminated pursuant to the terms of this Agreement.

(c)    The procedure for and the allowance or disallowance by the District Court of the application by Settlement Class Counsel for attorneys' fees, costs, and expenses, and incentive awards for class representatives to be paid out of the Settlement Fund is not part of this Agreement, and is to be considered by the District Court separately from the District Court's consideration of the fairness, reasonableness and adequacy of the Settlement. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate, cancel, amend or modify this Agreement, or affect the finality of the settlement.

15

(d)     None of the Releasees shall have any responsibility for, or interest in, or liability (whether legal or equitable) whatsoever with respect to any payment to Settlement Class Counsel and/or End-Payor Plaintiffs of any Fee and Expense Award in the Action.

(e)     None of the Releasees shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation of the Settlement Fund among Settlement Class Counsel, End-Payor Plaintiffs and/or any other person who may assert some claim thereto, or of any Fee and Expense Award that the District Court may make in the Action.

I.    Rescission If Final Orders And Judgments Are Not Entered

32.     If (a) the Bankruptcy Court does not grant the Rule 9019 Motion, *or* (b) the District Court does not enter the District Court Order or Judgment; or (c) if the order granting the Rule 9019 Motion or the District Court Judgment is modified in any material way or is set aside on appeal, then TKH and End-Payor Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms set forth below. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the District Court from the Settlement Fund shall not be deemed a material modification of all or a part of the terms of this Agreement or such final judgment.

33.     If the Effective Date of this Agreement does not occur, or this Agreement otherwise is terminated pursuant to Paragraph 32, then this Agreement shall be of no force or effect. The Trust expressly reserves all rights and defenses if this Agreement does not become final.

34.     Further, and in any event, End-Payor Plaintiffs and the Trust agree that this Agreement, whether or not it shall become final, and any and all negotiations, Documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing whatsoever by TKH, or the

16

other Releasees, to be used against TKH, or (ii) the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the MDL Litigation, to be used against TKH, and evidence thereof shall not be discoverable or used in any way, whether in the MDL Litigation or in any other action or proceeding, against TKH.

35.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement.

36.     The Parties to this Agreement contemplate and agree that, prior to final approval of the settlement by the District Court as provided for in Paragraph 22 hereof, appropriate notice 1) of the settlement; and 2) of a hearing at which the District Court will consider the approval of this Agreement, will be given to the Settlement Class.

J.    Miscellaneous

37.     The Trust shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

38.     This Agreement does not settle or compromise any claim by the End-Payor Plaintiffs or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent complaint, against any Defendant or alleged co-conspirator other than TKH. All rights against such other Defendants or alleged co-conspirators are specifically reserved by the End-Payor Plaintiffs and the Settlement Class. All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than TKH and other Releasees, for sales made by TKH and TKH's alleged illegal conduct are specifically reserved by End-Payor Plaintiffs and Settlement Class Members. TKH's sales to the class and its alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a basis for damage claims and shall be part of any joint and several liability claims

against other current or future Defendants in the Action or other persons or entities other than TKH and the other Releasees.

39. This Agreement shall be governed by and interpreted according to the substantive laws of the State of Michigan without regard to its choice of law or conflict of law principles.

40. This Agreement constitutes the entire, complete and integrated agreement between End-Payor Plaintiffs and the Trust pertaining to the resolution of Claim No. 3611 and the settlement of the Action against TKH, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations and discussions, either oral or written, between End-Payor Plaintiffs and the Trust in connection herewith. This Agreement may not be modified or amended except in writing executed by End-Payor Plaintiffs and the Trust, and approved by both the Bankruptcy Court and the District Court.

41. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of End-Payor Plaintiffs and the Trust. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by End-Payor Plaintiffs or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors. The Releasees (other than the Trust which is a party hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

42. This Agreement may be executed in counterparts by End-Payor Plaintiffs and the Trust, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

43. Neither End-Payor Plaintiffs nor the Trust shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of

interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

44.    Where this Agreement requires either party to provide notice or any other communication or Document to the other, such notice shall be in writing, and such notice, communication or Document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

45.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement subject to the approval of the Bankruptcy Court and District Court.

*[signature pages follow]*

Dated: November 27, 2018

Adam J. Zapala
Elizabeth T. Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com


Hollis Salzman
Bernard Persky
William V. Reiss
David B. Rochelson
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com
DRochelson@RobinsKaplan.com


Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Dated: November ___, 2018

Adam J. Zapala
Elizabeth T. Castillo
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Hollis Salzman
Bernard Persky
William V. Reiss
David B. Rochelson
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
HSalzman@RobinsKaplan.com
BPersky@RobinsKaplan.com
WReiss@RobinsKaplan.com
DRochelson@RobinsKaplan.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiff Classes*

Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
John A. Morris (NY Bar No. 2405397)
Peter J. Keane (Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
ljones@pszjlaw.com
dbertenthal@pszjlaw.com
jmorris@pszjlaw.com
pkeane@pszjlaw.com

*Attorneys for the Trustee of the Reorganized TK
Holdings Trust*

# EXHIBIT D

**United States Bankruptcy Court, District of Delaware**

RECEIVED

OCT 20 2017

PRIME CLERK LLC

| Fill in this information to identify the case (Select only one Debtor per claim form): |
|---|

☒ TK Holdings Inc. (Case No. 17-11375)

☐ Takata Protection Systems Inc. (Case No. 17-11376)

☐ TK Holdings de Mexico S. de R.L. de C.V. (Case No. 17-11380)

☐ Takata Americas (Case No. 17-11372)

☐ Interiors in Flight Inc. (Case No. 17-11377)

☐ Industrias Irvin de Mexico, S.A. de C.V. (Case No. 17-11381)

☐ TK Finance, LLC (Case No. 17-11373)

☐ TK Mexico Inc. (Case No. 17-11378)

☐ Takata de Mexico, S.A. de C.V. (Case No. 17-11382)

☐ TK China, LLC (Case No. 17-11374)

☐ TK Mexico LLC (Case No. 17-11379)

☐ Strosshe-Mex, S. de R.L. de C.V. (Case No. 17-11383)

171137580000045

☒ Date Stamped Copy Returned
☐ No Self-Addressed Stamped Envelope
☐ No Copy Provided

## Modified Form 410

# Proof of Claim

4/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Rush Truck Centers of Arizona, Inc., Rush Truck Centers of California, et al. and those similarly situated

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Wayne A. Mack
J. Manly Parks
Duane Morris LLP
30 S. 17th Street
Philadelphia, PA 19103

Contact phone  215-979-1000

Contact email  jmparks@duanemorris.com

Where should payments to the creditor be sent? (if different)

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known)_____  Filed on ____ / ____ / ____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

Claim Number: 279

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

| 6. Do you have any number you use to identify the debtor? | ☑ No |
| | ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

| 7. How much is the claim? | $ In excess of $5 million, see attached. . Does this amount include interest or other charges? |
| | ☒ No |
| | ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. |
| | Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). |
| | Limit disclosing information that is entitled to privacy, such as health care information. |
| | Class action claim under the Sherman Act. Action pending in the Eastern District of Michigan at Case No. 15-12050. |

| 9. Is all or part of the claim secured? | ☑ No |
| | ☐ Yes. The claim is secured by a lien on property. |
| | **Nature of property:** |
| | ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.* |
| | ☐ Motor vehicle |
| | ☐ Other. Describe: _____ |
| | **Basis for perfection:** _____ |
| | Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.) |
| | **Value of property:** $_____ |
| | **Amount of the claim that is secured:** $_____ |
| | **Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.) |
| | **Amount necessary to cure any default as of the date of the petition:** $_____ |
| | **Annual Interest Rate (when case was filed)_____%** |
| | ☐ Fixed |
| | ☐ Variable |

| 10. Is this claim based on a lease? | ☑ No |
| | ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____ |

| 11. Is this claim subject to a right of setoff? | ☑ No |
| | ☐ Yes. Identify the property: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
|---|---|---|---|
| | ☐ Yes. Check one: | **Amount entitled to priority** | |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ | |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ | |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ | |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ | |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ | |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____ ) that applies. | $_____ | |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | | |
| 13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)? | ☑ No | | |
| | ☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim. | $_____ | |

---

**Part 3:** **Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

*J. Manly Parks* /EF

Name of the person who is completing and signing this claim:

| Name | J. Manly Parks, Esq. | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | | | |
| Company | Duane Morris LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 30 S. 17th Street | | |
| | Number        Street | | |
| | Philadelphia | PA | 19103 |
| | City | State | ZIP Code |
| Contact phone | 215-979-1000 | Email | jmparks@duanemorris.com |

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re Automotive Parts Antitrust Litigation | Master File No. 12-md-02311 |
| In re: Occupant Safety Restraint Systems | |
| This document relates to: | |
| Rush Truck Centers of Arizona, Inc.; Rush Truck Centers of California, Inc.; Rush Truck Centers of Colorado, Inc.; Rush Truck Centers of Florida, Inc.; Rush Truck Centers of Georgia, Inc.; Rush Truck Centers of Idaho, Inc.; Rush Truck Centers of Illinois, Inc.; Rush Truck Centers of Indiana, Inc.; Rush Truck Centers of Kansas, Inc.; Rush Truck Centers of Missouri, Inc.; Rush Truck Centers of North Carolina, Inc.; Rush Truck Centers of Ohio, Inc.; Rush Truck Centers of Oklahoma, Inc.; Rush Truck Centers of Oregon, Inc.; Rush Truck Centers of Tennessee, Inc.; Rush Truck Centers of Texas, LP.; Rush Truck Centers of Utah, Inc.; Rush Truck Centers of Virginia, Inc., *on behalf of themselves and all others similarly situated,* | No: |
| Plaintiffs, | **Jury Trial Demanded** |
| v. | |
| TRW Automotive Holdings Corp., TRW Deutschland Holding Gmbh, Takata Corp., TK Holdings, Inc., Autoliv, Inc., Autoliv ASP, Inc., Autoliv B.V. & Co. KG, Autoliv Japan Ltd., Tokai Rika Co., Ltd., and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. | |
| Defendants. | |

### TRUCK AND EQUIPMENT DEALERS
### CLASS ACTION COMPLAINT

PLAINTIFFS Rush Truck Centers of Arizona, Inc. ("Rush AZ"), Rush Truck Centers of

California, Inc. ("Rush CA"), Rush Truck Centers of Colorado, Inc. ("Rush CO"), Rush Truck

Centers of Florida, Inc. ("Rush FL"), Rush Truck Centers of Georgia, Inc. ("Rush GA"), Rush

Truck Centers of Idaho, Inc. ("Rush ID"), Rush Truck Centers of Illinois, Inc. ("Rush IL"), Rush

Truck Centers of Indiana, Inc. ("Rush IN"), Rush Truck Centers of Kansas, Inc. ("Rush KS"),

Rush Truck Centers of Missouri, Inc. ("Rush MO"), Rush Truck Centers of North Carolina, Inc.

("Rush NC"), Rush Truck Centers of Ohio, Inc. ("Rush OH"), Rush Truck Centers of Oklahoma,

Inc. ("Rush OK"), Rush Truck Centers of Oregon, Inc. ("Rush OR"), Rush Truck Centers of

Tennessee, Inc. ("Rush TN"), Rush Truck Centers of Texas, LP. ("Rush TX"), Rush Truck

Centers of Utah, Inc. ("Rush UT"), and Rush Truck Centers of Virginia, Inc. ("Rush VA"),

(collectively "Plaintiffs") file this Complaint on behalf of themselves and all other similarly

situated dealers (the "Classes" as defined below) of medium-duty (Class 4, 5, 6, & 7) trucks and

heavy-duty (Class 8) trucks, buses, commercial vehicles (excluding automobiles, light trucks,

vans, sports utility vehicles, and/or similar motor vehicles sold by automobile dealers),

construction equipment, mining equipment, agricultural equipment, railway vehicles, and other

similar vehicles (collectively, "Trucks and Equipment").

  Plaintiffs bring this class action for damages, injunctive relief, and other relief pursuant to

federal antitrust laws and state antitrust, unfair competition, and consumer protection laws,

demand a trial by jury, and allege as follows:

<div align="center">

**NATURE OF ACTION**

</div>

  1. Plaintiffs bring this lawsuit as a proposed class action against the Defendants

(defined below), manufacturers, and suppliers of Occupant Safety Restraint Systems (defined

below) globally and in the United States for engaging in a lengthy conspiracy to suppress and

eliminate competition in the vehicle parts industry by agreeing to rig bids for, and to fix,

stabilize, and maintain the prices of these products, which were sold to vehicle manufacturers in

the United States and elsewhere. The Defendants' conspiracy successfully targeted the United

<div align="center">

2

</div>

States vehicle industry, raising prices for truck and equipment manufacturers, truck and equipment dealers, and consumers.

2.  "Occupant Safety Restraint Systems" are generally comprised of the parts in a vehicle that protect drivers and passengers from bodily harm. Types of different Occupant Safety Restraint Systems include seat belts, airbags, steering wheels, and steering systems.

3.  The "Class Period" refers to January 2003 to the present.

4.  The Defendants manufacture, market, and sell Occupant Safety Restraint Systems throughout the United States and in other countries.

5.  Vehicles containing Occupant Safety Restraint Systems, as well as Occupant Safety Restraint Systems themselves, made by Defendants, are sold in every state of the United States and the District of Columbia.

6.  The Defendants and other co-conspirators (as yet unknown) agreed, combined, and conspired to rig bids for, and to fix, stabilize, and maintain the prices of Occupant Safety Restraint Systems. They carried out their conspiracy by agreeing, during meetings and conversations, to allocate the supply of Occupant Safety Restraint Systems on a model-by-model basis. Defendants then sold Occupant Safety Restraint Systems at noncompetitive prices to vehicle manufacturers in the United States and elsewhere, for sale in United States.

7.  Competition authorities in the United States and the European Union have been investigating a conspiracy in the market for Occupant Safety Restraint Systems. As part of its criminal investigation, the United States Department of Justice ("DOJ") is seeking information about anticompetitive conduct in the market for Occupant Safety Restraint Systems, and the Federal Bureau of Investigation ("FBI") has participated in raids, pursuant to search warrants, carried out in at least some of the Defendants' offices. The European Commission Competition

3

Authority ("EC") has also conducted investigations at the European offices of several of the Defendants.

     8.     Defendant Autoliv, Inc. has agreed to plead guilty and pay a $14.5 million fine for its unlawful conduct in conspiring with others to suppress and eliminate competition in the vehicle parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Occupant Safety Restraint Systems sold to certain vehicle manufacturers in the United States and elsewhere at various times from at least as early as March 2006 and continuing until at least February 2011. The combination and conspiracy engaged in by Defendant Autoliv, Inc. and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

     9.     Defendant TRW Deutschland Holding Gmbh has agreed to plead guilty and to pay a total of $5.1 million in criminal fines concerning a two-count criminal investigation for fixing the prices of seatbelts, steering wheels and airbags.

     10.     Defendant Tokai Rika Co., Ltd. has agreed to pay a $17.7 million fine and plead guilty to a two-count criminal information charging Tokai Rika with participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of Heater Control Panels sold to a manufacturer from at least September 2003 until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

     11.     Defendant Takata Corporation announced that it agreed to pay a $71.3 million criminal fine and plead guilty to a one-count criminal Information charging it with participating in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of seatbelts sold to manufacturers, including, Toyota, Honda, Nissan, Fuji Heavy Industries, Ltd. (Subaru), and

Mazda, in the United States and elsewhere from at least as early as January 1, 2003 and continuing until at least February 2011 in violation of the Sherman Act, 15 U.S.C. § 1.

12.     These investigations and guilty pleas are part of and the result of a larger investigation by the DOJ, FBI, EC, and the Japan Fair Trade Commission ("JFTC") into an expansive industry-wide vehicle components conspiracy, including many different component parts, including parts sold for Trucks and Equipment.

13.     On March 29, 2013, the Japan Fair Trade Commission ("JFTC") issued cease and desist orders and surcharge payment orders based on violations of the Japan Antimonopoly Act against NTN Corp., NSK Ltd. and Nachi-Fujikoshi Corp., for conspiring to fix prices on "*industrial machinery bearings* and automotive bearings."

14.     On March 19, 2014, the EC stated that it had found that SKF, Schaeffler, JTEKT Corporation, NSK Ltd., Nachi-Fujikoshi, and NTN had operated a cartel in the market for bearings sold to "car, *truck* and car part manufacturers" and fined all those companies (excluding JTEKT, which benefitted from immunity for having revealed the existence of a cartel to the EC) a collective EUR 953 million.

15.     On March 31, 2015, the Department of Justice announced that Robert Bosch GmbH had agreed to plead guilty and to pay a $57.8 million criminal fine for its role in a conspiracy to fix the prices for parts, including spark plugs, oxygen sensors and starter motors "sold to automobile *and internal combustion engine manufacturers* in the United States and elsewhere," including parts sold to equipment manufacturer Andreas Stihl AG & Co., from at least as early as January 2000 until at least July 2011.

5

16.     Many of the companies involved in the government investigations into the industry wide components price fixing conspiracy, including the Defendants in this case, also manufacture and sell parts for Trucks and Equipment.

