**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE: AUTOMOTIVE PARTS | : | |
| ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| | : | |
| PRODUCT(S): | : | |
| | : | |
| In Re: Instrument Panel Clusters | : | 2:12-cv-00202 |
| In Re: Heater Control Panels | : | 2:12-cv-00402 |
| In Re: Bearings | : | 2:12-cv-00502 |
| In Re: Occupant Safety Restraint Systems | : | 2:12-cv-00602 |
| In Re: Radiators | : | 2:13-cv-01002 |
| In Re: Automotive Lamps | : | 2:13-cv-01202 |
| In Re: Switches | : | 2:13-cv-01302 |
| In Re: Ignition Coils | : | 2:13-cv-01402 |
| In Re: Steering Angle Sensors | : | 2:13-cv-01602 |
| In Re: Hid Ballasts | : | 2:13-cv-01702 |
| In Re: Electric Powered Steering Assemblies | : | 2:13-cv-01902 |
| In Re: Fuel Injection Systems | : | 2:13-cv-02202 |
| In Re: Automatic Transmission Fluid Warmers | : | 2:13-cv-02402 |
| In Re: Valve Timing Control Devices | : | 2:13-cv-02502 |
| In Re: Air Conditioning Systems | : | 2:13-cv-02702 |
| In Re: Constant Velocity Joint Boot Products | : | 2:14-cv-02902 |
| In Re: Spark Plugs | : | 2:15-cv-03002 |
| In Re: Automotive Hoses | : | 2:15-cv-03202 |
| In Re: Shock Absorbers | : | 2:16-cv-03302 |
| In Re: Body Sealing Products | : | 2:16-cv-03402 |
| In Re: Interior Trim Products | : | 2:16-cv-03502 |
| In Re: Brake Hoses | : | 2:16-cv-03602 |
| In Re: Exhaust Systems | : | 2:16-cv-03702 |
| In Re: Ceramic Substrates | : | 2:16-cv-03802 |
| In Re: Power Window Switches | : | 2:16-cv-03902 |
| In Re: Automotive Steel Tubes | : | 2:16-cv-04002 |
| In Re: Access Mechanisms | : | 2:16-cv-04102 |
| In Re: Side Door Latches | : | 2:17-cv-04302 |
| | : | |
| This Document Relates to: | : | Hon. Marianne O. Battani |
| ALL DEALERSHIP ACTIONS | : | |
| | : | |

**ORDER GRANTING FINAL APPROVAL TO
AUTO DEALER SETTLEMENTS (ROUND FOUR) WITH
CERTAIN DEFENDANTS
AND CERTIFYING SETTLEMENT CLASSES**

These matters came before the Court on the Auto Dealers' Motion for Final Approval of Settlements (Round Four) with Certain Defendants and for Certification of Settlement Classes.

1.    The Court previously entered orders granting preliminary approval to settlements (the "Settlements") entered into between the Auto Dealer Plaintiffs and certain Defendants and related entities (the "Settling Defendants").

2.    The Court granted preliminary approval to the Settlements with the date of preliminary approval and case number shown below:

| Defendant | Date Preliminary Approval Motion Granted | Case Number | Case Name / Parts |
|---|---|---|---|
| Alpha | September 24, 2019 | 2:16-cv-04102 | Access Mechanisms |
| Bosal | September 24, 2019 | 2:16-cv-03702 | Exhaust Systems |
| Brose | September 18, 2018 | 2:17-cv-04302 | Door Latches |
| Calsonic | June 22, 2018 | 2:13-cv-01002 2:13-cv-02402 2:13-cv-02702 | Radiators ATF Warmers Air Conditioning |
| Continental | March 28, 2018 | 2:12-cv-00202 | Instrument Panel Clusters |
| Corning | July 18, 2019 | 2:16-cv-03802 | Ceramic Substrates |
| Delphi | August 15, 2019 | 2:13-cv-01402 | Ignition Coils |
| Faurecia | June 22, 2018 | 2:16-cv-03702 | Exhaust Systems |
| Green Tokai | October 18, 2018 | 2:16-cv-03402 | Body Sealings |
| Keihin | August 15, 2019 | 2:13-cv-02202 | Fuel Injection Systems |
| KYB | April 1, 2019 | 2:15-cv-03302 | Shock Absorbers |
| MAHLE Behr | October 18, 2018 | 2:13-cv-02702 | Air Conditioning Systems |
| Maruyasu | February 21, 2019 | 2:13-cv-02202 2:16-cv-04002 | Fuel Injection Systems Automotive Steel Tubes |
| Meritor | September 18, 2018 | 2:16-cv-03702 | Exhaust Systems |
| Mikuni | August 15, 2019 | 2:13-cv-02202 2:13-cv-02502 | Fuel Injection Systems Valve Timing Control Devices |
| Mitsubishi Heavy | July 18, 2019 | 2:13-cv-02702 | Air Conditioning Systems |
| Nachi | September 24, 2019 | 2:12-cv-00502 | Bearings |
| NGK | June 22, 2018 | 2:15-cv-03002 | Spark Plugs |
| Panasonic | July 18, 2019 | 2:13-cv-02702 | Air Conditioning Systems |
| Sanden | March 15, 2018 | 2:13-cv-02702 | Air Conditioning Systems |
| Sanoh | May 16, 2019 | 2:16-cv-04002 | Automotive Steel Tubes |
| Showa | September 24, 2019 | 2:13-cv-01902 2:16-cv-03302 | Electronic Powered Steering Assemblies Shock Absorbers |