17.     Many of the Original Equipment Manufacturers ("OEMs') who have been identified as the targets of the conspiracy, including Toyota, Honda, Ford, Chrysler, Mitsubishi Motors, Subaru, Fuji Heavy Industries, Isuzu and Nissan, manufacture and sell Trucks and/or Equipment directly or through subsidiaries or affiliated companies.

18.     As a direct result of the anti-competitive and unlawful conduct alleged herein, Plaintiffs and the Class paid artificially inflated prices for Occupant Safety Restraint Systems or for trucks and equipment containing Occupant Safety Restraint Systems.  Plaintiffs and the members of the Classes have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

19.     Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).  Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, and consumer protection laws, and seek to obtain restitution, recover damages, and secure other relief against Defendants for violation of those state laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

20.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337.  This Court has subject matter jurisdiction over the state law claims in this action, pursuant to 28 U.S.C. §§ 1332(d) and 1367, because this is a class action in which the matter or controversy exceeds the sum of $5,000,000,

6

exclusive of interests and costs, and in which some members of the proposed Classes are citizens of different states than some Defendants.

21.     Venue is proper in this district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this district, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this district.

22.     This Court has *in personam* jurisdiction over each of the Defendants because each Defendant, either directly or through the ownership and/or control of its United States subsidiaries, *inter alia:* (a) transacted business in the United States, including in this district; (b) directly or indirectly sold or marketed substantial quantities of Occupant Safety Restraint Systems throughout the United States that were specifically designed for vehicles that were intended to be sold in the United States, including in this district; (c) had substantial aggregate contacts with the United States as a whole, including in this district; (d) was through its own actions and through the actions of its co-conspirators, engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States; (e) targeted customers in the United States, including this district, and/or (f) engaged in actions in furtherance of an illegal conspiracy in this district either itself or through its co-conspirators. Defendants also conduct business throughout the United States, including in this district, and they have purposefully availed themselves of the laws of the United States and this district.

23. Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial, reasonably foreseeable, and intended anti-competitive effects upon interstate commerce within the United States and upon import trade and commerce into the United States.

24. The activities of Defendants and their co-conspirators were within the flow of, were intended to have, and did have, a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

25. Occupant Safety Restraint Systems manufactured abroad by Defendants and sold for use in vehicles either manufactured in the United States or manufactured abroad and sold in the United States are goods brought into the United States for sale and, therefore, constitute import commerce. To the extent any Occupant Safety Restraint Systems are purchased in the United States, and such Occupant Safety Restraint Systems do not constitute import commerce, Defendants' unlawful activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial, and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United States.

26. By reason of the unlawful activities hereinafter alleged, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. Defendants, directly and through their agents, engaged in activities affecting all states, to fix or inflate prices of Occupant Safety Restraint Systems, and that conspiracy unreasonably restrained trade and adversely affected the market for Occupant Safety Restraint Systems.

8

27.     Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased Occupant Safety Restraint Systems, including Plaintiffs and the Classes.

## PARTIES

### The Plaintiffs

28.     Plaintiff Rush AZ is a Delaware corporation with its principal place of business in Arizona. Rush AZ is an authorized Peterbilt and Hino dealer. During the Class Period Rush AZ purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush AZ also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period. Rush AZ purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Arizona.

29.     Plaintiff Rush CA is a Delaware corporation with its principal place of business in California. Rush CA is an authorized Peterbilt, Hino, Isuzu, and Ford dealer. During the Class Period Rush CA purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush CA also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period.  Rush CA purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in California.

30.     Plaintiff Rush CO is a Delaware corporation with its principal place of business in Colorado. Rush CO is an authorized Peterbilt, Isuzu, and Ford dealer. During the Class Period Rush CO purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant

Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush CO also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period.  Rush CO purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Colorado.

31.    Plaintiff Rush FL is a Delaware corporation with its principal place of business in Florida. Rush FL is an authorized Peterbilt, Hino, and Isuzu dealer. During the Class Period Rush FL purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush FL also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period.  Rush FL purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Florida.

32.    Plaintiff Rush GA is a Delaware corporation with its principal place of business in Georgia. Rush GA is an authorized International, Hino, Isuzu, and IC Bus dealer. During the Class Period Rush GA purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush GA also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period.  Rush GA purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Georgia.

33.    Plaintiff Rush ID is a Delaware corporation with its principal place of business in Idaho. Rush ID is an authorized International, Autocar, and IC Bus dealer. During the Class

Period Rush ID purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush ID also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period. Rush ID purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Idaho.

34.     Plaintiff Rush IL is a Delaware corporation with its principal place of business in Illinois. Rush CA is an authorized International dealer. During the Class Period Rush IL purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush IL also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period. Rush IL purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Illinois.

35.     Plaintiff Rush IN is a Delaware corporation with its principal place of business in Indiana. Rush IN is an authorized International dealer. During the Class Period Rush IN purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush IN also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period. Rush IN purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Indiana.

11

36.     Plaintiff Rush KS is a Delaware corporation with its principal place of business in Kansas. Rush CA is an authorized Hino and Isuzu dealer. During the Class Period Rush KS purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush KS also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period. Rush KS purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Kansas.

37.     Plaintiff Rush MO is a Missouri corporation with its principal place of business in Missouri. Rush MO is an authorized International dealer. During the Class Period Rush MO purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush MO also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period. Rush MO purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Missouri.

38.     Plaintiff Rush NC is a Delaware corporation with its principal place of business in North Carolina. Rush NC is an authorized International, Peterbilt, Hino, and Isuzu dealer. During the Class Period Rush NC purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush NC also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service

business during the Class Period. Rush NC purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in North Carolina.

39.     Plaintiff Rush OH is a Delaware corporation with its principal place of business in Ohio. Rush OH is an authorized International, IC Bus, Isuzu, Ford, and Mitsubishi dealer. During the Class Period Rush OH purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush OH also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period. Rush OH purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Ohio.

40.     Plaintiff Rush OK is a Delaware corporation with its principal place of business in Oklahoma. Rush OK is an authorized Peterbilt, Hino, Isuzu, and Ford dealer. During the Class Period Rush OK purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush OK also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period. Rush OK purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Oklahoma.

41.     Plaintiff Rush OR is a Delaware corporation with its principal place of business in California. Rush OR is an authorized International dealer. During the Class Period Rush OR purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush OR also purchased Occupant Safety Restraint Systems manufactured by one or more of the

Defendants or their co-conspirators for its repair and service business during the Class Period. Rush OR purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Oregon.

42.    Plaintiff Rush TN is a Delaware corporation with its principal place of business in Tennessee. Rush TN is an authorized Peterbilt dealer. During the Class Period Rush TN purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush TN also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period. Rush TN purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Tennessee.

43.    Plaintiff Rush TX is a Texas limited partnership with its principal place of business in Texas. Rush TX is an authorized Peterbilt, Hino, Isuzu, Blue Bird, Micro Bird, Elkhart, and Ford dealer. During the Class Period Rush TX purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush TX also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period. Rush TX purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Texas.

44.    Plaintiff Rush UT is a Delaware corporation with its principal place of business in Utah. Rush UT is an authorized International, IC Bus, Autocar, and Mitsubishi Fuso dealer. During the Class Period Rush UT purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the

Defendants or their co-conspirators. Rush UT also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period. Rush UT purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Utah.

45.     Plaintiff Rush VA is a Delaware corporation with its principal place of business in Virginia. Rush VA is an authorized International dealer. During the Class Period Rush VA purchased, displayed, advertised, and sold Trucks and Equipment containing Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators. Rush VA also purchased Occupant Safety Restraint Systems manufactured by one or more of the Defendants or their co-conspirators for its repair and service business during the Class Period. Rush VA purchased and received both the aforementioned Trucks and Equipment and Occupant Safety Restraint Systems in Virginia.

### The Defendants

### TRW Defendants

46.     Defendant TRW Automotive Holdings Corp. ("TRW U.S.") is a Delaware corporation with its principal place of business in Livonia, Michigan. TRW U.S., directly or through its wholly-owned and/or controlled subsidiaries, manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members.

47.     Defendant TRW Deutschland Holding Gmbh ("TRW Germany") is a German corporation with its principal place of business in Koblenz, Germany. Defendant TRW Germany is a subsidiary of and wholly-owned and/or controlled by Defendant TRW U.S. Defendant TRW Germany, directly and/or through its subsidiaries which it wholly owned and/or controlled,

manufactured, marketed and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members. At all times during the Class Period, its activities were under the control and direction of TRW U.S., which controlled its policies, sales, and finances.

48.    TRW Germany and TRW U.S. are collectively referred to as "TRW."

**Takata Defendants**

49.    Defendant Takata Corp. is a Japanese corporation with its principal place of business in Tokyo, Japan. Defendant Takata Corp. directly and/or through its subsidiaries, which it wholly owned and/or controlled, manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members.

50.    Defendant TK Holdings, Inc. ("TK"), is a Delaware corporation with its principal place of business in Auburn Hills, Michigan. It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Takata. Defendant TK manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales, and finances.

51.    Executives who have worked at Takata Corp., in Japan, have also worked at TK, in the U.S. Yoshiyasu Kikuchi, an executive officer at Takata Corp. is a director at TK. Yoichiro Nomura, the Chief Financial Officer at Takata Corp. is a director at TK. Juichiro Takada, the

16

former Chairman and CEO of Takata Corp. was also a director at TK. Shunkichi Shimizu, a former executive officer at Takata Corp., in charge of "America Operations," was also the president and secretary of TK Holdings. Takata Corporation also refers to TK Holdings as its American headquarters, stating "Takata's regional headquarters for the Americas is in Auburn Hills, Michigan."

52.     Takata has targeted the U.S. and U.S. customers in a myriad of ways. Takata's annual report states that "Takata and GM jointly developed a front center airbag, which will be installed in GM's 2013 models." http://www.takata.com/ir/pdf/material05/120831ar_en.pdf at 36. Takata's 2011 report states that "auto industry in North America is expected to continue its recovery, and we will tap growing demand for high value added safety products such as curtain airbags and side airbags . . ." http://www.takata.com/ir/pdf/material05/110829ar_en.pdf at 11. Takata's 2011 report reviewed new U.S. regulations regarding vehicle restraints, which it deemed "driver[s] of growth," for its business. *Id.* at 20. Takata's report also announces that "[i]n April 2010, Takata Corporation was chosen by Ford Motor Company to be one of 13 suppliers newly added to Ford's Aligned Business Framework (ABF) for closer collaboration and long-term partnership." It also states that "[t]he close proximity of Ford and Takata's North American headquarters in southeast Michigan has enabled synergies that in recent years have strengthened the partnership between the two companies." *Id.* at 22. Takata's report also mentions specific initiatives aimed at the U.S. market including "buckle-up campaigns, child restraint training sessions at maternity classes, anti drunk driving campaigns, and skill improvement courses such as those we run in the United States."

53.     Defendants Takata Corp. and TK are collectively referred to as "Takata."

17

**Autoliv Defendants**

54.     Defendant Autoliv, Inc. ("Autoliv") is a Delaware corporation with its principal place of business in Stockholm, Sweden. Defendant Autoliv, Inc.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members.

55.     Defendant Autoliv ASP, Inc. is an Indiana corporation with its principal place of business in Ogden, Utah. It is a subsidiary of and wholly owned and/or controlled by its Swedish parent, Autoliv, Inc. Defendant Autoliv ASP, Inc. manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Swedish parent, which controlled its policies, sales, and finances.

56.     Defendant Autoliv B.V. & Co. KG is a German corporation with its principal place of business in Elmshorn, Germany. It is a subsidiary of and wholly owned and/or controlled by its Swedish parent, Autoliv, Inc. Defendant Autoliv B.V. & Co. KG manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Swedish parent, which controlled its policies, sales, and finances.

18

57.     Autoliv Japan Ltd. is a Japanese corporation with its principal place of business in Yokohama, Japan. It is a wholly owned and/or controlled subsidiary of Autoliv, Inc. Autoliv Japan Ltd. manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were under the control and direction of its Swedish parent, which controlled its policies, sales, and finances.

58.     Defendants Autoliv, Inc., Autoliv ASP, Inc., Autoliv B.V. & Co. KG and Autoliv Japan Ltd. are collectively referred to as "Autoliv."

**Tokai Rika Defendants**

59.     Defendant Tokai Rika Co., Ltd. is a Japanese corporation with its principal place of business in Aichi, Japan. Defendant Tokai Rika Co., Ltd.—directly and/or through its subsidiaries, which it wholly owned and/or controlled—manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members.

60.     Defendant TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. is a Michigan corporation with its principal place of business in Plymouth, Michigan. It is a subsidiary of and wholly owned and/or controlled by its Japanese parent, Tokai Rika Co., Ltd. Defendant TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. manufactured, marketed, and/or sold Occupant Safety Restraint Systems that were purchased throughout the United States, including in this district, during the Class Period, including by firms that sold such Occupant Safety Restraint Systems to Plaintiffs and class members. At all times during the Class Period, its activities in the United States were

19

under the control and direction of its Japanese parent, which controlled its policies, sales, and finances.

61.    Executives who have worked at Tokai Rika Co. Ltd. have also worked at TRAM, Inc. For instance, Masayuki Morita, the President and Chief Operating Officer at TRAM, Inc. previously served as a Managing Director and Director at Tokai Rika Co., Ltd. Yoshihei Iida, the former Chairman of Tokai Rika Co. Ltd., is a Board member at TRAM, Inc. Kiyoshi Kinoshita, the former Chairman of the Board and Representative Director, at Tokai Rika Co. Ltd., was also previously the President of TRAM, Inc.

62.    The same year that TRAM was established in the U.S., Tokai Rika received its "QS9000 certification," a quality standard the possession of which was required by the three major U.S. manufacturers: Ford, GM and Chrysler.

63.    Defendants Tokai Rika Co., Ltd. and TRAM, Inc. are collectively referred to as "Tokai Rika."

### AGENTS AND CO-CONSPIRATORS

64.    Each Defendant acted as the principal of or agent for the other Defendants with respect to the acts, violations, and common course of conduct alleged.

65.    Various persons, partnerships, sole proprietors, firms, corporations, and individuals not named as Defendants in this lawsuit, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anti-competitive conduct.

66.    Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed, or transaction by or through its officers, directors, agents,

20

employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's or limited liability entity's business or affairs.

## FACTUAL ALLEGATIONS

### A.    The Occupant Safety Restraint Systems Industry

67.    Occupant Safety Restraint Systems are generally comprised of the parts in a vehicle that protect drivers and passengers from bodily harm. Occupant Safety Restraint Systems include seat belts, air bags, steering wheels (or steering systems), and safety electronic systems.



Figure 1

68.    Occupant Safety Restraint Systems are installed by original equipment manufacturers ("OEMs") in new Trucks and Equipment as part of the manufacturing process. They are also installed in Trucks and Equipment to replace worn out, defective, or damaged Occupant Safety Restraint Systems.

69.    Many automobile OEMs including Ford, General Motors, Isuzu, Fuji Heavy Industries, Nissan, Subaru, Honda, and Chrysler manufacture and sell Trucks and/or Equipment. Other automobile OEMs, including Toyota, Daimler, and Mitsubishi, sell Trucks and Equipment through subsidiaries or other affiliated companies. For example, Toyota is the majority owner of Hino Motors ("Hino"). Hino represents the Toyota Group in the market for medium duty trucks, heavy duty trucks, and buses. Daimler owns approximately 90% of Mitsubishi Fuso Truck and Bus Corp. ("Fuso"). Mitsubishi also owns and has owned an interest in Fuso throughout the Class Period. Fuso represents the Daimler Group in the market for medium duty trucks.

21

70. Trucks and Equipment OEMs, who are mostly large manufacturers such as International, Peterbilt, Kenworth, Daimler, Volvo, Mack, Hino, Isuzu, Fuso, Autocar, Ford and others, purchase Occupant Safety Restraint Systems directly from parts suppliers such as Defendants.

71. Occupant Safety Restraint Systems may also be purchased by component manufacturers who then supply such systems to OEMs. These component manufacturers are also called "Tier I Manufacturers" in the Truck and Equipment industry. A Tier I manufacturer supplies Occupant Safety Restraint Systems directly to an OEM.

72. When purchasing Occupant Safety Restraint Systems, OEMs issue Requests for Quotation ("RFQs") to vehicle parts suppliers—Occupant Safety Restraint Systems are not commodity items. Vehicle parts suppliers submit quotations, or bids, to OEMs in response to RFQs and the OEMs usually award the business to the selected vehicle parts supplier for four to six years. Typically, the bidding process begins approximately three years prior to the start of production of a new model.

73. Suppliers, including Defendants, supply OEMs with both Occupant Safety Restraint Systems to be installed in Trucks and Equipment, and Occupant Safety Restraint Systems to be used for replacement purposes.

74. The Defendants and their co-conspirators supplied Occupant Safety Restraint Systems to OEMs for installation in Trucks and Equipment manufactured and sold in the United States and elsewhere. The Defendants and their co-conspirators manufactured Occupant Safety Restraint Systems (a) in the United States for installation in Trucks and Equipment manufactured and sold in the United States, (b) abroad for export to the United States and installation in Trucks

22

and Equipment manufactured and sold in the United States, and (c) abroad for installation in Trucks and Equipment manufactured abroad for export to and sale in the United States.