| SKF | September 24, 2019 | 2:12-cv-00502 | Bearings |
| Stanley | May 6, 2019 | 2:13-cv-01202 | Automotive Lamps |
| | | 2:13-cv-01702 | HID Ballasts |
| TKH | September 24, 2019 | 2:12-cv-00602 | Occupational Safety Restraint Systems |
| Tenneco | September 17, 2018 | 2:16-cv-03702 | Exhaust Systems |
| Tokai Rika | March 7, 2019 | 2:12-cv-00402 | Heather Control Panels |
| | | 2:12-cv-00602 | Occupational Restraint Safety Systems |
| | | 2:13-cv-01302 | Switches |
| | | 2:13-cv-01602 | Steering Angle Sensors |
| Toyo Denso | June 22, 2018 | 2:13-cv-01402 | Ignition Coils |
| | | 2:16-cv-03902 | Power Window Switches |
| Toyoda Gosei | October 18, 2018 | 2:12-cv-00602 | Occupational Restraint Safety Systems |
| | | 2:14-cv-02902 | CVJ Boots |
| | | 2:15-cv-03202 | Automotive Hoses |
| | | 2:16-cv-03402 | Body Sealing Products |
| | | 2:16-cv-03502 | Interior Trim Products |
| | | 2:16-cv-03602 | Brake Hoses |
| Usui | February 27, 2018 | 2:16-cv-04002 | Automotive Steel Tubes |
| Valeo | September 24, 2019 | 2:16-cv-04102 | Access Mechanisms |

3.     In those orders, the Court granted conditional certification to the settlement classes described in those Settlements (the "Settlement Classes") and their respective Settlement Agreements.  To provide notice of the Settlements, the Court approved the Auto Dealers' motion to authorize dissemination of class notice.

4.     A multi-faceted notice plan was carried out and provided notice of the Settlements to potential members of the Settlement Classes.  (*See* Declaration of Alan Vasquez).  This allowed automobile dealerships the ability to comment on the terms of the Settlements.  There were no objections.  No dealership commented on the Settlements or requested the opportunity to be heard at the final fairness hearing.  Three dealership groups elected to opt-out of the Settlements as did three other dealerships.  *Id.*  Those dealerships appear to operate no more than 168 locations in the Included States.

5.     The Court has received and reviewed the Auto Dealers' Dealers' Motion for Final Approval of Settlements (Round Four) with Certain Defendants and for Certification of Settlement Classes and its supporting declarations and documents.  The Court, having reviewed the motion, its memorandum, and the supporting declarations and papers, and having undertaken its own detailed analyses of the Settlements makes the following **FINDINGS** and **ORDER**:

### The Notice Plan and Class Member Reaction

1.     The notice plan and the form and content of the notices of the Settlements complied with Rule 23 and due process requirements.

2.     The plan provided notice to the potential members of the Settlement Classes of the terms of the Settlements and the various options the potential members had, including, among other things, to opt out of the Settlements, be represented by counsel of their choosing, to object to the Settlements, and to participate as a claimant in the Settlements.