75.     Upon information and belief, Defendants' employees responsible for negotiating the prices and terms for parts, including Occupant Safety Restraint Systems, were involved in sales to Truck and Equipment manufacturers as well as to automobile manufacturers.

76.     TRW's main customers include: GM, Chrysler, Ford, Mercedes, Renault, Nissan, Fiat, Toyota, BMW, Honda, Hyundai, Volkswagen, and Daimler Trucks.

77.     Takata's main customers include: Toyota, Honda, BMW, Mazda, Nissan, GM, Chrysler, Ford, and Kenworth.

78.     Autoliv's main customers include: GM, Ford, Nissan, Renault, Hyundai, Kia, VW, Chrysler, Fiat, Honda, Toyota, BMW, Mercedes, Daimler, Volvo, Scania, Navistar, and Mitsubishi-Fuso.

79.     Tokai Rika's main customers include: Toyota, Subaru, SAAB, Volvo, Nissan, Subaru, Isuzu, GM, Ford, Suzuki, Mazda, Mitsubishi, Chrysler, and Hino.

80.     Plaintiffs and members of the proposed Classes purchased Occupant Safety Restraint Systems indirectly from the Defendants and their co-conspirators. By way of example, Truck and Equipment dealers indirectly purchase Occupant Safety Restraint Systems from the Defendants when they purchase new Trucks and Equipment to sell or lease to consumers. Likewise, when repairing a damaged vehicle or when the vehicle's Occupant Safety Restraint Systems are defective, Plaintiffs and other Truck and Equipment dealers indirectly purchase replacement Occupant Safety Restraint Systems from Defendants.

81.     Replacement Occupant Safety Restraint Systems sold by OEMs to dealerships are the same as the Occupant Safety Restraint Systems installed in Trucks and Equipment and are

made by the same manufacturer who made the Occupant Safety Restraint Systems originally installed—that is the purpose of an OEM part, made by the OEM supplier. Such replacement parts are not the same as aftermarket parts, which are made by different manufacturers than those who manufactured the original parts. The prices of replacement Occupant Safety Restraint Systems were inflated by Defendants' collusion.

82.     According to Autoliv's 2011 Annual Report, the global market for Occupant Safety Restraint Systems in 2010 was $18.1 billion and the North American market for Occupant Safety Restraint Systems was $4.2 billion.

83.     The global Occupant Safety Restraint Systems market is dominated and controlled by large manufacturers, the top three of which are Defendants who control almost 75% of the market. The Autoliv Defendants account for more than 33% of the global market for Occupant Safety Restraint Systems; as Autoliv states in its 2011 Annual Report, it is "the world's largest automotive safety supplier with sales to all the leading car manufacturers in the world." TRW accounts for approximately 20% of the global market for Occupant Safety Restraint Systems. And, the Takata Defendants account for approximately 20% of the Occupant Safety Restraint Systems global market.

84.     By virtue of their market shares, Defendants are the dominant manufacturers and suppliers of Occupant Safety Restraint Systems in the United States and the world.

85.     Airbags are a type of Occupant Safety Restraint System. Airbags are occupant restraints designed to control the movement of an occupant inside a vehicle in the event of a collision. An Airbag consists of a light fabric air bag, an inflator, which, through use of pressurized gas (typically generated by pyrotechnic materials), rapidly inflates the Airbag upon deployment, and an initiator to initiate the deployment. It may also include, depending on the

requirements of the vehicle manufacturer, an injection molded plastic decorative cover or other devices associated with the Airbag. According to the National Highway Traffic Safety Administration, a typical new Airbag retailed for approximately $1,000 from a dealer in 2011.

86.     In 2012, the total dollar-value of Airbags sold in the U.S. reached $6.7 billion.

87.     According to Autoliv's website, it manufactures more than one-third of the Airbags sold in North America, and according to its 2011 10-K, Autoliv manufactures more than 40% of the side Airbags and almost 30% of the frontal Airbags sold in the world. TRW and Takata are also major manufacturers of Airbags.

88.     Seatbelts are another type of Occupant Safety Restraint System. Seatbelts are safety strap restraints designed to secure an occupant in position in a vehicle in the event of a collision. A Seatbelt includes belt webbing, a buckle, a retractor, and hardware for installation in a vehicle. It may also include, depending on the requirements of the vehicle manufacturer, a height adjuster, a pretensioner, or other devices associated with the Seatbelt. In 2012, the total dollar-value of Seatbelts sold in the U.S. reached over $900 million.

89.     According to Autoliv's website, it manufactures almost one-third of the Seatbelts sold in North America, and according to its 2011 10-K, Autoliv manufactures 40% of the Seatbelts sold in the world. TRW and Takata are also major manufacturers of Seatbelts.

90.     Steering Wheels are another type of Occupant Safety Restraint System. Steering Wheels consist of a die-cast armature (frame) covered by molded polyurethane. Steering Wheels are then finished with leather, wood trim, or plastic, and may include various electronic features and controls, depending on the requirements of a vehicle manufacturer.

91.     In 2012, the dollar-value for Steering Wheels and related components sold in the U.S. reached $2.24 billion.

25

92.     According to its website, Autoliv manufactures more than 15% of the Steering

Wheels sold in North America, and in its 2011 10-K, Autoliv states that it manufactures almost

30% of the Steering Wheels sold in the world. TRW and Takata are also major manufacturers of

Steering Wheels.

**B.      The Structure and Characteristics of the Occupant Safety Restraint Systems
          Market Render the Conspiracy More Plausible.**

93.     The structure and other characteristics of the Occupant Safety Restraint Systems

market in the United States are conducive to a price-fixing agreement, and have made collusion

particularly attractive in these markets. Specifically, the Occupant Safety Restraint Systems

market: (1) has high barriers to entry; (2) has inelasticity of demand; (3) is highly concentrated;

and (4) is rife with opportunities to conspire.

**1.      The Occupant Safety Restraint Systems Market Has High Barriers to
          Entry.**

94.     A collusive arrangement that raises product prices above competitive levels

would, under basic economic principles, attract new entrants seeking to benefit from the supra-

competitive pricing. Where, however, there are significant barriers to entry, new entrants are less

likely. Thus, barriers to entry help facilitate the formation and maintenance of a cartel.

95.     There are substantial barriers that preclude, reduce, or make more difficult entry

into the Occupant Safety Restraint Systems market. A new entrant into the business would face

costly and lengthy start-up costs, including multi-million dollar costs associated with

manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled

labor, and long-standing customer relationships.

96.     In addition, an OEM cannot freely change its suppliers of Occupant Safety

Restraint Systems because OEMs design the features of their vehicles, including the electronics,

mechanics, thermal distribution, and other features, so that they may be integrated with a

selected Occupant Safety Restraint System. Thus, it would be difficult for a new competitor to enter the market after a vehicle has been specifically designed to be integrated with a particular Occupant Safety Restraint System.

97.     Research and development costs are also significant for Occupant Safety Restraint Systems, creating an additional barrier to entry. Airbags are constantly researched for better deployment speeds, Seatbelts are constantly researched for better functionality and quality, and Steering Wheels are constantly researched for better precision and rotation.

98.     Defendants also own several patents for Occupant Safety Restraint Systems. For example, TRW owns Airbag, Steering Wheel and Seatbelt patents. These patents place a significant and costly burden on potential new entrants, who must avoid infringing on the patents when entering the market with a new product.

<div align="center">

**2.      There is Inelasticity of Demand for Occupant Safety Restraint Systems.**

</div>

99.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

100.    For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales, revenues, and profits, as customers purchased substitute products or declined to buy altogether. Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

101. Demand for Occupant Safety Restraint Systems is highly inelastic. This is because there are no close substitutes for these products. Additionally, customers must purchase Occupant Safety Restraint Systems as essential parts of a vehicle, regardless of whether prices are kept at supra-competitive levels. Customers wanting to purchase Trucks and Equipment simply have no choice but to purchase Occupant Safety Restraint Systems.

### 3. The Market for Occupant Safety Restraint Systems is Highly Concentrated.

102. Defendants dominate the Occupant Safety Restraint Systems market. Three of the Defendants control almost 75% of the global market.

### 4. Defendants Had Ample Opportunities to Conspire

103. Defendants attended industry events where they had the opportunity to meet, have improper discussions under the guise of legitimate business contacts, and perform acts necessary for the operation and furtherance of the conspiracy. In a June 6, 2012, press release, the DOJ explained that Defendant Autoliv and its co-conspirators met in secret and agreed to allocate the supply of various automotive parts. According to the Autoliv information, Autoliv and its coconspirators participated in meetings, conversations and communications to discuss and agree on the bids and price quotations to be submitted to certain manufacturers for Occupant Safety Restraint Systems, and agreed, during meetings, conversations and communications, to allocate the supply of Occupant Safety Restraint Systems sold to certain manufacturers on a model-by-model basis.

### C. Government Investigations

104. A globally coordinated antitrust investigation is taking place in the United States, Europe, Canada, and Japan, aimed at suppliers of vehicle parts in general and Occupant Safety Restraint Systems in particular. The DOJ has confirmed that its vehicle parts investigation is the

28

largest criminal investigation that the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the illegal conduct. Almost $1 billion in criminal fines have already been levied against various vehicle parts manufacturers.

105.     The probe originated in Europe as the result of several European OEMs coming together to bring a complaint to the EC. The EC and the FBI have executed surprise raids at the European and U.S. offices of several vehicle parts manufacturers, including certain Defendants, as part of an investigation into anticompetitive conduct related to the manufacturing and sale of vehicle parts.

106.     Defendants Autoliv, TRW, and Takata have admitted that they are cooperating with the antitrust investigators. Autoliv, Inc. stated in its 2011 Annual Report that its subsidiary, Autoliv ASP, Inc., received a grand jury subpoena from the Antitrust Division of the United States Department of Justice on February 8, 2011. "The subpoena requested documents and information as part of a long-running investigation into possible anticompetitive behavior among certain suppliers to the automotive vehicle industry, including Autoliv." Autoliv, Inc.'s 2011 Annual Report also stated that, on June 7-9, 2011, representatives of the EC visited two facilities of Autoliv B.V. & Co. KG to gather information for a similar inquiry.

107.     TRW stated in its 2011 Annual Report that "in June 2011, European antitrust authorities visited certain of our Occupant Safety Systems business unit locations in Germany to gather information. We also received a subpoena related to the Antitrust Investigations in the United States from the U.S. Department of Justice."

108.     On February 23, 2010, investigators from the FBI raided the Plymouth, Michigan, offices of Tokai Rika as part of a federal antitrust investigation. Special Agent Sandra Berchtold

stated that the affidavits that contain facts supporting issuance of the search warrants were filed in federal court under seal.

109.    Takata Corp. stated in its 2011 Annual Report that TK Holdings, Inc., a U.S. subsidiary, "became the subject to an investigation conducted by the Federal Bureau of Investigation on February 8, 2011. TK Holdings, Inc. is cooperating fully with the investigation." Alby Berman, vice-president of marketing and public relations for TK Holdings, Inc., said the subpoena "targeted safety system suppliers - seat belts, air bags, steering wheels and safety electronics - any communications with competitors, and specifically mentioned Tokai Rika" and that the subpoena targeted communications dating back to January 1, 2005. Special Agent Sandra Berchtold, media coordinator for the FBI, confirmed that the FBI raided TK Holdings, Inc.'s offices in Auburn Hills, Michigan.

110.    The DOJ has stated that it is conducting an investigation of potential antitrust activity and coordinating its investigation with antitrust regulators in Europe.

111.    To obtain the search warrant to raid TK Holdings, Inc., the FBI was legally required to have probable cause, accepted by a magistrate, to believe that it would obtain evidence of an antitrust violation as a result of executing the search warrant—that is, the United States had to have evidence sufficient to warrant a person of reasonable caution to believe that raiding the offices of a seemingly lawful business would uncover evidence of antitrust violations and that claimed evidence must have been examined and accepted by a magistrate. That belief, which was recounted in sworn affidavits or testimony, must be grounded on reasonably trustworthy information.

### D.      Guilty Plea Agreements

**Autoliv's Plea Agreement**

112.    Defendant Autoliv has pleaded guilty and agreed to pay a total of $14.5 million in criminal fines concerning a two-count criminal investigation for fixing the prices of seatbelts, steering wheels, and airbags. Autoliv has admitted to conspiring with others to suppress and eliminate competition in the parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Occupant Safety Restraint Systems sold to certain manufacturers in the United States and elsewhere at various times from at least as early as March 2006 and continuing until at least February 2011 in violation of the Sherman Act, 15 U.S.C. § 1. Among other things, Autoliv admitted to: (a) participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to certain manufacturers for Occupant Safety Restraint Systems; (b) agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to certain manufacturers for Occupant Safety Restraint Systems; (c) agreeing, during those meetings, conversations, and communications, to allocate the supply of Occupant Safety Restraint Systems sold to certain manufacturers on a model-by-model basis; (d) submitting bids and price quotations to certain manufacturers in accordance with the agreements reached; (e) selling Occupant Safety Restraint Systems to certain manufacturers at collusive and noncompetitive prices; and (f) accepting payment for Occupant Safety Restraint Systems sold to certain manufacturers at collusive and noncompetitive prices.

113.    The plea agreement requires it and its subsidiaries to cooperate with the DOJ, including producing documents in their control and providing their "directors, officers and employees" for interviews and the provision of testimony in grand jury, trial and other judicial proceedings.

114.    The plea agreement further provides that upon acceptance of the agreement, the United States will not bring further criminal charges against, among other entities, Autoliv Inc.'s subsidiaries arising out of the conspiracy.

115.    Pursuant to the plea agreement, Autoliv Inc. agreed that if the United States determines that it or its subsidiaries fail to provide truthful and continuing cooperation, the United States could elect to subject Autoliv Inc. or its subsidiaries to criminal prosecution and that the United States would have the right, among other things, to prosecute both Autoliv Inc. and its subsidiaries for the conspiracy set forth in the plea agreement.

116.    In addition to Autoliv, Takayoshi Matsunaga, the former Vice President of the Toyota Global Business Unit at Autoliv Japan, pleaded guilty to a one count Criminal Information charging him with participating in a conspiracy to suppress and eliminate competition in the parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of certain seat belts sold to Toyota in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1. In connection with his guilty plea, Matsunaga was criminally fined $20,000 and sentenced to serve one year and one day in a U.S. prison.

**Takata's Plea Agreement**

117.    On October 9, 2013, Defendant Takata Corporation announced that it agreed to pay a $71.3 million criminal fine and plead guilty to a one-count criminal Information charging it with participating in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of seatbelts sold to manufacturers, including, Toyota, Honda, Nissan, Fuji Heavy Industries, Ltd. (Subaru), and Mazda, in the United States and elsewhere from at least as early as January 1, 2003 and continuing until at least February 2011 in violation of the Sherman Act, 15 U.S.C. § 1. According to the Information filed, Defendant Takata Corporation and its co-conspirators carried

32

out the Occupant Safety Restraint Systems conspiracy by: (a) participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to manufacturers for Occupant Safety Restraint Systems; (b) agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to manufacturers for Occupant Safety Restraint Systems; (c) agreeing, during those meetings, conversations, and communications, to allocate the supply of Occupant Safety Restraint Systems sold to manufacturers on a model-by-model basis; (d) submitting bids and price quotations to manufacturers in accordance with the agreements reached; (e) selling Occupant Safety Restraint Systems to manufacturers at collusive and noncompetitive prices; and (f) accepting payment for Occupant Safety Restraint Systems sold to manufacturers at collusive and noncompetitive prices.

118.     On November 21, 2013, the DOJ announced that three high-level Takata executives, Yasuhiko Ueno, Saburo Imamiya, and, Yoshinobu Fujino pleaded guilty to three separate one-count criminal Informations charging them with participating in a conspiracy to suppress and eliminate competition in the parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of seatbelts sold to Toyota, Honda, Nissan, Fuji Heavy Industries, Ltd. (Subaru), and Mazda in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1. In connection with their guilty pleas, the Takata executives were criminally fined $20,000 each and sentenced to serve between 14 and 19 months in U.S. prison. Ueno's criminal Information notes that he was employed by Defendant TK Holdings Inc., in the United States as senior vice president for sales for Japanese manufacturers from at least January 2006 through December 2007.

119.     A fourth Takata executive, Gary Walker - employed by Defendant TK Holdings, Inc. - pleaded guilty to a one-count criminal Information charging him with participating in a

33

conspiracy to suppress and eliminate competition in the parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of certain seatbelts sold to Toyota, Honda, Nissan, Fuji Heavy Industries (Subaru) and Mazda in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1. In connection with his guilty plea, Walker was criminally fined $20,000 and sentenced to serve 14 months in a U.S. prison. A fifth Takata executive, Gikou Nakajima, was indicted on June 5, 2014 for his participation in a conspiracy to suppress and eliminate competition in the parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of seatbelts sold to Honda, Nissan, Fuji Heavy Industries (Subaru) and Mazda in the United States and elsewhere in violation of the Sherman Act, 15 U.S.C. § 1.