3.     The notice plan was the best practicable under the circumstances and it provided sufficient notice of: (a) the Settlements and their terms, (b) the right to opt out or object, and (c) the ability to be heard at a final approval hearing to automobile dealerships who indirectly purchased certain component parts and/or new vehicles containing those parts and purchased such vehicles or parts in the District of Columbia, Arizona, Arkansas, California, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and / or Wisconsin (the "Included States") and who were therefore entitled to receive such notice as potential members of the Rule 23(b)(3) Settlement Classes.

4.     The purpose of notice in a class action is to "afford members of the class due-process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to

be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)). Where names and addresses of known or potential class members are reasonably available, direct notice should be provided. *Eisen*, 417 U.S. at 175-76; *Manual for Complex Litigation* § 21.311, at 292 (4th ed. 2004). The notice plan here included direct postal and email notice to known, potential members of the Settlement Classes in the Included States who had the right to be excluded from the Settlement Classes and who may be entitled to share in the settlement proceeds. *Roberts v. Shermeta, Adams & VonAllmen, P.C.*, No.1:13-cv-1241, 2015 WL 1401352 (W.D. Mich. March 26, 2015); *see also Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548-53 (N.D. Ga. 1992); *Manual for Complex Litigation* § 21.311, at 288 (4th ed. 2004).

5.     The notice plan included direct postal and email notice to known automobile dealerships that purchased and sold new vehicles and certain component parts in the Included States; published notice in leading publications designed to target automobile dealerships nationwide; online media efforts through outlets like Facebook and Twitter; and earned media efforts through a national press release and a settlement web site. Postal notice was sent to more than 14,000 addresses and email notice was sent to approximately 44,600 addresses associated with new vehicle dealerships in the Included States. *See* Vasquez Decl.

6.     The notice plan's multi-faceted approach constituted "the best notice that is practicable under the circumstances" consistent with Rule 23(c)(2)(B). *See, e.g., In re Holocaust Victims Assets Litig.*, 105 F. Supp. 2d 139, 144 (E.D. N.Y. 2000) (approving plan involving direct-mail, published notice, press releases and earned media, Internet and other means of notice). According to the notice consultant, the notice plan's "reach" was approximately 90 to 95 per cent. *See* Vasquez Decl.

7.     The content of the notices was also adequate.  Notice for a Rule 23(b)(3) settlement class "must clearly and concisely state in plain, easily understood language" seven types of information: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).  The notices here provided the information required by Rule 23 and were drafted in a manner to clearly state the details of the Settlements in plain, easily understood language.

8.     Compliance with Rule 23's notice requirements also satisfies due process requirements.   "The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment." *In re Prudential Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306 (3rd Cir. 1998).  The notices and explanation of the process to opt out of the Rule 23(b)(3) Settlement Classes used here met due-process requirements.  The notices explained the actions, who is included in the Settlements, and the right to opt out, object, or appear through an attorney.  The notices also described the time and manner for opting out and declining to participate in or be bound by the Settlements for the members of the Rule 23(b)(3) Settlement Classes.

9.     Prospective members of the Settlement Classes were able to readily determine whether they were likely to be class members, since membership is based on being an automobile dealership that indirectly purchased the relevant component parts and/or new vehicles containing those parts during the respective class periods.  The Settlement Class definitions, a list of the Defendants and their alleged co-conspirators, and a list of the parts at issue in the Settlements, were

included in the Postal Notice and are posted on www.autodealersettlement.com.  Whether an automobile dealership is included in one or more of the Settlement Classes is ascertainable.

10.     The notice plan provided Rule 23(b)(3) Settlement Class members in the Included States information about their option to exclude themselves from the Settlements and pursue their claims individually and provided sufficient time to exercise this right.  *Fidel*, 534 F.3d at 513-15 (6th Cir. 2008) (affirming 46-day opt-out period and recognizing that publication notice and notice provided to brokerage houses on behalf of stockholders satisfies due process); *DeJulius v. New England Health Care Emp. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (affirming 32-day opt-out period).

11.     There were no objections to the notices or notice plan.  There were no objections to the Settlement terms, the request for attorneys' fees, the reimbursement of litigation costs, or the request to set aside money from the Settlement for potential future service awards to the Auto Dealer class representatives.

12.     No person or entity requested the opportunity to be heard at the final fairness hearing or requested more information about the Settlements or the background of the litigation.