120.    On January 22, 2015, the DOJ announced that a Detroit federal grand jury returned a one count indictment against an executive at Takata Corp. for conspiring to rig bids for, and to fix, stabilize and maintain the prices of, seatbelts sold to Toyota Motor Corp., Honda Motor Company Ltd., Nissan Motor Co., Ltd., Mazda Motor Corp., Fuji Heavy Industries Ltd., and/or certain of their subsidiaries, for installation in vehicles manufactured and sold in the United States and elsewhere, through at least February 2011.

**TRW's Plea Agreement**

121.    Defendant TRW Germany has agreed to plead guilty and agreed to pay a total of $5.1 million in criminal fines concerning a two-count criminal investigation for fixing the prices of seatbelts, steering wheels and airbags. TRW Germany has admitted to conspiring with others to suppress and eliminate competition in the parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of Occupant Safety Restraint Systems sold to certain manufacturers in the United States and elsewhere at various times from at least as early as January 2008 to until at least June 2011 in violation of the Sherman Act, 15 U.S.C. § 1. Among

34

other things, TRW Germany admitted to: (a) participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to certain manufacturers for Occupant Safety Restraint Systems; (b) agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to certain manufacturers for Occupant Safety Restraint Systems; (c) agreeing, during those meetings, conversations, and communications, to allocate the supply of Occupant Safety Restraint Systems sold to certain manufacturers on a model-by-model basis; (d) agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by certain manufacturers; (e) submitting bids and price quotations to certain manufacturers in accordance with the agreements reached; (f) selling Occupant Safety Restraint Systems to certain manufacturers at collusive and noncompetitive prices; (g) accepting payment for Occupant Safety Restraint Systems sold to certain manufacturers at collusive and noncompetitive prices; and (h) engaging in meetings, conversations and communications for the purpose of monitoring and enforcing adherence to the agreed upon bid rigging and price-fixing scheme.

122.    The plea agreement requires it and its subsidiaries to cooperate with the DOJ, including producing documents in their control and providing their "directors, officers and employees" for interviews and the provision of testimony in grand jury, trial and other judicial proceedings.

123.    The plea agreement further provides that upon acceptance of the agreement, the United States will not bring further criminal charges against, among other entities, TRW Germany's subsidiaries arising out of the conspiracy.

124.    Pursuant to the plea agreement, TRW Germany agreed that if the United States determines that it or its subsidiaries fail to provide truthful and continuing cooperation, the

35

United could elect to subject TRW Germany or its subsidiaries to criminal prosecution and that the United States would have the right, among other things, to prosecute both TRW Germany and its subsidiaries for the conspiracy set forth in the plea agreement.

**Tokai Rika's Plea Agreement**

125.    On December 12, 2012, Tokai Rika agreed to pay a $17.7 million fine and plead guilty to a two-count criminal information charging Tokai Rika with participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of Heater Control Panels sold to a manufacturer from at least September 2003 until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

126.    The information also charged Tokai Rika and one of its executives with obstruction of justice for directing employees to delete electronic data and destroy paper documents, which destroyed evidence relevant to the government's investigation into Tokai Rika's antitrust violations in violation of 15 U.S.C. § 1512(b)(2)(B). Tokai Rika's plea agreement states "[a]fter becoming aware of the FBI search of the defendant's United States subsidiary, an executive of the defendant directed employees to delete electronic data and destroy paper documents likely to contain evidence of antitrust crimes. As a result, electronic data were deleted and paper documents were destroyed, including data and documents evidencing antitrust crimes, and some of the deleted electronic data and destroyed paper documents were non-recoverable."

127.    Tokai Rika's plea agreement requires it and its subsidiaries to cooperate with the DOJ, including producing documents in their control and providing their "directors, officers and employees . . ." for "interviews and the provision of testimony in grand jury, trial and other judicial proceedings . . . ."

36

128.    According to the criminal information filed against Tokai Rika, Tokai Rika and its co-conspirators carried out the conspiracy by: (a) participating in meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations; agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted; (c) agreeing, during those meetings, conversations, and communications, to allocate the supply of [Heater Control Panels]; (d) agreeing, during those meetings, conversations, and communications, to coordinate price adjustments; (e) submitting bids, price quotations, and price adjustments in accordance with the agreements reached; selling [Heater Control Panels] in the United States and elsewhere at collusive and noncompetitive prices; (g) accepting payment for [Heater Control Panels] sold at collusive and noncompetitive prices; (h) engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and (i) employing measures to keep their conduct secret, including using code names and choosing meeting places and times to avoid detection.

129.    Tokai Rika's plea agreement states that during a period from at least as early as September 2003 until at least February 2010 Tokai Rika's sales of Heater Control Panels subject to the conspiracy totaled approximately $73.6 million.

130.    Tokai Rika's plea agreement is evidence of its participation in the conspiracy for vehicle parts generally, including Occupant Safety Restraint Systems, which Tokai Rika also sells.

E.    **Additional Criminal Pleas Related to Conspiracies in the Vehicle Parts Industry**

131.    In addition to Autoliv, Inc., Takata, TRW Germany, and Tokai Rika, a number of other manufacturers of vehicle parts have pleaded guilty, or agreed to plead guilty, to price fixing

37

and bid rigging in the vehicle parts industry, including: Furukawa Electric Co., Ltd.; Yazaki

Corp.; G.S. Electech, Inc.; Fujikura Ltd.; Denso Corporation; and Nippon Seiki Co. Ltd.  These

companies have pleaded guilty to engaging in the same conduct as Autoliv, Inc. with regard to

Vehicle Wire Harness Systems, Instrument Panel Clusters, Fuel Senders and Heater Control

Panels. The majority of these violators pleaded guilty to engaging in bid-rigging, price-fixing,

and market allocation during the same time period as Autoliv, Inc. with multiple OEMs as their

targets.

132.    On September 29, 2011, the DOJ announced that Defendant Furukawa Electric

had agreed to plead guilty and to pay a $200 million fine for its role in a criminal price-fixing

and bid-rigging conspiracy involving the sale of Vehicle Wire Harness Systems to automobile

manufacturers.  Three Furukawa executives, who are Japanese nationals, also agreed to plead

guilty and to serve prison time in the United States.

133.    On January 30, 2012, Yazaki Corporation and four of its executives, Tsuneaki

Hanamura ("Hanamura"), Ryoji Kawai ("Kawai"), Shigeru Ogawa ("Ogawa") and Hisamitsu

Takada ("Takada"), agreed to plead guilty to conspiring to rig bids, fix prices and allocate

customers for Vehicle Wire Harness Systems from January 2000 until at least February 2010.

134.    Denso Corporation has pleaded guilty and agreed to pay a total of $78 million in

criminal fines concerning a two-count criminal information charging Denso Corporation with:

(1) participating in a combination and conspiracy with its co-conspirators to suppress and

eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix,

stabilize, and maintain the prices of body electronic control units sold to an automobile

manufacturer in the United States and elsewhere from at least as early as January 2000 and

continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1; (2)

participating in a combination and conspiracy with its co-conspirators to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of Vehicle Wire Harness Systems sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1.

135.   On April 3, 2012, G.S. Electech Inc. agreed to plead guilty to "participat[ing] in a combination and conspiracy to suppress and eliminate competition in the automotive industry by agreeing to rig bids for, and to fix stabilize, and maintain the prices of, speed sensor wire assemblies sold to an automobile manufacturer in the United States and elsewhere."

136.   On April 23, 2012, Fujikura, Inc. agreed to plead guilty to participating in the conspiracy to fix prices, rig bids and allocate supply with regard to Vehicle Wire Harness Systems,4 between January 2006 and February 2010.

137.   On August 28, 2012, the DOJ announced that Nippon Seiki Co. Ltd. had agreed to plead guilty and to pay a $1 million criminal fine for its role in a conspiracy to fix prices of instrument panel clusters installed in vehicles sold in the United States and elsewhere.

138.   On July 16, 2013, the DOJ announced that Diamond Electric Mfg. Co. Ltd. had agreed to plead guilty and to pay a $19 million criminal fine for its role in a conspiracy to fix prices of ignition coils sold to Ford Motor Co., Toyota Motor Corp., Fuji Heavy Industries Ltd. and certain of their subsidiaries and installed in vehicles sold in the United States and elsewhere.

139.   In the press release announcing the fine against Diamond Electric Mfg. Co. Ltd., Robert D. Foley III, Agent in Charge, FBI Detroit Division said "[t]hose who engage in price fixing, bid rigging and other fraudulent schemes harm the automotive industry by driving up costs for vehicle makers and buyers."

140.    On July 18, 2013, Panasonic Corporation agreed to plead guilty and to pay a $45.8 million criminal fine for its role in a conspiracy to fix prices of switches, steering angle sensors and automotive high intensity discharge (HID) ballasts sold to Toyota Motor Corp., Toyota Motor Engineering & Manufacturing North America Inc., Honda Motor Co. Ltd., American Honda Motor Co., Inc., Mazda Motor Corp., Mazda Motor of America Inc., Nissan Motor Co. Ltd., and Nissan North America Inc. and installed in vehicles sold in the United States and elsewhere.

141.    On September 26, 2013, nine additional Japanese motor vehicle suppliers agreed to plead guilty to conspiracy charges and pay more than $740 million in criminal fines for their roles in rigging the prices of more than 30 different products sold to Chrysler, Ford, and General Motors, as well as to the U.S. subsidiaries of Honda, Mazda, Mitsubishi, Nissan, Toyota, and Fuji Heavy Industries:

(a)    Hitachi Automotive Systems Ltd. agreed to plead guilty and to pay a $195 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of motor vehicle parts including starter motors, alternators, air flow meters, valve timing control devices, fuel injection systems, electronic throttle bodies, ignition coils, inverters and motor generators sold to motor vehicle manufacturers in the United States and elsewhere;

(b)    Mitsuba Corporation agreed to plead guilty and to pay a $135 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of motor vehicle parts including fan motors, windshield washer systems and components, windshield wiper systems and components, starter motors, and power window motors sold to motor vehicle manufacturers in the United States and elsewhere.  Defendant Mitsuba Corporation also agreed to plead guilty to one count of obstruction of justice, because of the

company's efforts to destroy evidence ordered by a high-level U.S.-based executive after learning of the U.S. investigation of collusion in the parts industry;

(c)     Mitsubishi Electric Corporation agreed to plead guilty and to pay a $190 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of numerous motor vehicle parts sold to motor vehicle manufacturers in the United States and elsewhere;

(d)     Mitsubishi Heavy Industries Ltd. agreed to plead guilty and to pay a $14.5 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of compressors and condensers sold to motor vehicle manufacturers in the United States and elsewhere;

(e)     T.RAD Co. Ltd. agreed to plead guilty and to pay a $13.75 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of radiators and automatic transmission fluid warmers (ATF warmers) sold to motor vehicle manufacturers in the United States and elsewhere;

(f)     Valeo Japan Co. Ltd. agreed to plead guilty and to pay a $13.6 million criminal fine for its participation in a conspiracy to allocate the supply of, rig bids for, and to fix, stabilize and maintain the pries of air conditioning systems sold to motor vehicle manufacturers in the United States and elsewhere;

(g)     JTEKT Corporation agreed to plead guilty and to pay a $103.27 million criminal fine for its participation in a conspiracy to allocate markets, to rig bids for, and to fix, stabilize and maintain the prices of bearings and electric powered steering assemblies sold to motor vehicle manufacturers in the United States and elsewhere;

(h)     NSK Ltd. agreed to plead guilty and to pay a $68.2 million criminal fine for its participation in a conspiracy to allocate markets, to rig bids for, and to fix, stabilize and maintain the prices of bearings sold to a motor vehicle manufacturer in the United States and elsewhere; and

(i)     Yamashita Rubber Co. Ltd. agreed to plead guilty and to pay a $11 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, raise and maintain the prices of anti-vibration rubber products sold in the United States and elsewhere to motor vehicle manufacturers.

142.    On the same day, September 26, 2013, United States Attorney General Eric Holder in the Antitrust Division presented the DOJ's most recent findings in the ongoing motor vehicle parts investigation. He stated "[t]hese international price-fixing conspiracies affected more than $5 billion in automobile parts sold to U.S. car manufacturers." Holder also described how the conspiracies worked: "[c]ompany executives met face to face in the United States and Japan – and talked on the phone – to reach collusive agreements to rig bids, fix prices and allocate the supply of auto parts sold to U.S. car companies. In order to keep their illegal conduct secret, they used code names and met in remote locations. Then they followed up with each other regularly to make sure the collusive agreements were being adhered to." Attorney General Holder explained that the vehicle parts conspiracies "targeted U.S. manufacturing, U.S. businesses and U.S. consumers. As a result of these conspiracies, Americans paid more for their cars."

143.    The diagram below, which was prepared by the DOJ, illustrates the September 26, 2013 guilty pleas and the corresponding automotive parts to which the various motor vehicle manufacturers have admitted price-fixing.

Case 2:12-cv-00602-SFC-RSW ECF No. 170-3, PageID.4090 Filed 06/20/19 Page 190 of 279
Case 2:13-13753-BLS Doc 3489-3 Filed 11/27/18 Page 47 of 109

2:15-cv-12050-VAR-APP   Doc # 1   Filed 06/05/15   Pg 43 of 103   Pg ID 43



144.    On November 26, 2013, the DOJ announced that Toyo Tire & Rubber Co. Ltd. had agreed to plead guilty and to pay a $120 million criminal fine for its role in two separate conspiracies to fix the prices of components involving anti-vibration rubber and driveshaft parts installed in motor vehicles sold in the United States and elsewhere.

145.    On November 27, 2013, the DOJ announced that Stanley Electric Co. Ltd. had agreed to plead guilty and to pay a $1.44 million criminal fine for its participation in a conspiracy to fix prices of high-intensity discharge (HID) lamp ballasts sold to Toyota Motor Corp., Nissan Motor Corp., and Fuji Heavy Industries Ltd. and certain of their subsidiaries, affiliates, and suppliers and installed in motor vehicles sold in the United States and elsewhere.

146.    On January 16, 2014, the DOJ announced that Koito Manufacturing Co. Ltd. had agreed to plead guilty and to pay a $56.6 million criminal fine for its roles in separate price-

43

fixing conspiracies involving motor vehicle lighting fixtures and high-intensity discharge (HID) lamp ballasts installed in motor vehicles sold in the United States and elsewhere.

147. On February 3, 2014, the DOJ announced that Aisan Industry Co. Ltd. had agreed to plead guilty and to pay a $6.86 million criminal fine for its role in a price-fixing conspiracy involving electronic throttle bodies sold to Nissan Motor Co. Ltd. and certain of its subsidiaries in the United States and elsewhere.

148. On February 13, 2014, the DOJ announced that Bridgestone Corp. had agreed to plead guilty and to pay a $425 million criminal fine for its role in a conspiracy to fix prices of anti-vibration rubber parts sold to Toyota Motor Corp., Nissan Motor Corp., Fuji Heavy Industries Ltd., Suzuki Motor Corp., Isuzu Motors Ltd., and certain of their subsidiaries, affiliates, and suppliers and installed in motor vehicles sold in the United States and elsewhere.

149. On April 23, 2014, the DOJ announced that Showa Corp. agreed to plead guilty and to pay a $19.9 million criminal fine for its role in a conspiracy to fix prices and rig bids for pinion-assist type electric powered steering assemblies sold to Honda Motor Co. Ltd. and certain of its subsidiaries and installed in motor vehicles sold in the United States and elsewhere.

150. On August 19, 2014, the DOJ announced that NGK Spark Plug Co. Ltd. agreed to plead guilty and to pay a $52.1 million criminal fine for its role in a conspiracy to fix prices and rig bids for spark plugs, standard oxygen sensors, and air fuel ratio sensors sold to manufacturers such as DaimlerChrysler AG, Honda Motor Co. Ltd., and Toyota Motor Corp. and installed in motor vehicles sold in the United States and elsewhere.

151. On November 13, 2014, the DOJ announced that Aisin Seiki Co. Ltd. agreed to plead guilty and to pay a $35.8 million criminal fine for its role in a conspiracy to allocate customers of variable valve timing devices sold to various manufacturers including General

Motors Company, Nissan Motor Company Ltd., Volvo Car Corporation, and BMW AG, in the United States and elsewhere.

152.   On November 14, 2014, the DOJ announced that a federal grand jury returned a one-count indictment against two executives of NSK Ltd. and JTEKT Corporation for conspiring to fix the prices of bearings sold to Toyota Motor Corporation and Toyota Motor Engineering & Manufacturing North America Inc. in the United States and elsewhere, through at least July 2011.

153.   On November 24, 2014, Continental Automotive Electronics LLC and Continental Automotive Korea Ltd. agreed to plead guilty and pay a single criminal fine of $4 million for their roles in a conspiracy to rig bids of instrument panel clusters sold to Hyundai Motor Co., Kia Motors Corp. and Kia Motors Manufacturing Georgia in the United States and elsewhere.

154.   On December 1, 2014, the DOJ announced that a former executive of Mitsuba Corporation agreed to plead guilty and serve 13 months in a U.S. prison for conspiring to fix the prices of windshield wiper systems and starter motors sold to Honda Motor Co. Ltd. and its subsidiaries and affiliates in the United States and elsewhere.