13.     Requests for Exclusion were filed by three dealership groups that are represented by the same law firms.  Three other dealerships also requested exclusion.  These requests totaled 168 dealerships with addresses in the Included States.  A number of the entities listed as seeking exclusion identified the same address as other entities seeking exclusions.  This indicates that the number of dealership locations seeking exclusion is likely less than 168.

14.     A list of the dealerships that timely requested exclusion is attached to the Declaration of Alan Vasquez, filed in support of the motion for final approval of the Settlements.  Those dealerships are excluded from the Settlement Classes, will not be bound by the Settlements, and are

not entitled to any of their benefits. Those dealerships will not be bound by this Order and final judgments.

15.     The fact that nearly all eligible automobile dealerships elected to participate in these Settlements—and none objected—supports a conclusion that the Settlements are fair, reasonable, and adequate. The reaction to these Settlements was overwhelmingly positive.

### The Settlements and their Terms

16.     The Court has carefully reviewed the Settlements and their terms. Having presided over this litigation for more than seven years, the Court is intimately familiar with the claims and defenses, the procedural history of the cases, and the amount of work done by the counsel representing both the Auto Dealers and the Settling Defendants. In addition to the material provided by counsel in support of the motion for final approval, the Court has conducted its own analysis of the fairness and reasonableness of the Settlements.

17.     The law favors the settlement of class action lawsuits. *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013); *see also In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *7 (E.D. Mich. Feb. 22, 2011); *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007).

18.     To be given final approval, a class action settlement must be "fair, reasonable, and adequate." *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14 (E.D. Mich. Oct. 18, 2010); *see also Packaged Ice*, 2011 WL 717519, at *8. "There are three steps which must be taken by the court in order to approve a settlement: (1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In Re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v.*

*Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010).

19.     At final approval, the court considers whether the settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Vukovich*, 720 F.2d at 921-23).   This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted); *Sheick*, 2010 WL 4136958, at *14-15.

20.     Sixth Circuit courts consider a number of factors when determining whether a settlement should be granted final approval: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *Packaged Ice*, 2011 WL 717519, at *8; *see also UAW*, 497 F.3d at 631; *Griffin*, 2013 WL 6511860, at *3; *Cardizem*, 218 F.R.D. 508 at 522.  No single factor is determinative and the court weighs each factor based on the circumstances of the case. *Ford*, 2006 WL 1984363, at *21.  The court may "choose to consider only those factors that are relevant to the settlement at hand".  *Id.* at *22; s*ee also Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992).

21.     Each of the factors set out above support final approval of the Settlements. Settlements like those before the Court recognize the uncertainties of law and fact and the risks and costs inherent in taking complex litigation to completion. *Sheick*, 2010 WL 4136958, at *15 (quoting *IUE-CWA*, 238 F.R.D. at 594); *Ford*, 2006 WL 1984363, at *21.  When considering the likelihood of plaintiffs' success on the merits of the litigation, the ultimate question is whether the interests of the

class as a whole are better served if the litigation is resolved by settlement rather than pursued. *Sheick*, 2010 WL 4136958, at *16 (citing *IUE-CWA*, 238 F.R.D. at 595). The Settlements reflect both the strengths of the Auto Dealers' claims and the risk that the Settling Defendants may prevail on some or all of their defenses.

22.     The Settlements provide more than $86 million in settlement funds that will benefit eligible automobile dealers. The Settlements create cash funds whose net proceeds (after the Court-approved deduction of certain expenses and attorneys' fees) will be paid entirely to eligible Settlement Class members that purchased the relevant component parts and/or new vehicles containing those parts during the respective class periods in the Included States. There are no reversions in these Settlements and the named representative plaintiffs are not treated differently than absent class members.

23.     The Settlement Agreements for the Settlements all include requirements that the Settling Defendants provide specified cooperation to the Auto Dealers. Such cooperation is particularly valuable in complex cases. The timing of these Settlements, which come before the cases were ready for trial, adds significance to the cooperation offered by the Settling Defendants and its utility in the Auto Dealers' pursuit of claims against any non-settling Defendants.