155.   On December 1, 2014, the DOJ announced that an executive of T.RAD Co. Ltd. agreed to plead guilty and to serve one year and one day in a U.S. prison for participating in a conspiracy to fix princes of radiators sold to Honda Motor Co. Ltd. and certain of its subsidiaries in the United States and elsewhere.

156.   On January 27, 2015, the DOJ announced that Sanden Corp. agreed to plead guilty and to pay a $3.2 million criminal fine for its role in a conspiracy to suppress and eliminate competition for the purchase of compressors used in air conditioning systems sold to

45

Nissan North America Inc. for installation in vehicles manufactured and sold in the United States and elsewhere.

157.    On February 5, 2015, the DOJ announced that a Detroit federal grand jury returned a two-count indictment against two former executives of Mitsuba Corporation for their role in conspiring to fix the prices of various vehicle parts, including windshield wiper systems and components, sold to Honda Motor Company Ltd., Nissan Motor Co., Ltd., Toyota Motor Co., Ltd., Chrysler Group, LLC, and Fuji Heavy Industries Ltd., and certain of their subsidiaries in the United States and elsewhere.  The executives are also charged with knowingly and corruptly persuading, and attempting to persuade, employees of Mitsuba to destroy documents and delete electronic data that may contain evidence of antitrust crimes in the United States and elsewhere.

158.    On March 31, 2015, the DOJ announced that Robert Bosch GmbH agreed to plead guilty and to pay a $57.8 million criminal fine for its role in a conspiracy to fix prices and rig bids for spark plugs, oxygen sensors, and starter motors to vehicle and internal combustion engine manufacturers such as DaimlerChrysler AG, Ford Motor Company, General Motors Company, and Adreas Stihl AG & Co., among others, in the United States and elsewhere, until at least July 2011.  Bosch was also charged with participating in a conspiracy to allocate the supply of, rig bids for, and to fix, stabilize and maintain the prices of, starter motors sold to Volkswagen AG and certain subsidiaries in the United States through at least June 2010.

159.    On April 23, 2015, an executive of Hitachi Automotive Systems Ltd. pleaded guilty and was sentenced to serve 15 months in a U.S. prison for his role in conspiring to allocate the supply of, rig bids for, and fix, stabilize, and maintain the price of various parts including starter motors, alternators, air flow meters, valve timing control devices, fuel injection systems,

electronic throttle bodies, ignition coils and inverters and/or motor generators, to manufacturers including Ford Motor Co., General Motors LLC, Nissan Motor Co. Ltd., Toyota Motor Corp., and Honda Motor Co. Ltd., and certain of their subsidiaries.

160.    On April 28, 2015, the DOJ announced that Yamada Manufacturing Co. Ltd. agreed to plead guilty and to pay a $2.5 million criminal fine for its role in a conspiracy to fix prices and rig bids for manual steering columns sold to certain subsidiaries of Honda Motor Co. in the United States and elsewhere, continuing until as late as September 2012.

161.    On May 14, 2015 the DOJ announced that a Detroit federal grand jury returned a one count indictment against the former executive managing director of T.RAD Co. Ltd. for his role in conspiring to fix the prices of radiators sold to Honda Motor Co. Ltd., Toyota Motor Corp., and certain of their subsidiaries in the United States and elsewhere.

162.    To date, 35 companies pleaded or agreed to plead guilty and 53 individuals have been charged in the Antitrust Division's ongoing investigation into price fixing and bid rigging in the motor vehicle parts industry. All together, the 35 guilty-pleading companies have paid or agreed to pay approximately $2.5 billion in criminal fines.

**F.    Investigations involving the sale of parts for Trucks and Equipment**

163.    The first public announcements of government investigations and penalties that indicated that the conspiracies included parts sold for Equipment was on March 29, 2013, when the JFTC issued cease and desist orders and surcharge payment orders based on violations of the Japan Antimonopoly Act against NTN Corp., NSK Ltd. and Nachi-Fujikoshi Corp., for conspiring to fix prices on "industrial machinery bearings and automotive bearings."

164.    The first public announcements of government investigations and penalties that indicated that the conspiracies included parts sold for Trucks was on March 19, 2014, when the EC announced that the "producers of car and truck bearings" had operated a cartel in the market

for bearings sold to "car, truck and car part manufacturers." The EC fined SKF, Schaeffler, NSK Ltd., Nachi-Fujikoshi, and NTN EUR 953 million. JTEKT, which also was found to have conspired to fix prices, benefitted from immunity for having revealed the existence of a cartel to the EC.

165.    On March 31, 2015, the Department of Justice announced that Robert Bosch GmbH had agreed to plead guilty and to pay a $57.8 million criminal fine for its role in a conspiracy to fix the prices for parts, including spark plugs, oxygen sensors and starter motors "sold to automobile and internal combustion engine manufacturers in the United States and elsewhere," including parts sold to equipment manufacturer Andreas Stihl AG & Co., from at least as early as January 2000 until at least July 2011.

G.      **Likely Existence of An Amnesty Applicant**

166.    The Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA") provides leniency benefits for a participant in a price-fixing conspiracy that voluntarily discloses its conduct to the Department of Justice. In most recent cases in which guilty pleas for price-fixing conduct have been obtained, there has been a cooperating party who has been accepted into the DOJ's ACPERA program as an amnesty applicant. One of the leniency benefits for a conspirator that is accepted into the ACPERA program is that the applicant is not charged with a criminal offense and is not required to plead guilty to criminal charges.

167.    In light of the multiple guilty pleas in this case, in related vehicle parts antitrust cases and the DOJ's ongoing investigation into the industry, it is reasonable for this Court to infer that there is an ACPERA "amnesty applicant" in this case.

**H.** **Damage to Plaintiffs and Other Truck and Equipment Dealers Caused by Defendants' Illegal Activities.**

168. Deputy Assistant Attorney General Scott Hammond, recently stated that the vehicle parts cartel is "the biggest [cartel] with respect to the impact on U.S. business and consumers."

169. Occupant Safety Restraint Systems and many of the motor parts involved in the government investigations and proceedings are also used in connection with Trucks and Equipment.

170. Defendants' conspiracy impacted the market for Trucks and Equipment.

171. Many of the OEMs identified as having purchased products from members of the cartel, including Toyota, Ford, Chrysler, Mitsubishi Motors, Fuji Heavy Industries, Honda, Subaru, Isuzu and Nissan, manufacture and sell Trucks and/or Equipment directly or through subsidiaries or affiliated companies.

172. Upon information and belief, many of the Defendants' employees who were involved in negotiating the prices of Occupant Safety Restraint Systems and other parts sold to automobile OEMs were the very same individuals involved in negotiations over the pricing on sales of the same parts for Trucks and Equipment.

173. Defendants' conspiracy resulted in Defendants charging inflated prices to firms who directly purchased Occupant Safety Restraint Systems from them and in those purchasers raising their prices to subsequent purchasers.

174. Having paid higher prices for components of the Trucks and Equipment they sold to Plaintiffs and the Classes and the Occupant Safety Restraint Systems they sold to Plaintiffs and the Classes, firms who sold such Occupant Safety Restraint Systems and Trucks and Equipment passed Defendants' overcharges on to Plaintiffs and the Classes.

49

Case 2:12-cv-00602-SFC-RSW ECF No. 170-3, PageID.4027 Filed 06/20/19 Page 197 of 279
Case 2:17-cv-13575-BLS-CI Doc. 3489-3 Filed 11/27/18 Page 54 of 103

2:15-cv-12050-VAR-APP   Doc # 1   Filed 06/05/15   Pg 50 of 103   Pg ID 50

175.   Plaintiffs and the Classes are entitled to the overcharges they paid for Occupant

Safety Restraint Systems.

176.   Plaintiffs and the Classes had to and did absorb, at the very least, a significant

portion of the overcharges that they paid due to Defendants' illegal activities.

177.   Plaintiffs have standing and have suffered damage compensable by indirect

purchaser laws and they and members of the classes they seek to represent have sustained

significant damage and injury as a result of Defendants' conspiracy.

### CLASS ACTION ALLEGATIONS

178.   Plaintiffs bring this action on behalf of themselves and as a class action under

Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive

relief on behalf of the following class (the "Nationwide Class"):

> All Truck and Equipment dealers that during the Class Period, (a)
> indirectly purchased Occupant Safety Restraint Systems
> manufactured by the Defendants or any current or former
> subsidiary or affiliate thereof or any co-conspirator, or (b)
> purchased Trucks or Equipment containing Occupant Safety
> Restraint Systems manufactured by the Defendants or any current
> or former subsidiary, affiliate thereof or co-conspirator.

179.   Plaintiffs also bring this action on behalf of themselves and as a class action under

Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the

antitrust, unfair competition, unjust enrichment and consumer protection laws of the states whose

laws are set forth in the Second and Third Claims below, (except California as to unjust

enrichment claims), as well as unjust enrichment laws of Missouri, Massachusetts, Illinois, South

Carolina, and Tennessee. The states whose laws are set forth in the Second and Third Claims

below, as well as Missouri, Massachusetts, Illinois, South Carolina, and Tennessee are

collectively referred to as the "Indirect Purchaser States." These claims are brought by Plaintiffs

on behalf of themselves and entities in the Indirect Purchaser States listed in the Second, Third and Fourth Claims as follows (the "Damages Class"):

> All Truck and Equipment dealers, in the Indirect Purchaser States, that, during the Class Period (a) indirectly purchased Occupant Safety Restraint Systems manufactured by one of the Defendants or any current or former subsidiary or affiliate thereof, or any co-conspirator or (b) purchased Trucks or Equipment containing Occupant Safety Restraint Systems manufactured by one of the Defendants or any current or former subsidiary, affiliate or co-conspirator thereof.

180.   The Nationwide Class and the Damages Class are referred to herein as the "Classes." Excluded from the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities, and instrumentalities of the federal government, states, and their subdivisions, agencies, and instrumentalities.

181.   Although Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are at least hundreds of members in each Class.

182.   Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

(a)    Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Occupant Safety Restraint Systems sold in the United States;

(b)    The identity of the participants of the alleged conspiracy;

(c)    The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)    Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)   Whether the alleged conspiracy violated state antitrust and unfair competition law, and/or state consumer protection law, as alleged in the Second and Third Claims for Relief;

(f)   Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

(g)   Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h)   The effect of the alleged conspiracy on the prices of Occupant Safety Restraint Systems sold in the United States during the Class Period;

(i)   Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiffs and the members of the Classes;

(j)   The appropriate injunctive and related equitable relief for the Nationwide Class; and

(k)   The appropriate class-wide measure of damages for the Damages Class.

183.   Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct because they paid artificially inflated prices for Occupant Safety Restraint Systems purchased indirectly from Defendants or their co-conspirators.

184.   Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

185.   The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

52

186.   Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism provide injured entities with a method for obtaining redress for claims that might not be practicable to pursue individually and substantially outweigh any difficulties that may arise in the management of this class action.

187.   The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

### PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

188.   Defendants' price-fixing conspiracy had the following effects, among others:

(a)   Price competition has been restrained or eliminated with respect to Occupant Safety Restraint Systems;

(b)   The prices of Occupant Safety Restraint Systems have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c)   Defendants charged purchasers of their Occupant Safety Restraint Systems inflated, fixed and stabilized prices for such Occupant Safety Restraint Systems;

(d)   Having paid higher prices for components of the Trucks and Equipment they sold to Plaintiffs and the Classes and the Occupant Safety Restraint Systems they sold to Plaintiffs and the Classes, firms who sold Defendants' Occupant Safety Restraint Systems and Trucks and Equipment to Plaintiffs and the Classes passed Defendants' overcharges on to them;

(e)   Defendants' overcharges passed through each level of distribution as they traveled to Plaintiffs and the Classes; and

(f)   Truck and Equipment dealers purchasing Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems have been deprived of free and open competition.

189.   During the Class Period, Plaintiffs and the members of the Classes paid supracompetitive prices for Occupant Safety Restraint Systems, as a result of Defendants' conspiracy.

190.   An increase in the prices of Occupant Safety Restraint Systems caused an increase in the price of Trucks and Equipment during the Class Period.

191.   The market for Occupant Safety Restraint Systems and the market for vehicles, including Trucks and Equipment are inextricably linked and intertwined because the market for Occupant Safety Restraint Systems exists to serve the vehicle market. Without the vehicles, the Occupant Safety Restraint Systems have little to no value because they have no independent utility and must be inserted into vehicles to serve any function.  Indeed, the demand for vehicles creates the demand for Occupant Safety Restraint Systems.

192.   Occupant Safety Restraint Systems are identifiable, discrete physical products that remain essentially unchanged when incorporated into a vehicle and are not altered during the manufacturing process. As a result, Occupant Safety Restraint Systems follow a traceable physical chain of distribution from the Defendants to Plaintiffs and the members of the Classes, and any costs attributable to Occupant Safety Restraint Systems can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

193.   Just as Occupant Safety Restraint Systems can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of Occupant Safety Restraint Systems affect prices paid by indirect purchasers of new Trucks and Equipment containing Occupant Safety Restraint Systems.

194.   Occupant Safety Restraint Systems have their own part numbers, which permit them to be tracked.

54

195.   Occupant Safety Restraint Systems are pieces of sophisticated equipment that are necessary to operate a vehicle.

196.   Occupant Safety Restraint Systems are found in every modern vehicle and can be removed from a finished vehicle and replaced.

197.   The Occupant Safety Restraint Systems subject to Defendants' conspiracy and at issue in this lawsuit only have one use: to be inserted into vehicles, including Trucks and Equipment. Whether Occupant Safety Restraint Systems are sold by themselves or in vehicles, their purpose is to be inserted into vehicles to protect drivers and passengers from bodily harm.

198.   Occupant Safety Restraint Systems comprise a not insignificant portion of the cost of a vehicle.

199.   The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to raise, fix, rig, or stabilize the price of Occupant Safety Restraint Systems and, as a direct and foreseeable result, the price of new vehicles containing Occupant Safety Restraint Systems and the price of Occupant Safety Restraint Systems purchased for repair purposes. Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis—called regression analysis—is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product or service that is an assemblage of costs. Thus, it is possible to isolate and identify only the impact of an increase in the price of Occupant Safety Restraint Systems on prices for new Trucks and Equipment even though such products contain a number of other components whose prices may be changing over time. A regression model can explain how

variation in the price of Occupant Safety Restraint Systems affects changes in the price of new Trucks and Equipment. In such models, the price of Occupant Safety Restraint Systems would be treated as an independent or explanatory variable. The model can isolate how changes in the price of Occupant Safety Restraint Systems impact the price of new Trucks and Equipment containing Occupant Safety Restraint Systems while controlling for the impact of other price-determining factors.

200.    The precise amount of the overcharge impacting the prices of new Trucks and Equipment containing Occupant Safety Restraint Systems can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiffs and members of the Classes can be quantified.

201.    By reason of the alleged violations of the antitrust laws, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Occupant Safety Restraint Systems than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent and Plaintiffs' and Class members' damages are measureable.

**PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS**

**A.      The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could Not Discover the Claims**

202.    Plaintiffs repeat and reallege the allegations set forth above.

203.    Plaintiffs and the members of the Classes had no knowledge that the combination or conspiracy alleged herein involved Trucks and Equipment, or of facts sufficient to place them on inquiry notice of the claims set forth herein until the public announcement by the JFTC on

56

March 29, 2013 of investigations and fines in connection with the sale of bearings for industrial

machinery and the public announcement by the EC on March 19, 2014 of investigations and

fines in connection with the sale of bearings to truck manufacturers.

204.   Plaintiffs and the members of the Classes had no means of obtaining any facts or

information concerning any aspect of Defendants' dealings with OEMs or other direct

purchasers, much less the fact that they had engaged in the combination and conspiracy alleged

herein with respect to parts for Trucks and Equipment prior to the announcements by the JFTC

and EC on March 29, 2013 and March 14, 2014.

205.   Although there was disclosure of certain facts indicating that the government

investigations involved price-fixing for automotive parts, no information in the public domain

was available to the Plaintiffs and the members of the Classes that Trucks and Equipment were

involved in the conspiracy being investigated by the government enforcement agencies prior to

the public announcement of the JFTC's and EC's enforcement activity.

206.   Plaintiffs and members of the Classes did not discover, and could not have

discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged

herein with respect to Trucks and Equipment until the announcements of the government

investigations by the JFTC and EC on March 29, 2013 and/or March 14, 2014.

207.   Plaintiffs and the members of the Classes are Truck and Equipment dealers who

had no direct contact or interaction with any of the Defendants in this case and had no means

from which they could have discovered the combination and conspiracy described in this

Complaint  until the public announcement of the JFTC's enforcement activity on March 29, 2013

and the EC's enforcement activity on March 14, 2014.

208.   For these reasons, the statute of limitations as to Plaintiffs' and the Classes'
claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and the
members of the Classes have alleged in this Complaint..

**B.      Fraudulent Concealment Tolled the Statute of Limitations**

209.   Defendants' agreements, understandings and conspiracies with respect to Trucks
and Equipment were kept secret and, Plaintiffs and members of the Classes were unaware of
Defendants' unlawful conduct and that they were paying supracompetitive prices for parts in
Trucks and Equipment, throughout the United States, during the Class Period.