24.     The Court has conducted its own analysis of the Auto Dealers' likelihood of success on the merits and has weighed that against the relief provided in the Settlements. Dealerships in the Included States are giving up their ability to seek money damages from the Settling Defendants in exchange for monetary payments and other non-monetary relief like cooperation and, in some cases, injunctive relief. In exchange for the settlement payments and cooperation, the Settlements include "Released Claims" against Settling Defendants. The Settlements do not affect other current or future Defendants' joint and several liability for the Settling Defendants' alleged wrongdoing. Settling Defendants' sales remain in their respective cases. Non-settling defendants, with the exception of

those who are ultimately entitled to the reduced liability provisions of the Antitrust Criminal Penalty Enhancement and Reform Act, remain jointly and severally liable for damages applicable to those sales, less only the amounts paid in settlement. Consequently, the Settlements will not limit the Settlement Classes' right to recover the full amount of the damages available under the law from any non-settling defendants or entity, against whom the Auto Dealers may continue to prosecute their claims.

25.      Even though some Defendants pleaded guilty in the criminal prosecutions brought by the Department of Justice to the very conduct alleged by the Auto Dealers, the Auto Dealers' success was not guaranteed.  The Auto Dealers needed to prove class-wide impact from the conspiracies while the Department of Justice did not.  The resolution of this issue would involve a battle of experts at great cost and at great risk to the Auto Dealers' chances of success. The Auto Dealers must show they suffered antitrust injury as a result of the Settling Defendants' conduct, and given the nature of the automobile industry, the damages methodologies advanced by the Auto Dealers and Defendants would likely vary greatly.  In sum, the Auto Dealers faced significant challenges to liability, class certification, and a battle with the Defendants about proof of the amount of damages.

26.      Settling Defendants have vigorously and ably defended these cases and would continue to do so if the Court rejected the Settlements. The Settling Defendants, and other Defendants in this litigation, have argued that the prices of the parts in question were not inflated as a result of their bid coordination.  They have also argued that the Auto Dealers passed on any price inflation and did not sustain a viable antitrust injury.  These Settlements avoid the risks that the Settling Defendants would prevail on those defenses, leaving Auto Dealers with no recovery.  The Settlements also avoid the risk that litigation classes will not be certified, which in turn, could result in less or no recovery for Auto Dealers.

27.     Of great importance in the Court's assessment are the provisions in the Settlements requiring discovery cooperation of certain Settling Defendants. The cooperation agreed to included, for example, identifying all current and former employees, directors, and officers interviewed by any of the government entities investigating antitrust activity in the industry, document production, including English translations, regarding the investigations, not only by the Department of Justice, but by government entities in other countries, pricing, employee training on biding and pricing, transactional data regarding sales to Original Equipment Manufacturers, bids, cooperation with attorney proffers, witness interviews, depositions, and trial testimony.  This benefit to the Settlement Classes "strongly militates toward approval" of the settlements. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). This cooperation strengthens the Auto Dealers' prosecution of claims against any non-settling defendants or other entities. *Id.*  Finally, some of the Settling Defendants have agreed not to engage in certain specified conduct that would violate the antitrust laws involving the automotive parts for a period of two years.

28.     The Settlements provide adequate monetary relief and substantial cooperation, making the first final approval factor one that weighs in favor of granting final approval.

29.     The complexity, expense, and likely duration of continued litigation also favor final approval.  The Settlements were reached after adversarial litigation and good faith, arms' length negotiations involving experienced counsel for the Auto Dealers and the Settling Defendants.  The opinions of these attorneys, who support the Settlements as being fair and reasonable, provide support for final approval.  *Dick,* 297 F.R.D. at 296 ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate…") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *see also   In re Auto. Refinishing Paint Antitrust Litig.*, 617 F.Supp.2d 336, 341 (E.D. Pa. 2007).

30. Counsel for the Auto Dealer's judgment "that settlement is in the best interest of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18). "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922-23).

31. Counsel for the Auto Dealers and the Settling Defendants were armed with sufficient background information and discovery and "had adequate information about their claims." *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)). This also favors final approval of the Settlements.

32. There were no objections to any of the Settlements and few opt-outs. This is remarkable because there are often at least a few objections to class settlements. "A certain number of opt-outs and objections are to be expected in a class action. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement." *Cardizem*, 218 F.R.D. at 527. This reaction from the members of the Settlement Classes strongly supports the adequacy of the Settlements. *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that objections by about 10% of class "strongly favors settlement"); *see also TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 458, 462 (2d Cir. 1982) (approving settlement despite objections of large number of class); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (approving class settlement despite objections from more than 10% of class).