210.   The affirmative acts of the Defendants alleged herein, including acts in
furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that
precluded detection.

211.   By its very nature, Defendants' anti-competitive conspiracy was inherently self-
concealing.  Occupant Safety Restraint Systems and vehicles containing Occupant Safety
Restraint Systems are not exempt from antitrust regulation, and thus, Plaintiffs reasonably
considered the Occupant Safety Restraint Systems industry for Trucks and Equipment to be a
competitive industry.  Accordingly, a reasonable person under the circumstances would not have
been alerted to investigate the legitimacy of Defendants' prices for Occupant Safety Restraint
Systems for Trucks and Equipment.

212.   As explained in the Informations filed against several of the Defendants, the
conspirators concealed their activities from the authorities by using code names and arranging
meetings at private residences and remote locations.  Also, certain of the conspirators have plead
guilty to destroying incriminating electronic and paper documents upon learning of government
investigations into the vehicle parts antitrust conspiracy which further concealed the conspiracy.

213.    Certain conspirators made false statements denying liability following the February 2010 raids conducted by the JFTC, ED, and FBI.  Following the FBI raid of its office, a spokesman for Tokai Rika stated "[w]e haven't done anything wrong."  Lear's chairman and CEO stated that "I am confident that our Company is not involved in any anti-competitive practices."

214.    Plaintiffs and the members of the Classes could not have discovered the alleged contract, conspiracy and combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination and conspiracy.

215.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, including through fraudulent misrepresentations, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed to fix prices on parts for Trucks and Equipment until the JFTC and EC announced their investigations and enforcement activities included industrial machinery and truck parts.

216.    As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

## FIRST CLAIM FOR RELIEF

### Violation of Section 1 of the Sherman Act
### (on behalf of Plaintiffs and the Nationwide Class)

217.    Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

218.    The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

219.    At least as early as January 2003, and continuing until at least the filing of this Complaint, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Occupant Safety Restraint Systems, thereby creating anticompetitive effects.

220.    The anticompetitive acts were intentionally directed at the United States market for Occupant Safety Restraint Systems and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Occupant Safety Restraint Systems throughout the United States.

221.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for Occupant Safety Restraint Systems.

222.    As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Occupant Safety Restraint Systems have been harmed by being forced to pay inflated, supracompetitive prices for Occupant

Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

223.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth herein.

224.    Defendants' conspiracy had the following effects, among others:

(a)    Price competition in the market for Occupant Safety Restraint Systems has been restrained, suppressed, and/or eliminated in the United States;

(b)    Prices for Occupant Safety Restraint Systems sold by Defendants and their coconspirators have been fixed, raised, maintained, and stabilized at artificially high, noncompetitive levels throughout the United States;

(c)    Prices for Trucks and Equipment purchased by Plaintiffs and the members of the Nationwide Class containing Occupant Safety Restraint Systems manufactured by Defendants and their coconspirators were inflated; and

(d)    Plaintiffs and members of the Nationwide Class who purchased Occupant Safety Restraint Systems indirectly from Defendants have been deprived of the benefits of free and open competition.

225.    Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems than they would have paid and will pay in the absence of the conspiracy.

226.   Plaintiffs and members of the Nationwide Class will continue to be subject to Defendants' price-fixing, bid-rigging, and market allocations, which will deprive Plaintiffs and members of the Nationwide Class of the benefits of free competition, including competitively-priced Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

227.   Plaintiffs and members of the Nationwide Class will continue to lose funds due to overpayment for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems because they are required to purchase Trucks and Equipment and Occupant Safety Restraint Systems to continue to operate their businesses.

228.   Plaintiffs and members of the Nationwide Class continue to purchase Trucks and Equipment and Occupant Safety Restraint Systems, on a regular basis.

229.   Trucks and Equipment and Occupant Safety Restraint Systems continue to be sold at inflated and supracompetitive prices.

230.   The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

231.   Plaintiffs and members of the Nationwide Class will be at the mercy of Defendants' unlawful conduct until the Court orders an injunction.

232.   Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants preventing and restraining the violations alleged herein.

### SECOND CLAIM FOR RELIEF

**Violation of State Antitrust Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

233.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

62

234.    From as early as January 2003 until at least the filing of this Complaint, Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of Occupant Safety Restraint Systems in unreasonable restraint of trade and commerce and in violation of the various state antitrust statutes set forth below.

235.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize and/or maintain artificially supracompetitive prices for Occupant Safety Restraint Systems, to rig bids for the sale of Occupant Safety Restraint Systems and to allocate customers for Occupant Safety Restraint Systems in the United States.

236.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

(a)    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Occupant Safety Restraint Systems at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Occupant Safety Restraint Systems sold in the United States;

(b)    allocating customers and markets for Occupant Safety Restraint Systems in the United States in furtherance of their agreements; and

(c)    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

237.   Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, decrease, or stabilize prices and to allocate customers with respect to Occupant Safety Restraint Systems.

238.   Defendants' anticompetitive acts described above were knowing, willful, and constitute violations or flagrant violations of the following state antitrust statutes.

239.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

(a)   Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Arizona; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(b)   During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

240.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

(a)    During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720 of the California Business and Professions Code.  Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Occupant Safety Restraint Systems at supracompetitive levels.

(b)    The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Occupant Safety Restraint Systems.

(c)    For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of Occupant Safety Restraint Systems; and (2) Allocating among themselves the production of Occupant Safety Restraint Systems.

(d)    The combination and conspiracy alleged herein has had, *inter alia,* the following effects upon the commerce of California: (1) Price competition in the sale of Occupant Safety Restraint Systems has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Occupant Safety Restraint Systems sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the

State of California and throughout the United States; and (3) Those who purchased Occupant

Safety Restraint Systems or Trucks and Equipment containing Occupant Safety Restraint

Systems manufactured by Defendants and their co-conspirators have been deprived of the benefit

of free and open competition.

(e)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

members of the Damages Class have been injured in their business and property in that they paid

more for Occupant Safety Restraint Systems than they otherwise would have paid in the absence

of Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720 of the

California Business and Professions Code, Plaintiffs and members of the Damages Class seek

treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section

16750(a) of the California Business and Professions Code.

241.     Defendants have entered into an unlawful agreement in restraint of trade in

violation of the District of Columbia Official Code §§ 28-4501, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) Occupant

Safety Restraint Systems price competition was restrained, suppressed, and eliminated

throughout the District of Columbia; (2) Occupant Safety Restraint Systems prices were raised,

fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia;

(3) Plaintiffs and members of the Damages Class, including those who resided in the District of

Columbia and/or purchased Occupant Safety Restraint Systems or Trucks and Equipment in the

District of Columbia, were deprived of free and open competition, including in the District of

Columbia; and (4) Plaintiffs and members of the Damages Class, including those who resided in

the District of Columbia and/or purchased Occupant Safety Restraint Systems or Trucks and

Equipment in the District of Columbia, paid supracompetitive, artificially inflated prices for

Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems, including in the District of Columbia.

(b)     During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

242.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

(a)     Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems' price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Occupant Safety Restraint Systems' prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

67

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Revised Statutes Annotated §§ 480-4, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Hawaii Revised Statutes Annotated §§ 480-4, *et seq.*

243.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

68

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

244.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

245.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

69

Case 2:12-cv-00602-SFC-RSW ECF No. 130-3, PageID.4127 Filed 06/20/19 Page 217 of 279
Case 17-11375-BLS Doc 3489-7 Filed 11/27/18 Page 24 of 109

2:15-cv-12050-VAR-APP   Doc # 1   Filed 06/05/15   Pg 70 of 103   Pg ID 70

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Maine; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition: and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10. §§ 1101, *et seq.*

246.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs

and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

247. Defendants have entered into an unlawful agreement in unreasonable restraint of trade in violation of the Minnesota Statutes Annotated §§ 325D.49, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(b) During the Class Period Defendants' illegal conduct substantially affected Minnesota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

248.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class, including those who resided in Mississippi and/or purchased Occupant Safety Restraint Systems or Trucks and Equipment in Mississippi were deprived of free and open competition, including in Mississippi: and (4) Plaintiffs and members of the Damages Class, including those who resided in Mississippi and/or purchased Occupant Safety Restraint Systems or Trucks and Equipment in Mississippi paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems, including in Mississippi.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. § 75-21-1, *et seq.*

249.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, et seq. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, et seq.

250.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased Occupant Safety Restraint Systems or Trucks and Equipment in Nevada, were deprived of free and open competition including in Nevada; and (4) Plaintiffs and members of the Damages Class, including those who resided in Nevada and/or purchased Occupant Safety Restraint Systems or Trucks and Equipment in Nevada, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems, including in Nevada.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.060, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

74

251. Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(b) During the Class Period Defendants' illegal conduct substantially affected New Hampshire commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

252. Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated

75

throughout New Mexico; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(b)    During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann.§§ 57-1-1, *et seq.*

253.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class, including those who resided in New York and/or purchased Occupant Safety Restraint Systems or Trucks and Equipment in New York, were deprived of

free and open competition, including in New York; and (4) Plaintiffs and members of the Damages Class, including those who resided in New York, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems when they purchased, including in New York, Occupant Safety Restraint Systems or Trucks and Equipment containing Occupant Safety Restraint Systems, or purchased, including in New York, Occupant Safety Restraint Systems or Trucks and Equipment that were otherwise of lower quality, than would have been absent the conspirators' illegal acts, or were unable to purchase Occupant Safety Restraint Systems or Trucks and Equipment that they would have otherwise have purchased absent the illegal conduct.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.*  The conduct set forth above is a per se violation of the Act.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

254.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and

members of the Damages Class, including those who resided in North Carolina and/or purchased

Occupant Safety Restraint Systems or Trucks and Equipment in North Carolina, were deprived

of free and open competition, including in North Carolina; and (4) Plaintiffs and members of the

Damages Class, including those who resided in North Carolina and/or purchased Occupant

Safety Restraint Systems or Trucks and Equipment in North Carolina, paid supracompetitive,

artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment

including in North Carolina.

(b)     During the Class Period, Defendants' illegal conduct substantially affected North

Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the Damages Class have been injured in their business and property

and are threatened with further injury.

(c)     By reason of the foregoing, Defendants have entered into agreements in restraint

of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiffs and

members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1,

*et seq.*

255.    Defendants have entered into an unlawful agreement in restraint of trade in

violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant

Safety Restraint Systems price competition was restrained, suppressed, and eliminated

throughout North Dakota; (2) Occupant Safety Restraint Systems prices were raised, fixed,

maintained, and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and

members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs

and members of the Damages Class paid supracompetitive, artificially inflated prices for

Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

256.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(b)     During the Class Period Defendants' illegal conduct had a substantial effect on Oregon commerce.

79

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

257.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1., *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class, including those who resided in South Dakota and/or purchased Occupant Safety Restraint Systems or Trucks and Equipment in South Dakota, were deprived of free and open competition including in South Dakota; and (4) Plaintiffs and members of the Damages Class, including those who resided in South Dakota and/or purchased Trucks and Equipment or Occupant Safety Restraint Systems in South Dakota, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems including in South Dakota.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

80

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

258.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, et seq.

(a)      Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

81

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Annotated §§ 47-25-101, et seq. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Annotated §§ 47-25-101, et seq.

259.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Utah; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq.*

82

260.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the 9 Vermont Stat. Ann. §§ 2451, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(b)    During the Class Period Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 9 Vermont Stat. Ann. §§ 2451, *et seq.* Plaintiffs are entitled to relief pursuant to 9 Vermont Stat. Ann. § 2465 and any other applicable authority. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under 9 Vermont Stat. Ann. §§ 2451, *et seq.*

261.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased Occupant Safety Restraint Systems or Trucks and Equipment in West Virginia, were deprived of free and open competition including in West Virginia; and (4) Plaintiffs and members of the Damages Class, including those who resided in West Virginia and/or purchased Trucks and Equipment or Occupant Safety Restraint Systems in West Virginia, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems including in West Virginia.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia §§ 47-18-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia §§ 47-18-1, *et seq.*

262.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated

84

throughout Wisconsin; (2) Occupant Safety Restraint Systems prices were raised, fixed,

maintained, and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and

members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs

and members of the Damages Class paid supracompetitive, artificially inflated prices for

Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety

Restraint Systems.

     (b)     During the Class Period Defendants' illegal conduct had a substantial effect on

Wisconsin commerce.

     (c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

members of the Damages Class have been injured in their business and property and are

threatened with further injury.

     (d)     By reason of the foregoing, Defendants have entered into agreements in restraint

of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of

the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

     263.     Plaintiffs and members of the Damages Class in each of the above states have

been injured in their business and property by reason of Defendants' unlawful combination,

contract, conspiracy, and agreement. Plaintiffs and members of the Damages Class have paid

more for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant

Safety Restraint Systems than they otherwise would have paid in the absence of Defendants'

unlawful conduct. This injury is of the type the antitrust laws of the above states were designed

to prevent and flows from that which makes Defendants' conduct unlawful.

264.    In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

265.    Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

### THIRD CLAIM FOR RELIEF

**Violation of State Consumer Protection Statutes
on behalf of Plaintiffs and the Damages Class**

266.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

267.    Defendants knowingly engaged in unlawful, unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

268.    Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101.

(a)    Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)    The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c)    Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(d)    During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e)    As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

269.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

(a)    During the Class Period, Defendants marketed, sold, or distributed Occupant Safety Restraint Systems in California, and committed and continue to commit acts of unfair

87

competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)   During the Class Period, Defendants' illegal conduct substantially affected California commerce and consumers.

(c)   This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(d)   The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.,* including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.,* of the California Business and Professions Code, set forth above;

(e)   Defendants' acts, omissions, misrepresentations, practices, and nondisclosures, as described above, whether or not in violation of Section 16720, *et seq.,* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(f)   Defendants' acts or practices are unfair to purchasers of Occupant Safety Restraint Systems (or Trucks and Equipment containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(g)     Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout California; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout California; (3) Plaintiffs and members of the Damages Class, including those who resided in California and/ or purchased Occupant Safety Restraint Systems or Trucks and Equipment in California, were deprived of free and open competition, including in California; and (4) Plaintiffs and members of the Damages Class, including those who resided in California and/or purchased Occupant Safety Restraint Systems or Trucks and Equipment in California, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems, including in California.

(h)     Defendants' acts and practices are unlawful, fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(i)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(j)     The unlawful, fraudulent, deceptive, and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supracompetitive and artificially-inflated prices for Occupant Safety Restraint Systems (or Trucks and Equipment containing them).  Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.

Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

270. Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

(a) Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Florida; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems; and (5) Reasonable purchasers in Florida were deceived into believing that they were paying competitive prices for their Trucks and Equipment and Occupant Safety Restraint Systems.

(b) During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      Defendants have engaged in unfair competition or unlawful, unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.,* and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

271.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*

(a)      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)      Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Occupant Safety Restraint Systems.  Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price.  Moreover, Plaintiffs lacked any meaningful choice in purchasing Occupant Safety Restraint Systems because they were unaware of the unlawful overcharge and because they had to purchase Occupant Safety Restraint Systems in order to be able to operate their Trucks and Equipment.  Defendants' conduct with regard to sales of Occupant Safety Restraint Systems, including their illegal conspiracy to secretly fix the price of Occupant Safety Restraint Systems at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public.  Defendants took grossly unfair advantage of Plaintiffs.

Case 2:12-cv-00602-SFC-RSW ECF No. 170-3, PageID.4129 Filed 06/30/19 Page 239 of 279
Case 17-11375-BLS   Doc 3489-7   Filed 11/27/18   Page 96 of 103

2:15-cv-12050-VAR-APP   Doc # 1   Filed 06/05/15   Pg 92 of 103   Pg ID 92

(c)      The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices," in violation of N.M.S.A.§ 57-12-3, in that such conduct, *inter alia,* resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Occupant Safety Restraint Systems as set forth in N.M.S.A. § 57-12-2E, due to the inflated prices paid by Plaintiffs and Class members for vehicles and Occupant Safety Restraint Systems.

(d)      Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(e)      During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(f)      As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiffs and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(g)      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.,* and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

Case 2:12-cv-00602-SFC-RSW ECF No. 170-3 PageID.4120 Filed 06/20/19 Page 240 of 279
Case 2:17-11375-BLS Doc 3489-7 Filed 11/27/18 Page 97 of 103

2:15-cv-12050-VAR-APP   Doc # 1   Filed 06/05/15   Pg 93 of 103   Pg ID 93

272.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq*.

(a)   Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)   Defendants deceptively led purchasers, such as Plaintiffs and Class members, to believe that the Occupant Safety Restraint Systems they had purchased as replacements and inside Trucks and Equipment had been sold at legal competitive prices, when they had in fact been sold at collusively obtained inflated prices, that were passed on to them.

(c)   The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in injuries to purchasers and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)   Because of Defendants' unlawful trade practices in the State of New York, New York purchasers who indirectly purchased Occupant Safety Restraint Systems were misled to believe that they were paying a fair price for Occupant Safety Restraint Systems or the price increases for Occupant Safety Restraint Systems were for valid business reasons; and similarly situated purchasers were potentially affected by Defendants' conspiracy.