33. The public interest also supports final approval of the Settlements. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."

*Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at 1205); *see also Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12.

34.     The Court presumes that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion unless there is contrary evidence. *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford*, 2006 WL 1984363, at *26; *Sheick*, 2010 WL 4136958, at *19-20.   The Settlements here were reached after adversarial litigation.   The Court has viewed and presided over extensive motion practice and disagreements between the Auto Dealers and the Settling Defendants.   There is no evidence or suggestion that the negotiations leading to the Settlements were collusive in any way.   The Settlements were negotiated in good faith with counsel on each side zealously representing the interests of their clients for years. In some cases, the parties used experienced mediators to assist in achieving a settlement.

35.     Having provided over this litigation for more than seven years, the Court is familiar with the merits of the claims and defenses, the risks facing the parties, and the public interest in resolving litigation.   Starting with the preliminary approval motions, the Court had the opportunity to consider the reasonableness of the Settlements and the terms of the Settlement Agreements.   The Court agrees that the Settlements are fair, reasonable, and adequate under Rule 23 of the Federal Rules of Civil Procedure and will be granted final approval.

36.     The Settling Defendants have provided the notices to public officials required by 28 U.S.C. § 1715.   None of the public officials who received those notices objected to the Settlements or requested an opportunity to be heard.

### Certification of Settlement Classes

37.     In its preliminary approval orders for the Settlements, the Court found that Rule 23's requirements were met and provisionally certified, for purposes of the proposed settlements only, Settlement Classes described in the Settlement Agreements.   A class may be certified for purposes of

settlement. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Ford*, 2006 WL 1984363, at *3, *18; *Cardizem*, 218 F.R.D. at 516-19; *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009).

38.    Having considered the preliminary and final approval papers and proceedings, the Court concludes that these Settlements meet the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2) and 23(b)(3) for certification of classes for settlement purposes.

39.    Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and at least one of the subsections of Rule 23(b). *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Griffin*, 2013 WL 6511860, at *5; *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. *Griffin*, 2013 WL 6511860, at *5; *Date*, 2013 WL 3945981, at *3.

40.    Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1); *Whirlpool*, 722 F.3d at 852 (noting that "substantial" number of class members satisfies numerosity). Numerosity is determined by the size and geographic location of the class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007). Notice of these Settlements was mailed to approximately 14,000 and emailed to approximately 44,600 automobile dealership entities, geographically dispersed throughout the United States. *See* Vasquez Decl. Joinder of these Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

41.     Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class."   One common question may be sufficient to certify a class. *Whirlpool*, 722 F.3d at 853; *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, 2010 WL 5439737, at *3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class")(citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

42.     Courts have concluded that some antitrust cases present questions adequately common to class members to satisfy Rule 23.  *In re Flat Glass Antitrust Litig.*., 191 F.R.D. 472, 478 (W.D. Pa. 1999) (citing 4 NEWBERG ON CLASS ACTIONS § 18.05-15 (3d ed. 1992)); *Packaged Ice*, 2011 WL 717519, at *6 (holding commonality satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members").  Here, whether the settling Defendants entered into anti-competitive agreements presents factual and legal questions common to all Settlement Class members.  Because there are common legal and factual questions, the commonality requirement of Rule 23(a)(2) is met for the Settlement Classes.

43.     Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3.  "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'"  *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399).  The legal theories and claims of the named Auto Dealer plaintiffs are the same or similar to the claims of the members of the Settlement Classes.   Rule 23(a)(3)'s typicality requirement is satisfied for the Settlement Classes.

16

44.     Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick*, 2010 WL 3070130, at *3 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)).  These requirements are met by the Auto Dealers who have served as named representatives in the actions involved in the Settlements.  Counsel representing the Auto Dealers are well-qualified class action attorneys, have vigorously prosecuted the Auto Dealers' claims, and have done exemplary work throughout this litigation.

45.     In addition to satisfying Rule 23(a), the Settlement Classes meet the requirements of Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

46.     The Rule 23(b)(3) requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive to warrant certification." *Amchem*, 521 U.S. at 623. The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beanie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).   Antitrust actions have been granted class certification. *Scrap Metal*, 527 F.3d at 535; *Packaged Ice*, 2011 WL 717519, at *6; *In re Southeastern Milk Antitrust Litig.*, 2010 WL 3521747, at *5, 9-11 (ED. Tenn. Sept. 7, 2010).  Sufficiently similar core operative facts and theories of liability apply

to each Settlement Class member and, for settlement purposes, common questions of fact and law predominate for the Settlement Classes.