(e)   Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout New

Case 2:12-cv-02602-SFC-RSW ECF No. 3180-3 PageID.4124 Filed 06/30/19 Page 241 of 279
Case 2:17-11375-BLS Doc 3489-7 Filed 11/27/18 Page 98 of 103

2:15-cv-12050-VAR-APP   Doc # 1   Filed 06/05/15   Pg 94 of 103   Pg ID 94

York; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class, who resided in and/or made purchases of Trucks and Equipment or Occupant Safety Restraint Systems in New York, were deprived of free and open competition and were subject to Defendants' deceptive practices in New York; and (4) Plaintiffs and members of the Damages Class, who resided in and/or made purchases of Trucks and Equipment and Occupant Safety Restraint Systems in New York, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems, and were subjected to Defendants' deceptive practices.

(f)     Defendants knew that their unlawful trade practices with respect to pricing Occupant Safety Restraint Systems would have an impact on all purchasers in New York and not just the Defendants' direct customers.

(g)     Defendants knew that their unlawful trade practices with respect to pricing Occupant Safety Restraint Systems would have a broad impact, causing class members who indirectly purchased Occupant Safety Restraint Systems to be injured by paying more for Occupant Safety Restraint Systems than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(h)     During the Class Period, Defendants marketed, sold, or distributed Occupant Safety Restraint Systems in New York and their illegal conduct substantially affected New York commerce and New York purchasers.

(i)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled manufactured, sold, and/or distributed Occupant Safety Restraint Systems in New York.

(j)      Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349(h).

273.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

(a)      Defendants agree to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)      The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in injuries to purchasers of Occupant Safety Restraint Systems and Trucks and Equipment, and broad adverse impact on the public at large, and harmed the public interest of North Carolina purchasers in an honest marketplace in which economic activity is conducted in a competitive manner.

(c)      Defendants' unlawful conduct had the following effects upon purchasers of Occupant Safety Restraint Systems in North Carolina: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class, including those who resided in North Carolina and/or purchased Occupant Safety Restraint Systems or Trucks and Equipment in North Carolina, were deprived of free and open competition including in North Carolina; and (4) Plaintiffs and members of the Damages Class,

Case 2:12-cv-00601-SRC-RSW-LSC ECF No. 430-3, PageID.4332-8 Filed 06/26/18 Page 243 of 279
Case 2:11-cv-11375-BLS Doc #489-2 Filed 11/27/18 Page 160 of 109

2:15-cv-12050-VAR-APP   Doc # 1   Filed 06/05/15   Pg 96 of 103   Pg ID 96

including those who resided in North Carolina and/or purchased Occupant Safety Restraint Systems or Trucks and Equipment in North Carolina, paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems including in North Carolina.

(d)     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and purchasers of Occupant Safety Restraint Systems and Trucks and Equipment. Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. Moreover, Defendants deceptively concealed their unlawful activities by conducting meetings and conversations in secret.

(e)     During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, marketed, sold and/or distributed Occupant Safety Restraint Systems in North Carolina.

(f)     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.* and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

274.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Code Ann. §§ 39-5-10, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Occupant Safety Restraint Systems and vehicles containing Occupant Safety Restraint Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

275.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Occupant Safety Restraint Systems were sold, distributed, or obtained in Vermont.

(b)     Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices

Case 2:12-cv-00601-SFC-RSW-ECF-No.-470-2, PageID.4135 Filed 06/20/18 Page 245 of 279
Case 2:17-11375-BLS Doc 3489-2 Filed 11/27/18 Page 102 of 109

2:15-cv-12050-VAR-APP   Doc # 1   Filed 06/05/15   Pg 98 of 103   Pg ID 98

for Occupant Safety Restraint Systems. Defendants owed a duty to disclose such facts, and Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' Occupant Safety Restraint Systems prices were competitive and fair.

(c)      Defendants' unlawful conduct had the following effects: (1) Occupant Safety Restraint Systems price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Occupant Safety Restraint Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Occupant Safety Restraint Systems and Trucks and Equipment containing Occupant Safety Restraint Systems.

(d)      As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(e)      Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Occupant Safety Restraint Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Occupant Safety Restraint Systems at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitute unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

Case 2:12-cv-00601-SEC-RSW-LECF No. 170-2 Page ID 1376 Filed 06/26/18 Page 246 of 279
Case 1:7-11375-BLS Doc 3489-2 Filed 11/27/18 Page 208 of 109

2:15-cv-12050-VAR-APP   Doc # 1   Filed 06/05/15   Pg 99 of 103   Pg ID 99

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment
### on behalf of Plaintiffs and the Damages Class

276.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

277.    Plaintiffs bring this claim under the laws of all states listed in the Second and

Third Claims, *supra,* except California.  Plaintiffs also bring this claim under the laws of

Missouri, Illinois, Massachusetts, South Carolina, and Tennessee on behalf of the Plaintiffs who

have their primary places of business in those states and the class members in those states.

278.    As a result of their unlawful conduct described above, Defendants have and will

continue to be unjustly enriched.  Defendants have been unjustly enriched by the receipt of, at a

minimum, unlawfully inflated prices and unlawful profits on sales of Occupant Safety Restraint

Systems.

279.    Defendants have benefited from their unlawful acts and it would be inequitable

for Defendants to be permitted to retain any of the ill-gotten gains resulting from the

overpayments made by Plaintiffs or the members of the Damages Class for Occupant Safety

Restraint Systems.

280.    Plaintiffs and the members of the Damages Class are entitled to the amount of

Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct.

Plaintiffs and the members of the Damages Class are entitled to the establishment of a

constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the

Damages Class may make claims on a pro rata basis.

281.    Pursuit of any remedies against the firms from whom Plaintiffs and the Class

members purchased Trucks and Equipment containing Occupant Safety Restraint Systems and

Case 2:12-cv-00601-SFC-RSW ECF No. 170-3, PageID.4137-3 Filed 06/20/19 Page 247 of 279
Case 1:11-13FS-BLS Doc 3489-3 Filed 11/27/18 Page 104 of 109

2:15-cv-12050-VAR-APP   Doc # 1   Filed 06/05/15   Pg 100 of 103   Pg ID 100

Occupant Safety Restraint Systems subject to Defendants' conspiracy would have been futile, given that those firms did not take part in Defendants' conspiracy.

### PRAYER FOR RELIEF

Accordingly, Plaintiffs respectfully request that:

A.      The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

B.      The unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)      An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)      A *per se* violation of Section 1 of the Sherman Act;

(c)      An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; and

(d)      Acts of unjust enrichment by Defendants as set forth herein.

C.      Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

D.      Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

Case 2:12-cv-00601-SRB-RSW ECF No. 170-3, PageID.1438 Filed 06/26/18 Page 248 of 279
Case 4:11375-BLS Doc 3489-3 Filed 11/27/18 Page 105 of 109

2:15-cv-12050-VAR-APP   Doc # 1   Filed 06/05/15   Pg 101 of 103   Pg ID 101

E.      Defendants, their affiliates, successors, transferees, assignees and other officers,

directors, partners, agents, and employees thereof, and all other persons acting or claiming to act

on their behalf or in concert with them, be permanently enjoined and restrained from in any

manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination

alleged herein, or from entering into any other contract, conspiracy, or combination having a

similar purpose or effect, and from adopting or following any practice, plan, program, or device

having a similar purpose or effect;

F.      Plaintiffs and the members of the Damages Class be awarded restitution,

including disgorgement of profits Defendants obtained as a result of their acts of unfair

competition and acts of unjust enrichment;

G.      Plaintiffs and the members of the Classes be awarded pre- and post- judgment

interest as provided by law, and that such interest be awarded at the highest legal rate from and

after the date of service of this Complaint;

H.      Plaintiffs and the members of the Classes recover their costs of suit, including

reasonable attorneys' fees, as provided by law; and

I.      Plaintiffs and members of the Classes have such other and further relief as the

case may require and the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs hereby demand trial by jury.

Dated: June 5, 2015

                                        /s/ J. Manly Parks
                                        Wayne A. Mack
                                        J. Manly Parks
                                        **Duane Morris LLP**
                                        30 S. 17th Street

Philadelphia, PA  19103
Phone: (215) 979-1000
Fax: (215) 979-1020
wamack@duanemorris.com
jmparks@duanemorris.com

*Counsel for Truck and Equipment Dealer
Plaintiffs*

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
TAIWAN
BOSTON
HOUSTON
AUSTIN
HANOI
HO CHI MINH CITY

# DuaneMorris®

*FIRM and AFFILIATE OFFICES*

CATHERINE BEIDEMAN HEITZENRATER
DIRECT DIAL: +1 215 979 7342
PERSONAL FAX: +1 215 827 5490
*E-MAIL:* CHeitzenrater@duanemorris.com

*www.duanemorris.com*

SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR
OMAN
*A GCC REPRESENTATIVE OFFICE*
*OF DUANE MORRIS*

ALLIANCES IN MEXICO
AND SRI LANKA

October 19, 2017

## *VIA FEDERAL EXPRESS*

TK Holdings Inc.
Claims Processing Center c/o Prime Clerk, LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

     **Re:**    **TK Holdings, Inc., Case No. 17-11375**

Dear Sir or Madam:

      Enclosed for filing please find an original and one (1) copy of the Proof of Claim of Rush Truck Centers of Arizona, Inc., *et al.*, and those similarly situated (the "Claim"). Please file the Claim in the above-referenced bankruptcy case. Kindly acknowledge your receipt of the Claim by returning a stamped copy in the enclosed return Federal Express envelope.

      Please feel free to contact me with any questions. Thank you for your attention to this matter.

      Very truly yours,

      Catherine Beideman Heitzenrater

CBH/kc
Enclosures

10/19/2017

ORIGIN ID:REDA    (215) 979-1000
CATHERINE HEITZENRATER
DUANE MORRIS LLP
30 SOUTH 17TH STREET

PHILADELPHIA, PA 19103
UNITED STATES US

SHIP DATE: 19OCT17
ACTWGT: 1.00 LB
CAD: 103436539/WSXI2750

BILL SENDER

TO TK HOLDINGS INC. CLAIMS PROCESSING
C/O PRIME CLERK, LLC
850 3RD AVE, SUITE 412

BROOKLYN NY 11232
(215) 979-1536    REF: G15/490003
INV
PO               DEPT

549J494FFC1O4C



FedEx
Express

FRI - 20 OCT 10:30A
PRIORITY OVERNIGHT

TRK#
0201    7881 3500 3254

11232
NY-US EWR

E2 FBTA



RECEIVED

OCT 20 2017

PRIME CLERK LLC

PS|Ship - FedEx Label

— FOLD on this line and place in shipping pouch with bar code and delivery address visible —

1. Fold the first printed page in half and use as the shipping label.
2. Place the label in a waybill pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.
3. Keep the second page as a receipt for your records. The receipt contains the terms and conditions of shipping and information useful for tracking your package.

*Legal Terms and Conditions*
Tendering packages by using this system constitutes your agreement to the service conditions for the transportation of your shipments as found in the applicable FedEx Service Guide, available upon request. FedEx will not be responsible for any claim in excess of the applicable declared value, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the applicable FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 USD or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500 USD, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see applicable FedEx Service Guide. FedEx will not be liable for loss or damage to prohibited items in any event or for your acts or omissions, including improper or insufficient packaging, securing, marking or addressing, or the acts or omissions of the recipient or anyone else with an interest in the package. See the applicable FedEx Service Guide for complete terms and conditions. To obtain information regarding how to file a claim or to obtain a Service Guide, please call 1-800-GO-FEDEX (1-800-463-3339).

https://cloud.psship.com/index.php

# EXHIBIT E

**United States Bankruptcy Court, District of Delaware**

| Fill in this information to identify the case (Select only one Debtor per claim form): |
|---|

| | | |
|---|---|---|
| [x] TK Holdings Inc. (Case No. 17-11375) | [ ] Takata Protection Systems Inc. (Case No. 17-11376) | [ ] TK Holdings de Mexico S. de R.L. de C.V. (Case No. 17-11380) |
| [ ] Takata Americas (Case No. 17-11372) | [ ] Interiors in Flight Inc. (Case No. 17-11377) | [ ] Industrias Irvin de Mexico, S.A. de C.V. (Case No. 17-11381) |
| [ ] TK Finance, LLC (Case No. 17-11373) | [ ] TK Mexico Inc. (Case No. 17-11378) | [ ] Takata de Mexico, S.A. de C.V. (Case No. 17-11382) |
| [ ] TK China, LLC (Case No. 17-11374) | [ ] TK Mexico LLC (Case No. 17-11379) | [ ] Strosshe-Mex, S. de R.L. de C.V. (Case No. 17-11383) |

## Form 410

# Proof of Claim                                                                                    4/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

| | |
|---|---|
| 1. Who is the current creditor? | Auto Dealer Claimants (See Attached Exhibit A) <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | [✓] No <br> [ ] Yes. From whom? _____ |
| 3. Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** <br><br> Jordan B. Segal <br> Mantese Honigman, P.C. <br> 1351 E Big Beaver Rd <br> Troy, Michigan 48083 <br><br> Contact phone  248 457 9200 <br> Contact email  jsegal@manteselaw.com | **Where should payments to the creditor be sent?** (if different) <br><br><br> Contact phone _____ <br> Contact email _____ |
| 4. Does this claim amend one already filed? | [ ] No <br> [✓] Yes. Claim number on court claims registry (if known) _____ <br><br> Filed on 11/27/2017  MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | [✓] No <br> [ ] Yes. Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ Unknown_____ . **Does this amount include interest or other charges?**

☐ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Antitrust Class Action_____

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | **Amount entitled to priority** |
|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Yes. *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).     $_____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).     $_____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).     $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).     $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).     $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.     $_____

*\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.*

| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☑ No | |
|---|---|---|

☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.     $_____

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Jordan B. Segal*
Jordan B. Segal (Nov 27, 2017)

**Email:** jsegal@manteselaw.com

**Name of the person who is completing and signing this claim:**

| Name | Jordan Benjamin Segal |
|---|---|
| | First name     Middle name     Last name |
| Title | Attorney |
| Company | Mantese Honigman, P.C. |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 1361 E. Big Beaver Rd |
| | Number     Street |
| | Troy               Mi     48083 |
| | City               State     ZIP Code |
| Contact phone | 248 457 9200     Email     jsegal@manteselaw.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

[x] I have supporting documentation.
   (attach below)

[ ] I do not have supporting documentation.

Attachment

PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.

IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

Official Form 410

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                    12/15

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

---

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.

---

## How to fill out this form

- Fill in all of the information about the claim as of the date the case was filed.

- Fill in the caption at the top of the form.

- If the claim has been acquired from someone else, then state the identity of the last party who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- Attach any supporting documents to this form.
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- Do not attach original documents because attachments may be destroyed after scanning.

- If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.

- A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth. See Bankruptcy Rule 9037.

- For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian. For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at http://www.TKRestructuring.com.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate.
11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy.
11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

TK Holdings Inc. Claims Processing Center
c/o Prime Clerk LLC
830 3rd Avenue, 3rd Floor
New York, NY 10022

**Do not file these instructions with your form**

EXHIBIT A

TO

AMENDED PROOF OF CLAIM FILED BY AUTO DEALER CLAIMANTS

This claim is filed on behalf of:

Landers Auto Group No. 1, Inc., d/b/a Landers Toyota ("Plaintiff Landers"); Empire Nissan of Santa Rosa, LLC ("Plaintiff Empire Nissan"); V.I.P. Motor Cars Ltd. ("Plaintiff V.I.P."); Lee Pontiac-Oldsmobile-GMC Truck, Inc. ("Plaintiff Lee"); Panama City Automotive Group, Inc. d/b/a John Lee Nissan ("Plaintiff John Lee"); McGrath Automotive Group, Inc. ("Plaintiff McGrath"); Green Team of Clay Center Inc. ("Plaintiff Green Team"); Lee Auto Malls-Topsham, Inc. d/b/a Lee Toyota of Topsham ("Plaintiff Topsham"); Lee Oldsmobile-Cadillac, Inc. d/b/a Lee Honda ("Plaintiff Lee Honda"); Commonwealth Volkswagen, Inc., d/b/a Commonwealth Volkswagen ("Plaintiff Commonwealth Volkswagen"); Hodges Imported Cars, Inc. d/b/a Hodges Subaru ("Plaintiff Hodges"); Patsy Lou Chevrolet, Inc. ("Plaintiff Patsy Lou"); Superstore Automotive, Inc. ("Plaintiff Superstore"); Cannon Nissan of Jackson, LLC ("Plaintiff Cannon Nissan"); Hammett Motor Company, Inc. ("Plaintiff Hammett"); John O'Neil Johnson Toyota, LLC ("Plaintiff Johnson"); Ancona Enterprise, Inc. d/b/a Frank Ancona Honda ("Plaintiff Ancona"); Landers McLarty Lee's Summit Mo, LLC d/b/a Lee's Summit Chrysler Dodge Jeep Ram and d/b/a Lee's Summit Nissan ("Plaintiff Lee's Summit"); Archer-Perdue, Inc., d/b/a/ Archer-Perdue Suzuki ("Plaintiff Archer-Perdue"); Table Rock Automotive, Inc., d/b/a Todd Archer Hyundai ("Plaintiff Table Rock"); Bill Pearce Honda ("Plaintiff Pearce"); Reno Dodge Sales, Inc. d/b/a Don Weir's Reno Dodge ("Plaintiff Don Weir"); Pitre, Inc., d/b/a/ Pitre Buick GMC ("Plaintiff Pitre"); Hartley Buick GMC Truck, Inc. ("Plaintiff Hartley"); Westfield Dodge City, Inc. ("Plaintiff Westfield"); John Greene Chrysler Dodge Jeep, LLC ("Plaintiff John Greene"); Herb Hallman Chevrolet, Inc., d/b/a/ Champion Chevrolet ("Plaintiff Champion"); Capitol Chevrolet Cadillac, Inc. ("Plaintiff Capitol Chevrolet"); Capitol Dealerships, Inc., d/b/a Capitol Toyota ("Plaintiff Capitol Toyota"); Landers McLarty Fayetteville TN, LLC ("Plaintiff Fayetteville"); Central Salt Lake Valley GMC Enterprises, LLC, d/b/a Salt Lake Valley Buick GMC ("Plaintiff Salt Lake Valley"); Stranger Investments d/b/a Stephen Wade Toyota ("Plaintiff Wade"); Apex Motor Corporation ("Plaintiff Apex"); Shearer Automotive Enterprises III, Inc. ("Plaintiff Shearer"); Ramey Motors, Inc. ("Plaintiff Ramey"); Thornhill Superstore, Inc., d/b/a Thornhill GM Superstore ("Plaintiff Thornhill"); and Dave Heather Corporation, d/b/a Lakeland Toyota Honda Mazda Subaru ("Plaintiff Lakeland"), Rainbow Chevrolet, Inc. ("Plaintiff Rainbow"), Stoebner Holdings, Inc. ("Plaintiff Stoebner") and all other similarly situated.