47.     Rule 23(b)(3) superiority factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication include: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

48.     The superiority factors (1)-(3) are met because nearly all Settlement Class members elected to adjudicate their claims in the Settlements and therefore did not express an interest in controlling or bringing their own actions.  The fourth superiority factor is not relevant when a court is asked to certify a settlement only class because the difficulties in managing trial are extinguished by the settlement. *See Cardizem*, 218 F.R.D. at 517.  The alternatives to these Settlements are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207,234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive, *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996). The certification of Settlement Classes is a superior method to resolve this litigation.

49.     The Settlements meet the requirements of Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.  The Court therefore grants certification, for settlement purposes only, of the Settlement Classes set out in the preliminary approval orders of the Settlements and their respective Settlement Agreements.

50.     The Court's certification of the Settlement Classes as provided herein is without prejudice to, or waiver of, the rights of any Defendant to contest certification of any other class

proposed in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311. The Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in the *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311. No party may cite or refer to the Court's approval of any Settlement Class as persuasive or binding authority in support of any motion to certify any class.

51.     None of the Settlement Agreements, nor any act performed or document executed pursuant to any of the Settlement Agreements, may be deemed or used as an admission of wrongdoing in any civil, criminal, administrative, or other proceeding in any jurisdiction.

**Appointment of Settlement Class Counsel and Class Representatives**

52.     Having determined that the requirements of Rule 23(g) have been satisfied, the Court hereby appoints Cuneo Gilbert & LaDuca, LLP, Barrett Law Group, P.A., and Larson · King, LLP as Settlement Class Counsel for all Settlements.

53.     The Automobile Dealer Plaintiffs who were named in the operative complaints in the Settlements and who continue, as of the date of this Order, to serve as named representatives in the cases involved in the Settlements are appointed to serve as class representatives on behalf of the Settlement Classes.

**Procedural Matters**

54.     By incorporating herein the terms of the Settlement Agreements, the Court determines that this Order complies in all respects with Federal Rule of Civil Procedure 65(d)(1).

55.     The Court will separately enter a final judgment for each Settlement in accordance with Federal Rule of Civil Procedure 58.

56.     The Court previously approved the establishment of escrow accounts under the Settlement Agreements as qualified settlement funds ("QSF") pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder, and retains continuing

jurisdiction as to any issue that may arise in connection with the formation and/or administration of the QSF. Settlement Class Counsel are authorized to expend funds from the QSF for the payment of the costs of notice, payment of taxes, settlement administration costs, and the payment of qualified claims made under the Settlements.

**IT IS HEREBY ORDERED**:

1.      The Settlements previously preliminarily approved by the Court are fair, reasonable, and adequate under the circumstances and are granted final approval pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.      The notice plan and notice provided about the Settlements was reasonable and the best practicable notice reasonably calculated under the circumstances to apprise class members of the pendency of these actions, the terms of the Settlements, and their respective right to object, opt out, and appear at the final fairness hearing;

3.      The terms of the parties' Settlement Agreements for the Settlements are hereby incorporated as Orders of this Court;

4.      All members of the Settlement Classes that did not file a timely and valid request for exclusion are bound by the Settlements and the Settlement Agreements;

5.      Because no objections to these Settlements were filed, members of the Settlement Classes have waived all such objections and are therefore bound by all proceedings, orders, and judgments in these Settlements, which will be preclusive in all pending or future lawsuits or other proceedings; and

6.      Without affecting the finality of this Order or any final judgment related to the Settlements in any way, this Court hereby retains exclusive jurisdiction over: (a) the enforcement of this Order and the final judgments; (b) the enforcement of the Settlement Agreements; (c) any application for distribution of funds, attorneys' fees, or reimbursement of costs and expenses made

by Plaintiffs' Counsel; (d) any application for incentive awards for the Automobile Dealer Plaintiffs;

and (e) the distribution of the settlement proceeds or additional notice to members of the Settlement

Classes.

       Dated this 29th day of December, 2019.

s/Marianne O. Battani       <br>
MARIANNE O. BATTANI<br>
United States District Judge