Claimants reserve the right to amend this claim or seek estimation pursuant to applicable bankruptcy law.



# Electronic Proof of Claim

Adobe Sign Document History                                    11/27/2017

| | |
|---|---|
| Created: | 11/27/2017 |
| By: | TK Claims (tkclaims@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAeJQaOblDW9ltM-qQRrHLGwNqRKspANDG |

## "Electronic Proof of Claim" History

Widget created by TK Claims (tkclaims@primeclerk.com)
11/27/2017 - 3:48:34 PM EST

Jordan B. Segal (jsegal@manteselaw.com) uploaded the following supporting documents:
Attachment
11/27/2017 - 3:54:51 PM EST

Widget filled in by Jordan B. Segal (jsegal@manteselaw.com)
11/27/2017 - 3:54:51 PM EST- IP address: 173.162.47.85

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 6.1; WOW64; Trident/7.0; rv:11.0) like Gecko)
11/27/2017 - 3:54:53 PM EST- IP address: 173.162.47.85

Signed document emailed to Jordan B. Segal (jsegal@manteselaw.com) and TK Claims (tkclaims@primeclerk.com)
11/27/2017 - 3:54:53 PM EST

Prime Clerk      POWERED BY Adobe Sign

# EXHIBIT F

**United States Bankruptcy Court, District of Delaware**

Fill in this information to identify the case (Select only one Debtor per claim form):

- [x] TK Holdings Inc. (Case No. 17-11375)
- [ ] Takata Protection Systems Inc. (Case No. 17-11376)
- [ ] TK Holdings de Mexico S. de R.L. de C.V. (Case No. 17-11380)
- [ ] Takata Americas (Case No. 17-11372)
- [ ] Interiors in Flight Inc. (Case No. 17-11377)
- [ ] Industrias Irvin de Mexico, S.A. de C.V. (Case No. 17-11381)
- [ ] TK Finance, LLC (Case No. 17-11373)
- [ ] TK Mexico Inc. (Case No. 17-11378)
- [ ] Takata de Mexico, S.A. de C.V. (Case No. 17-11382)
- [ ] TK China, LLC (Case No. 17-11374)
- [ ] TK Mexico LLC (Case No. 17-11379)
- [ ] Strosshe-Mex, S. de R.L. de C.V. (Case No. 17-11383)

Form 410

# Proof of Claim

4/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

**Part 1:  Identify the Claim**

| | |
|---|---|
| 1. Who is the current creditor? | End-Payor Plaintiffs in In re Occupant Safety Systems, Case No. 2:12-cv-00603 (ED Mich.)<br>Name of the current creditor (the person or entity to be paid for this claim)<br>Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | [x] No<br>[ ] Yes. From whom? _____ |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent?<br><br>Robin Kaplan LLP<br>Attn: Hollis Salzman<br>399 Park Avenue, 36th Floor<br>New York, NY 10022<br><br>Contact phone (212) 980-7400<br>Contact email hsalzman@robinskaplan.com | Where should payments to the creditor be sent? (if different)<br><br>Contact phone _____<br>Contact email _____ |
| 4. Does this claim amend one already filed? | [x] No<br>[ ] Yes. Claim number on court claims registry (if known)_____ Filed on __/__/____ MM/DD/YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | [x] No<br>[ ] Yes. Who made the earlier filing? _____ |

Claim Number: 3611          Proof of Claim          page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ ___Amount is currently unknown and unliquidated___ . **Does this amount include interest or other charges?**

☐ No

☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

### Violation of antitrust and consumer protection laws

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| | |
|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No ☐ Yes. *Check one:* |

|  | **Amount entitled to priority** |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

| | |
|---|---|
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☑ No ☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.  $_____ |

---

| **Part 3:** | **Sign Below** |
|---|---|

| | |
|---|---|
| The person completing this proof of claim must sign and date it. FRBP 9011(b). If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. | *Check the appropriate box:* ☐ I am the creditor. ☑ I am the creditor's attorney or authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt. I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct. I declare under penalty of perjury that the foregoing is true and correct. Signature: *Hollis Salzman* Hollis Salzman (Nov 27, 2017) Email: hsalzman@robinskaplan.com |

Name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Hollis Salzman |
| | First name                Middle name                Last name |
| Title | Interim Co=Lead Counsel for the End-Payor Plaintiffs |
| Company | Robins Kaplan LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 399 Park Avenue, 36th Floor |
| | Number        Street |
| | New York                        NY        10022 |
| | City                        State        ZIP Code |
| Contact phone | (212) 980-7400     Email   hsalzman@robinskaplan.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
   (attach below)

☐ I do **not** have supporting documentation.

Attachment

PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.

IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.

## Official Form 410

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                12/15

These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.

> A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- Fill in all of the information about the claim as of the date the case was filed.

- Fill in the caption at the top of the form.

- If the claim has been acquired from someone else, then state the identity of the last party who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- Attach any supporting documents to this form.
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- Do not attach original documents because attachments may be destroyed after scanning.

- If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.

- A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth. See Bankruptcy Rule 9037.

- For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian. For example, write *A.B., a minor child (John Doe, parent, 123 Main St., City, State)*. See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at http://www.TKRestructuring.com.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

TK Holdings Inc. Claims Processing Center
c/o Prime Clerk LLC
830 3rd Avenue, 3rd Floor
New York, NY 10022

---

## Do not file these instructions with your form

## ATTACHMENT TO PROOF OF CLAIM

This proof of claim is filed by Kimberly Bennett, Rebecca Lynn Morrow, Erica J. Shoaf, Tom Halverson, Sophie O'Keefe-Zelman, Melissa Barron, Meetesh Shah, Elizabeth Kaufmann, Keith Uehara, Jennifer Chase, Darrel Senior, James E. Marean, Ron Blau, Roger D. Olson, Darcy C. Sherman, David Bernstein, Theresia Dillard, Robert P. Klingler, Jessica DeCastro, Lori Curtis, Dori Gilels, Nathan Croom, Gregory Asken, Edward T. Muscara, Michael Wick, Tenisha Burgos, Jason Grala, Kathleen A. Tawney, Kent Busek, Curtis Harr, Cindy Prince, Frances H. Gammell-Roach, Andrew Hedlund, William Dale Picotte, Phillip G. Young, Rita Cornish, Alena Farrell, Jane FitzGerald, Arthur Stukey, Janne Rice, Robert M. Rice, Jr., Stacey R. Nickell, and Carol Ann Kashishian, Halley Ascher, Whitney Porter, and Carroll Gibbs, on behalf of themselves and all others similarly situated (the "End-Payor Plaintiffs").

The End-Payor Plaintiffs are indirect purchasers of new vehicles not for resale containing certain automotive parts manufactured or sold by TK Holdings, Inc. ("Takata") and its co-conspirators. In 2012, the End-Payor Plaintiffs filed a class action lawsuit in the Eastern District of Michigan, Case No. 2:12-cv-00603. The class action alleges that Takata and its co-conspirators engaged in an unlawful conspiracy to fix prices, rig bids, and allocate markets for occupant safety systems causing the End-Payor Plaintiffs to overpay for their vehicles. The End-Payor Plaintiffs assert a federal claim for injunctive relief and damages claims under the antitrust, consumer protection and unjust enrichment laws of 30 states and the District of Columbia. The amount of damages sought is currently unliquidated. The operative complaint is attached as Exhibit A.

Robins Kaplan LLP, Cotchett, Pitre & McCarthy, LLP, and Susman Godfrey L.L.P., are the appointed Interim Co-Lead Class Counsel for the End-Payor Plaintiffs. In such capacity, Robins Kaplan LLP is authorized to file this proof of claim on behalf of the End-Payor Plaintiffs. A copy of the *Order Granting End-Payor Plaintiffs' Application For Appointment Of Interim Co-Lead Class Counsel And Liaison Counsel* is attached as Exhibit B, and a copy of *The Order Substituting End-Payor Plaintiffs Interim Co-Lead Class Counsel* is attached as Exhibit C.

The End-Payor Plaintiffs reserve the right to amend or supplement this proof of claim at any time and in any respect for any reason.

# EXHIBIT A

Case 2:12-cv-00603-SFC-RSW ECF No. 170-3 PageID.4167 Filed 06/29/18 Page 271 of 279
Case 17-11873-BLS Doc 3489-3 Filed 11/27/18 Page 20 of 18

2:12-cv-00603-MOB-MKM Doc # 181 Filed 03/30/17 Pg 1 of 104 Pg ID 6048

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 |
| | H: 12-cv-00603-MOB-MKM |
| PRODUCT(S): | |
| OCCUPANT SAFETY RESTRAINT SYSTEMS | THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT |
| This Document Relates to: | |
| ALL END-PAYOR ACTIONS | JURY TRIAL DEMANDED |

Because the Complaint exceeds the number of pages permitted to be attached to the Proof of Claim, all pages other than the cover page of the Complaint have been omitted. A copy of the Complaint may be obtained by sending an email to David Shemano, Esq. at dshemano@robinskaplan.com.

# EXHIBIT B

**UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

IN RE: AUTOMOTIVE WIRE HARNESS
SYSTEMS ANTITRUST LITIGATION

MDL No. 2311

CASE NO. 12-md-02311

HON. MARIANNE O. BATTANI

_____/

**ORDER GRANTING END-PAYOR PLAINTIFFS' APPLICATION FOR
APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL AND LIAISON COUNSEL**

THIS CAUSE came before the Court on End-Payor Plaintiffs' Application to Appoint Interim Co-Lead Class Counsel and Liaison Counsel, filed March 8, 2012 (the "Leadership Application"). The Court, having reviewed the Leadership Application, all papers submitted in support of the Leadership Application, the arguments of counsel, and the record in this case, hereby ORDERS AND ADJUDGES as follows:

1. Pursuant to Fed. R. Civ. P. 23(g), the Court hereby appoints Labaton Sucharow LLP, Susman Godfrey LLP and Cotchett, Pitre & McCarthy LLP to serve as Interim Co-Lead Class Counsel for end-payor purchasers of wire harnesses and related products ("End-Payor Interim Class Counsel") in this antitrust class action.

2. The Court further appoints The Miller Law Firm, P.C. to serve as Interim Liaison Counsel for end-payor purchasers of wire harnesses and related products ("End-Payor Interim Liaison Counsel") in this antitrust class action.

3. End-Payor Interim Class Counsel shall have the following responsibilities:

(a) To brief and argue motions and file opposing briefs in proceedings initiated by other parties;

(b) To initiate and conduct discovery proceedings;

(c) To act as spokesperson at pretrial conferences;

(d) To negotiate with defense counsel with respect to settlement and other matters;

(e) To call meetings of plaintiffs' counsel where appropriate;

(f) To make all work assignments to plaintiffs' counsel to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort;

(g) To conduct trial and post-trial proceedings;

(h) To consult with and employ experts;

(i) To coordinate the filing of a joint fee petition by plaintiffs' counsel and to allocate any fees awarded by the court among plaintiffs' counsel;

(j) To perform such other duties and undertake such other responsibilities as they deem necessary or desirable; and

(k) To coordinate and communicate with defendants' counsel with respect to matters addressed in this paragraph.

4. No motion, request for discovery, or other pretrial proceeding shall be initiated or filed by any end-payor plaintiff except through End-Payor Interim Class Counsel, or by leave of the Court.

5. No settlement negotiation shall be initiated or settlement agreement entered into on behalf of the proposed End-Payor Classes except through End-Payor Interim Class Counsel.

6. End-Payor Interim Class Counsel, or their designees, shall be the contact between end-payor plaintiffs' counsel and defendants' counsel as well as the

2

Case 2:12-cv-06602-SFC-RSW ECF No. 170-3 PageID.4465 Filed 06/20/18 Page 276 of 279
Case 17-11873-BLS Doc 3489-3 Filed 11/27/18 Page 15 of 18
2:12-md-02311-MOB Doc # 65 Filed 03/23/12 Pg 3 of 3 Pg ID 735

spokespersons for the endpayor plaintiffs' counsel and shall direct and coordinate the activities of end-payor plaintiffs' counsel. End-Payor Interim Class Counsel shall also be responsible for communicating with the Court to coordinate the conduct of the litigation. End-Payor Interim Class Counsel are designated as the contact persons for plaintiffs' counsel and as the attorneys of record for the end-payor plaintiffs with whom the Court will be dealing throughout the course of this litigation.

7. End-Payor Interim Liaison Counsel shall be responsible for facilitating and expediting communications among End-Payor Interim Class Counsel and the Court.

**IT IS SO ORDERED**.

<div style="text-align:center">

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

</div>

DATE:  March 23, 2012

<div style="text-align:center">

CERTIFICATE OF SERVICE

</div>

I hereby certify that on the above date a copy of this Order was served upon all Counsel of record, electronically via the Court's ECF Filing System.

<div style="text-align:center">

s/Bernadette M. Thebolt
Case Manager

</div>

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | 12-md-2311 |
| | Honorable Marianne O. Battani |
| ALL PARTS | |
| THIS DOCUMENT RELATES TO: ALL CASES | |

## ORDER SUBSTITUTING END-PAYOR PLAINTIFFS INTERIM CO-LEAD CLASS COUNSEL

Upon consent of Labaton Sucharow LLP, Interim Co-Lead Class Counsel for End-Payor

Plaintiffs, and Interim Liaison Class Counsel for End-Payor Plaintiffs:

(1) Paragraph 1 of the Court's March 23, 2012 Order Granting End-Payor Plaintiffs'

Application for Appointment of Interim Co-Lead Class Counsel and Liaison Counsel (Dkt. No.

65) is amended as follows:

> Pursuant to Fed. R. Civ. P. 23(g), the Court hereby appoints Robins, Kaplan, Miller & Ciresi L.L.P., Susman Godfrey LLP and Cotchett, Pitre & McCarthy LLP to serve as Interim Co-Lead Counsel for end-payor purchasers of wire harnesses and related products ("End-Payor Interim Class Counsel") in this antitrust class action.

> (2) Paragraph 1 of Case Management Order No. 3 dated August 7, 2012 (Dkt. No. 271) is amended as follows:

> The Court finds good cause that Interim Lead Counsel and Interim Liaison Counsel, previously appointed (Docket Nos. 60, 64, 65, as amended herein), shall continue as Interim Lead Counsel and Interim Liaison Counsel for all cases related to, filed in or transferred to this Court in MDL No. 2311.

Dated: February 12, 2013

SO ORDERED:

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE



# Electronic Proof of Claim

Adobe Sign Document History                                   11/27/2017

| | |
|---|---|
| Created: | 11/27/2017 |
| By: | TK Claims (tkclaims@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAngX_JO9VrgrX4MZ27Oyrxyh9aB9t5lLU |

## "Electronic Proof of Claim" History

Widget created by TK Claims (tkclaims@primeclerk.com)
11/27/2017 - 6:44:21 PM EST

Hollis Salzman (hsalzman@robinskaplan.com) uploaded the following supporting documents:
Attachment
11/27/2017 - 7:05:58 PM EST

Widget filled in by Hollis Salzman (hsalzman@robinskaplan.com)
11/27/2017 - 7:05:58 PM EST- IP address: 38.142.44.50

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; WOW64; Trident/7.0; rv:11.0) like Gecko)
11/27/2017 - 7:06:00 PM EST- IP address: 38.142.44.50

Signed document emailed to TK Claims (tkclaims@primeclerk.com) and Hollis Salzman (hsalzman@robinskaplan.com)
11/27/2017 - 7:06:00 PM EST

Prime Clerk    POWERED BY
Adobe Sign